No. 23-2083

---

**IN THE
UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT**

---

PABLO ESPIN et al.,
*Plaintiffs-Appellees,*

v.

CITIBANK, N.A.,
*Defendant-Appellant,*

---

Appeal from Order of the United States District Court for the
Eastern District of North Carolina, No. 5:22-cv-00383-BO-RN
(Boyle, J.)

---

## JOINT APPENDIX

---

Lucia Nale
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
Telephone: (312) 701-8886

Andrew J. Pincus
Archis A. Parasharami
Kevin S. Ranlett
MAYER BROWN LLP
1999 K Street, N.W.
Washington, DC 20006
Telephone: (202) 263-3000
apincus@mayerbrown.com

*Attorneys for Defendant-Appellant Citibank N.A.*

*(Additional counsel listed on inside cover)*

Eric D. Lowney
Claire E. Tonry
SMITH AND LOWNEY PLLC
2317 E. John St.
Seattle, WA 98112
Telephone: 206-860-2976

Leah M. Nicholls
Ellen Noble
Public Justice, P.C.
1620 L St. N.W., Suite 630
Washington, DC 20036
Telephone: (202) 797-8600

*Attorneys for Plaintiffs-Appellees*

# JOINT APPENDIX

Docket Sheet ........................................................................... JA1

Amended Complaint (ECF No. 26) ..................................................JA11

Citibank's Motion to Compel Arbitration (ECF No. 22) ................... JA48

   Ex. 1 – Declaration of Kelly Booth (ECF No. 23-2)....................... JA51

      Ex. A – Espin Card Agreement (ECF No. 23-3) ........................ JA60

      Ex. B – Espin Transaction Detail (ECF No. 23-4).................... JA81

      Ex. C – Espin New Card Agreement (ECF No. 23-5) ............... JA85

      Ex. D – Espin Billing Statement (ECF No. 23-6) ................... JA104

      Ex. E – Padao Mailing (ECF No. 23-7) ................................... JA108

      Ex. F – Padao Transaction Detail (ECF No. 23-8) ................. JA127

      Ex. G – Taylor Exemplar Card Agreement (ECF No. 23-9) ... JA131

      Ex. H – Taylor Transaction Detail (ECF No. 23-10)............. JA148

      Ex. I – Taylor Mailing (ECF No. 23-11) ................................. JA153

      Ex. J – Taylor Transaction Detail (ECF No. 23-12)............. JA172

   Ex. 2 – Declaration of Andrew Grayot (ECF No. 23-13) ............. JA177

      Ex. A – Bell Card Agreement (ECF No. 23-14)....................... JA182

      Ex. B – Bell Transaction Detail (ECF No. 23-15).................. JA205

      Ex. C – Notice of Important Changes (ECF No. 23-16).......... JA212

      Ex. D – Bell Billing Statement (ECF No. 23-17) ................... JA220

   Ex. 3 – Declaration of Kyle Steinmetz (ECF No. 23-18)............. JA227

      Ex. A – AAA Consumer Arbitration Rules (ECF No. 23-19)... JA230

Ex. B – AAA Consumer Rules Highlights ............................... JA279

Declaration of Knoll Lowney (ECF No. 28) .................................... JA285

Ex. A – Report on Predatory Lending Practices Directed at Members of the Armed Forces and Their Dependents, Dep't of Def. (Aug. 9, 2006) (ECF No. 28-1) ............................................ JA288

Ex. B – Letter to Pablo Espin (ECF No. 28-2) .......................... JA297

Order (ECF No. 58) ....................................................... JA300

Notice of Appeal (ECF No. 60) ....................................... JA307

APPEAL,CLOSED,Jury Trial,STAYED

**U.S. District Court**
**EASTERN DISTRICT OF NORTH CAROLINA (Western Division)**
**CIVIL DOCKET FOR CASE #: 5:22–cv–00383–BO–RN**

Espin et al v. Citibank, N.A.
Assigned to: District Judge Terrence W. Boyle
Referred to: Magistrate Judge Robert T. Numbers, II
Demand: $5,000,000
 Case in other court:  USCA, 23–02083
Cause: Civil Miscellaneous Case

Date Filed: 09/22/2022
Date Terminated: 11/02/2023
Jury Demand: Plaintiff
Nature of Suit: 430 Banks and Banking
Jurisdiction: Federal Question

**Plaintiff**

**Pablo Espin**                                  represented by   **Alyssa L. Koepfgen**
Smith & Lowney PLLC
2317 E. John Street
Seattle, WA 98112
206–388–0728
Fax: 206–860–4187
Email: alyssa@smithandlowney.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Claire E. Tonry**
Smith & Lowney PLLC
2317 E. John Street
Seattle, WA 98112
206–860–1394
Fax: 206–860–4187
Email: claire@smithandlowney.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Eric Knoll Lowney**
Eric "Knoll" Lowney
2317 E. John
Seattle, WA 98112
206–860–2976
Fax: 206–860–4187
Email: knoll@smithandlowney.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Marc A. R. Zemel**
Smith & Lowney PLLC
2317 E. John Street
Seattle, WA 98112
206–805–0857
Fax: 206–860–4187
Email: marc@smithandlowney.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Paul J Puryear , Jr**
Zaytoun Ballew and Taylor PLLC
3130 Fairhill Drive
Suite 100
Raleigh, NC 27612
919–832–6690
Fax: 919–831–4793
Email: pjpuryear@zaytounlaw.com
*ATTORNEY TO BE NOTICED*

**Matthew David Ballew**
Zaytoun Law Firm, PLLC
3130 Fairhill Dr., Suite 100
Raleigh, NC 27612
919–832–6690
Fax: 919–831–4793
Email: mballew@zaytounlaw.com
*ATTORNEY TO BE NOTICED*

**Plaintiff**

Nicholas Padao                                  represented by **Alyssa L. Koepfgen**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Claire E. Tonry**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Eric Knoll Lowney**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Marc A. R. Zemel**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Paul J Puryear , Jr**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Matthew David Ballew**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

Jeremy Bell                                     represented by **Alyssa L. Koepfgen**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Claire E. Tonry**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Eric Knoll Lowney**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Marc A. R. Zemel**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Paul J Puryear , Jr**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Matthew David Ballew**

(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Keith Taylor**                          represented by  **Alyssa L. Koepfgen**
                                                          (See above for address)
                                                          *LEAD ATTORNEY*
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Claire E. Tonry**
                                                          (See above for address)
                                                          *LEAD ATTORNEY*
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Eric Knoll Lowney**
                                                          (See above for address)
                                                          *LEAD ATTORNEY*
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Marc A. R. Zemel**
                                                          (See above for address)
                                                          *LEAD ATTORNEY*
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Paul J Puryear , Jr**
                                                          (See above for address)
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Matthew David Ballew**
                                                          (See above for address)
                                                          *ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Citibank, N.A.**                        represented by  **Andrew J. Pincus**
                                                          Mayer Brown LLP
                                                          1999 K Street NW
                                                          Washington, DC 20006
                                                          202–263–3220
                                                          Fax: 202–263–5220
                                                          Email: apincus@mayerbrown.com
                                                          *LEAD ATTORNEY*
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Archis Ashok Parasharami**
                                                          Mayer Brown LLP
                                                          1999 K Street NW
                                                          Washington, DC 20006
                                                          202–263–3328
                                                          Email: aparasharami@mayerbrown.com
                                                          *LEAD ATTORNEY*
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Debra Bogo–Ernst**
                                                          Willkie Farr & Gallagher LLP
                                                          300 North LaSalle Dr.
                                                          Chicago, IL 60654
                                                          312–728–9062
                                                          Email: dernst@willkie.com
                                                          *TERMINATED: 03/16/2023*
                                                          *LEAD ATTORNEY*

**Kevin Ranlett**
Mayer Brown LLP
1999 K Street NW
Washington, DC 20006
202–263–3000
Email: kranlett@mayerbrown.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kyle Steinmetz**
Mayer Brown LLP
71 S. Wacker Dr.
Chicago, IL 60606
312–701–8547
Email: ksteinmetz@mayerbrown.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Lucia Nale**
MayerBrown LLP
71 South Wacker Drive
Chicago, IL 60606
312–701–7074
Fax: 312–706–8663
Email: lnale@mayerbrown.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Mary Kathryn Mandeville**
Alexander Ricks PLLC
1420 E. 7th Street
Suite 100
Charlotte, NC 28204
704–200–2635
Fax: 704–365–3676
Email: mary@alexanderricks.com
*ATTORNEY TO BE NOTICED*

**Amicus**

**UNITED STATES OF AMERICA**        represented by   **Alan Martinson**

950 Pennsylvania Ave., NW – 4CON
Washington, DC 20530
202–616–2191
Email: alan.martinson@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**Amici Curiae Military Organizations**

| Date Filed | # | Docket Text |
|---|---|---|
| 09/22/2022 | 1 | **COMPLAINT** – *Class Action (Jury Trial Demanded)* against All Defendants ( Filing fee $ 402 receipt number ANCEDC–6742144.), filed by Keith Taylor, Pablo Espin, Jeremy Bell, Nicholas Padao. (Attachments: # 1 Civil Cover Sheet, # 2 Proposed Summons Citibank, N.A.) (Ballew, Matthew) (Entered: 09/22/2022) |
| 09/22/2022 | 2 | Financial Disclosure Statement by Nicholas Padao (Ballew, Matthew) (Entered: 09/22/2022) |
| 09/22/2022 | 3 | Financial Disclosure Statement by Pablo Espin (Ballew, Matthew) (Entered: 09/22/2022) |

| 09/22/2022 | 4 | Financial Disclosure Statement by Jeremy Bell (Ballew, Matthew) (Entered: 09/22/2022) |
|---|---|---|
| 09/22/2022 | 5 | Financial Disclosure Statement by Keith Taylor (Ballew, Matthew) (Entered: 09/22/2022) |
| 09/22/2022 | 6 | Notice of Related Case filed by Jeremy Bell, Pablo Espin, Nicholas Padao, Keith Taylor . (Ballew, Matthew) (Entered: 09/22/2022) |
| 09/22/2022 | 7 | Notice of Appearance filed by Matthew David Ballew on behalf of All Plaintiffs. (Ballew, Matthew) (Entered: 09/22/2022) |
| 09/22/2022 | 8 | Notice of Special Appearance for non–district by Alyssa L. Koepfgen on behalf of All Plaintiffs. (Koepfgen, Alyssa) (Entered: 09/22/2022) |
| 09/22/2022 | 9 | Notice of Special Appearance for non–district by Eric Knoll Lowney on behalf of All Plaintiffs. (Lowney, Eric) (Entered: 09/22/2022) |
| 09/23/2022 | 10 | Summons Issued as to Citibank, N.A. (*NOTICE: Counsel shall print the attached summons and serve with other case opening documents in accordance with Fed.R.Civ.P. 4.*) (Rudd, D.) (Entered: 09/23/2022) |
| 09/26/2022 | | TEXT ORDER REASSIGNING CASE. At the direction of the Court and for the continued efficient administration of justice, this case is reassigned to United States District Judge Terrence W. Boyle for all further proceedings. United States District Judge Louise Wood Flanagan is no longer assigned to the case. All future filings should reflect the revised case number of 5:22–CV–383–BO. Signed by Peter A. Moore, Jr., Clerk of Court on 9/26/2022. (Hockaday, A.) (Entered: 09/26/2022) |
| 09/26/2022 | 11 | Notice of Special Appearance for non–district by Claire E. Tonry on behalf of All Plaintiffs. (Tonry, Claire) (Entered: 09/26/2022) |
| 10/11/2022 | 12 | Notice of Appearance filed by Paul J Puryear, Jr on behalf of All Plaintiffs. (Puryear, Paul) (Entered: 10/11/2022) |
| 10/11/2022 | 13 | Waiver of Service Returned Executed filed by Keith Taylor, Pablo Espin, Jeremy Bell, Nicholas Padao. All Defendants. (Puryear, Paul) (Entered: 10/11/2022) |
| 11/28/2022 | 14 | Notice of Appearance filed by Mary Kathryn Mandeville on behalf of Citibank, N.A.. (Mandeville, Mary) (Entered: 11/28/2022) |
| 11/28/2022 | 15 | MOTION for Extension of Time *to Move, Answer or Otherwise Respond to the Complaint and Joint Motion to set Briefing Schedule for any Responsive Motion by Citibank* filed by Citibank, N.A.. (Attachments: # 1 Text of Proposed Order Granting 16–Day Extension of Time to Move, Answer or Otherwise Respond to the Complaint and Joint Motion to set Briefing Schedule for any Responsive Motion by Citibank) (Mandeville, Mary) (Entered: 11/28/2022) |
| 11/29/2022 | 16 | Financial Disclosure Statement by Citibank, N.A. identifying Corporate Parent Citicorp LLC, Corporate Parent Citigroup Inc. for Citibank, N.A.. (Mandeville, Mary) (Entered: 11/29/2022) |
| 12/05/2022 | 17 | Notice of Special Appearance for non–district by Debra Bogo–Ernst on behalf of Citibank, N.A.. (Bogo–Ernst, Debra) (Entered: 12/05/2022) |
| 12/06/2022 | | Motion Submitted to District Judge Terrence W. Boyle regarding 15 MOTION for Extension of Time *to Move, Answer or Otherwise Respond to the Complaint and Joint Motion to set Briefing Schedule for any Responsive Motion by Citibank*. (Reznick, Debra) (Entered: 12/06/2022) |
| 12/06/2022 | 18 | Notice filed by Citibank, N.A. regarding Motion Submitted, 15 MOTION for Extension of Time *to Move, Answer or Otherwise Respond to the Complaint and Joint Motion to set Briefing Schedule for any Responsive Motion by Citibank Supplement to Unopposed Motion*. (Mandeville, Mary) (Entered: 12/06/2022) |
| 12/08/2022 | 19 | ORDER granting 15 Motion for Extension of Time. Signed by District Judge Terrence W. Boyle on 12/7/2022. (Reznick, Debra) (Entered: 12/08/2022) |
| 12/22/2022 | 20 | MOTION to Dismiss for Lack of Jurisdiction *(Citibank's Contested Motion to Dismiss for Lack of Jurisdiction)* filed by Citibank, N.A.. (Bogo–Ernst, Debra) (Entered: |

| | | |
|---|---|---|
| | | 12/22/2022) |
| 12/22/2022 | 21 | Memorandum in Support regarding 20 MOTION to Dismiss for Lack of Jurisdiction *(Citibank's Contested Motion to Dismiss for Lack of Jurisdiction)* filed by Citibank, N.A.. (Bogo–Ernst, Debra) (Entered: 12/22/2022) |
| 12/22/2022 | 22 | MOTION to Compel *(Citibank's Contested Motion to Compel Arbitration and to Stay Action)* filed by Citibank, N.A.. (Bogo–Ernst, Debra) (Entered: 12/22/2022) |
| 12/22/2022 | 23 | Memorandum in Support regarding 22 MOTION to Compel *(Citibank's Contested Motion to Compel Arbitration and to Stay Action)* filed by Citibank, N.A.. (Attachments: # 1 Index of Exhibits in Support of Citibank N.A.'s Motion to Compel Arbitration and to Stay Action, # 2 Exhibit 1 – Declaration of Kelly Booth, # 3 Exhibit A to the Booth Declaration – Espin 2014 Letter & Agreement, # 4 Exhibit B to the Booth Declaration – Espin Oct. 2014 Statement, # 5 Exhibit C to the Booth Declaration – Espin Oct. 2016 Letter & Agreement, # 6 Exhibit D to the Booth Declaration – Espin Jul. 2017 Statement, # 7 Exhibit E to the Booth Declaration – Padao Jun. 2016 Letter & Agreement, # 8 Exhibit F to the Booth Declaration – Padao Jun. 2016 Statement, # 9 Exhibit G to the Booth Declaration – Taylor 2013 Agreement, # 10 Exhibit H to the Booth Declaration – Taylor Mar. 2013 Statement, # 11 Exhibit I to the Booth Declaration – Taylor 2015 Letter & Agreement, # 12 Exhibit J to the Booth Declaration – Taylor Dec. 2015 Statement, # 13 Exhibit 2 – Declaration of Andrew Grayot, # 14 Exhibit A to the Grayot Declaration – Bell 2014 Agreement, # 15 Exhibit B to the Grayot Declaration – Bell Oct. 2014 Statement, # 16 Exhibit C to the Grayot Declaration – Bell 2016 Letter & Agreement, # 17 Exhibit D to the Grayot Declaration – Bell Jan. 2017 Statement, # 18 Exhibit 3 – Declaration of Kyle Steinmetz, # 19 Exhibit A to the Steinmetz Declaration – AAA Consumer Arbitration Rules, # 20 Exhibit B to the Steinmetz Declaration – Highlights of AAA Consumer Arbitration Rules, # 21 Exhibit 4 – Laura Kim et al., Federal Reserve Bank of San Francisco, 2020 Findings from the Diary of Consumer Payment Choice (July 31, 2020)) (Bogo–Ernst, Debra) (Entered: 12/22/2022) |
| 01/04/2023 | 24 | Notice of Special Appearance for non–district by Lucia Nale on behalf of Citibank, N.A.. (Nale, Lucia) (Entered: 01/04/2023) |
| 02/15/2023 | 25 | Consent MOTION for Extension of Time to File Response/Reply as to 20 MOTION to Dismiss for Lack of Jurisdiction *(Citibank's Contested Motion to Dismiss for Lack of Jurisdiction)* filed by Jeremy Bell, Pablo Espin, Nicholas Padao, Keith Taylor. (Attachments: # 1 Text of Proposed Order) (Tonry, Claire) (Entered: 02/15/2023) |
| 02/16/2023 | 26 | **AMENDED COMPLAINT** against All Defendants, filed by Keith Taylor, Pablo Espin, Jeremy Bell, Nicholas Padao. (Koepfgen, Alyssa) (Entered: 02/16/2023) |
| 02/16/2023 | 27 | RESPONSE in Opposition regarding 22 MOTION to Compel *(Citibank's Contested Motion to Compel Arbitration and to Stay Action)* filed by Jeremy Bell, Pablo Espin, Nicholas Padao, Keith Taylor. (Koepfgen, Alyssa) (Entered: 02/16/2023) |
| 02/16/2023 | 28 | Declaration regarding 27 Response in Opposition to Motion *by Knoll Lowney* by Keith Taylor, Pablo Espin, Jeremy Bell, Nicholas Padao filed by Keith Taylor, Pablo Espin, Jeremy Bell, Nicholas Padao. (Attachments: # 1 Exhibit A, # 2 Exhibit B) (Koepfgen, Alyssa) (Entered: 02/16/2023) |
| 03/02/2023 | 29 | Notice filed by UNITED STATES OF AMERICA regarding 22 MOTION to Compel *(Citibank's Contested Motion to Compel Arbitration and to Stay Action) Statement of Interest of the United States.* (Martinson, Alan) (Entered: 03/02/2023) |
| 03/03/2023 | | Motion Referred to Peter A. Moore, Jr., Clerk of Court regarding 25 Consent MOTION for Extension of Time to File Response as to 20 MOTION to Dismiss for Lack of Jurisdiction *(Citibank's Contested Motion to Dismiss for Lack of Jurisdiction).* (Stouch, L.) (Entered: 03/03/2023) |
| 03/06/2023 | | Motion No Longer Referred: 25 Consent MOTION for Extension of Time to File Response as to 20 MOTION to Dismiss for Lack of Jurisdiction *(Citibank's Contested Motion to Dismiss for Lack of Jurisdiction).* Motion Submitted to District Judge Terrence W. Boyle. (Stouch, L.) (Entered: 03/06/2023) |
| 03/07/2023 | 30 | ORDER granting 25 Motion for Extension of Time. Citibank shall file any motion to dismiss within 21 days of the filing of the amended complaint. Plaintiffs shall respond |

JA6

| | | |
|---|---|---|
| | | to Citibank's Motion to Dismiss within 30 days of its filing. Citibank shall file its reply within 30 days after the filing of Plaintiffs' response to the Motion to Dismiss. Signed by District Judge Terrence W. Boyle on 3/7/2023. (Stouch, L.) (Entered: 03/07/2023) |
| 03/09/2023 | 31 | MOTION to Withdraw as Attorney *for Debra Bogo−Ernst* filed by Citibank, N.A.. (Attachments: # 1 Text of Proposed Order Proposed Order on Motion for Extension to Withdraw as Counsel) (Mandeville, Mary) (Entered: 03/09/2023) |
| 03/09/2023 | 32 | MOTION to Dismiss *Claims of Nicholas Padao, Jeremy Bell, and Keith Taylor for Lack of Personal Jurisdiction* filed by Citibank, N.A.. (Nale, Lucia) (Entered: 03/09/2023) |
| 03/09/2023 | 33 | Memorandum in Support regarding 32 MOTION to Dismiss *Claims of Nicholas Padao, Jeremy Bell, and Keith Taylor for Lack of Personal Jurisdiction* filed by Citibank, N.A.. (Nale, Lucia) (Entered: 03/09/2023) |
| 03/09/2023 | 34 | Joint MOTION to Modify Briefing Schedule for Citibank's Reply in Support of Its Motion to Compel Arbitration regarding 22 MOTION to Compel *(Citibank's Contested Motion to Compel Arbitration and to Stay Action)* filed by Citibank, N.A.. (Attachments: # 1 Text of Proposed Order) (Nale, Lucia) (Entered: 03/09/2023) |
| 03/10/2023 | 35 | Notice filed by Amici Curiae Military Organizations *APPLICATION OF THE ENLISTED ASSOCIATION OF THE NATIONAL GUARD OF THE UNITED STATES, THE MILITARY OFFICERS ASSOCIATION OF AMERICA, THE NATIONAL GUARD ASSOCIATION OF THE UNITED STATES, AND THE VETERANS OF FOREIGN WARS OF THE UNITED STATES FOR LEAVE TO FILE AMICI CURIAE BRIEF IN SUPPORT OF PLAINTIFFS*. (Orr, Robert) (Entered: 03/10/2023) |
| 03/14/2023 | | Motion Submitted to District Judge Terrence W. Boyle regarding 34 Joint MOTION to Modify Briefing Schedule for Citibank's Reply in Support of Its Motion to Compel Arbitration regarding 22 MOTION to Compel *(Citibank's Contested Motion to Compel Arbitration and to Stay Action)*, 31 MOTION to Withdraw as Attorney *for Debra Bogo−Ernst*. (Stouch, L.) (Entered: 03/14/2023) |
| 03/16/2023 | 36 | ORDER granting 34 Motion to Modify Briefing Schedule for Citibank's Reply in Support of Its Motion to Compel Arbitration. Signed by District Judge Terrence W. Boyle on 3/15/2023. (Stouch, L.) (Entered: 03/16/2023) |
| 03/16/2023 | 37 | ORDER granting 31 Motion to Withdraw as Attorney. Attorney Debra Bogo−Ernst terminated. Signed by District Judge Terrence W. Boyle on 3/15/2023. (Stouch, L.) (Entered: 03/16/2023) |
| 03/20/2023 | 38 | Notice of Special Appearance for non−district by Andrew J. Pincus on behalf of Citibank, N.A.. (Pincus, Andrew) (Entered: 03/20/2023) |
| 03/20/2023 | 39 | Notice of Special Appearance for non−district by Kyle Steinmetz on behalf of Citibank, N.A.. (Steinmetz, Kyle) (Entered: 03/20/2023) |
| 03/20/2023 | 40 | Notice of Special Appearance for non−district by Archis Ashok Parasharami on behalf of Citibank, N.A.. (Parasharami, Archis) (Entered: 03/20/2023) |
| 03/30/2023 | 41 | REPLY to Response to Motion regarding 22 MOTION to Compel *(Citibank's Contested Motion to Compel Arbitration and to Stay Action)* filed by Citibank, N.A.. (Attachments: # 1 Exhibit A− NDP Consumer and Employment Arbitration Paper− 2022, # 2 Exhibit B− Empirical Assessment of Employment Arbitration, # 3 Exhibit C− 2019 Omnibus House Version, # 4 Exhibit D− 2019 Omnibus House Conference Committee Report, # 5 Exhibit E− 2021 House Omnibus Bill) (Nale, Lucia) (Entered: 03/30/2023) |
| 04/04/2023 | 42 | Notice of Special Appearance for non−district by Kevin Ranlett on behalf of Citibank, N.A.. (Ranlett, Kevin) (Entered: 04/04/2023) |
| 04/10/2023 | 43 | RESPONSE in Opposition regarding 32 MOTION to Dismiss *Claims of Nicholas Padao, Jeremy Bell, and Keith Taylor for Lack of Personal Jurisdiction* filed by Jeremy Bell, Pablo Espin, Nicholas Padao, Keith Taylor. (Koepfgen, Alyssa) (Entered: 04/10/2023) |

JA7

| | | |
|---|---|---|
| 04/10/2023 | <u>44</u> | Declaration regarding <u>43</u> Response in Opposition to Motion, *of Claire Tonry* by Keith Taylor, Pablo Espin, Jeremy Bell, Nicholas Padao filed by Keith Taylor, Pablo Espin, Jeremy Bell, Nicholas Padao. (Attachments: # <u>1</u> Exhibit 1, # <u>2</u> Exhibit 2, # <u>3</u> Exhibit 3, # <u>4</u> Exhibit 4, # <u>5</u> Exhibit 5, # <u>6</u> Exhibit 6, # <u>7</u> Exhibit 7, # <u>8</u> Exhibit 8, # <u>9</u> Exhibit 9, # <u>10</u> Exhibit 10) (Koepfgen, Alyssa) (Entered: 04/10/2023) |
| 05/01/2023 | <u>45</u> | SUR–REPLY regarding <u>22</u> MOTION to Compel *(Citibank's Contested Motion to Compel Arbitration and to Stay Action) Plaintiffs' Sur–reply in Opposition to Motion* filed by Jeremy Bell, Pablo Espin, Nicholas Padao, Keith Taylor. (Tonry, Claire) Modified on 5/10/2023 – clarified docket text. (Sellers, N.) (Entered: 05/01/2023) |
| 05/10/2023 | <u>46</u> | Memorandum in Support regarding <u>32</u> MOTION to Dismiss *Claims of Nicholas Padao, Jeremy Bell, and Keith Taylor for Lack of Personal Jurisdiction* by Citibank, N.A.. (Attachments: # <u>1</u> Declaration of Kyle Steinmetz, # <u>2</u> Exhibit 1 to the Steinmetz Declaration – BankFind Suite: Find Institutions by Name & Location, # <u>3</u> Exhibit 2 to the Steinmetz Declaration – Find Banks ATMs Near Me: Citi.com.pdf–Fort Wayne, # <u>4</u> Exhibit 3 to the Steinmetz Declaration – Find Banks ATMs Near Me: Citi.com.pdf–El Paso, # <u>5</u> Exhibit 4 to the Steinmetz Declaration – Find Banks ATMs Near Me: Citi.com.pdf–Boise, # <u>6</u> Exhibit 5 to the Steinmetz Declaration – Citi: City Profile New York) (Nale, Lucia) (Entered: 05/10/2023) |
| 05/16/2023 | | REMINDER TO COUNSEL regarding DE <u>23</u> , DE <u>27</u> , DE <u>33</u> , DE <u>41</u> , DE <u>44</u> and DE <u>46</u> – Pursuant to Judge Boyle's <u>Practice Preferences</u> located on the court's website, counsel shall provide a courtesy copy of ALL documents over 20 pages, by mailing or delivering to the clerk's office in Raleigh. (Reznick, Debra) (Entered: 05/16/2023) |
| 05/16/2023 | | REMINDER TO COUNSEL regarding DE <u>23</u> , DE <u>27</u> , DE <u>33</u> and DE <u>44</u> – Pursuant to Judge Boyle's <u>Practice Preferences</u> located on the court's website, counsel shall provide a courtesy copy of all documents over 20 pages, by mailing or delivering to the clerk's office in Raleigh. (Reznick, Debra) (Entered: 05/16/2023) |
| 06/14/2023 | | Motion Submitted to District Judge Terrence W. Boyle regarding <u>20</u> MOTION to Dismiss for Lack of Jurisdiction *(Citibank's Contested Motion to Dismiss for Lack of Jurisdiction)*, <u>32</u> MOTION to Dismiss *Claims of Nicholas Padao, Jeremy Bell, and Keith Taylor for Lack of Personal Jurisdiction*, <u>22</u> MOTION to Compel *(Citibank's Contested Motion to Compel Arbitration and to Stay Action)*. (Stouch, L.) (Entered: 06/14/2023) |
| 08/02/2023 | <u>47</u> | Notice of Suggestion of Subsequently Controlling Decided Authority filed by Jeremy Bell, Pablo Espin, Nicholas Padao, Keith Taylor . (Zemel, Marc) (Entered: 08/02/2023) |
| 08/02/2023 | <u>48</u> | MOTION for Leave to File *Supplemental Brief in Opposition to Motion to Dismiss* filed by Jeremy Bell, Pablo Espin, Nicholas Padao, Keith Taylor. (Attachments: # <u>1</u> Proposed Supplemental Brief) (Zemel, Marc) (Entered: 08/02/2023) |
| 08/02/2023 | <u>49</u> | Memorandum in Support regarding <u>48</u> MOTION for Leave to File *Supplemental Brief in Opposition to Motion to Dismiss* filed by Jeremy Bell, Pablo Espin, Nicholas Padao, Keith Taylor. (Zemel, Marc) (Entered: 08/02/2023) |
| 08/23/2023 | <u>50</u> | RESPONSE in Opposition regarding <u>48</u> MOTION for Leave to File *Supplemental Brief in Opposition to Motion to Dismiss (Citibank N.A.'s Opposition to Plaintiffs' Motion for Leave to File Supplemental Brief in Opposition to Motion to Dismiss)* filed by Citibank, N.A.. (Attachments: # <u>1</u> Exhibit A – Mallory Docket, # <u>2</u> Exhibit B – Appendix of Statutory History, # <u>3</u> Exhibit C – Excerpted Citigroup 10k) (Nale, Lucia) (Entered: 08/23/2023) |
| 09/01/2023 | | Set Hearing: Motion Hearing set for 9/14/2023 at 02:00 PM in Raleigh – 7th Floor – Courtroom 2 before District Judge Terrence W. Boyle. (Stouch, L.) (Entered: 09/01/2023) |
| 09/06/2023 | <u>51</u> | MOTION to Continue *(Unopposed Motion to Continue September 14, 2023 Motion Hearing Date)* filed by Citibank, N.A.. (Attachments: # <u>1</u> Text of Proposed Order) (Nale, Lucia) (Entered: 09/06/2023) |
| 09/06/2023 | <u>52</u> | REPLY to Response to Motion regarding <u>48</u> MOTION for Leave to File *Supplemental Brief in Opposition to Motion to Dismiss* filed by Jeremy Bell, Pablo Espin, Nicholas Padao, Keith Taylor. (Zemel, Marc) (Entered: 09/06/2023) |

| | | |
|---|---|---|
| 09/07/2023 | | Motion Submitted to District Judge Terrence W. Boyle regarding 51 MOTION to Continue *(Unopposed Motion to Continue September 14, 2023 Motion Hearing Date)*. (Rudd, D.) (Entered: 09/07/2023) |
| 09/08/2023 | | TEXT ORDER granting 51 Motion to Continue. The hearing will be reset by separate notice. Signed by District Judge Terrence W. Boyle on 9/8/2023. (Sellers, N.) (Entered: 09/08/2023) |
| 09/11/2023 | 53 | ORDER Resetting Hearing on Motions: Motion Hearing reset for 9/28/2023 at **03:00 PM** in Raleigh – 7th Floor – Courtroom 2 before District Judge Terrence W. Boyle. Signed by District Judge Terrence W. Boyle on 9/11/2023. (Stouch, L.) Modified on 9/11/2023 to correct docket entry text with the correct time. (Stouch, L.). (Entered: 09/11/2023) |
| 09/25/2023 | 54 | Notice of Appearance filed by Alan Martinson on behalf of UNITED STATES OF AMERICA. (Martinson, Alan) (Entered: 09/25/2023) |
| 09/28/2023 | 55 | Minute Entry for proceedings held in Raleigh, NC before District Judge Terrence W. Boyle: Motion Hearing held on 9/28/2023. All parties present and ready to proceed. Oral argument held. A written order will follow. (Court Reporter Jenny Carroll) (Stouch, L.) (Entered: 09/28/2023) |
| 09/29/2023 | 56 | ORDER – Citibank's first motion to dismiss [DE 20] is DENIED AS MOOT, plaintiffs' motion for leave to file a supplemental brief in opposition [DE 48] is GRANTED, and Citibank's motion to dismiss the claims of Padao, Bell, and Taylor for lack of personal jurisdiction [DE 32] is DENIED. The clerk is DIRECTED to file the supplemental brief at [DE 48–1] as of the date of entry of this order. Signed by District Judge Terrence W. Boyle on 9/29/2023. (Stouch, L.) (Entered: 09/29/2023) |
| 09/29/2023 | 57 | Supplemental Brief regarding 20 Motion to Dismiss filed by Jeremy Bell, Pablo Espin, Nicholas Padao, Keith Taylor pursuant to 56 Order. (Stouch, L.) (Entered: 09/29/2023) |
| 09/29/2023 | 58 | ORDER – Citibank's motion to compel arbitration and stay this action [DE 22] is DENIED. Signed by District Judge Terrence W. Boyle on 9/29/2023. (Stouch, L.) (Entered: 09/29/2023) |
| 10/06/2023 | 59 | OFFICIAL TRANSCRIPT of the Proceedings held on 09/28/2023, before Judge Terrence W. Boyle. Court Reporter Jenny Carroll. Transcript may be viewed at the court public terminal or purchased through the Court Reporter before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Please review Attorney obligations regarding the redaction of electronic transcripts of court proceedings available on the court's website Redaction Request due 10/30/2023. Redacted Transcript Deadline set for 11/9/2023. Release of Transcript Restriction set for 1/7/2024. (Carroll, Jennifer) (Entered: 10/06/2023) |
| 10/06/2023 | | NOTICE of Filing of Official Transcript 59 Transcript. The parties have seven calendar days from the filing of the transcript to file a Notice of Intent to Request Redaction. The parties must also serve a copy on the court reporter. After filing the Notice of Intent to Request Redaction, a party must submit to the court reporter or transcriber, within 21 calendar days of the filing of the transcript, a written statement indicating where the personal data identifiers to be redacted appear in the transcript. (Carroll, Jennifer) (Entered: 10/06/2023) |
| 10/13/2023 | 60 | Notice of Interlocutory Appeal filed by Citibank, N.A. as to 58 Order on Motion to Compel. Filing fee, receipt number ANCEDC–7311262. (Attachments: # 1 Exhibit 1) (Nale, Lucia) (Entered: 10/13/2023) |
| 10/13/2023 | 61 | Notice filed by Citibank, N.A. *(Defendant Citibank N.A.'s Notice of Automatic Stay Pending Appeal)*. (Nale, Lucia) (Entered: 10/13/2023) |
| 10/13/2023 | 62 | Transmission of Notice of Appeal and Docket Sheet to US Court of Appeals regarding 60 Notice of Interlocutory Appeal. (Foell, S.) (Entered: 10/13/2023) |
| 10/17/2023 | 63 | US Court of Appeals Case Number 23–2083 (Marcy Beall, Case Manager) as to 60 Notice of Interlocutory Appeal filed by Citibank, N.A.. (Foell, S.) (Entered: 10/17/2023) |

| 11/02/2023 | 64 | ORDER STAYING CASE – Accordingly, this action is hereby STAYED in its entirety pending Citibank's appeal. The clerk is DIRECTED to remove the case from the active docket during the pendency of the appeal. The parties shall notify the Court that the stay should be lifted within five (5) days of the resolution of the appeal. Signed by District Judge Terrence W. Boyle on 11/1/2023. (Stouch, L.) (Entered: 11/02/2023) |

## IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF NORTH CAROLINA
### CASE NO. 5:22-cv-00383-BO

| | |
|---|---|
| PABLO ESPIN, NICHOLAS PADAO, JEREMY BELL, and KEITH TAYLOR, *on behalf of themselves and others similarly situated*,<br><br>Plaintiffs,<br><br>v.<br><br>CITIBANK, N.A.,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**FIRST AMENDED COMPLAINT— CLASS ACTION**

**JURY TRIAL DEMANDED**

Plaintiffs Pablo Espin, Nicholas Padao, Jeremy Bell, and Keith Taylor, individually and on behalf of a class of similarly situated persons, hereby file this Class Action Complaint, making the allegations herein upon personal knowledge as to themselves and their own acts, and upon information and belief and based upon investigation of counsel as to all other matters, as set forth herein.

### <u>INTRODUCTION</u>

1.      Since the beginning of the Iraq War through the present, members of our military services have been asked to make many sacrifices for our nation. One of these sacrifices is financial: leaving family, friends, and the comforts of civilian life to answer our country's call to duty also requires leaving behind employment, a career, and financial security. The Servicemembers Civil Relief Act ("SCRA"), 50 U.S.C. §§ 3901 *et seq.* (formerly 50 U.S.C. App. §§ 501 *et seq.*), was enacted to address this sacrifice, and seeks "to enable [servicemembers] to devote their entire energy to defense needs of the Nation." 50 U.S.C. § 3902(1). The SCRA

guarantees that all debts incurred by a servicemember before being called to active duty are reduced to a 6% interest rate, from the date deployment orders are received through the ensuing active-duty period, as required by 50 U.S.C. § 3937. The Act also requires financial institutions to permanently forgive interest above 6%.

2. Defendant Citibank, N.A. ("Citibank") markets heavily to servicemembers as a bank dedicated to military members, veterans, and their families. To attract and retain this business, Citibank promises contractual benefits that are more generous than required by the SCRA, including a 0% interest rate during active duty and for up to a year after active duty.

3. Citibank breached its duties to servicemembers and veterans in numerous ways:

4. First, Citibank systematically deprives eligible servicemembers of SCRA benefits. Even after eligible servicemembers requested SCRA benefits and provided sufficient documentation to qualify for benefits, Citibank denied benefits under the guise of needing additional documentation. Servicemembers entering active duty, already faced with intensive stress and time pressure, often are unable to overcome these additional obstacles, resulting in their denial of SCRA benefits and payment of excess interest and fees.

5. When Citibank does provide a reduced interest rates to servicemembers, Defendant breaches its statutory and contractual duties to America's fighting forces by charging interest rates and fees that are too high, allowing unlawful charges to improperly inflate servicemembers' principal balances, and then charging compound interest on these inflated balances. Moreover, the benefits it does provide are often illusory. Rather than permanently forgiving the interest and fees, Citibank retroactively takes back this benefit by imposing an interest rate penalty on servicemembers after they leave active duty and return to civilian life.

2

6.    This "veteran penalty" is carried out by Citibank imposing certain interest and fee increases *only on returning servicemembers*.  No other customers are subject to these interest and fee penalties. By imposing this veteran penalty only on SCRA recipients, and not on any other customer, Citibank creates the illusion of SCRA compliance without actually lifting servicemembers' financial burden as the SCRA requires. Citibank's promise to be more generous than the SCRA – by providing a 0% interest rate and no fees – is also made false by the veteran penalty.

7.    The imposition of the veteran penalty is not only a violation of the SCRA and a breach of contract, it violates federal law specifically designed to prevent banks from creating such debt traps. The veteran penalty is carried out by Citibank illegally increasing interest and fees on outstanding balances. This is an unfair and deceptive practice which has been outlawed in our nation since 2009, when Congress passed the Credit CARD Act of 2009.

8.    Citibank's practice undermines our nation's commitment to servicemembers and veterans. When veterans return from active duty, they must rebuild their lives often without employment, and are uniquely vulnerable to Citibank's veteran penalty. By raising rates on veterans' outstanding balances – from 0% to as high as 26% – Citibank places our Nation's heroes into a debt trap. These veterans are already subject to intense emotional, familial, and financial stress, and Citibank's veteran penalty illegally and immorally forces veterans into immediate financial stress. It violates the very purpose of the SCRA's forgiveness requirement, which is to prevent veterans from experiencing financial distress upon their return from active duty.

9.    The named plaintiffs in this action represented and protected our nation through military service. They now seek to represent and protect their fellow servicemembers and veterans through this class action.

**JURISDICTION AND VENUE**

10.     Plaintiffs invoke the jurisdiction of this Court pursuant to 28 U.S.C. § 1331 because this action arises, in part, under the laws of the United States, including the Servicemembers Civil Relief Act ("SCRA"), 50 U.S.C. § 4042(a), and the Credit Card Accountability Responsibility and Disclosure Act of 2009 ("the Credit CARD Act"), 15 U.S.C. §§ 1601 *et seq*.

11.     In addition, this Court has original jurisdiction pursuant to 28 U.S.C. § 1332(d)(2) and (6) because the aggregate claims of the proposed class members exceed $5,000,000, and at least one named plaintiff resides in a different state than Citibank. The amount in controversy in this matter includes, but is not limited to, actual and consequential monetary damages, disgorgement of Citibank's ill-gotten gains, punitive damages, civil penalties, and attorneys' fees and costs.

12.     This Court has personal jurisdiction over Citibank, as it conducts business activities which are the subject of the present complaint in North Carolina.

13.     Venue is proper in this Court, as one of the named plaintiffs resides in this district, Citibank conducts business within the district, and many of the business activities, events, and/or wrongdoing giving rise to the claims asserted in this Complaint occurred therein. Maintaining the venue of this class action in this district is therefore proper under 28 U.S.C. § 1391.

**PARTIES**

14.     Plaintiffs file this Complaint in their individual capacity, and as a class action on behalf of themselves and all others similarly situated. They, along with other class members who may be named as class representatives at the time a motion is filed to certify the proposed class, will represent the class identified below.

4

15.    Plaintiffs had one or more interest-bearing obligations to Citibank that qualified for and legally required reduced interest and/or fees benefits from Citibank because of an obligor's military service.

16.    Defendant Citibank, N.A., is a national banking association within the meaning of 12 U.S.C. § 1813(q)(1)(A). Citibank is incorporated in South Dakota with a principal place of business in New York, and may be served with process through its registered agent, CT Corporation System, 160 Mine Lake Ct., Ste 200, Raleigh, North Carolina, 27615.

17.    Citibank does substantial business in the State of North Carolina with a corporate office, employees, and customers located in North Carolina. Plaintiffs allege that there is a sufficient nexus between Citibank's North Carolina operations and its violations of laws and overcharges asserted herein to vest this Court with specific jurisdiction over all of the claims in this First Amended Complaint. On information and belief, Citibank applies MLA and SCRA requirements for its consumer lending and conducts related audits in North Carolina.  On information and belief, Citibank also maintains a technology team in North Carolina and is involved in maintaining automated processes in North Carolina related to nationwide MLA and SCRA application, including generating communications with Plaintiffs and other customers about benefits and statutory disclosures.  On information and belief, Citibank performs additional tasks in North Carolina, out of which Plaintiffs' claims arise.

18.    If the information currently available to Plaintiffs is insufficient to show this Court's personal jurisdiction over Citibank for all claims in this First Amended Complaint, jurisdictional discovery will confirm personal jurisdiction over Citibank for all claims. Jurisdictional discovery is required because Defendant has spread operations and staff related to

5

its credit cards, compliance, risk management, information technology, and SCRA and MLA compliance across the country, but it does not publicly disclose their precise locations.

19.    The Court also has general jurisdiction because Citibank maintains minimum contacts with the State of North Carolina to satisfy the due process clause of the United States Constitution and has sufficient minimum contacts with the State of North Carolina such that maintenance of this suit does not offend traditional notions of fair play and substantial justice.

## CLASS ACTION ALLEGATIONS

**Class Definition**

20.    In accordance with Federal Rule of Civil Procedure 23, Plaintiffs bring this action in their individual capacity and as a class action on behalf of themselves and all others similarly situated. They, along with other class members who may be named as class representatives at the time a motion is filed to certify the proposed class, will represent the following class:

> **National Military Class:** All persons who requested and/or received reduced interest and/or fee benefits from Citibank on an interest-bearing obligation because of an obligor's military service, but excluding persons who have executed a release of the rights claimed in this action.

21.    This class action satisfies the requirements of Federal Rule of Civil Procedure 23, including, but not limited to, numerosity, commonality, typicality, adequacy, and predominance.

**Impracticable Joinder**

22.    The proposed class is composed of tens of thousands of persons, geographically dispersed throughout the United States and serving the country overseas, the joinder of whom in one action is impracticable. The disposition of their claims in a class action will provide substantial

6

benefits to both parties and the Court. Citibank, either directly or through affiliated entities, is in possession of the names and addresses of all class members.

23.    Class treatment is particularly appropriate here because Citibank conducts business in every jurisdiction in the United States. Further, this matter involves multiple federal statutes which Citibank extensively and harmfully misapplied and violated.

**Risk of Inconsistent or Varying Adjudications**

24.    Prosecution of separate actions by class members would risk inconsistent or varying adjudications, which would establish incompatible standards of conduct for Citibank.

25.    Further, the outcomes of separate actions by individual members of the class could, as a practical matter, be potentially dispositive of the interests of other members of the class and substantially impair or impede their ability to protect their interests. Class-wide adjudication of Plaintiffs' claims, therefore, is appropriate.

26.    Citibank has acted on grounds generally applicable to the class, thereby making class-wide adjudication of these claims appropriate.

**Common Questions of Law and Fact**

27.    There exists a well-defined community of interests and questions common to the class, which predominate over individual factual or legal questions. These common factual and legal questions include, but are not limited to:

(a)    Whether Citibank violated the SCRA by failing to grant SCRA benefits to qualifying servicemembers;

(b)    Whether Citibank violated the SCRA by overcharging servicemembers fees and interest and then imposing a "veteran penalty" on recipients of SCRA benefits upon

7

their leaving active duty, thereby taking back the SCRA benefits and failing to permanently forgive interest above 6%;

      (c)     Whether Citibank's contractual military benefits program ("Military Benefits Program,") as described herein, constituted an enforceable contract term or a separately enforceable contract between Citibank and class members, and whether Citibank's violations of the terms of its program gives rise to liability for breach of contract;

      (d)     Whether Citibank's practices violated the Truth in Lending Act ("TILA"), including but not limited to violations of the Credit CARD Act of 2009;

      (e)     Whether Defendant's practices violated the MLA and whether such violation entitles Plaintiffs to void the contract and obtain damages of no less than $500 per violation;

      (f)     Whether Defendant's cardmember agreement and its arbitration clause is invalid and unenforceable pursuant to the SCRA and MLA and because it is unconscionable and violates public policy;

      (g)     Whether Citibank knew, reasonably should have known, or recklessly disregarded that its acts and practices were unlawful;

      (h)     Whether Plaintiffs and the class are entitled to statutory, actual, consequential, and/or punitive damages;

      (i)     Whether Plaintiffs and the class are entitled to an accounting;

      (j)     Whether Citibank owed fiduciary or special duties to Plaintiffs and the class and whether they breached such duties; and

      (k)     Whether Plaintiffs and the class are entitled to recovery of attorney's fees and costs.

8

JA18

**Typicality**

28.     The individual Plaintiffs and the class representatives to be named are asserting claims that are typical of the claims of the entire class, and the class representatives will fairly and adequately represent and protect the interests of the class in that they have no interests antagonistic to those of the other members of the class.

**Fair and Adequate Representation**

29.     The individual Plaintiffs have retained counsel who are competent and experienced in the handling of litigation, including class action litigation, and who will fairly and adequately represent and protect the interests of the class. Likewise, the class representatives will fairly and adequately represent and protect the interests of the class as a whole.

**Superiority of Class Action Procedure**

30.     The individual Plaintiffs and other class members have all suffered damages as a result of Citibank's unlawful and wrongful conduct. Absent a class action, Citibank will likely retain a substantial unlawful gain, its conduct will go un-remedied and uncorrected, and the class members will likely be deprived of adequate relief. Class action treatment of these claims is superior to handling the claims in other ways.

31.     Certification of the class is appropriate under Federal Rule of Civil Procedure 23.

## STATEMENT OF FACTS

**Plaintiff Captain Pablo Espin:**

32.     Plaintiff Captain Pablo Espin resides in Spring Lake, North Carolina. He has served our Nation since 2010, including service in the Air Force and Army, and on deployment to Afghanistan and Qatar.

33.     Captain Espin currently receives benefits from Citibank under the SCRA and the Military Benefits Program.

34.     Defendant failed to reduce the interest rate and waive fees as required by the SCRA and/or its Military Benefits Program. Mr. Espin[1] paid more in interest charges and fees to Defendant than should have been due under a correct application of the SCRA and the Military Benefits Program and TILA.  This practice was imperceptible to Mr. Espin.

35.     Mr. Espin relied on the misrepresentations in Defendant's monthly account statements and correspondence when choosing to maintain accounts with Defendant. Had he known that Defendant was charging him a higher interest rate than permitted by the SCRA or its Military Benefits Program, he would have closed accounts with Defendant and moved to another bank.

36.     Captain Espin carries a significant balance on his Citibank credit card, which is currently subject to a 0% interest rate.  Sometime before September 2022, Mr. Espin knew he would be leaving military service in late 2022 with a significant balance on his Citibank credit card.  In November 2022, Mr. Espin did in fact leave active duty with a significant balance on his card.  According to correspondence from Citibank, Citibank will soon impose its veteran penalty by raising the interest rate and fees on this outstanding balance. This would force him to incur substantial additional interest and likely place him into financial crisis. He therefore seeks declaratory and injunctive relief to prevent this harm.

**Plaintiff Nicholas Padao:**

37.     Plaintiff Nicholas Padao resides in Champaign, Illinois.  He served our Nation since 2003, including service in the Army National Guard and a deployment to Iraq in 2018-2019, and

---

[1] New text in this First Amended Complaint uses "Mr. Espin" to reflect his departure from active duty.

recently retired.

38.     Mr. Padao had his Citibank credit card before entering active duty in 2018.

39.     Mr. Padao notified Citibank that he was deploying to Iraq in November 2018, and requested military benefits. Mr. Padao sent his activation orders and then had several calls with Citibank seeking military benefits. While other banks provided Mr. Padao SCRA benefits for his 2018 deployment based on this information, Citibank did not.

40.     On November 1, 2018, Citibank's Military Response Unit sent Mr. Padao a letter requesting additional information, such as a commander's letter. He had already provided his orders, so he interpreted this letter as requiring additional information.  Citibank provided only a fax number, not an email address, for Mr. Padao to transmit this additional information.  Given his deployment, Mr. Padao could not jump through these hoops and never received SCRA benefits.

41.     Citibank failed to reduce Mr. Padao's interest rate and waive fees as required by the SCRA and/or its Military Benefits Program.

42.     Mr. Padao paid more in interest charges and fees on accounts with Citibank than should have been due under a correct application of the SCRA and/or the Military Benefits Program.

**Plaintiff Sergeant Jeremy Bell:**

43.     Plaintiff Sergeant Jeremy Bell resides in Georgia. He has served our country since 2009 and is currently a Sergeant First Class in the Army.

44.     Citibank accepted Sergeant Bell into its Military Benefits Program for his Home Depot (Citibank) credit card.

45.     Defendant failed to reduce the interest rate and waive fees as required by the SCRA and/or its Military Benefits Program. Mr. Bell paid more in interest charges and fees on accounts

with Defendant than should have been due under a correct application of the SCRA and the Military Benefits Program and TILA.  This practice was imperceptible to Mr. Bell.

46.    Mr. Bell relied on the misrepresentations in Defendant's monthly account statements and correspondence when choosing to maintain accounts with Defendant. Had he known that Defendant was charging him a higher interest rate than permitted by the SCRA or its Military Benefits Program, he would have closed accounts with Defendant and moved to another bank.

47.    When Citibank terminated Sergeant Bell from its Military Benefits Program, Sergeant Bell had a balance of over $10,000 on his card. Citibank raised the interest rate on that outstanding balance from 0% to 25.99%. Citibank never sent notice that rates would increase in this manner.

48.    In his last month in the Military Benefits Program, Sergeant Bell had over $10,000 on his credit card, but his periodic statement showed the following balances and applicable interest rates:

| INTEREST CHARGE CALCULATION | | | |
|---|---|---|---|
| Type of Balance | Annual Percentage Rate (APR) | Balance Subject to Interest Rate | Interest Charge |
| PURCHASES | | | |
| Revolving Balance | 0.00% (M) | $0.00 | $0.00 |
| NO INT FOR 6MOS-PMT REQ | 0.00% (M) | $0.00 | $0.00 |

49.    The following month, Citibank applied the veteran penalty and increased the interest rate on Sergeant Bell's outstanding balances, shown on his periodic statement as follows:

| INTEREST CHARGE CALCULATION | | | |
|---|---|---|---|
| Type of Balance | Annual Percentage Rate (APR) | Balance Subject to Interest Rate | Interest Charge |
| PURCHASES | | | |
| Revolving Balance | 25.99% (M) | $10,702.16 | $223.60 |
| NO INT FOR 6MOS-PMT REQ | 25.99% (M) | — | |
| NO INT FOR 6MOS-PMT REQ | 25.99% (M) | — | |

50.     Prior to his active duty, Citibank did not send Sergeant Bell notice, in a clear and conspicuous manner, that his interest rate on outstanding balances incurred at 0% would increase to 25.99%, or when precisely that would occur.  The only notice provided was embedded in what looked like a perfunctory confirmation of SCRA coverage, and it was insufficient as it did not contain this information.

51.     Sergeant Bell found himself in a debt trap, barely able to make the minimum payments on his card and with no way in sight to pay it off. This created an immediate financial crisis for him and his family. He was forced to use his Home Depot card to buy gift cards, just to buy food to feed his family. He was effectively forced to borrow from Citibank (at 25.99%) just to buy groceries.

52.     While Sergeant Bell knew that these charges were unfair, he had no choice but to pay his bills. Sergeant Bell is an intelligence analyst and the failure to timely pay his bills would have jeopardized his security clearance and his Army career.

53.     The increased interest rates had a cascading impact on Sergeant Bell's financial situation. Citibank and other banks saw him as a higher risk customer because he was making only minimum payments on a card with such a high interest rate, and sometimes unable to make minimum payments, causing them to lower his credit limit and harming his credit score.

**Plaintiff Keith Taylor**

54.     Plaintiff Keith Taylor served our country since 1994 including service as a Lieutenant and multiple deployments including to Iraq and Afghanistan.

55.     Citibank accepted Mr. Taylor into its Military Benefits Program for his Citibank credit card.

56.     Defendant failed to reduce the interest rate and waive fees as required by the SCRA and/or its Military Benefits Program. Mr. Taylor paid more in interest charges and fees on accounts with Defendant than should have been due under a correct application of the SCRA and the Military Benefits Program and TILA.  This practice was imperceptible to Mr. Taylor.

57.     Mr. Taylor relied on the misrepresentations in Defendant's monthly account statements and correspondence when choosing to maintain accounts with Defendant. Had he known that Defendant was charging him a higher interest rate than permitted by the SCRA or its Military Benefits Program, he would have closed accounts with Defendant and moved to another bank.

58.     After Mr. Taylor left active duty, he had significant debt on his card.  Citibank imposed the veteran penalty on Mr. Taylor by raising the interest rate on his outstanding balance from 0% to 15.74%.

59.     In his last month in the Military Benefits Program, Mr. Taylor had a balance of over $5,000 on his card, but his periodic statement showed the following balances and applicable interest rates:

| Interest charge calculation | | Days in billing cycle: 28 | |
| --- | --- | --- | --- |
| Your Annual Percentage Rate (APR) is the annual interest rate on your account. | | | |
| Balance type | Annual percentage rate (APR) | Balance subject to interest rate | Interest charge |
| PURCHASES | | | |
| Standard Purch | 15.49% (V) | $0.00 (D) | $0.00 |
| ADVANCES | | | |
| Standard Adv | 26.49% (V) | $0.00 (D) | $0.00 |

60.     The following month, Citibank applied the veteran penalty and increased the interest rate on his outstanding balances, shown on his periodic statement as follows:

**Interest charge calculation** Days in billing cycle: 30

Your Annual Percentage Rate (APR) is the annual interest rate on your account.

| Balance type | Annual percentage rate (APR) | Balance subject to interest rate | Interest charge |
|---|---|---|---|
| PURCHASES | | | |
| Standard Purch | 15.74% (V) | $5,421.45 (D) | $70.13 |
| ADVANCES | | | |
| Standard Adv | 26.74% (V) | $0.00 (D) | $0.00 |

61. Prior to his active duty, Citibank did not send Mr. Taylor notice, in a clear and conspicuous manner, that his interest rate on outstanding balances incurred at 0% would increase to 15.74% in April 2018. The only notice provided to Mr. Taylor was embedded in what looked like a perfunctory confirmation of SCRA coverage, and it was insufficient as it did not contain this information.

62. Citibank's violations of law and breach of contract forced Mr. Taylor to pay additional interest and fees.

**General Allegations**

63. Citibank has systematically violated the SCRA in numerous ways.

64. Citibank systematically deprived eligible servicemembers of SCRA benefits. Even after eligible servicemembers requested SCRA benefits and provided sufficient documentation to qualify for benefits, Citibank denied benefits under the guise of needing additional documentation. Servicemembers entering active duty, already faced with intensive stress and time pressure, often are unable to overcome these additional obstacles, resulting in their denial of SCRA benefits and payment of excess interest and fees.

65. Citibank has systematically denied SCRA benefits to qualified servicemembers by applying uniform procedures which made it difficult or impossible for qualified servicemembers to obtain SCRA benefits.

66.    Citibank regularly accesses the Defense Manpower Database Center ("DMDC") to verify the service status of customers, including when it is deciding when to terminate SCRA benefits.

67.    On information and belief, Citibank has made a business decision to selectively utilize the DMDC to verify the active-duty status of servicemembers requesting SCRA benefits, but still using the SCRA's documentation requirement as a roadblock to SCRA eligibility.

68.    On information and belief, Citibank routinely denies SCRA benefits to qualified servicemembers, including servicemembers the DMDC showed qualified for SCRA benefits.

69.    On information and belief, Citibank has conducted internal audits and found that it has denied SCRA benefits to qualified servicemembers.

70.    Despite their representations to Plaintiffs and other class members, Defendant failed to comply with the SCRA and the terms of its Military Benefits Program. Specifically, Defendant failed to reduce the interest rates on servicemembers' accounts as promised and required, failed to waive fees as promised, and failed to properly calculate the debt forgiveness requirements of both the SCRA and the Military Benefits Program.

71.    One method by which Defendant overcharged servicemembers was by failing to properly calculate retroactive adjustments, which are the mechanism by which banks refund servicemembers for improper fees and interest incurred between the start of the SCRA's benefits period and the time the banks adjust the credit card's terms to comply with the SCRA.  The failure to properly calculate the retroactive adjustment constitutes an overcharge under the SCRA. Relatedly, Defendant failed to properly apply SCRA benefits during the entire qualifying period.

As a result, Defendant improperly inflated servicemembers' principal balances, and subsequently charged compounded interest on those improper balances. When Citibank does provide a reduced interest rate pursuant to the SCRA and its military benefits program, those benefits are often illusory. Rather than permanently forgiving the interest and fees, Citibank retroactively takes back this benefit by imposing an interest rate penalty on servicemembers after they leave active duty and return to civilian life.

72.     This "veteran penalty" is carried out by Citibank imposing certain interest and fee increases *only on returning servicemembers*.  No other customers are subject to these interest and fee penalties. By imposing this veteran penalty only on SCRA recipients, and not on any other customer, Citibank creates the illusion of SCRA compliance without actually lifting servicemembers' financial burden as the SCRA requires.

73.     Citibank's promise to be more generous than the SCRA – by providing a 0% interest rate and no fees – is also made false by the veteran penalty. Through the veteran penalty, Citibank takes back the contractual benefits it has promised.

74.     When Citibank terminates a customer's military benefits, Citibank raises the interest rate and fees on any outstanding balances on the servicemember's credit card.

75.     When Citibank terminates a customer's military benefits, Citibank raises the interest rate and fees on all outstanding balances on the servicemember's credit card, whether the debt was incurred before, during, or after active duty.

76.     Citibank does not increase interest rates on other non-military customers' outstanding balances. This type of interest rate increase (increasing interest rates on outstanding balances) is imposed only on customers whose SCRA benefits are terminating, who are typically veterans.

77. By increasing interest rates on veterans' and servicemembers' outstanding balances, Citibank recoups part of the cost of providing interest rate benefits to servicemembers under the SCRA and Military Benefits Program.

78. The veteran penalty is carried out by Citibank increasing interest and fees on outstanding balances. This is an unfair and deceptive practice which has been outlawed in our nation since 2009, when Congress passed the Credit CARD Act of 2009.

79. When a servicemember is enrolled into the Military Benefits Program, Citibank sends them a form letter confirming their SCRA coverage and informing the servicemember of the benefits they will receive under the Military Benefits Program.

80. When Citibank confirms SCRA benefits, Citibank does not disclose the length of the benefit period or the annual percentage rate that would apply after the expiration of the period.

81. Citibank's letters confirming enrollment in the Military Benefits Program are sent at a time when the servicemembers are going onto or are already on active duty, so many servicemembers do not have the capacity to focus on those letters or may not receive them at all.

82. Citibank did not and does not disclose to Plaintiffs and class members the length of the period of interest rate reduction or the interest rate that will apply after that period, prior to the commencement of SCRA and Military Benefits Program interest rate reductions.

83. The terms of Citibank's Military Benefits Program included certain benefits that Citibank considered to be more generous than those required by the SCRA. Those terms evolved over time but were uniform across customers at any given point in time.

84. The terms of the Military Benefits Program were well documented and systematically communicated to class members; they became terms of the agreements between the parties and therefore became enforceable in contract.

85.     Plaintiffs and other class members relied on Citibank's representations regarding the Military Benefits Program when deciding to maintain their accounts with Citibank and to incur more debts on those accounts. If Citibank had failed to provide this competitive program, Plaintiffs and other class members would have refrained from incurring additional debt with Citibank and/or closed their accounts with Citibank and moved to another bank.

86.     Citibank's Military Benefits Program provides servicemembers with a 0% interest rate on all balances on their credit cards, whether the debt was incurred before active duty, during active duty, or during a defined period after active duty ("extended benefit period").

87.      Citibank's Military Benefits Program provides a 0% interest rate for one year after the servicemember leaves active duty.

88.     Citibank sometimes applies the 0% interest rate for more than a year after a servicemember leaves active duty.

89.     Citibank offered the Military Benefits Program and its associated benefits to appear competitive in the consumer banking market and to retain the business of servicemembers.

90.     On information and belief, Citibank established the 0% interest rate as part of its Military Benefits Program to be competitive with other banks.

91.     On information and belief, Citibank established the year-long extended benefit period as part of its Military Benefits Program to be competitive with other banks.

92.     On information and belief, Citibank waives fees as part of its Military Benefits Program to be competitive with other banks.

93.     The SCRA does not require Citibank to provide a 0% interest rate as part of its Military Benefits Program.

94.     The SCRA does not require Citibank to lower interest rates or waive fees for balances incurred during active duty.

95.     The SCRA does not require Citibank to provide benefits after the end of active duty as part of its Military Benefits Program.

96.     The SCRA does not require Citibank to waive all fees as part of its Military Benefits Program.

## ALLEGATIONS AS TO DISCOVERY

97.     Some if not all the violations and breaches described herein remain ongoing. Citibank's violations of the SCRA and the Credit Card Act resulted in improper inflation of the principal balances owed by Plaintiffs and class members, and subsequent monthly interest being charged on these inflated balances. Thus, each and every month in which Citibank overcharged interest or fees on servicemembers' accounts constituted an ongoing violation of, *inter alia*, the SCRA and TILA.

98.     Each month Citibank sent incorrect periodic statements to Plaintiffs and class members, including by misstating applicable and applied interest rates and/or their duration, constituted an ongoing violation of laws and regulations.

99.     The policies behind the SCRA, and the facts described herein, require an equitable tolling of any statute of limitations. Citibank should not be allowed to retain their ill-gotten gains resulting from such improper activity.

## FIRST CAUSE OF ACTION
### (Violation of the Servicemembers Civil Relief Act)

100.     Plaintiffs incorporate each and every allegation contained in the preceding paragraphs as if set forth again herein.

101.    Plaintiffs, on behalf of themselves and the class, have a private right of action for violations of the SCRA pursuant to 50 U.S.C. § 4042.

102.    The SCRA, formerly known as the War and National Defense Soldiers' and Sailors' Civil Relief Act of 1940, guarantees that all debts incurred by a servicemember or servicemember reservist before being called to active duty will be reduced to an interest rate of 6% from the date of their orders, and during the ensuing active-duty period as required by 50 U.S.C. § 3937. Several classes of fees and charges qualify as interest. Any interest above the 6% must be permanently forgiven and cannot be deferred.

103.    Citibank violated the SCRA by failing to properly apply its provisions to the accounts and outstanding debt of Plaintiffs and other class members. Specifically, Defendant charged interest rates higher than 6% on the accounts of Plaintiffs and class members during qualifying periods and failed to forgive overcharged interest as required by the SCRA. One method by which Defendant overcharged servicemember was by failing to properly calculate retroactive adjustments, which are the mechanism by which banks refund servicemembers for improper fees and interest incurred between the start of the SCRA's benefits period and the time the bank adjusts the credit card's terms to comply with the SCRA.   The failure to properly calculate the retroactive adjustment constitutes an overcharge under the SCRA.  Relatedly, Defendant failed to properly apply SCRA benefits during the entire qualifying period.  As a result, Defendant improperly inflated servicemembers' principal balances, and subsequently charged compounded interest on those balances.

104.    Defendant was aware of the provisions and requirements of the SCRA. Defendant either knew of, reasonably should have known of, and/or recklessly disregarded its failure to

comply with the SCRA and the exploitative and deceptive nature of its policies, procedures, and decisions.

105.    Citibank purported to reduce interest rates in compliance with the SCRA, but then took back those benefits by imposing interest and fee increases *only upon* SCRA recipients leaving active duty.

106.    Through this "veteran penalty," Citibank recouped some or all of the interest rate reduction that was provided under the SCRA. This violated 50 U.S.C. § 3937(a)(2) ("Interest at a rate in excess of 6 percent per year that would otherwise be incurred but for the prohibition in paragraph (1) is forgiven.").

107.    Citibank also violates the SCRA by requiring servicemembers to jump through illegal hoops to obtain SCRA benefits. The SCRA allows servicemembers flexibility in proving active-duty status and thereby qualifying for the interest rate benefit:

> Not later than 180 days after the date of a servicemember's termination or release from military service, in order for an obligation or liability of the servicemember to be subject to the interest rate limitation in subsection (a), the servicemember shall provide to the creditor written notice and a copy of—
>     (i) the military orders calling the servicemember to military service and any orders further extending military service; or
>     (ii) any other appropriate indicator of military service, including a certified letter from a commanding officer.

50 U.S.C. § 3937(b)(1)(a). Citibank violates this requirement by imposing onerous documentation requirements and denying benefits based upon documentation that satisfies 50 U.S.C. § 3937(b)(1)(a).

108.    Even after Plaintiff Nicholas Padao requested SCRA benefits and submitted orders – thereby meeting the documentation requirements of the SCRA – Citibank sent him a form letter requesting further documentation, such as a letter from a commanding officer. On information and belief, this is a common practice. Sending this form letter to servicemembers who already

qualify for benefits misleads servicemembers about the SCRA's requirements and discourages them from taking advantage of their legal rights under the SCRA.

109.    Citibank requires that proof of SCRA eligibility be submitted by fax or mail, requiring the servicemember to obtain fax and copying services to request SCRA benefits. This can create an insurmountable barrier for a servicemember called to active duty. This requirement stands in contrast to Citibank's regular banking practices, which allow virtually all other banking transactions to occur electronically through email, Citibank's app, and/or its website.

110.    Citibank's request for documentation from servicemembers is not prompt, and this delay creates another illegal barrier to benefits, since a servicemember on active duty or deployed cannot be expected to provide this further documentation.

111.    Finally, Citibank violates the SCRA in denying SCRA benefits for lack of documentation because servicemembers are entitled to benefits if the lender utilizes the DMDC to verify active-duty status. "A creditor may use, in lieu of notice and documentation under subparagraph (A), information retrieved from the Defense Manpower Data Center through the creditor's normal business reviews of such Center for purposes of obtaining information indicating that the servicemember is on active duty." 50 USC 3937 (b)(1)(b). Once a bank has routinized a process of confirming active-duty status through the DMDC, as Citibank has, it must provide SCRA benefits to servicemembers whose active-duty status is verifiable through the DMDC, "in lieu of notice and documentation" provided by the servicemember. *Id.*

112.    The SCRA protects the rights of servicemembers to bring a class action to enforce rights under the SCRA. To the extent that Citibank seeks to interfere with servicemembers' rights to bring a class action, Citibank is in violation of the SCRA.

113.    Citibank was aware of the provisions and requirements of the SCRA. Citibank either knew of, reasonably should have known of, and/or recklessly disregarded its failure to comply with the SCRA and the exploitative and deceptive nature of its policies, procedures, and decisions.

114.    Plaintiffs incurred damages as a direct and proximate result of Citibank's violations of the SCRA. For one or more Plaintiffs and many class members, this harm is ongoing. As a result, Plaintiffs and the class members seek relief.

<u>**SECOND CAUSE OF ACTION**</u>
**(Violation of Military Lending Act)**

115.    Plaintiffs incorporate each and every allegation contained in the preceding paragraphs as if set forth again herein.

116.    Plaintiffs have a private right of action for violations of the Military Lending Act ("MLA") pursuant to 32 C.F.R. 232.9(e).

117.    The MLA's purpose "is to impose limitations on the cost and terms of certain extensions of credit to Service members and their dependents, and to provide additional protections relating to such transactions in accordance with 10 U.S.C. 987." 32 C.F.R. 232.1(b). The MLA protects servicemembers from unfair and predatory loan practices. The MLA also prohibits a bank from requiring a servicemember to agree to forced arbitration as a condition of extending credit. 10 U.S.C. § 987(e) ("It shall be unlawful for any creditor to extend consumer credit to a covered member or dependent of such a member with respect to which . . . the creditor requires a borrower to submit to arbitration . . ."). Citibank violated this provision by seeking to force arbitration about a dispute arising out of the extension of credit to servicemembers during active duty or to their dependents.

118.     Citibank's cardmember agreement misleads servicemembers and thereby violates the MLA's notice and disclosure requirements by telling servicemembers that they are only entitled to MLA protections and exempt from forced arbitration if they were in the military when the account was opened. Citibank's cardmember agreement describes the protections under the MLA and then states, "You are entitled to these protections if you are a Covered Borrower, as defined below."  It then states, "You are a Covered Borrower if, *in connection with the opening of your account*, we determine you are an active duty member of the Armed Forces (including active Guard and Reserve duty) or a dependent of an active duty member." (emphasis added). However, the MLA's protections cover the extension of credit to "covered members," which is defined based upon active-duty status, *regardless of when the account was opened*. 10 U.S.C. § 987(e); (i)(1).

119.     Under federal law, credit is extended when a cardholder makes a purchase. *Am. Express Co. v. Koerner*, 452 U.S. 233, 240-41 (1981) ("[A] credit card company such as American Express extends credit to an individual or an organization when it opens or renews an account, as well as when the cardholder actually uses the credit card to make purchases. When the account is opened or renewed, the creditor has granted a right 'to incur debt and defer its payment'; when the card is used, the creditor has allowed the cardholder 'to defer payment of debt.'");  *accord Jones v. Citibank, N.A.*, 235 S.W.3d 333, 339 (Tex. App. 2007) ("Thus, by using the credit card that appellee issued to her, appellant entered into a binding contract with appellee under South Dakota law.").

120.     The extension of credit during the period of military service is indisputable in the context of this case, since Citibank specifically changes the terms of the credit card agreement after servicemembers notify it of their active-duty status, forming a new contract for credit. *See*

25

SD Codified L § 54-11-10 ("Use of the card after the effective date of the change of terms is deemed to be an acceptance of the new terms").

121.    Citibank's interpretation of the MLA seeks to unilaterally exempt itself from the MLA, depriving most servicemembers and their dependents of their rights under the MLA (either by misleading them about their rights or by failing to honor those rights).

122.    Citibank was required to provide disclosures of certain MLA provisions. 10 U.S.C. § 987(c); 32 C.F.R. § 232.6(a)(1) (requiring disclosure of "the MAPR applicable to the extension of consumer credit"). By misrepresenting the scope of MLA protections, Citibank violated the disclosure requirement.

123.    Under the MLA, Plaintiffs and the other class members are entitled to (a) void the agreement and recover interest and fees paid thereunder; (b) actual damages, but not less than $500 for each violation; (c) punitive damages; (d) injunctive relief including corrective disclosures; and (e) attorneys' fees and costs.

## THIRD CAUSE OF ACTION
### (Breach of Contract)

124.    Plaintiffs incorporate each and every allegation contained in the preceding paragraphs as if set forth again herein.

125.    Citibank's conduct and communications informed Plaintiffs and class members of the terms of its Military Benefits Program, with an understanding that they would rely upon that program in managing their financial affairs while a servicemember was engaged in active military service. Citibank's Military Benefits Program was developed and offered to Plaintiffs and other similarly situated customers to maintain competitiveness in the banking industry and to retain the business of servicemembers; Citibank knew that if its program was not competitive, servicemembers would move their business to another bank.

126.    The Military Benefits Program either constituted an enforceable term of Citibank's existing contracts with Plaintiffs and class members and/or constituted a separate enforceable contract with Plaintiffs and other class members.

127.    Plaintiffs and other class members maintained their accounts with Citibank and incurred additional debt on those accounts, to Citibank's benefit, in reliance on Citibank's Military Benefits Program and the purported benefits offered therein by Citibank, which were promised as competitive with those offered by other banks.

128.    The terms of Citibank's Military Benefits Program evolved over time but were always uniform across customers at any given point in time. For example, but not by way of limitation, Citibank promised to reduce servicemembers' interest rates to 0%.

129.    By increasing interest rates and not honoring its promises, Citibank violated the terms of the Military Benefits Program, and thereby breached its contracts with Plaintiffs and class members.

130.    The Military Benefits Program must be interpreted to be consistent with federal law, including the Credit CARD Act. The cardmember agreement also states that federal law governs the contract and its enforcement. Thus, when Citibank promised to extend credit at 0%, and waive fees, the contract prevented Citibank from raising the interest rates and fees on outstanding balances incurred at the 0% rate. Citibank breached the contract by later increasing the rates and fees on these outstanding balances and/or by recouping the interest rate benefit by imposing these later overcharges.  This constitutes a separate breach of contract form the breaches described elsewhere.

131.    The cardmember agreement describes the calculation of interest as follows: "We multiply each daily balance by the daily periodic rate that applies to it . . . . This gives us the daily

interest charges for each of your different balances." Instead, Citibank is breaching the contract by multiplying daily balances incurred at 0% by an inflated periodic rate rather than the 0% rate that applies to the balance. This constitutes a separate breach of contract form the breaches described elsewhere.

132.    Citibank breached the terms of the Military Benefits Program by imposing a veteran penalty on customers whose SCRA benefits had expired, thereby taking back the promised contractual benefit. This constitutes a separate breach of contract form the breaches described elsewhere.

133.    Citibank charged Plaintiffs and class members more interest and fees than was permitted by the Military Benefits Program. Plaintiffs paid the improper interest charges and fees, and Citibank currently retains those payments.

134.    As a direct and proximate result of Citibank's breach of contract as described herein, Plaintiffs and class members have been damaged in an amount to be proven at trial.

## FOURTH CAUSE OF ACTION
### (Breach of Implied Covenant of Good Faith and Fair Dealing)

135.    Plaintiffs incorporate each and every allegation contained in the preceding paragraphs as if set forth again herein.

136.    Citibank breached its duty of good faith and fair dealing by acting in a manner unfaithful to the purpose of the contract, including by imposing a veteran penalty to take back part or all of the promised contractual benefit.

137.    Plaintiffs and class members had justified expectations that Citibank would provide them all statutory and contractual benefits, comply with all applicable federal and state statutes, create and maintain a robust SCRA compliance program, and honestly and forthrightly provide them with information needed to understand and enforce their rights.

138.    Citibank breached its duty to Plaintiffs and class members by violating the SCRA and the Military Benefits Program, by imposing improper charges and fees, and through its misleading cardmember agreements.

139.    Citibank's breach of its duties was the direct and proximate cause of damages sustained by the Plaintiffs and the class.

## FIFTH CAUSE OF ACTION
### (Violation of Truth in Lending Act)

140.    Plaintiffs incorporate each and every allegation contained in the preceding paragraphs as if set forth again herein.

141.    Pursuant to 15 U.S.C. § 1637(b), periodic statements provided by "[t]he creditor of any account under an open consumer credit plan" shall include, *inter alia*, each applicable interest rate and the range of balances to which it is applicable.

142.    Citibank's periodic statements violated this requirement, including by improperly stating the interest rate applicable to different balances and by failing to provide an accurate table of balances and applicable interest rates.

143.    Plaintiffs and class members paid improperly inflated amounts to Citibank in reliance on Citibank's improper periodic statements.

## SIXTH CAUSE OF ACTION

### (Violation of Truth in Lending Act – Credit CARD Act of 2009)

144.    The Credit CARD Act of 2009 prohibits card issuers from raising interest rates on existing balances, known as "protected balances." 15 U.S.C. § 1666i-1. The statute provides, "In the case of any credit card account under an open end consumer credit plan, no creditor may increase any annual percentage rate, fee, or finance charge applicable to any outstanding balance, except as permitted under subsection (b)." *Id.* § 1666i-1(a). Rather, card issuers are required to

separately track those protected balances and keep interest at the previous lower rate. *Id.* § 1666i-1(c). The card holder then has certain options for paying off the protected balances, such as amortizing the balance on a five-year schedule. *Id.*

145.    The CARD Act contains four exceptions to the protected balances rule, none of which apply here. *Id.* § 1666i-1(b). Defendant cannot rely upon the exception for increases in interest rates upon the expiration of a specified period of time, because active duty is by its nature not for a specified period of time and does not generally have a specified end date. Defendant's program recognizes that the duration of its Military Benefits Program is not set and will be determined based upon the actual duration of active duty, which often changes over the course of active duty. Furthermore, this exception requires that "prior to the commencement of that period, the creditor disclosed to the consumer, in a clear and conspicuous manner, the length of the period and the annual percentage rate that would apply after the expiration of the period," *id.*, which Citibank does not do.

146.    Any attempt by Citibank to rely upon the SCRA confirmation letters as a defense to the CARD Act claim or a waiver of rights constitutes a violation of its fiduciary duty.

147.    The Federal Reserve has recognized that the "specified period of time" exception does not apply to active duty and SCRA benefits, stating, "Under revised TILA Section 171, a creditor that complies with the SCRA by lowering the annual percentage rate that applies to an existing balance on a credit card account when the consumer enters military service arguably would not be permitted to increase the rate for that balance once the period of military service ends and the protections of the SCRA no longer apply." 12 C.F.R. Part 226, Regulation Z; Docket No. R-1370.

148.    In adopting the Regulation Z rules implementing the CARD Act, the Federal Reserve created an additional exception not contained in the statute. The rule provides:

> Servicemembers Civil Relief Act exception. If an annual percentage rate or a fee or charge . . . has been decreased pursuant to 50 U.S.C. app. 527 or a similar Federal or state statute or regulation, a card issuer may increase that annual percentage rate, fee, or charge once 50 U.S.C. app. 527 or the similar statute or regulation no longer applies, provided that the card issuer must not apply to any transactions that occurred prior to the decrease an annual percentage rate, fee, or charge that exceeds the annual percentage rate, fee, or charge that applied to those transactions prior to the decrease.

Regulation Z, § 1026.55(b)(6) (the "regulatory exemption"). In adopting the regulatory exemption, the Federal Reserve System Board of Governors made it clear that the exception only applies to rates or fees that have been reduced "by operation of the SCRA." Truth in Lending, 75 Fed. Reg. 7568, 7741 (Feb. 22, 2010).

149.    The regulatory exemption does not apply here because Citibank reduced its interest rate under its Military Benefits Program, which were established for business reasons, not "by operation of the SCRA." These additional benefits appear "more generous" than the SCRA, but in fact they provide a more dangerous debt trap to servicemembers and veterans.

150.    In the alternative, if the regulatory exemption were applicable, it should be declared illegal, null, and void, because the CARD Act does not permit such an exemption, and depriving veterans of protections from debt traps that are available to all other consumers is contrary to the SCRA, MLA, and TILA.

151.    Citibank violated the Credit CARD Act by increasing the interest rate on protected balances servicemembers incurred before, during, and after active duty, resulting in the imposition of unlawful fees and interest.

152.    Citibank's violations of TILA directly and proximately caused damages to Plaintiffs and the class.

31

153.   Plaintiffs and the class are entitled to actual damages, statutory damages, and other relief under TILA.

## SEVENTH CAUSE OF ACTION
### (Breach of Fiduciary Duty or Special Trust)

154.  Plaintiffs incorporate each and every allegation contained in the preceding paragraphs as if set forth again herein.

155.  Citibank did not have a typical arms-length lender/borrower relationship with Plaintiffs and class members. In the unique facts of this case, Citibank took on a role of fiduciary to the Plaintiffs and the class. *Dykstra v. Page Holding Co.*, 2009 S.D. 38, ¶ 29, 766 N.W.2d 491, 497 ("The test for the existence of a fiduciary relationship between a banker and a debtor has three elements: 1) the borrower reposes faith, confidence and trust in the bank; 2) the borrower is in a position of inequality, dependence, weakness or lack of knowledge; and 3) the bank exercises dominion, control or influence over the borrower's affairs." (internal citations omitted)).

156.  Alternatively, the unique relationship between Citibank and Plaintiffs and the class members gives rise to a special duty under South Dakota Law, which governs the contract. "In determining whether a duty exists, we examine whether 'a relationship exists between the parties such that the law will impose upon the defendant a legal obligation of reasonable conduct for the benefit of the plaintiff.' . . . Duty is also based upon foreseeability." *First Am. Bank & Tr., N.A. v. Farmers State Bank*, 2008 S.D. 83, ¶ 16, 756 N.W.2d 19, 26 (2008) (internal citations omitted).

157.  The facts giving rise to the fiduciary duty or special duty include but are not limited to the following:

- Citibank specifically markets to servicemembers, and particularly to those servicemembers being deployed overseas;

- Citibank volunteered advice to servicemembers and their families with the intent that Citibank would become their trusted advisor on financial and non-financial matters.

- Plaintiffs and class members provided Citibank with documentation of their military status, which typically included overseas deployment orders. Thus, Citibank solicited and received notice that Plaintiffs and class members would be deployed overseas or otherwise engaged in active duty and could not fully monitor their accounts or act in an arms-length manner with the Citibank during periods of active military service. Citibank also received such notice when Plaintiffs and class members charged certain on-base purchases in military engagement areas. Citibank knows that deployed customers are generally not able to attend to financial matters while deployed.

- The SCRA reflects a Congressional determination that servicemembers cannot and should not be required to protect their own financial interests while serving full time in the U.S. military. By offering SCRA benefits and specifically marketing "enhanced" benefits beyond what the SCRA provides, Citibank acknowledges this unequal relationship and takes on fiduciary duties.

- The nature of military service also places servicemembers at a disadvantage to the bank, unlike other customers. If a bank overcharges a servicemember, the servicemember does not, as a practical matter, have the same recourse as other customers. They must still pay their bills as if the bank's calculations were correct. Otherwise, their failure to timely pay bills can lead them to lose security clearance and, in turn, their military position and employment. Citibank is well

33

aware of this dynamic and thereby has undue influence over their servicemember customers.

- The members of the deployment subclass informed Citibank not just that they would be going on active duty, but that they were being deployed, placing Citibank on notice that these subclass members would have a particularly difficult time monitoring their accounts like a typical customer.

158. Citibank breached fiduciary duties owed to Plaintiffs and the class and/or the special duties, including by overcharging servicemembers and returning veterans. Any attempt by Citibank to rely upon notice provided to servicemembers after they were called to active duty constitutes a further breach of fiduciary duties. These breaches directly and proximately caused Plaintiffs to suffer damages entitling Plaintiffs and the class to an accounting, restitution, and other equitable remedies.

## EIGTH CAUSE OF ACTION
### (Accounting)

159. Plaintiffs incorporate each and every allegation contained in the preceding paragraphs as if set forth again herein.

160. Plaintiffs are entitled to an accounting either because (1) Citibank breached fiduciary duties and/or a special trust, or (2) the accounts that will determine the amounts that Citibank owes to Plaintiffs are possessed only by Citibank and are so complex that they warrant resolution through an accounting rather than traditional discovery procedures.

161. Accordingly, Plaintiffs and other class members are entitled to an accounting of all overcharges, and improper interest, fees, and charges, as well as all assets, funds, revenues, and profits received and retained by Citibank as a result of its improper actions, as described herein.

## NINTH CAUSE OF ACTION
### (Constructive Trust)

162. Plaintiffs incorporate each and every allegation contained in the preceding paragraphs as if set forth again herein.

163. Citibank has wrongfully obtained, and continues to retain, certain funds and profits as a result of its misconduct, which legally belong to Plaintiffs and other class members.

164. Plaintiffs and other class members are entitled to the imposition of a constructive trust containing all assets, funds, and property derived from Citibank's wrongful acts, with Citibank serving as constructive trustees for the benefit of Plaintiffs.

## TENTH CAUSE OF ACTION
### (Federal Declaratory Judgment Act)

165. Plaintiffs incorporate each and every allegation contained in the preceding paragraphs as if set forth again herein.

166. The parties have a genuine dispute over whether Citibank's actions violate the SCRA and TILA and over the validity of the Regulation Z exception that purports to allow raising rates on veterans' outstanding balances.

167. Plaintiffs seek declaratory and injunctive relief establishing the requirement of SCRA, TILA, and MLA as applied to Citibank's conduct and enjoining Citibank's future violations of those statutes.

168. The Federal Declaratory Judgment Act gives this Court the discretion to entertain a declaratory judgment action. 28 U.S.C. § 2201; *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286-87 (1995). 28 U.S.C. § 2201 provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be

35

sought." This Court also has the power to grant "further necessary or proper relief based on a declaratory judgment." 28 U.S.C. § 2202.

## PRAYER FOR RELIEF

**WHEREFORE,** on behalf of themselves and all other persons similarly situated, Plaintiffs respectfully pray for the following relief:

a.    An Order certifying the class, appointing the named Plaintiffs as class representatives and Plaintiffs' attorneys as class counsel;

b.    Factual findings that Citibank has violated the Servicemembers Civil Relief Act, the Truth in Lending Act, the Military Lending Act, and other applicable statutes and rules;

c.    An award of statutory, compensatory, consequential, and punitive damages;

d.    An award of pre- and post-judgment interest;

e.    The imposition of a constructive trust containing all assets, funds, and property derived from Citibank's wrongful acts, with Citibank serving as constructive trustees for the benefit of Plaintiffs and class members;

f.    An Order requiring disgorgement of Citibank's ill-gotten gains to pay restitution to Plaintiffs and all members of the class;

g.    An accounting of all assets, funds, revenues, and profits received and retained by Citibank as a result of their improper actions;

h.    Declaratory and injunctive relief establishing the requirement of SCRA, TILA, and the MLA as applied to Citibank's conduct and enjoining Citibank's future violations of those statutes;

i.    Declaratory and injunctive relief as requested herein;

j.      Recovery of reasonable costs and attorneys fees;

k.      A jury trial on all issues so triable; and

l.      Such other relief as this Court may deem just and proper.


RESPECTFULLY submitted this 16th day of February, 2023.


**ZAYTOUN BALLEW & TAYLOR, PLLC**

By:     /s/ *Matthew D. Ballew*
        Matthew D. Ballew, NCSB # 39515
        Paul J. Puryear, Jr., Of Counsel, NCSB# 41536
        3130 Fairhill Drive, Suite 100
        Raleigh, NC 27612
        Telephone: (919) 832-6690
        Facsimile: (919) 831-4793
        MBallew@zaytounlaw.com
        RZaytoun@zaytounlaw.com
        PJPuryear@zaytounlaw.com

        *Local Rule 83.1 Counsel*

**SMITH & LOWNEY, PLLC**

By:     /s/ *Knoll D. Lowney*
        Knoll D. Lowney, WSBA# 23457
        Claire Tonry, WSBA# 44497
        Marc Zemel, WSBA# 44325
        Alyssa Koepfgen, WSBA# 46773
        2317 E. John Street
        Seattle, Washington 98112
        Telephone: (206) 860-2883
        Facsimile: (206) 860-4187
        Knoll@smithandlowney.com
        Claire@smithandlowney.com
        Marc@smithandlowney.com
        Alyssa@smithandlowney.com

        *Attorneys for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA (WESTERN DIVISION)
## CASE NO. 5:22-cv-00383-BO-RN

PABLO ESPIN, NICHOLAS PADAO,           )
JEREMY BELL and KEITH TAYLOR,          )
*on behalf of themselves and others similarly*  )
*situated,*                            )
                                       )
      Plaintiffs,             )
                                       )
vs.                                    )
                                       )
CITIBANK, N.A.                         )
                                       )
      Defendant.              )

## <u>CITIBANK'S CONTESTED MOTION</u>
## <u>TO COMPEL ARBITRATION AND TO STAY ACTION</u>

Pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1, et. seq. ("FAA"), FRCP

12(b)(1), and FRCP 81(a)(6)(B), defendant Citibank, N.A. ("Citibank"), hereby files its

Motion to Compel Arbitration and Stay Action requesting entry of an order compelling

Plaintiffs, Pablo Espin, Nicolas Padao, Jeremy Bell and Keith Taylor, to arbitrate their

claims against Citibank pursuant to the terms of the arbitration agreement ("Arbitration

Agreement") governing the credit card accounts at issue in Plaintiffs' claims in this case.

Citibank further seeks to stay this case during the pendency of any arbitration.  Citibank

files contemporaneously herewith its Memorandum in Support of this Motion and accompanying exhibits. Citibank understands that Plaintiffs will oppose the motion.[1]

Respectfully submitted this the 22nd day of December 2022

By:  /s/ Debra Bogo-Ernst

Lucia Nale
Debra Bogo-Ernst
MAYER BROWN LLP
71 S. Wacker Drive
Chicago, IL 6060
Tel: (312)- 782-0600
Fax: (312) 706-8474
lnale@mayerbrown.com
(IL License No. 6201684)
dernst@mayerbrown.com
(IL License No. 6271962)

*Lead Counsel for Defendant Citibank N.A., by Special Appearance Pursuant to Local Rule 83.1(e)* (special appearance of Ms. Nale pending)

/s/ Mary K. Mandeville

Mary K. Mandeville
ALEXANDER RICKS PLLC
1420 E. 7th Street, Suite 100
Charlotte, NC 28204
Tel: (704) 200-2635
Fax:  (704) 365-3676
mary@alexanderricks.com
N.C. State Bar No. 15959

*Local Civil Rule 83.1(d), Counsel for Defendant Citibank N.A.*

---

[1] The parties have thus met and conferred regarding a briefing schedule which was previously approved by the Court.  ECF No. 19.  Pursuant to that briefing schedule, Plaintiffs' response to this motion is due by February 16, 2023 and any reply is due by March 16, 2023.

2

751409909.1

## <u>CERTIFICATE OF SERVICE</u>

      I, Debra Bogo-Ernst hereby certify that on December 22, 2022, I electronically filed the foregoing document with the Clerk of Court using the Court's CM/ECF system, which will send notification to counsel of record.

                                          <u>/s/ Debra Bogo-Ernst</u>

751409909.1

3

JA50

# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NORTH CAROLINA**
**CASE NO. 5:22-cv-00383**

PABLO ESPIN, NICHOLAS PADAO,                    )
JEREMY BELL and KEITH TAYLOR,                   )
*on behalf of themselves and others similarly*  )
*situated.*                                     )
                                                )
       Plaintiffs,                            )
                                                )
vs.                                             )
                                                )
CITIBANK, N.A.                                  )
                                                )
       Defendant.                             )

<u>**DECLARATION OF KELLY BOOTH**</u>

I, Kelly Booth, hereby declare as follows:

      1.     I am an employee of Citibank, N.A. ("Citibank"). Citibank is a national bank located in Sioux Falls, South Dakota. Citibank issues credit card accounts, including the credit card accounts at issue in this action.

      2.     I have worked with Citibank or its affiliates in different capacities for approximately 29 years. In connection with my employment, I have personal knowledge of Citibank's general business practices with respect to its credit card accounts. My responsibilities include preparing affidavits in connection with litigation involving Citibank, and I am authorized to provide this Declaration for Citibank. I have access to the business records relating to the credit card accounts Citibank issues including, in particular, the records of cardmember accounts and the applicable card agreements.

3.     The exhibits to this declaration are all true and correct copies of business records that Citibank or its affiliates created and maintained in the ordinary course of regularly conducted business activity as part of Citibank's regular practice of creating and maintaining such records, and also were made at the time of the act, transaction, occurrence or event, or within a reasonable time thereafter. The statements set forth in this Declaration are true and correct to the best of my knowledge, information, and belief. Except where based upon information provided by persons working under my direction and supervision, the statements contained herein are based on my personal knowledge or review of Citibank's records, including the records referenced in this Declaration. If called as a witness, I am competent to testify to the statements contained herein. Portions of the exhibits have been redacted to exclude personal information.

**Espin**

4.     I understand that Plaintiff Espin alleges that he has a current Citibank account with a significant balance. Citibank's records reflect a Citibank ThankYou Preferred MasterCard account currently ending in 6124 (formerly ending in 9938, 8084, 7000, 7140) issued to Plaintiff Espin on or about September 15, 2014 (the "Espin Account"). Based upon my review of Citibank's records pertaining to the Espin Account and as discussed below, I have determined that the Espin Account is subject to an arbitration agreement.

5.     The Espin Account is subject to written terms and conditions that are reflected in a card agreement, as amended from time to time.

2

6.      Attached as **Exhibit A** is a copy of the card agreement and letter mailed to Plaintiff Espin when he opened the Espin Account on September 15, 2014. The Card Agreement contains an arbitration agreement.

7.      Attached as **Exhibit B** is a copy of the transaction detail reflected on the periodic billing statement for the Espin Account for the period ending October 20, 2014, which reflects transactions made to the Espin Account.

8.      Citibank's records reflect that, on or about October 21, 2016, Citibank mailed to Espin a new Card Agreement for the Espin Account (the "New Card Agreement"), along with a cover letter ("Cover Letter") and Important Change to Your Account Terms ("2016 Change-In-Terms"). Attached as **Exhibit C** is a copy of the mailing that was sent to Espin, including the New Card Agreement. The New Card Agreement also contains an arbitration agreement. The Cover Letter and 2016 Change-In-Terms instructed Espin that the New Card Agreement became effective immediately.

9.      As discussed and instructed in the Cover Letter and 2016 Change-In-Terms, Espin had the right to reject the arbitration agreement contained in the New Card Agreement as follows:

> **You have the right to reject this arbitration provision. If you reject, your account will no longer be subject to an arbitration provision. You can reject arbitration by writing to us at PO Box 6195, Sioux Falls, SD 57117-6195 stating that you would like to reject the arbitration provision. Your letter must be postmarked on or before 12/25/2016. We will not close your account if you reject this change.**

10.     I have reviewed Citibank's records for the Espin Account and there is no record that the postal service returned the October 21, 2016 letter as undeliverable. Pursuant to Citibank's regular business practice, if mail had been returned, there would

3

be a notation in the records for the Espin Account. There is no such notation in the records for the Espin Account.

11.     Citibank's records confirm that Plaintiff did not chose to reject the arbitration agreement in the New Card Agreement. I can determine this because it is Citibank's regular practice to notate in the account records when a card member chose to reject the arbitration agreement. Based on my review of the Espin Account, there is no notation indicating Espin rejected the arbitration agreement.

12.     Attached as **Exhibit D** is a copy of the transaction detail reflected on the periodic billing statement for the Espin Account for the period ending July 20, 2017, which reflects transactions made to the Espin Account.

**Padao**

13.     I understand that Plaintiff Padao alleges that he has a Citibank account that he opened prior to starting active-duty service in 2018. Citibank's records reflect a Costco Anywhere Visa credit card account currently ending in 2521 (formerly ending in 0103) issued to Padao on or about July 10, 2011 (the "Padao Account"). Based upon my review of Citibank's records pertaining to the Padao Account and as discussed below, I have determined that the Padao Account is subject to an arbitration agreement.

14.     The Padao Account is subject to written terms and conditions that are reflected in a card agreement, as amended from time to time.

15.     Padao's Account was acquired by Citibank from American Express Bank, FSB in June 2016 and Citibank is the issuer of the Padao Account. Citibank's records reflect that, on or about April 15, 2016, Citibank mailed Padao a new Card Agreement for the Padao Account (the "New Card Agreement"), along with a cover letter ("Cover

4

Letter"). Attached as **Exhibit E** is a copy of the mailing that was sent to Plaintiff, including the New Card Agreement and Cover Letter. The New Card Agreement also contains an arbitration agreement. The Cover Letter instructed Plaintiff that the New Card Agreement would become effective June 20, 2016.

16.    I have reviewed Citibank's records for the Padao Account and there is no record that the postal service returned the New Card Agreement and Cover Letter as undeliverable. Pursuant to Citibank's regular practice, if mail had been returned, there would be a notation in the records for the Padao Account.

17.    As discussed and instructed in the New Card Agreement, Padao had the right to reject the arbitration agreement contained in the New Card Agreement as follows:

> "**Rules for rejecting this arbitration provision**
> You may reject this arbitration provision by sending a written rejection notice to us at: PO Box 790085; St. Louis, MO 63179-0085. Your rejection notice must be postmarked by 08/03/2016. Your rejection notice must state that you reject the arbitration provision and include your name, address, Account number and personal signature. No one else may sign the rejection notice. Your rejection notice will not apply to the arbitration provision(s) governing any other account(s) that you have or had with us. Rejection of this arbitration provision won't affect your other rights or responsibilities under this Agreement, including use of the Account."

18.    Citibank's records confirm that Padao was sent the New Card Agreement mailing for the Padao Account but did not choose to reject the arbitration agreement. I can determine this because it was Citibank's regular practice to include a note in the computerized account records of those card members who chose to opt out. The records for the Padao Account do not reflect any such note, and there is no indication in the Padao Account records that Padao ever notified Citibank to refuse to accept the terms of the New Card Agreement.

19.     Attached as **Exhibit F** is a copy of the transaction detail reflected on the periodic billing statement for the Padao Account for the period ending June 24, 2016.  The transaction detail reflects charges Padao made to the Padao Account.

**Taylor**

20.     I understand that Plaintiff Taylor alleges that he has a Citibank credit card account for which the interest rate increased from 0% to 15.74% after he left active duty. Citibank's records reflect a Citibank AAdvantage Platinum Select MasterCard credit card account currently ending in 6688 (formerly ending in 1331, 8255,) issued to Taylor on or about March 22, 2013 (the "Taylor Account"). Based upon my review of Citibank's records pertaining to the Taylor Account and as discussed below, I have determined that the Taylor Account is subject to an arbitration agreement.

21.     The Taylor Account is subject to written terms and conditions that are reflected in a card agreement, as amended from time to time.

22.     Attached as **Exhibit G** is an exemplar copy of the card agreement that was mailed to Plaintiff Taylor when he opened the Taylor Account on or about March 22, 2013.  The Card Agreement includes an arbitration clause.

23.     Attached as **Exhibit H** is a copy of the transaction detail reflected on the periodic billing statement for the Taylor Account for the period ending April 19, 2013, which reflects transactions made to the Taylor Account.

24.     Citibank's records reflect that, on or about September 12, 2015, Citibank mailed to Taylor a new Card Agreement for the Taylor Account (the "New Card Agreement"), along with a cover letter ("Cover Letter") and Important Changes to Your

6

JA57

Account Terms ("2015 Change-In-Terms").  Attached as **Exhibit I** is a copy of the mailing that was sent to Taylor, including the New Card Agreement.  The New Card Agreement also contains an arbitration agreement.  The Cover Letter and the 2015 Change-In-Terms instructed Taylor that the New Card Agreement will become effective November 16, 2015.

25.    As discussed and instructed in the Cover Letter and the 2015 Change-In-Terms, Taylor had the right to reject the arbitration agreement contained in the New Card Agreement as follows:

> **You have the right to reject the change to arbitration.  If you reject this change, your account will no longer be subject to an arbitration provision. You can reject the change to arbitration by writing to us at PO Box 6195, Sioux Falls, SD 57117-6195 stating that you would like to reject the arbitration provision.  Your letter must be postmarked on or before 11/16/2015.  We will not close your account if you reject this change.**

26.    I have reviewed Citibank's records for the Taylor Account and there is no record that the postal service returned the September 12, 2015 letter as undeliverable.  Pursuant to Citibank's regular business practice, if mail had been returned, there would be a notation in the records for the Taylor Account.  There is no such notation in the Taylor Account.

27.    Citibank's records confirm that Taylor did not choose to reject the arbitration agreement in the New Card Agreement.  I can determine this because it is Citibank's regular practice to notate in the account records when a card member chose to reject the arbitration agreement.  Based on my review of the Taylor Account, there is no notation indicating Taylor rejected the arbitration agreement.

28.    Attached as **Exhibit J** is a copy of the transaction detail reflected on the

periodic billing statement for the Taylor Account for the period ending December 21,

2015, which reflects transactions made to the Taylor Account.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 13ᵗʰ day of December, 2022 at Jacksonville, Florida.

Kelly Booth

8

# EXHIBIT A



**New account approval**
September 16, 2014

Customer Service Center
PO Box 6500
Sioux Falls, SD 57117-6500

PABLO J ESPIN

SELDEN NY 11784-1858

## Welcome to your new Citi ThankYou® Preferred account

We're delighted to welcome you to your new Citi ThankYou® Preferred account with a credit limit of $10,500 including a cash advance limit of $3,200.

Please see the enclosed documents about your new account:
- **Card Agreement**
- **Facts about Interest and Fees -** the details of your pricing terms, which is a part of your Card Agreement
- **Privacy Notice -** our commitment to your privacy and security

## Make the most of your new account
**Look for your card in the mail**
To start enjoying the many benefits that come with your new card, simply activate it as soon as it arrives. You should receive your card within 7 days from the date of this letter and if you don't, please call us immediately.

**Make the most of your card**
- Earn 20,000 Bonus ThankYou Points after $1,500 in purchases within 3 months of account opening.*
- Earn 2 ThankYou® Points per $1 spent on purchases for dining at restaurants and entertainment. Plus, earn 1 ThankYou Point per $1 spent on other purchases.¹

## Personalize your PIN
Your cash advance PIN is ▮▮▮. Your PIN lets you get cash advances at ATMs and many financial institutions. Just use our ATM Locator at 1-800-248-4286 or visit us at citicards.com to find a nearby ATM, or present your card to a bank teller.

You can reset your PIN to make it easier to remember. If you want to personalize your PIN, take these steps to use our simple, automated system:
1. Call us at 1-800-THANKYOU (1-800-842-6596). Have your account number ready, along with your assigned PIN and the 4-digit replacement PIN you'd prefer to use.
2. Follow the instructions from our automated system.

Please see the reverse side

| Need our help? | |
|---|---|
| Visit | citicards.com |
| Call | 1-800-842-6596 |
| TTY/TTD | 1-800-325-2865 |

**PABLO J ESPIN**
Account ending 7140

**Do you know about all the great tools available to manage your account?**
Just register your card at citicards.com to do everything from scheduling payments and adding authorized users to your account.

0. L01 90 001001. I2014091600259006. 083. I. ZZ. SY. 8000. SYSTEMB1720816971492765

JA61

PABLO J ESPIN
Account ending 7140
Page 2 of 4

## Thanks for the opportunity to serve you

We're working around the clock to create financial solutions and services that are simple and responsive. Feel free to contact us if you have suggestions or questions.

---

*Balance transfers, cash advances, fees, interest and items returned for credit do not qualify as a purchase.
†Balance transfers, cash advances, fees, interest and items returned for credit do not qualify as a purchase.

PABLO J ESPIN
Account ending 7140
Page 3 of 4

## Facts about Interest and Fees

| Interest Rates and Interest Charges | |
|---|---|
| **Annual Percentage Rate (APR) for Purchases** | **0%** introductory APR until **09/15/2015**. <br><br> After that, your APR will be **17.99%**. This APR will vary with the market based on the Prime Rate. |
| **APR for Balance Transfers** | **0%** introductory APR for 12 months from date of first transfer when transfers are completed by 01/15/2015. <br><br> After that, your APR will be **17.99%**. This APR will vary with the market based on the Prime Rate. |
| **APR for Cash Advances** | **25.24%** <br><br> This APR will vary with the market based on the Prime Rate. |
| **Penalty APR and When it Applies** | Up to **29.99%**, based on your creditworthiness. This APR will vary with the market based on the Prime Rate. <br><br> This APR may be applied to your account if you: <br> (1) Make a late payment or <br> (2) Make a payment that is returned. <br><br> **How Long Will the Penalty APR Apply?** If your APRs are increased for either of these reasons, the Penalty APR may apply indefinitely. |
| **Paying Interest** | Your due date is at least 23 days after the close of each billing cycle. We will not charge you any interest on purchases if you pay your entire balance by the due date each month. We will begin charging interest on cash advances and balance transfers on the transaction date. |
| **Minimum Interest Charge** | If you are charged interest, the charge will be no less than 50 cents. |
| **For Credit Card Tips from the Consumer Financial Protection Bureau** | To learn more about factors to consider when applying for or using a credit card, visit the website of the Consumer Financial Protection Bureau at www.consumerfinance.gov/learnmore. |

| Fees | |
|---|---|
| **Annual Fee** | $0 |
| **Transaction Fees** | |
|    • Balance Transfer | Either **$5** or **3%** of the amount of each transfer, whichever is greater. |
|    • Cash Advance | Either **$10** or **5%** of the amount of each cash advance, whichever is greater. |
|    • Foreign Purchase Transaction | **3%** of each purchase transaction in US dollars. |
| **Penalty Fees** | |
|    • Late Payment | Up to **$35**. |
|    • Returned Payment | Up to **$35**. |

**How We Will Calculate Your Balance:** We use a method called "daily balance (including current transactions)." See enclosed Card Agreement for more details.

PABLO J ESPIN
Account ending 7140
Page 4 of 4

**Loss of Introductory APR:** We may end your introductory APR and apply the Penalty APR if you make a late payment.

**Billing Rights:** Information on your rights to dispute transactions and how to exercise those rights is provided in the enclosed Card Agreement.

| Details About Your Interest Rates | APR as of 09/16/2014 | Daily Periodic Rate As of 09/16/2014 | For variable rates: U.S. Prime Rate Plus |
|---|---|---|---|
| Purchases (including balance transfers after the expiration of the introductory APR) | 17.99% (v) | 0.04929% | 14.74% |
| Introductory APR on Purchases | 0% | 0.00000% | N/A |
| Introductory APR on Balance Transfers | 0% | 0.00000% | N/A |
| Cash Advances | 25.24% (v) | 0.06915% | 21.99% |
| Penalty APR | 29.99% (v) | 0.08216% | Up to 26.74% |
| (v) = Variable rate | | | |

# CARD AGREEMENT

This Card Agreement is your contract with us. It governs the use of your card and account. The enclosed Facts About Interest and Fees ("Fact Sheet") is part of this Agreement. Please read this Agreement, including the Fact Sheet, carefully. Keep them for your records.

## Definitions

*account* means the relationship established between you and us by this Agreement.

*APR* means an annual percentage rate.

*authorized user* means any person you allow to use your account.

*card* means one or more cards or other access devices that we give you to get credit under this Agreement. This includes account numbers.

*we, us,* and *our* mean Citibank, N.A., the issuer of your account.

*you, your,* and *yours* mean the person who applied to open the account. It also means any other person responsible for complying with this Agreement.

## Your Account

You agree to use your account in accordance with this Agreement. You must pay us for all amounts due on your account. This Agreement is binding on you unless you close your account within 30 days after receiving the card and you have not used or authorized use of the card. Your account must only be used for lawful transactions.

**Authorized Users.** You may request additional cards for authorized users. You must pay us for all charges made by authorized users. You must pay us even if you did not intend to be responsible for those charges. You must notify us to withdraw any permission you give to an authorized user to use your account.

**Credit Limit.** Your initial credit limit is on the card carrier. The full amount of your credit limit is available to use where the card is honored. Part of your credit limit is called the cash advance limit. It is available for cash advances. We may reduce or increase your credit limit or cash advance limit at any time for any reason as permitted by law. We will notify you of any change, but the change may take effect before you

receive the notice. You should always keep your total balance below the credit limit. However, if the total balance goes over your credit limit you still must pay us. If your account has a credit balance, we may reduce the credit balance by any new charges on your account. You may not maintain a credit balance in excess of your credit limit.

**Balance Transfers.** Balance transfers are an account feature that we make available to you through offers. If there is an offer available at account opening, the Citi Disclosures will describe the terms of that offer. If we make an offer after your account is opened, the offer will describe the terms. All balance transfers are subject to the standard purchase APR unless a promotional rate applies.

**Checks.** We may provide you with balance transfer checks. You may use them to transfer a balance to your account or make other transactions. We may also provide you with cash convenience checks. You may use them to get a cash advance. Use of a cash convenience check will be a cash advance even if you use the check to make a payment to another creditor. You may not use balance transfer checks or cash convenience checks to pay an amount owed to us under this Agreement or to pay another account with us or an affiliate. We do not certify these checks or return any checks that have been paid.

**Billing Statement.** Your billing statement shows the New Balance. This is the total amount you owe us on the Statement Closing Date. To determine the New Balance, we begin with the total balance at the start of the billing period. We add any purchases, balance transfers or cash advances. We subtract any credits or payments. We then add any interest charges or fees and make other adjustments.

We deliver a billing statement to only one address. You must notify Customer Service of a change in address. We may stop sending you statements if we deem your account uncollectible or start collection proceedings; but we may continue to add interest and fees as permitted by law.

## APRs

**Account APRs.** For the APRs on your account, see the Fact Sheet.

**Variable APRs Based on Prime.** If any APR is based on the U.S. Prime Rate ("Prime Rate"), the APR will equal the Prime Rate plus an additional amount. The additional amount appears on the Fact Sheet in the Details About Your Interest Rate table. If the Prime Rate increases, it will cause the APR to increase. If the Prime Rate decreases, it will cause the

APR to decrease. For each billing period we use the Prime Rate published in *The Wall Street Journal* two business days before the Statement Closing Date. If the Prime Rate causes an APR to change, we put the new APR into effect as of the first day of the billing period for which we calculate the APR. We apply the new APR to any existing balances, subject to any promotional rate that may apply. If *The Wall Street Journal* does not publish the Prime Rate, we will use a similar published rate.

**Penalty APR.** The Penalty APR may be applied to your account if you:
- make a late payment or
- make a payment that is returned.

We set your Penalty APR based on your creditworthiness.

If the Penalty APR is applied to your account because you make a late payment that is not more than 60 days late or make a payment that is returned, it will apply only to new transactions and may continue to apply indefinitely. However, if the Penalty APR is applied to your account because your payment is more than 60 days late, the Penalty APR will apply to both existing and new transactions. It will no longer apply to existing transactions if you make the next six consecutive minimum payments when due. If you do not make these six consecutive minimum payments, the Penalty APR may continue to apply to both new and existing balances indefinitely.

**Effect of APR Increases.** If an APR increases, interest charges increase. Your minimum payment may increase as well.

## Interest Charges Based on APRs

**Interest Charges.** We impose interest charges when we apply APRs to your account balances. We do this every day by using a daily periodic rate. To get a daily periodic rate, we divide the APR by 365.

**When Interest Charges Begin.** We begin to impose interest charges the first day we add a charge to a daily balance. The charges we add to a daily balance include purchases, balance transfers, and cash advances. They also include interest charges and fees. We continue to impose interest charges until we credit your account with full payment of the total amount you owe us.

**Grace Period on Purchases.** You can avoid interest charges on purchases, but not on balance transfers and cash advances. This is called a grace period on purchases. The grace period is at least 23 days. To get a grace period on

purchases, you must pay the New Balance in full by the due date every billing period. If you do not, you will not get a grace period until you pay the New Balance in full for two billing periods in a row. Certain balance transfer offers may take away the grace period on purchases. If that is the case, the balance transfer offer will describe what happens.

**Calculation of Interest Charges—Daily Balance Method (Including Current Transactions).** We calculate interest charges each billing period. To do this:

- We start with each of your different balances. These balances include, for example, standard purchases, standard cash advances, and different promotional balances. (When we calculate interest charges, we treat balance transfers as standard purchases unless a promotional rate applies.)
- We calculate the daily balance for each of your different balances. To get a daily balance, we start with the balance as of the end of the previous day. We add any interest charge on the previous day's balance. (This results in daily compounding of interest charges.) We add any new charges. We then subtract any new credits or payments.
- We multiply each daily balance by the daily periodic rate that applies to it. We do this for each day in the billing period. This gives us the daily interest charges for each of your different balances.
- We add up all the daily interest charges. The sum is the total interest charge for the billing period.

When we calculate daily balances, we add a purchase as of the Sale Date on the billing statement. We add a balance transfer or cash advance as of the Post Date on the billing statement. (The Post Date is the date we get a request to complete a balance transfer or cash advance transaction. When you send a balance transfer or cash convenience check directly to someone, the Post Date is the date we receive the check for payment.) We add a transaction fee to the same balance as the transaction. We generally add other fees to the standard purchase balance. We subtract a payment or credit as of the day it is credited to the account and then make other adjustments. We treat a credit balance as a balance of zero.

**Balance Subject to Interest Rate.** Your statement shows a Balance Subject to Interest Rate. It shows this for each different balance. The Balance Subject to Interest Rate is the average of the daily balances during the billing period. A billing period begins on the day after the Statement Closing Date of the previous billing period. It includes the Statement Closing Date of the current billing period.

# Fees

**Annual Membership Fee.** If an annual membership fee applies, the Fact Sheet shows it. We will refund this fee if you notify us that you are closing your account within 30 days of the mailing or delivery date of the statement on which the fee appears. The fee is otherwise non-refundable.

**Transaction Fee for Balance Transfers.** The Fact Sheet shows the amount of this fee. We add this fee for each balance transfer. This fee is in addition to any periodic fee that may be imposed with a promotional offer. You make a balance transfer when you use a balance transfer check or contact us to transfer a balance.

**Transaction Fee for Cash Advances.** The Fact Sheet shows the amount of this fee. We add this fee for each cash advance. You take a cash advance if you use a cash convenience check; get money through an automated teller machine (ATM); or get money through home banking or a financial institution. You also take a cash advance if you make a wire transfer; buy a money order, traveler's check, lottery ticket, casino chip, or similar item; or engage in a similar transaction.

**Transaction Fee for Foreign Purchases.** The Fact Sheet shows the amount of this fee, which is a percentage of the U.S. dollar amount of the purchase. We add this fee for each purchase made outside the U.S., whether made in U.S. dollars or in a foreign currency.

**Late Fee.** We may add a late fee for each billing period in which you have a past due payment. For late fee purposes, you have a past due payment any time you fail to pay the Minimum Payment Due (less the Amount Over Credit Limit shown on your billing statement) by the payment due date. The fee will be $25; or $35 for any additional past due payment during the next six billing periods after a past due payment. However, the fee will not exceed the amount permitted by law.

**Returned Payment Fee.** We may add a returned payment fee for a returned payment. A returned payment is an electronic debit, payment check, or similar payment instrument, that is returned unpaid. We may add this fee the first time your payment is returned, even if it is not returned upon resubmission. The fee will be $25; or $35 for any additional returned payment during the next six billing periods after a returned payment. However, the fee will not exceed the amount permitted by law.

**Stop Payment on Cash Convenience Check Fee.** We add a $39 fee if we honor your request to stop payment on a cash convenience check. To stop payment on a cash convenience

check write us at P.O. Box 6500, Sioux Falls, South Dakota 57117. You can also call the Customer Service number on the billing statement. If you call, you must confirm the call in writing within 14 days. A written stop payment order is good for 6 months unless renewed in writing.

## Information on Foreign Currency Conversion

Our network providers are MasterCard, Visa, and American Express. They convert transactions in foreign currencies into U.S. dollars. The type of card you have determines who does the conversion. Each network provider follows its own procedures. Each network provider's current procedures are described below. The procedures may change from time to time without notice.

- MasterCard uses a conversion rate in effect one day before its transaction processing date. It uses a government-mandated rate if required to do so. If not, it uses a wholesale market rate.
- Visa uses a conversion rate in effect on its applicable central processing date. It uses a government-mandated rate if required to do so. If not, it selects from the range of rates available in wholesale currency markets. The selected rate may vary from the rate Visa receives.
- American Express uses any conversion rate required by applicable law. If there is none, it uses the highest interbank rate it selects on the business day before the day it processes the transaction.

A third party may convert a transaction into U.S. dollars or another currency before sending it to our network provider. In these cases, the third party selects the conversion rate.

If you take a cash advance in a foreign currency at a branch or ATM of one of our affiliates, an affiliate of ours will convert it into U.S. dollars. This applies regardless of which network provider's card you use to take the cash advance. Our affiliate currently uses a conversion rate in effect on its processing date. It uses a government-mandated rate if required to do so. If not, it uses a mid-point market rate. Our affiliate's procedure may change from time to time without notice.

The conversion rate you get is the one used on the transaction's processing date. This may be different from the one in effect on the transaction's Sale Date or Post Date.

## Payments

**Minimum Payment Due.** You must pay at least the Minimum Payment Due by the payment due date each billing period. The sooner you pay the New Balance, the less you will pay in interest charges.

To calculate the Minimum Payment Due, we begin with any past due amount. We then add any amount in excess of your credit limit. We also add the largest of the following:

- The New Balance on the billing statement if it is less than $25;
- $25 if the New Balance is at least $25;
- 1% of the New Balance (the result is rounded down to the nearest dollar) plus the amount of your billed interest charges, any applicable late fee, and any applicable minimum interest charge; or
- 1.5% of the New Balance (the result is rounded down to the nearest dollar).

When we calculate the Minimum Payment Due, we may subtract from the New Balance certain fees added to your account during the billing period. We may also include in the Minimum Payment Due any additional amount specified in a promotional offer. The balance of any such promotional offer is not included in the four bullets above. The Minimum Payment Due is never more than the New Balance.

**Application of Payments.** Payments in excess of the Minimum Payment Due are applied in accordance with law. This means that we will generally apply payments in excess of the Minimum Payment Due to balances with higher APRs before balances with lower APRs. We generally apply payments equal to or less than the Minimum Payment Due and credits to lower APR balances first.

**Payment Instructions.** We credit your payments in accordance with our payment instructions on the billing statement. You must pay us in U.S. dollars. To do so, you must use a check, similar instrument, or electronic debit that is drawn on and honored by a bank in the U.S. Do not send cash. We can accept late or partial payments, or payments that reflect "paid in full" or other restrictive endorsements, without losing our rights. We also reserve the right to accept payments made in foreign currency and instruments drawn on funds on deposit outside the U.S. If we do, we select the currency conversion rate. We will then credit your account in U.S. dollars after deducting any costs incurred in processing your payment. Or we may bill you separately for these costs.

**Optional Pay by Phone Service.** You may use our optional Pay by Phone Service to make your payment by phone. To do so, call us to request the service.

## Credit Reporting

We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report. We

may report account information in your name and the names of authorized users. We may also obtain follow-up credit reports on you.

If you think we reported incorrect information to a credit bureau, write us at the Customer Service address on the billing statement. We will investigate the matter. We will then tell you if we agree or disagree with you. If we agree with you, we will contact each credit bureau to which we reported and request a correction. If we disagree with you, we will tell you that.

## Information Sharing

You authorize us to share information about you as permitted by law. This includes information we get from you and others. It also includes information about your transactions with us. Please see our Privacy Notice for details about our information sharing practices.

## Changes to this Agreement

**We may change the rates, fees, and terms of this Agreement from time to time as permitted by law. The changes may add, replace, or remove provisions of this Agreement. We will give you advance written notice of the changes and a right to opt out to the extent required by law.**

## Default

You default under this Agreement if you fail to pay the Minimum Payment Due by its due date; pay by a check or similar instrument that is not honored or that we must return because it cannot be processed; pay by electronic debit that is returned unpaid; file for bankruptcy; or default under any other Card Agreement that you have with us. If you default, we may close your account and, to the extent permitted by law, demand immediate payment of the total balance. If you gave us a security interest in a Certificate of Deposit, we may use the deposit amount to pay any amount you owe.

## Refusal of the Card, Closed Accounts, and Related Provisions

**Refusal of the Card.** We do not guarantee approval of transactions. We are not liable for transactions that are not approved. That is true even if you have enough credit. We may limit the number of transactions approved in one day. If we detect unusual or suspicious activity, we may suspend your credit privileges.

**Preauthorized Charges.** We may suspend any automatic or other preauthorized card charges you arrange with a third party. We may do this if you default; if the card is lost or stolen; or we change your account for any reason. If we do

this, you are responsible for paying the third party directly if you wish to do so. You are also responsible for reinstating the preauthorized charges if you wish to do so and we permit it.

**Lost or Stolen Cards, Account Numbers, or Cash Convenience and Balance Transfer Checks.** You must call us if any card, account number, or check is lost or stolen. You must also call us if you think someone used or may use them without permission. When you call, we may require you to provide information to help our investigation. We may require you to provide this information in writing. For example, we may ask you to identify any charges that were not made by you or someone authorized by you. We may also ask you to confirm that you received no benefit from those charges.

**Closing Your Account.** You may close your account by notifying us in writing or over the phone. If you close your account, you must still repay the total balance in accordance with this Agreement. We may also close your account or suspend account privileges at any time for any reason. We may do this without prior notice to you. We may also reissue a different card at any time. You must return any card to us upon request.

**Closing Secured Accounts.** If your account is a secured account, you gave us a security interest in a Certificate of Deposit. This secures repayment of your account. If you withdraw your funds from the Certificate of Deposit, we will close your account.

---

# ARBITRATION

***PLEASE READ THIS PROVISION OF THE AGREEMENT CARFULLY.* IT PROVIDES THAT ANY DISPUTE MAY BE RESOLVED BY BINDING ARBITRATION. ARBITRATION REPLACES THE RIGHT TO GO TO COURT, INCLUDING THE RIGHT TO A JURY AND THE RIGHT TO PARTICIPATE IN A CLASS ACTION OR SIMILAR PROCEEDING. IN ARBITRATION, A DISPUTE IS RESOLVED BY AN ARBITRATOR INSTEAD OF A JUDGE OR JURY. ARBITRATION PROCEDURES ARE SIMPLER AND MORE LIMITED THAN COURT PROCEDURES.**

***Agreement to Arbitrate:*** Either you or we may, without the other's consent, elect mandatory, binding arbitration for any claim, dispute, or controversy between you and us (called "Claims").

## *Claims Covered*

**What Claims are subject to arbitration?** All Claims relating to your account, a prior related account, or our relationship are subject to arbitration, including Claims regarding the

application, enforceability, or interpretation of this Agreement and this arbitration provision. All Claims are subject to arbitration, no matter what legal theory they are based on or what remedy (damages, or injunctive or declaratory relief) they seek. This includes Claims based on contract, tort (including intentional tort), fraud, agency, your or our negligence, statutory or regulatory provisions, or any other sources of law; Claims made as counterclaims, cross-claims, third-party claims, interpleaders or otherwise; and Claims made independently or with other claims. A party who initiates a proceeding in court may elect arbitration with respect to any Claim advanced in that proceeding by any other party. Claims and remedies sought as part of a class action, private attorney general or other representative action are subject to arbitration on an individual (non-class, non-representative) basis, and the arbitrator may award relief only on an individual (non-class, non-representative) basis.

**Whose Claims are subject to arbitration?** Not only ours and yours, but also Claims made by or against anyone connected with us or you or claiming through us or you, such as a co-applicant or authorized user of your account, an employee, agent, representative, affiliated company, predecessor or successor, heir, assignee, or trustee in bankruptcy.

**What time frame applies to Claims subject to arbitration?** Claims arising in the past, present, or future, including Claims arising before the opening of your account, are subject to arbitration.

**Broadest interpretation.** Any questions about whether Claims are subject to arbitration shall be resolved by interpreting this arbitration provision in the broadest way the law will allow it to be enforced. This arbitration provision is governed by the Federal Arbitration Act (the "FAA").

**What about Claims filed in Small Claims Court?** Claims filed in a small claims court are not subject to arbitration, so long as the matter remains in such court and advances only an individual (non-class, non-representative) Claim.

**What about debt collections?** We and anyone to whom we assign your debt will not initiate an arbitration proceeding to collect a debt from you unless you assert a Claim against us or our assignee. We and any assignee may seek arbitration on an individual basis of any Claim asserted by you, whether in arbitration or any proceeding, including in a proceeding to collect a debt. You may seek arbitration on an individual basis of any Claim asserted against you, including in a proceeding to collect a debt.

### *How Arbitration Works*

**How does a party initiate arbitration?** The party filing an arbitration must choose one of the following two arbitration firms and follow its rules and procedures for initiating and pursuing an arbitration: American Arbitration Association or JAMS. Any arbitration hearing that you attend will be held at a place chosen by the arbitration firm in the same city as the U.S. District Court closest to your then current billing address, or at some other place to which you and we agree in writing. You may obtain copies of the current rules of each of the arbitration firms and forms and instructions for initiating an arbitration by contacting them as follows:

> American Arbitration Association
> 800-778-7879 (toll-free)
> Website: www.adr.org

> JAMS
> 800-352-5267 (toll-free)
> Website: www.jamsadr.com

At any time you or we may ask an appropriate court to compel arbitration of Claims, or to stay the litigation of Claims pending arbitration, even if such Claims are part of a lawsuit, unless a trial has begun or a final judgment has been entered. Even if a party fails to exercise these rights at any particular time, or in connection with any particular Claims, that party can still require arbitration at a later time or in connection with any other Claims.

**What procedures and law are applicable in arbitration?** A single, neutral arbitrator will resolve Claims. The arbitrator will be either a lawyer with at least ten years experience or a retired or former judge, selected in accordance with the rules of the arbitration firm. The arbitration will follow procedures and rules of the arbitration firm in effect on the date the arbitration is filed unless those procedures and rules are inconsistent with this Agreement, in which case this Agreement will prevail. Those procedures and rules may limit the discovery available to you or us. The arbitrator will take reasonable steps to protect customer account information and other confidential information if requested to do so by you or us. The arbitrator will apply applicable substantive law consistent with the FAA and applicable statutes of limitations, will honor claims of privilege recognized at law, and will have the power to award to a party any damages or other relief provided for under applicable law. You or we may choose to have a hearing and be represented by counsel. The arbitrator will make any award in writing and, if requested by you or us, will provide a brief statement of the reasons for the award. An

award in arbitration shall determine the rights and obligations between the named parties only, and only in respect of the Claims in arbitration, and shall not have any bearing on the rights and obligations of any other person, or on the resolution of any other dispute.

**Who pays?** Whoever files the arbitration pays the initial filing fee. If we file, we pay; if you file, you pay, unless you get a fee waiver under the applicable rules of the arbitration firm. If you have paid the initial filing fee and you prevail, we will reimburse you for that fee. If there is a hearing, we will pay any fees of the arbitrator and arbitration firm for the first day of that hearing. All other fees will be allocated as provided by the rules of the arbitration firm and applicable law. However, we will advance or reimburse your fees if the arbitration firm or arbitrator determines there is good reason for requiring us to do so, or if you ask us and we determine there is good reason for doing so. Each party will bear the expense of that party's attorneys, experts, and witnesses, and other expenses, regardless of which party prevails, but a party may recover any or all expenses from another party if the arbitrator, applying applicable law, so determines.

**Who can be a party?** Claims must be brought in the name of an individual person or entity and must proceed on an individual (non-class, non-representative) basis. The arbitrator will not award relief for or against anyone who is not a party. If you or we require arbitration of a Claim, neither you, we, nor any other person may pursue the Claim in arbitration as a class action, private attorney general action or other representative action, nor may such Claim be pursued on your or our behalf in any litigation in any court. Claims, including assigned Claims, of two or more persons may not be joined or consolidated in the same arbitration. However, applicants, co-applicants, authorized users on a single account and/or related accounts, or corporate affiliates are here considered as one person.

**When is an arbitration award final?** The arbitrator's award is final and binding on the parties unless a party appeals it in writing to the arbitration firm within fifteen days of notice of the award. The appeal must request a new arbitration before a panel of three neutral arbitrators designated by the same arbitration firm. The panel will consider all factual and legal issues anew, follow the same rules that apply to a proceeding using a single arbitrator, and make decisions based on the vote of the majority. Costs will be allocated in the same way they are allocated for arbitration before a single arbitrator. An award by a panel is final and binding on the parties after fifteen days has passed. A final and binding award is subject

to judicial review and enforcement as provided by the FAA or other applicable law.

### *Survival and Severability of Terms*

This arbitration provision shall survive: (i) termination or changes in the Agreement, the account, or the relationship between you and us concerning the account; (ii) the bankruptcy of any party; and (iii) any transfer, sale or assignment of your account, or any amounts owed on your account, to any other person or entity. If any portion of this arbitration provision is deemed invalid or unenforceable, the entire arbitration provision shall not remain in force. No portion of this arbitration provision may be amended, severed or waived absent a written agreement between you and us.

## Governing Law and Enforcing our Rights

**Governing Law.** Federal law and the law of South Dakota, where we are located, govern the terms and enforcement of this Agreement.

**Enforcing this Agreement.** We will not lose our rights under this Agreement because we delay in enforcing them or fail to enforce them.

**Collection Costs.** To the extent permitted by law, you are liable to us for our legal costs if we refer collection of your account to a lawyer who is not our salaried employee. These costs may include reasonable attorneys' fees. They may also include costs and expenses of any legal action.

**Assignment.** We may assign any or all of our rights and obligations under this Agreement to a third party.

## For Further Information

Call us toll-free for further information. Call the toll-free Customer Service telephone number shown on the billing statement or on the back of your card. You can also call local or toll-free Directory Assistance to get our telephone number.

Ken Stork
Vice President

Citibank, N.A.
P.O. Box 6000
Sioux Falls, SD 57117

## <u>Your Billing Rights: Keep this Document for Future Use</u>
**This notice tells you about your rights and our responsibilities under the Fair Credit Billing Act.**

## <u>What To Do If You Find A Mistake On Your Statement</u>
If you think there is an error on your statement, write to us at the address for billing inquiries and correspondence shown on the front of your statement.

In your letter, give us the following information:
- <u>Account information</u>: Your name and account number.
- <u>Dollar amount</u>: The dollar amount of the suspected error.
- <u>Description of problem</u>: If you think there is an error on your bill, describe what you believe is wrong and why you believe it is a mistake.

You must contact us:
- Within 60 days after the error appeared on your statement.
- At least 3 business days before an automated payment is scheduled, if you want to stop payment on the amount you think is wrong.

You must notify us of any potential errors <u>in writing</u>. You may call us, but if you do we are not required to investigate any potential errors and you may have to pay the amount in question.

## <u>What Will Happen After We Receive Your Letter</u>
**When we receive your letter, we must do two things:**

1. Within 30 days of receiving your letter, we must tell you that we received your letter. We will also tell you if we have already corrected the error.

2. Within 90 days of receiving your letter, we must either correct the error or explain to you why we believe the bill is correct.

**While we investigate whether or not there has been an error:**
- We cannot try to collect the amount in question, or report you as delinquent on that amount.
- The charge in question may remain on your statement, and we may continue to charge you interest on that amount.
- While you do not have to pay the amount in question, you are responsible for the remainder of your balance.

- We can apply any unpaid amount against your credit limit.

**After we finish our investigation, one of two things will happen:**

- <u>If we made a mistake</u>: You will not have to pay the amount in question or any interest or other fees related to that amount.
- <u>If we do not believe there was a mistake</u>: You will have to pay the amount in question, along with applicable interest and fees. We will send you a statement of the amount you owe and the date payment is due. We may then report you as delinquent if you do not pay the amount we think you owe.

If you receive our explanation but still believe your bill is wrong, you must write to us within <u>10 days</u> telling us that you still refuse to pay. If you do so, we cannot report you as delinquent without also reporting that you are questioning your bill. We must tell you the name of anyone to whom we reported you as delinquent, and we must let those organizations know when the matter has been settled between us.

If we do not follow all of the rules above, you do not have to pay the first $50 of the amount you question even if your bill is correct.

## <u>Your Rights If You Are Dissatisfied With Your Credit Card Purchases</u>

If you are dissatisfied with the goods or services that you have purchased with your credit card, and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the purchase.

To use this right, all of the following must be true:

1. The purchase must have been made in your home state or within 100 miles of your current mailing address, and the purchase price must have been more than $50. (Note: Neither of these are necessary if your purchase was based on an advertisement we mailed to you, or if we own the company that sold you the goods or services.)
2. You must have used your credit card for the purchase. Purchases made with cash advances from an ATM or with a check that accesses your credit card account do not qualify.
3. You must not yet have fully paid for the purchase.

If all of the criteria above are met and you are still dissatisfied with the purchase, contact us <u>in writing</u> at the address for billing inquiries and correspondence shown on the front of your statement.

While we investigate, the same rules apply to the disputed amount as discussed above. After we finish our investigation, we will tell you our decision. At that point, if we think you owe an amount and you do not pay, we may report you as delinquent.

© 2013 Citibank, N.A.

8049170EE                                                  07/13

# EXHIBIT B

SITE:JX-CI TM:LG-8200 ACID:JALGPXQ
09/24/22      12:08:32

**PABLO J ESPIN**
Member Since 2014  Account number ending in: 7140
Billing Period: **09/19/14-10/20/14**

www.citicards.com
**Customer Service 1-800-THANKYOU(1-800-842-6596)**
**TTY:711**
BOX 6500 SIOUX FALLS, SD 57117

## OCTOBER STATEMENT

| | |
|---|---|
| **Minimum payment due:** | **$38.00** |
| **New balance as of 10/20/14:** | **$2,576.48** |
| **Payment due date:** | **11/16/14** |

**Late Payment Warning:** If we do not receive your minimum payment by the date listed above, you may have to pay a late fee of up to $35 and your APRs may be increased up to the variable Penalty APR of 29.99%.

For information about credit counseling services, call 1-877-337-8187. New York residents may contact the New York State Banking Department to obtain a comparative listing of credit card rates, fees and grace periods by calling 1-877-226-5697.

## Account Summary

| | |
|---|---|
| Previous balance | $0.00 |
| Payments | -$0.00 |
| Credits | -$0.00 |
| Purchases | +$2,528.58 |
| Cash advances | +$0.00 |
| Fees | +$47.90 |
| Interest | +$0.00 |
| **New balance** | **$2,576.48** |

## Credit Limit

| | |
|---|---|
| Credit limit | $10,500 |
| Includes $3,200 cash advance limit | |
| Available credit | $7,923 |
| Includes $3,200 available for cash advances | |

**Total ThankYou Member**
**Available Point Balance:**        **0**
as of 10/01/14

**» See page 3 for more information about your rewards.**

**For Payments, send check to: CITI CARDS, PO Box 70166, Philadelphia PA, 19176-0166**

| | |
|---|---|
| **Minimum payment due** | **$38.00** |
| **New balance** | **$2,576.48** |
| **Payment due date** | **11/16/14** |

**Amount enclosed:**

Account number ending in 7140
**Please make check payable to CITI CARDS.**

PABLO J ESPIN
████████████
SELDEN  NY  11784-1858

CITI CARDS
PO Box 70166
Philadelphia PA 19176-0166

**www.citicards.com**

Customer Service 1-800-THANKYOU(1-800-842-6596)
TTY:711

Page 2 of 3

PABLO J ESPIN

## Account Summary

| Trans. date | Post date | Description | Amount |
|---|---|---|---|
| **Standard Purchases** | | | |
| 10/04 | 10/04 | THE HOME DEPOT 1265  S SETAUKET  NY | $837.52 |
| W3LH*F90 | 61 | A5200USA    2222 | |
| 10/06 | 10/06 | BUY BUY BABY #3004   HUNTINGTON ST NY | $43.44 |
| PJNTFY3G | 61 | A5719USA    2222 | |
| 10/17 | 10/17 | EL PEQUENO COFFEE SHOP 718-205-7128  NY | $50.69 |
| G3XMGH00 | 61 | A5812USA    2222 | |
| **Balance Transfer-Offer 4 (0.000%)** | | | |
| 09/30 | 09/30 | BAL XFR. CHASE MASTERCARD & VISA | $1,596.93 |
| B3605564 | 61 | Q0000US | |

### Fees charged

| Date | Description | Amount |
|---|---|---|
| 10/20 | MEMBERSHIP FEE OCT 14-SEP 15 | $0.00 |
| 00000000 | 74    0000 | |
| 10/20 | BALANCE TRANSFER FEE | $47.90 |
| 00000000 | 88    0000 | |
| **Total fees charged in this billing period** | | **$47.90** |

### Interest charged

| | |
|---|---|
| **Total interest charged in this billing period** | **$0.00** |

### 2014 totals year-to-date

| | |
|---|---|
| Total fees charged in 2014 | **$47.90** |
| Total interest charged in 2014 | **$0.00** |

### Interest charge calculation

Days in billing cycle: **32**

Your **Annual Percentage Rate (APR)** is the annual interest rate on your account.

| Balance type | Annual percentage rate (APR) | Balance subject to interest rate | Interest charge |
|---|---|---|---|
| PURCHASES | | | |
| Standard Purch | 0.00% | $0.00 (D) | $0.00 |
| (Introductory Rate) | | | |
| Offer 4 | 0.00% | $1,047.99 (D) | $0.00 |
| (Balance Transfer Rate Expires 10/01/15) | | | |
| ADVANCES | | | |
| Standard Adv | 25.24% (V) | $0.00 (D) | $0.00 |

Your Annual Percentage Rate (APR) is the annual interest rate on your account. APRs followed by (V) vary with the market based on the Prime Rate. Balances followed by (D) are determined by the daily balance method (including current transactions).

Your Introductory Purchase rate will expire in 11 billing periods.

**Member ID: N/A**

**ThankYou Points Earned This Period**

| | |
|---|---|
| 2x at Restaurants | 101 |
| 2x on Entertainment | 0 |
| 1x on Other Purchases | 881 |
| **Total Earned** | **982** |

» Visit **thankyou.com** to redeem points or see full rewards details.

Bonus Points may take one to two billing cycles to appear on your statement. Please refer to the specific terms and conditions pertaining to the promotion for further details.

## Account messages

You may pay all or part of your account balance at any time.  However, you must pay, by the payment due date, at least the minimum payment due.

If you have not received your new card, please call the Customer Service number on this statement.

**PABLO J ESPIN**

Each Balance Transfer is subject to a one-time transaction fee.

Our records show home phone ███████████ and business phone
███████████.  If incorrect, please update your account online at
www.citicards.com or call us at 1-800-THANKYOU(1-800-842-6596) to let us
know.

JA84

GZ J IDK'E''



Citibank, N.A.
PO Box 6148
Sioux Falls, SD 57117-6148



October 21, 2016

PABLO J ESPIN
█████████████
SELDEN NY 11784-1858



## An updated Card Agreement is enclosed

We're replacing your existing Card Agreement with a new version, which is enclosed. It's designed with you in mind and based on what customers told us they want to see. Your updated Card Agreement is effective immediately.

## A new, clean design with simple language

- The new format includes a Card Agreement Guide that describes the contents of each section, so you can easily find the information you need
- Credit card terms are important, so we've included examples to help you understand further - just look for the blue box
- Plus, when you see *"Note"* - that's where we've added tips and explanations to help you better manage your account

## Information on the arbitration provision

One of the changes we're making is giving you the choice to reject the arbitration provision. To help you understand arbitration, we've also updated Section 11 of the Card Agreement. If you choose to reject arbitration, follow the instructions on the next page. Please note you have until 12/25/2016 to mail us your rejection letter. If you reject, your account will no longer be subject to arbitration.

## When you speak, we listen

Your feedback continues to help us understand the things that are important to you and helped guide the creation of this updated Card Agreement. If you have any questions or comments, contact us at 1-866-565-7030 (TTY/TDD: 1-800-325-2865).

> **PABLO J ESPIN**
> Account ending 7000

0. L00 20 4250 03. l2016102100325721. 083. l. ZZ. SY. 8000. S Y S T E M B 7623125971493765.

JA86

PABLO J ESPIN
Account ending 7000
Page 2 of 4

---

| **Important Change to Your Account Terms** |
| --- |
| The following is a summary of one of the changes being made to your account terms. This change will take effect immediately.<br><br>**Arbitration**<br>To review your new Arbitration provision, please see "Details about the change" below.<br><br>**You have the right to reject this arbitration provision. If you reject, your account will no longer be subject to an arbitration provision. You can reject arbitration by writing to us at PO Box 6195, Sioux Falls, SD 57117-6195 stating that you would like to reject the arbitration provision. Your letter must be postmarked on or before 12/25/2016. We will not close your account if you reject this change.**<br><br>You do not have the right to reject any other changes in the attached Card Agreement. |

**Details about the change:**
Your updated Card Agreement includes the following provision, which is described under "Important Change to Your Account Terms" above.

**Arbitration**
*Please read this provision of the Agreement carefully.*

This section provides that disputes may be resolved by binding arbitration. Arbitration replaces the right to go to court, have a jury trial or initiate or participate in a class action. In arbitration, disputes are resolved by an arbitrator, not a judge or jury. Arbitration procedures are simpler and more limited than in court. This arbitration provision is governed by the Federal Arbitration Act (FAA), and shall be interpreted in the broadest way the law will allow.

**Covered claims**
- *You or we may arbitrate* any claim, dispute or controversy between you and us arising out of or related to your Account, a previous related account or our relationship (called "Claims").
- **If arbitration is chosen by any party, neither you nor we will have the right to litigate that Claim in court or have a jury trial on that Claim.**

Except as stated below, all Claims are subject to arbitration, no matter what legal theory they're based on or what remedy (damages, or injunctive or declaratory relief) they seek, including Claims based on contract, tort (including intentional tort), fraud, agency, your or our negligence, statutory or regulatory provisions, or any other sources of law; Claims made as counterclaims, cross-claims, third-party claims, interpleaders or otherwise; Claims made regarding past, present, or future conduct; and Claims made independently or with other claims. This also includes Claims made by or against anyone connected with us or you or claiming through us or you, or by someone making a claim through us or you, such as a co-applicant, Authorized User, employee, agent, representative or an affiliated/parent/subsidiary company.

**Arbitration limits**
- Individual Claims filed in a small claims court are not subject to arbitration, as long as the matter stays in small claims court.
- We won't initiate arbitration to collect a debt from you unless you choose to arbitrate or assert a Claim against us. If you assert a Claim against us, we can choose to arbitrate, including actions to collect a debt from you. You may arbitrate on an individual basis Claims brought against you, including Claims to collect a debt.

PABLO J ESPIN
Account ending 7000
Page 3 of 4

7000002

- Claims brought as part of a class action, private attorney general or other representative action can be arbitrated only on an individual basis. The arbitrator has no authority to arbitrate any claim on a class or representative basis and may award relief only on an individual basis. If arbitration is chosen by any party, neither you nor we may pursue a Claim as part of a class action or other representative action. Claims of 2 or more persons may not be combined in the same arbitration. However, applicants, co-applicants, Authorized Users on a single account and/or related accounts, or corporate affiliates are here considered as one person.

**How arbitration works**

- Arbitration shall be conducted by the American Arbitration Association ("AAA") according to this arbitration provision and the applicable AAA arbitration rules in effect when the claim is filed ("AAA Rules"), except where those rules conflict with this arbitration provision. You can obtain copies of the AAA Rules at the AAA's website (www.adr.org) or by calling 800-778-7879. You or we may choose to have a hearing, appear at any hearing by phone or other electronic means, and/or be represented by counsel. Any in-person hearing will be held in the same city as the U.S. District Court closest to your billing address.
- Arbitration may be requested any time, even where there is a pending lawsuit, unless a trial has begun or a final judgment entered. Neither you nor we waive the right to arbitrate by filing or serving a complaint, answer, counterclaim, motion, or discovery in a court lawsuit. To choose arbitration, a party may file a motion to compel arbitration in a pending matter and/or commence arbitration by submitting the required AAA forms and requisite filing fees to the AAA.
- The arbitration shall be conducted by a single arbitrator in accord with this arbitration provision and the AAA Rules, which may limit discovery. The arbitrator shall not apply any federal or state rules of civil procedure for discovery, but the arbitrator shall honor claims of privilege recognized at law and shall take reasonable steps to protect Account information and other confidential information of either party if requested to do so. The arbitrator shall apply applicable substantive law consistent with the FAA and applicable statute of limitations, and may award damages or other relief under applicable law.
- The arbitrator shall make any award in writing and, if requested by you or us, may provide a brief statement of the reasons for the award. An arbitration award shall decide the rights and obligations only of the parties named in the arbitration, and shall not have any bearing on any other person or dispute.

**Paying for arbitration fees**

- We will pay your share of the arbitration fee for an arbitration of Claims of $75,000 or less if they are unrelated to debt collection. Otherwise, arbitration fees will be allocated according to the applicable AAA Rules. If we prevail, we may not recover our arbitration fees, unless the arbitrator decides your Claim was frivolous. All parties are responsible for their own attorney's fees, expert fees and any other expenses, unless the arbitrator awards such fees or expenses to you or us based on applicable law.

**The final award**

- Any award by an arbitrator is final unless a party appeals it in writing to the AAA within 30 days of notice of the award. The arbitration appeal shall be determined by a panel of 3 arbitrators. The panel will consider all facts and legal issues anew based on the same evidence presented in the prior arbitration, and will make decisions based on a majority vote. Arbitration fees for the arbitration appeal shall be allocated according to the applicable AAA Rules. An award by a panel on appeal is final. A final award is subject to judicial review as provided by applicable law.

**Survival and Severability of Terms**

This arbitration provision shall survive changes in this Agreement and termination of the Account or the relationship between you and us, including the bankruptcy of any party and any sale of your Account, or amounts owed on your Account, to another person or entity. If any part of this arbitration provision is

PABLO J ESPIN
Account ending 7000
Page 4 of 4

deemed invalid or unenforceable, the other terms shall remain in force, except that there can be no arbitration of a class or representative Claim. This arbitration provision may not be amended, severed or waived, except as provided in this Agreement or in a written agreement between you and us.

# Card Agreement Guide

This Guide will help you easily identify sections of the Card Agreement and give you a brief overview of the contents of each section. This is not intended to be a complete summary of the Card Agreement's contents, and we encourage you to read your entire Card Agreement, including the arbitration provision, before you use your Account.

**1  DEFINITIONS**
Lists the meanings of particular phrases and terms used in the Card Agreement.

**2  YOUR ACCOUNT**
Describes some of your responsibilities for using your Account.

**3  ANNUAL PERCENTAGE RATES & INTEREST CHARGES**
Shows how we calculate interest rates and how that affects your Account balance.

**4  FEES & FOREIGN CURRENCY CONVERSION**
Describes the fees that can be applied to your Account, including annual membership fees, late fees, as well as foreign transaction fees for Purchases not in U.S. dollars.

**5  PAYMENTS**
Shows how your monthly Minimum Payment Due is calculated, tells you how we apply your payments to balances, and gives you certain instructions for making payments (and tells you the possible consequences of not following those instructions).

**6  AUTHORIZED USERS**
Describes an Authorized User's rights and your responsibility for that user. Also describes what information we can share about you and your Authorized User.

**7  DEFAULT, CLOSING OR SUSPENDING YOUR ACCOUNT**
Tells you when we may require immediate payment of your total Account balance, and explains when we may close or suspend your Account, and when you may close your Account.

**8  CREDIT REPORTING**
Describes what information we provide about you to credit reporting agencies, and how to dispute items on your report. This section also explains how we use information we get about you from those agencies.

**9  ACCOUNT INFORMATION, INFORMATION SHARING AND COMMUNICATIONS**
Explains that your personal information we use to manage your Account should always be up to date. Also notes that we share information about you and your Account. In addition, this section describes how we may contact you.

**10  TRANSACTIONS**
Provides important information about merchant credits, recurring Transactions and card refusals.

**11  ARBITRATION**
Explains that you cannot go to court, have a jury trial or initiate or participate in a class action if you have a dispute with us. Instead, this provision tells you that the dispute must be resolved by a professional arbitrator, not a judge or jury. This section also explains how arbitration works and some of the differences between resolving a dispute in arbitration and resolving one in court.

**12  AGREEMENT & BENEFIT CHANGES**
Explains that we can make changes to the Card Agreement and your card benefits and features.

**13  MISCELLANEOUS**
Explains subjects that aren't included in previous sections.

**14  YOUR BILLING RIGHTS**
Explains your billing rights, which include how to address possible statement mistakes and your rights if you're not satisfied with a Purchase.

700004

# Card Agreement

This Card Agreement (**Agreement**) is your contract with us.

The *Facts about Interest and Fees* document (***Fact Sheet***) is part of this Agreement. The **Fact Sheet** shows important information about your Account, such as your annual percentage rates and certain fees. Any amendments to this Agreement also are part of this Agreement.

**Please read all parts of this Agreement, including the arbitration provision, and keep it for your records.**

*Note: Throughout the Agreement are examples, helpful tips, and additional explanations that will make the Agreement easier to understand.*

## 1

## DEFINITIONS

**Account** - Your Citi ThankYou® Preferred Account.

**Annual Percentage Rate or (APR)** - A rate, shown as a percentage, used to calculate interest on the balance on your Account.

**Authorized User** - Any person you allow to use your Account with a Card we provided with that person's name.

**Balance Transfer** - Use of a Balance Transfer offer, including use of a check that accesses your Account for any transaction, or the transfer of a balance from another credit account to your Account.

**Billing Period** - The period of time between each date when we create a statement for your Account. A Billing Period is usually 28-33 days. For each Billing Period, your statement will show any Transactions, other charges, payments and other credits posted during that Billing Period.

**Business Day** - Monday through Friday, excluding federal holidays.

**Card** - One or more cards or other devices (including an account number) used to access your Account to obtain credit.

**Card Networks** - Organizations, such as MasterCard, Visa and American Express, that facilitate the payment process between a cardmember, merchants and a card issuer.

**Cash Advance** - Use of your Card to get cash, including foreign currency, or for what we consider a cash-like transaction. Examples include using your Card for: ATM and teller withdrawals, wire transfers, money orders, traveler's checks, lottery tickets, gaming chips and other methods used for gambling, wagers and other betting transactions.

**Consumer Reporting Agency** - An organization, such as Experian,

Equifax and TransUnion, that compiles credit information for the purpose of generating consumer credit reports. It's also known as a "credit bureau" and a "credit reporting agency."

**Include and including** - These terms mean "include [or including] without limitation."

**Late Payment** - A payment is late if you don't pay at least an amount equal to the Minimum Payment Due minus any Overlimit Amount by the payment due date.

**New Balance** - The total amount you owe us at the end of each Billing Period. This amount is shown on each statement under the heading "New Balance". We explain how we calculate the New Balance below.

**Overlimit Amount** - The amount by which your Account balance exceeds your credit limit in any Billing Period.

**Purchase** - Use of your Card to buy goods and services. Balance Transfers and Cash Advances are not Purchases.

**Returned Payment** - A payment that isn't honored by your financial institution.

**Transaction** - A Balance Transfer, Cash Advance or Purchase, as applicable.

**we, us,** and **our** - Citibank, N.A.

**you** and **your** - The cardmember who opened the Account.

*You'll find definitions of other terms within this Agreement.*

## 2

## YOUR ACCOUNT

Your Account use is subject to this Agreement. You must pay us for all amounts due on your Account, including:

1. Transactions you make, even if you didn't present your Card or sign for the Transaction;

2. Transactions an Authorized User makes;

3. Transactions that other people make if you or an Authorized User let them use your Account; and

4. Any fees and interest charges on the Account.

**Binding Agreement.** This Agreement takes effect once you use your Card. Even if you don't use your Card, this Agreement will take effect unless you contact us to cancel your Account within 30 days after we sent you this Agreement.

**Credit Limit.** We assign a credit limit to your Account. Part of this credit limit may be available for Cash Advances, and there may be a limit on the amount of Cash Advances you can take in a given period. We may authorize Transactions that cause your balance to exceed your credit limit.

**ACCOUNT USE**

**Consumer Purposes.** You aren't permitted to use your Account for business purposes. If you do use your Account for business purposes, this Agreement still applies, and you must pay us for those Transactions. You may also have to pay us for any damages and/or expenses resulting from that use. In addition, we may close your Account.

**Unlawful Transactions.** You aren't permitted to use your Account for unlawful Transactions. If you do use your Account for unlawful Transactions, this Agreement still applies and you must pay us for those Transactions. You also may have to pay the Card Network and/or us for any damages and expenses resulting from that use. In addition, we may close your Account.

**Mobile Phones or Other Devices.** Smart phones, tablets and other electronic devices can store your Card (such as through a mobile wallet). This means they can be used to make Purchases or other Transactions. Any such Transactions are covered by this Agreement. Apps that use your Card to make Transactions may have separate terms of use. We're not responsible if you violate those terms, or for any consequences resulting from any violation.

*Note: It's important to protect your devices the same way you protect your Card. Anyone who can access your Card using your device also can make charges to your Account using that device.*

## 3

## ANNUAL PERCENTAGE RATES & INTEREST CHARGES

**The following sections explain how we calculate the interest you owe each Billing Period.**

**APRs.** We use APRs to calculate interest charges on your Account. Different APRs may apply to different Transactions. See the listing of your APRs on the **Fact Sheet.**

**Variable APRs.** A variable APR is an APR that can change each Billing Period. We calculate each variable APR first by taking the U.S. Prime Rate from *The Wall Street Journal* (**WSJ**) two Business Days before the last day of each Billing Period. (If the *WSJ* doesn't publish the U.S. Prime Rate that day, then we'll use another publication.) Then we add to the U.S. Prime Rate a certain percentage amount, which we call the **Margin.** You can find the Margin we use for your Account in the Details About Your Interest Rate section of the **Fact Sheet.**

**How is a variable APR calculated?**

If the U.S. Prime Rate published in the WSJ two Business Days before the end of a Billing Period is **5%;** and
If the Margin is **13.99%;** then
Add the two together to calculate a variable APR:

| 5% + 13.99% = 18.99% |
| --- |

Your variable APRs will increase if the U.S. Prime Rate increases and decrease if the U.S. Prime Rate decreases. If a variable APR increases, then your interest charges and Minimum Payment Due may increase.

If the U.S. Prime Rate changes, we'll apply the new variable APR starting from the first day of the Billing Period when we take the U.S. Prime Rate from the *WSJ*. The new APR will apply to existing balances, as well as balances added to your Account after the change.

**Penalty APR.** If you have a Late or Returned Payment, we may apply a penalty APR to your Account. We determine your penalty APR based on your creditworthiness.

- **Penalty APR for new Transactions (less than 60 days late).** If you make a Late Payment and it's less than 60 days late or you have a Returned Payment, the penalty APR only will apply to new Transactions. We'll review your Account from time to time to determine if a penalty APR should be reduced.
- **Penalty APR for existing balances and new Transactions (60 or more days late).** If we haven't received your Minimum Payment Due within 60 days after its due date, we may apply the penalty APR to both the existing balances and new Transactions. If you make your next six consecutive Minimum Payments Due on time, we'll stop applying the penalty APR to existing balances and new Transactions. If you don't make your next six consecutive Minimum Payments Due on time, the penalty APR may continue to apply indefinitely to existing balances and new Transactions.

**Daily Balance**

We calculate interest on your Account each Billing Period first by calculating your daily balances. The following explains how we do that.

**Here's how and when Transactions, fees and credits are applied to the balances on your Account:**

- We add the amount of a Purchase or Balance Transfer to the Purchase balance as of the post date on your statement.
- We add the amount of a Cash Advance to the Cash Advance balance as of the post date on your statement.
- We add a Balance Transfer fee to the Purchase balance as of the post date on your statement. We add a Cash Advance fee to the Cash Advance balance as of the post date on your statement. We'll add any other fees to the balance of our choice. If you're charged interest in a Billing Period, but the amount calculated is less than $0.50, we'll add additional interest to the balance(s) of our choice so that you'll be charged $0.50 in interest for that Billing Period.
- We subtract credits and payments as of the post date shown on your statement.
- Each balance may have a different APR. Certain categories of Transactions in a balance may have multiple APRs. For example, you may make a Purchase or Balance Transfer that's subject to a promotional APR. Your balances, and their corresponding APRs, are shown on your statement.

> **Note:** The post date shown on your statement will usually be the date of the Transaction, but it may be later.

**Here's how we calculate each of the daily Purchase and Cash Advance balances on your Account:**

- We start with the daily balance from the end of the previous day.
- We add any new Transactions, fees and other charges, including interest accrued on the previous day's balance. This means that interest is compounded daily.
- We subtract any credits or payments credited as of that day.

- We make additional adjustments as appropriate, subject to applicable law (as an example, for a disputed charge).

This gives us the daily balance for that day.

> Daily balance for purchases from the previous day
> + New purchases
> + Fees and interest accrued on the previous day's Purchase balance
> - Payments, credits and adjustments posted that day
> = New daily balance for Purchases

**Interest Calculation.** Each daily balance may have a different APR. Certain categories of Transactions in a daily balance may have multiple APRs. For example, you may make a Purchase or Balance Transfer that's subject to a promotional APR. If a daily balance on your Account is subject to an APR, we'll charge interest on that daily balance. We use the daily balance method (which includes new Transactions). If interest applies to a balance, it will start applying on the day a charge is added to that balance and continue until that balance is paid in full. We consider a credit balance as a balance of zero when calculating interest on that balance.

- We multiply each daily balance by its applicable daily periodic rates (each applicable APR divided by 365).
- We do this for each day in the Billing Period. This gives us the daily interest amounts.
- Then we total all the daily interest amounts for all the daily balances. This gives us the total interest for the Billing Period.

> **Note:** Your balances, and their corresponding APRs, are shown on your statement.

**Calculating the New Balance.** To calculate the New Balance at the end of each Billing Period, we begin with the total Account balance at the start of that Billing Period. Then we add any Transactions that are new to the Account during that Billing Period. Then we subtract any credits applied or payments made during that Billing Period. Then we add any interest charges or fees incurred during that Billing Period and make any other adjustments, as applicable (for example, if you have disputed a charge).

**Grace Period on Purchases.** You won't pay any interest on Purchases if you pay the New Balance, including any Balance Transfers, in full by the payment due date shown on your statement each Billing Period. We call this a *grace period on purchases.* If you don't pay your New Balance, including any Balance Transfers, in full by the payment due date in a Billing Period, you'll pay interest on your Purchases from the date they're posted to your Account. You also won't have a grace period on Purchases again until you pay the New Balance in full by the payment due date 2 Billing Periods in a row.

There's no grace period on Balance Transfers and Cash Advances. This means you'll pay interest on Balance Transfers and Cash Advances from the date these Transactions post to your Account.

700005

## 4

## FEES & FOREIGN CURRENCY CONVERSION

| Fees | Amount | About the Fee |
|------|--------|---------------|
| Late Fee | Up to $35 | We have the right to charge you a late fee if you don't pay at least an amount equal to the Minimum Payment Due minus any Overlimit Amount by the payment due date. The late fee is $25 and, if you make another Late Payment within the next 6 Billing Periods the late fee will be $35. The amount of your late fee will never be higher than your Minimum Payment Due. |
| Returned Payment Fee | Up to $35 | We have the right to charge you a Returned Payment fee of $25 if your bank doesn't honor your payment. If that happens, we'll resubmit the payment request. If your bank doesn't honor another payment within 6 consecutive Billing Periods, the Returned Payment fee will go up to $35. |
| Transaction Fee for Balance Transfers | Either $5 or 3% of the amount of each transfer, whichever is greater. | We charge you a fee for each Balance Transfer. |
| Transaction Fee for Cash Advances | Either $10 or 5% of the amount of each cash advance, whichever is greater. | We charge you a fee for each Cash Advance. |
| Transaction Fee for Purchases in Foreign Currency | 3% of the amount of the Transaction after conversion to U.S. dollars. | We charge you a fee for a Purchase made in a currency other than U.S. dollars, regardless of where the Transaction takes place or who the merchant is. |

### FOREIGN CURRENCY CONVERSION

**Foreign Currency Conversion - Purchases.** A Card Network converts the amount of a Purchase in a foreign currency into U.S. dollars. Each Card Network follows its own procedures for conversion. These procedures include how the Card Network chooses an exchange rate and when to do the conversion. For example, Visa chooses either a government-mandated exchange rate or chooses from a range of rates available on wholesale currency markets (and, in either case, the exchange rate that it chooses may be less favorable than the rate that Visa itself receives when it makes foreign currency transactions). Depending on the policies of each Card Network, the exchange rate chosen may be the one in effect on the day the Card Network does the conversion, or on the day before. The exchange rate that a Card Network uses to convert the Purchase to U.S. dollars may differ from the rate in effect on the date you made the Purchase or on the post date for that Purchase shown on your statement. The Card Network's procedures may change without notice.

If a third party, such as a merchant, converts the amount of a Purchase into U.S. dollars before sending the Purchase to a Card Network, the third party chooses the conversion rate instead of the Card Network.

**Foreign Currency Conversion - Cash Advances.** If you take a Cash Advance in a foreign currency at an ATM or branch of a financial institution, it may not be the Card Network in all instances that converts the Transaction into U.S. dollars. Instead, depending on where the Transaction takes place, another third party, such as a financial institution, ATM network, or ATM operator, may do the conversion. We do not control this. However, if you use your Card for a Cash Advance at a Citibank ATM or branch, then we or our affiliates may do the conversion.

The party that converts a Cash Advance to U.S. dollars will choose the exchange rate and when to do the conversion. The exchange rate in effect on the date the Cash Advance is converted to U.S. dollars may differ from the rate in effect on the date you took the Cash Advance or the post date for that Transaction shown on your statement. The exchange rate may also differ from any rate quoted to you when you made the Transaction.

# 5

## PAYMENTS

**Minimum Payment Due.** You may pay all or a part of your Account balance at any time. You must pay at least the Minimum Payment Due by the Payment Due date each Billing Period.

Your **"Minimum Payment Due"** equals:

- Any amount past due; plus
- Any Overlimit Amount; plus
- The greater of:
  1. The New Balance, if it's less than $25;
  2. $25 if the New Balance is at least $25;
  3. 1% of the New Balance (rounded to the nearest dollar), plus any billed interest or minimum interest charge, plus any late fee; or
  4. 1.5% of the New Balance (rounded to the nearest dollar).

The Minimum Payment Due is never more than the New Balance.

> **Note:** Your Payment Due date is typically the same day of the month, every month. You may request a change to your monthly due date.

**How is the Minimum Payment Due calculated?**

*For example, in a sample Billing Period, an Account with no past due or Overlimit amounts has:*

*New Balance: $2,500*

*Interest: $18.54*

*Since the New Balance is more than $25, and there are no past due or Overlimit amounts, the Minimum Payment Due will be the greater of:*

*1% of the New Balance (1.0% x $2,500: $25.00) + interest ($18.54): $43.54*
*or*
*1.5% of the New Balance (1.5% x $2,500): $37.50*

*Since 1% of the New Balance plus interest ($43.54) is greater than 1.5% of the New Balance ($37.50) the Minimum Payment Due is $43.54.*

**Application of Payments.** We decide how to apply your payments, up to the Minimum Payment Due, to the balances on your Account. We may apply the Minimum Payment Due first to interest charges, then to the balance with the lowest APR and then to balances with higher APRs. If you pay more than the Minimum Payment Due, we'll apply the amount over the Minimum Payment Due first to the balance with the highest APR, then to the balance with the next highest APR, and so on, except as otherwise required by applicable law.

**Payment Instructions.** You must follow the instructions below when making a payment. If you do, we'll credit the payment to your Account as of the day we receive it.

1. You must pay in U.S. dollars.
2. You must use a check or electronic debit issued by a bank in the United States.
3. You must not send us a check dated after the date that we receive it.
4. You must not enclose more than one check per envelope.
5. You must not include any restrictive endorsements on the check.
6. You must follow the additional payment instructions shown on your statement.

If you don't pay in U.S. dollars and we accept your payment, we'll select the currency conversion rate, and you must pay our costs. If you don't follow our payment instructions, we may not accept your payment, or there may be a delay in crediting your Account. Either may result in late fees and additional interest charges to your Account. If you don't follow the instructions in this Agreement or on your statement, we may accept your payment without losing our rights.

We may reject a payment if it's more than the outstanding Account balance. We also may close your Account.

# 6



## AUTHORIZED USERS

**Account Use by Authorized Users.** You can ask us to add one or more Authorized Users to your Account. If we approve, use of your Account by an Authorized User is subject to the terms of this Agreement. You must:

- Obtain permission from each Authorized User before naming him or her as an Authorized User on your Account.
- Make a copy of this Agreement available to each Authorized User.
- Pay us for all charges incurred by each Authorized User.

- Notify us to remove an Authorized User from your Account.

If we remove an Authorized User, in some cases we may close your Account, open a new Account, and issue you a new Card.

You're responsible for:

- Any Transactions made by an Authorized User on your Account.
- Any Transaction made by an Authorized User even if the post date shown on your statement for that Transaction occurs after the date you ask us to remove the Authorized User from your Account.
- Any Transactions made by others if an Authorized User allows them to use your Account.
- Fees and charges resulting from any Transactions made by an Authorized User or others if an Authorized User allows them to use your Account.

**What can Authorized Users do?**

- Report lost or stolen Cards
- Change the billing address for your Account
- Make payments
- Obtain Account information, such as Transaction histories
- Initiate billing disputes
- Request statement copies
- Request refund checks

**Account Information Rights for Authorized Users.** You allow us to discuss your Account with an Authorized User. This includes giving him or her access to your Account information and history. You also agree that an Authorized User may use and receive information about the Account the same way you do. An Authorized User can't add other Authorized Users, adjust the credit limit or close the Account.

**Information about Authorized Users.** You agree to give us certain personal information about each Authorized User. You must let each one know that you'll give us that information and you must have his or her permission to do so. You must have permission from each one to allow us to share information about him or her as allowed by applicable law. This includes information we may get from you, any Authorized User and others. It also includes information about their Transactions on the Account.

**Credit Reporting.** We report information about this Account to Consumer Reporting Agencies in the Authorized User's name that may appear on their credit report. This could include information about:

- Late Payments;
- Returned Payments;
- Overlimit Amounts; and
- Other violations of this Agreement.

You must let each Authorized User know that we report Account information in his or her name. Also, see **Credit Reporting** in Section 8.



**7**

## DEFAULT, CLOSING OR SUSPENDING YOUR ACCOUNT

**Default.** We may require immediate payment of your total Account balance, to the extent allowed by law, if any of the following occurs:

1. You don't pay at least the Minimum Payment Due by the due date.
2. You have a Returned Payment.
3. You file for bankruptcy or some other insolvency proceeding is filed by or against you.
4. You don't honor the terms of this Agreement.
5. You default under any other card agreement you have with us.
6. You're declared incompetent or mentally incapacitated, or in the event of your death.

**Closing or Suspending Your Account.** We may close or suspend your Account if any of the events listed above occurs, or for any reason, or for no reason. We may do this at any time, without notifying you, as allowed by law. We may cancel your current Card and issue you a substitute Card at any time. You also may close your Account at any time by notifying us by telephone or in writing. If we close or suspend your Account, or if you close your Account, you must pay us all amounts you owe on the Account, even if they post to your Account after it's closed or suspended.

**Closing Secured Accounts.** If your Account is a secured Account, you gave us a security interest in a deposit account. This secures repayment of your Account. If you withdraw your funds from the deposit account, we will close your Account. If you gave us a security interest in a deposit account, we may use the deposit amount to pay any amount you owe.

700007

## 8

### CREDIT REPORTING

You allow us to get information about you. We get it from Consumer Reporting Agencies and other sources that provide consumer financial information. You allow us to use it for:

- Renewal of your Account;
- Credit line increases or decreases;
- Administration or review of your Account, collection and any other servicing;
- All other credit-related purposes connected with this Agreement;
- Offers for other cards, insurance products and other services; and
- Other uses permitted by law.

We report Account information in your name, as well as information about you to Consumer Reporting Agencies, on a monthly basis. The information we provide may appear on your credit reports. This can include information about:

- Late Payments;
- Returned Payments;
- Overlimit Amounts; and
- Other violations of this Agreement.

If you think we've given incorrect information to a Consumer Reporting Agency about you (or about an Authorized User), contact Customer Service and we'll research it. We'll let you know if we agree or disagree with you. If we agree with you, we'll contact each Consumer Reporting Agency we reported to and request a correction.

## 9

### ACCOUNT INFORMATION, INFORMATION SHARING AND COMMUNICATIONS

**Changes to Account Information.** You provided certain personal information to us when you opened your Account. You agree to notify us if this information changes. If you don't, or if we ask you to verify your Account information and you cannot, we may suspend or close your Account.

**Information Sharing.** You agree to let us share information about you and your Account as allowed by law. This includes information we get from you and others. Our privacy notice, which is enclosed with your new Account materials, describes reasons Citi can share its customers' personal information.

**COMMUNICATIONS**
**Contacting You.** You agree that we (and/or our service providers or anyone we authorize) may contact you at any phone number, email address, or mailing address you provide or we obtain in other ways. This includes communications to mobile, cellular/wireless, or similar devices. We may contact you by live operator, auto-dialer, recorded or artificial voice, text, or email.

You agree to pay any charges from your plan provider for communications we send to you, as well as communications you send to us.

**How We Capture and Use Voiceprints.** We may use voice recognition technology to verify your identity when you call. We may capture and store your voiceprint for this purpose.

**Call Monitoring.** We may monitor and record any calls between you and us.

**Notices.** We send any notices to your billing address or, if you've agreed, by email to the address you gave us. We consider a notice sent as soon as we mail it. We consider an electronic notice sent as soon as we email it, unless we receive notification that the email was undeliverable.

## 10

### TRANSACTIONS

**Merchant Refunds.** A merchant refund to your Account will post to your Account as a credit. We don't control when a merchant sends an Account credit. We'll choose how to apply the credit to your existing Account balances. If a credit creates a credit balance on your Account, we'll mail you a check for the amount of the credit balance.

**Note: Merchant Surcharges.** Some merchants, including merchants outside of the U.S., may charge you a fee to use your Card for a Purchase. The fee will be either a percentage of the amount of your Purchase, or a flat fee, and will be added to the amount of your Purchase. Usually, a merchant will tell you about this fee before you use your Card, but not always. We don't control these fees, and can't prevent them.

700007

**Recurring Authorized Transactions.** If you authorize a merchant or any other person to charge your Account for recurring Transactions, you must notify the merchant if:

- You want to discontinue these Transactions;
- Your Account is closed;
- Your Account number changes;
- Your Card expiration date changes.

You're responsible for reinstating any recurring authorized Transactions.

**Refusal of the Card.** We don't guarantee approval of Transactions. We are not liable for those that aren't approved, even if you have enough available credit on your Account. If we detect unusual or suspicious activity, we may suspend your credit privileges. We also may limit the number of Transactions approved in a single day.

# 11

## ARBITRATION

**PLEASE READ THIS PROVISION OF THE AGREEMENT CAREFULLY.**

This section provides that disputes may be resolved by binding arbitration. Arbitration replaces the right to go to court, have a jury trial or initiate or participate in a class action. In arbitration, disputes are resolved by an arbitrator, not a judge or jury. Arbitration procedures are simpler and more limited than in court. This arbitration provision is governed by the Federal Arbitration Act (FAA), and shall be interpreted in the broadest way the law will allow.

### Covered claims

- **You or we may arbitrate** any claim, dispute or controversy between you and us arising out of or related to your Account, a previous related Account or our relationship (called "Claims").
- **If arbitration is chosen by any party, neither you nor we will have the right to litigate that Claim in court or have a jury trial on that Claim.**

Except as stated below, all Claims are subject to arbitration, no matter what legal theory they're based on or what remedy (damages, or injunctive or declaratory relief) they seek, including Claims based on contract, tort (including intentional tort), fraud, agency, your or our negligence, statutory or regulatory provisions, or any other sources of law; Claims made as counterclaims, cross-claims, third-party claims, interpleaders or otherwise; Claims made regarding past, present, or future conduct; and Claims made independently or with other claims. This also includes Claims made by or against anyone connected with us or you or claiming through us or you, or by someone making a claim through us or you, such as a co-applicant, authorized user, employee, agent, representative or an affiliated/parent/subsidiary company.

### Arbitration limits

- Individual Claims filed in a small claims court are not subject to arbitration, as long as the matter stays in small claims court.
- We won't initiate arbitration to collect a debt from you unless you choose to arbitrate or assert a Claim against us. If you assert a Claim against us, we can choose to arbitrate, including actions to collect a debt from you. You may arbitrate on an individual basis Claims brought against you, including Claims to collect a debt.
- Claims brought as part of a class action, private attorney general or other representative action can be arbitrated only on an individual basis. The arbitrator has no authority to arbitrate any claim on a class or representative basis and may award relief only on an individual basis. If arbitration is chosen by any party, neither you nor we may

pursue a Claim as part of a class action or other representative action. Claims of 2 or more persons may not be combined in the same arbitration. However, applicants, co-applicants, authorized users on a single Account and/or related Accounts, or corporate affiliates are here considered as one person.

### How arbitration works

- Arbitration shall be conducted by the American Arbitration Association ("AAA") according to this arbitration provision and the applicable AAA arbitration rules in effect when the claim is filed ("AAA Rules"), except where those rules conflict with this arbitration provision. You can obtain copies of the AAA Rules at the AAA's website (www.adr.org) or by calling 800-778-7879. You or we may choose to have a hearing, appear at any hearing by phone or other electronic means, and/or be represented by counsel. Any in-person hearing will be held in the same city as the U.S. District Court closest to your billing address.
- Arbitration may be requested any time, even where there is a pending lawsuit, unless a trial has begun or a final judgment entered. Neither you nor we waive the right to arbitrate by filing or serving a complaint, answer, counterclaim, motion, or discovery in a court lawsuit. To choose arbitration, a party may file a motion to compel arbitration in a pending matter and/or commence arbitration by submitting the required AAA forms and requisite filing fees to the AAA.
- The arbitration shall be conducted by a single arbitrator in accord with this arbitration provision and the AAA Rules, which may limit discovery. The arbitrator shall not apply any federal or state rules of civil procedure for discovery, but the arbitrator shall honor claims of privilege recognized at law and shall take reasonable steps to protect Account information and other confidential information of either party if requested to do so. The arbitrator shall apply applicable substantive law consistent with the FAA and applicable statute of limitations, and may award damages or other relief under applicable law.
- The arbitrator shall make any award in writing and, if requested by you or us, may provide a brief statement of the reasons for the award. An arbitration award shall decide the rights and obligations only of the parties named in the arbitration, and shall not have any bearing on any other person or dispute.

### Paying for arbitration fees

- We will pay your share of the arbitration fee for an arbitration of Claims of $75,000 or less if they are unrelated to debt collection. Otherwise, arbitration fees will be allocated according to the applicable AAA

Rules. If we prevail, we may not recover our arbitration fees, unless the arbitrator decides your Claim was frivolous. All parties are responsible for their own attorney's fees, expert fees and any other expenses, unless the arbitrator awards such fees or expenses to you or us based on applicable law.

**The final award**

- Any award by an arbitrator is final unless a party appeals it in writing to the AAA within 30 days of notice of the award. The arbitration appeal shall be determined by a panel of 3 arbitrators. The panel will consider all facts and legal issues anew based on the same evidence presented in the prior arbitration, and will make decisions based on a majority vote. Arbitration fees for the arbitration appeal shall be allocated according to the applicable AAA Rules. An award by a panel on appeal

is final. A final award is subject to judicial review as provided by applicable law.

**Survival and Severability of Terms**
This arbitration provision shall survive changes in this Agreement and termination of the Account or the relationship between you and us, including the bankruptcy of any party and any sale of your Account, or amounts owed on your Account, to another person or entity. If any part of this arbitration provision is deemed invalid or unenforceable, the other terms shall remain in force, except that there can be no arbitration of a class or representative Claim. This arbitration provision may not be amended, severed or waived, except as provided in this Agreement or in a written agreement between you and us.

## 12

## AGREEMENT & BENEFIT CHANGES

**Changes to this Agreement. We may change this Agreement for any reason and at any time, subject to applicable law. This means that we can change rates, and fees that apply to your Account. It also means we can add, replace or remove provisions of this Agreement. If required by applicable law, we'll give you notice of the changes. If you have the right to reject a change, we'll notify you and tell you**

**how to reject. If we notify you of a change, we may do so on your statement or send you a separate written notice, either of which may be sent electronically if permitted by applicable law.**

**Changing Benefits.** Any benefit, reward, service or feature offered may change or be discontinued at any time for any reason. Separate terms and conditions will describe any exceptions.

## 13

## MISCELLANEOUS

**Assignment.** We may assign any or all of our rights and obligations under this Agreement to a third party. You may not sell, assign or transfer your Account or any of your obligations under this Agreement.

**Governing Law.** Federal law and the law of South Dakota govern the terms and enforcement of this Agreement.

**Enforcing this Agreement.** We won't lose our rights under this Agreement because we delay in enforcing them or fail to enforce them. If any provision of this Agreement is found to be unenforceable, all other provisions of the Agreement will remain in effect.

**Collection Costs.** To the extent allowed by law, you're liable to us for our legal costs if we refer collection of your Account to a lawyer who isn't our salaried employee. These costs may include reasonable attorneys' fees, as well as costs and expenses of any legal action.

**Unforeseen Circumstances.** From time to time, our services might be unavailable due to circumstances beyond our control (such as fires, floods, natural disasters, system failures or other unpredictable events). When this happens, you might not be able to use your Card or obtain information about your Account. We're not responsible or liable if this happens.

**Lost or Stolen Cards, Account Numbers or Account Checks.** You must try to prevent the unauthorized use of your Account and any Card, including your Account number. You must call us if any Card is lost or stolen. Also, you must call us if you think someone has used or may use these items without permission.

**Headings.** The headings in this Agreement are included as a matter of convenience and do not define, limit or enlarge the scope of this Agreement or any of its provisions.

## 14

## YOUR BILLING RIGHTS

**This notice tells you about your rights and our responsibilities under the Fair Credit Billing Act. Keep this document for future use.**

<u>What to Do if You Find a Mistake on Your Statement</u>

If you think there is an error on your statement, write to us at the address for billing inquiries and correspondence shown on the front of your statement.

In your letter, give us the following information:

- Account information: Your name and account number.
- Dollar amount: The dollar amount of the suspected error.
- Description of problem: If you think there is an error on your bill, describe what you believe is wrong and why you believe it is a mistake.

You must contact us:

- Within 60 days after the error appeared on your statement.
- At least 3 business days before an automated payment is scheduled, if you want to stop payment on the amount you think is wrong.

You must notify us of any potential errors in writing. You may call us, but if you do so we are not required to investigate any potential errors and you may have to pay the amount in question.

**What Will Happen After We Receive Your Letter**

When we receive your letter, we must do 2 things:

1. Within 30 days of receiving your letter, we must tell you that we received your letter. We also will tell you if we have already corrected the error.
2. Within 90 days of receiving your letter, we must either correct the error or explain to you why we believe the bill is correct.

**While we investigate whether or not there has been an error:**

- We cannot try to collect the amount in question, or report you as delinquent on that amount.
- The transaction in question may remain on your statement, and we may continue to charge you interest on that amount.
- While you do not have to pay the amount in question, you are responsible for the remainder of your balance.
- We can apply any unpaid amount against your credit limit.

**After we finish our investigation, one of 2 things will happen:**

- If we made a mistake: You will not have to pay the amount in question or any interest or other fees related to that amount.
- If we do not believe there was a mistake: You will have to pay the amount in question, along with applicable interest and fees. We will send you a statement of the amount you owe and the date payment is due. We may then report you as delinquent if you do not pay the amount we think you owe.

If you receive our explanation but still believe your bill is wrong, you must write to us within 10 days telling us that you still refuse to pay. If you do so, we cannot report you as delinquent without also reporting that you are questioning your bill. We must tell you the name of anyone to whom we reported you as delinquent, and we must let those organizations know when the matter has been settled between us.

If we do not follow all of the rules above, you do not have to pay the first $50 of the amount you question even if your bill is correct.

<u>Your Rights if You're Dissatisfied with Your Credit Card Purchases</u>

If you are dissatisfied with the goods or services that you have purchased with your credit card, and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the purchase.

**To use this right, all of the following must be true:**

1. The purchase must have been made in your home state or within 100 miles of your current mailing address, and the purchase price must have been more than $50. (Note: Neither of these are necessary if your purchase was based on an advertisement we mailed to you, or if we own the company that sold you the goods or services.)
2. You must have used your credit card for the purchase. Purchases made with cash advances from an ATM or with an Account check do not qualify.
3. You must not yet have fully paid for the purchase.

If all of the criteria above are met and you are still dissatisfied with the purchase, contact us in writing at the address for billing inquiries and correspondence shown on the front of your statement.

While we investigate, the same rules apply to the disputed amount as discussed above. After we finish our investigation, we will tell you our decision. At that point, if we think you owe an amount and you do not pay, we may report you as delinquent.

---

**For Further Information:** Call the Customer Service number shown on the statement or on the back of your Card if you need more information.

PABLO J ESPIN
Account ending 7000
Page 12 of 12

# Fact Sheet

## Pricing Information Table

| Interest Rates and Interest Charges | |
|---|---|
| **Annual Percentage Rate (APR) for Purchases** | 18.24%<br><br>This APR will vary with the market based on the Prime Rate. |
| **APR for Cash Advances** | 25.49%<br><br>This APR will vary with the market based on the Prime Rate. |
| **Penalty APR and When it Applies** | Up to 29.99%, based on your creditworthiness. This APR will vary with the market based on the Prime Rate.<br><br>This APR may be applied to your account if you:<br>(1) Make a late payment or<br>(2) Make a payment that is returned.<br><br>**How Long Will the Penalty APR Apply?** If your APRs are increased for either of these reasons, the Penalty APR may apply indefinitely. |
| **Paying Interest** | Your due date is at least 23 days after the close of each billing cycle. We will not charge you interest on purchases if you pay your entire balance by the due date each month. We will begin charging interest on cash advances and balance transfers on the transaction date. |
| **Minimum Interest Charge** | If you are charged interest, the charge will be no less than 50 cents. |
| **How We Calculate Your Balance** | Daily Balance (including current transactions) |

| Fees | |
|---|---|
| **Annual Fee** | None |
| **Transaction Fees** | |
| • Balance Transfer | Either $5 or 3% of the amount of each transfer, whichever is greater. |
| • Cash Advance | Either $10 or 5% of the amount of each cash advance, whichever is greater. |
| • Foreign Purchase Transaction | 3% of each purchase transaction in US dollars. |
| **Penalty Fees** | |
| • Late Payment | Up to $35. |
| • Returned Payment | Up to $35. |

| Details About Your Interest Rates and Interest Calculations | Periodic Rate as of 10/21/2016 | For variable rates:<br>U.S. Prime Rate Plus |
|---|---|---|
| Purchases | 0.04997% (D) | 14.74% |
| Cash Advances | 0.06984% (D) | 21.99% |
| Penalty APR | 0.08216% (D) | Up to 26.74% |

(D) = Daily periodic rate. A daily periodic rate is the APR divided by 365.
Variable APRs will not exceed 29.99%.

# EXHIBIT D

SITE:JX-CI TM:LG-8200 ACID:JALGPXQ
09/24/22     12:08:32

**PABLO J ESPIN**
Member Since 2014  Account number ending in: 8084
Billing Period: **06/21/17-07/20/17**

**www.citicards.com**
**Customer Service 1-800-THANKYOU(1-800-842-6596)**
**TTY:711**
BOX 6500 SIOUX FALLS, SD 57117

## JULY STATEMENT

| | |
|---|---|
| **Minimum payment due:** | **$25.00** |
| **New balance as of 07/20/17:** | **$1,000.86** |
| **Payment due date:** | **08/16/17** |

### Account Summary

| | |
|---|---|
| Previous balance | $1,167.02 |
| Payments | -$1,448.00 |
| Credits | -$0.00 |
| Purchases | +$1,281.84 |
| Cash advances | +$0.00 |
| Fees | +$0.00 |
| Interest | +$0.00 |
| **New balance** | **$1,000.86** |

### Credit Limit

| | |
|---|---|
| Credit limit | $11,500 |
| Includes $3,200 cash advance limit | |
| Available credit | $10,499 |
| Includes $3,200 available for cash advances | |

**Minimum Payment Warning:**If you make only the minimum payment each period, you will pay more in interest and it will take you longer to pay off your balance. For example:

| If you make no additional charges using this card and each month you pay... | You will pay off the balance shown on this statement in about... | And you will end up paying an estimated total of... |
|---|---|---|
| Only the minimum payment | 4 year(s) | $1,230 |
| $31 | 3 year(s) | $1,116 (Savings=$114) |

For information about credit counseling services, call 1-877-337-8187. New York residents may contact the New York State Banking Department to obtain a comparative listing of credit card rates, fees and grace periods by calling 1-877-226-5697.

**Total ThankYou Member**
**Available Point Balance:**     **1,001**
as of 06/30/17

**» See page 3 for more information**
   **about your rewards.**

**For Payments, send check to: CITI CARDS, PO Box 70166, Philadelphia PA, 19176-0166**

| | |
|---|---|
| Minimum payment due | $25.00 |
| New balance | $1,000.86 |
| Payment due date | 08/16/17 |

Amount enclosed:

Account number ending in 8084
**Please make check payable to CITI CARDS.**

PABLO J ESPIN

SELDEN  NY  11784-1858

CITI CARDS
PO Box 70166
Philadelphia PA 19176-0166

**www.citicards.com**

**PABLO J ESPIN**

Customer Service 1-800-THANKYOU(1-800-842-6596)
TTY:711

Page 2 of 3

## Account Summary

| Trans. date | Post date | Description | Amount |
|---|---|---|---|
| **Payments, Credits and Adjustments** | | | |
| | 07/06 | ONLINE PAYMENT, THANK YOU | -$500.00 |
| | | 70    0000US        0000 | |
| | 07/14 | ONLINE PAYMENT, THANK YOU | -$948.00 |
| | | 70    0000US        0000 | |
| **Standard Purchases** | | | |
| 06/21 | 06/21 | SOUTHWES5268535580493  800-435-9792 TX | $974.90 |
| RJ7Y8TX2 | | 61    A3066USA      2222 | |
| | | NAME: ESPIN/AIDAN | |
| | | DEPART: 06/29/17 | |
| | | ISP  TO BWI : WN: CLASS: W : STOP: | |
| | | BWI  TO CLT : WN: CLASS: W : STOP: | |
| | | CLT  TO BWI : WN: CLASS: R : STOP: | |
| | | BWI  TO ISP : WN: CLASS: R : STOP: | |
| 06/27 | 06/27 | GEICO *AUTO      800-841-3000 DC | $245.70 |
| 99010001 | | 61    6300          0000 | |
| 07/07 | 07/07 | USPS PO 3576150784   SELDEN   NY | $61.24 |
| T8QCR700 | | 61    A9402USA      2222 | |

**Member ID: 8910231094569251**

**ThankYou Points Earned This Period**

| | |
|---|---|
| 2x at Restaurants | 0 |
| 2x on Entertainment | 0 |
| 1x on Other Purchases | 1,282 |
| **Total Earned** | **1,282** |

**» Visit thankyou.com to redeem points or see full rewards details.**

Bonus Points may take one to two billing cycles to appear on your statement. Please refer to the specific terms and conditions pertaining to the promotion for further details.

## Fees charged

| | |
|---|---|
| **Total fees charged in this billing period** | **$0.00** |

## Interest charged

| | |
|---|---|
| **Total interest charged in this billing period** | **$0.00** |

### 2017 totals year-to-date

| | |
|---|---|
| Total fees charged in 2017 | **$0.00** |
| Total interest charged in 2017 | **$0.00** |

### Interest charge calculation

Days in billing cycle: **30**

Your **Annual Percentage Rate (APR)** is the annual interest rate on your account.

| Balance type | Annual percentage rate (APR) | Balance subject to interest rate | Interest charge |
|---|---|---|---|
| PURCHASES | | | |
| Standard Purch | 0.00% (V) | $0.00 (D) | $0.00 |
| ADVANCES | | | |
| Standard Adv | 0.00% (V) | $0.00 (D) | $0.00 |

Your Annual Percentage Rate (APR) is the annual interest rate on your account. APRs followed by (V) may vary. Balances followed by (D) are determined by the daily balance method (including current transactions).

## Account messages

Reminder: Verify your account transactions
If you contacted Customer Service regarding an issue with your account, please review your statement to confirm that all your transactions were processed correctly.  If you have any questions, visit citi.com or call the number on the back of your card.  Citi's telecommunication number for hearing- and speech-impaired customers is located on your billing statement and in the "Contact Us" section on citi.com.

**PABLO J ESPIN**

If you have not received your new card, please call the Customer Service
number on this statement.

# EXHIBIT E



PO Box 6705
Sioux Falls, SD 57117-6705



NICHOLAS PADAO

CHICAGO IL 60634-5024

## Your new Costco Anywhere Visa® Card by Citi will soon be on its way

We are writing to inform you that your Costco card from American Express® is being transferred to Citibank. On June 20, 2016, your current Costco card from American Express ending in 61009 will be replaced by the new Costco Anywhere Visa Card **Until June 20, please continue to use your current card** and direct any payments or billing inquiries to American Express. **Your new Costco Anywhere Visa Card will be sent within the next 6 - 8 weeks. This new card will be available for use on June 20.** When your new card arrives, please follow the included activation instructions so that it will be ready to use starting June 20

Enclosed are your Facts about Interest and Fees (**Fact Sheet**) and Card Agreement, as well as the Costco Cash Rewards Terms and Conditions that will apply to your account on June 20, 2016. Please read this information carefully.

Important information about your Citi account — effective June 20, 2016

### Changes to Your APRs, Interest Charges, Fees and Minimum Payment Due Include:

| | |
|---|---|
| • Balance Transfer APR | 15.49%* for transfers completed by 08/20/2016 |
| • Penalty APR† | Up to 29.99%* |
| • Minimum Interest Charge | $0.50 |
| • Balance Transfer Fee | $5 or 3%, whichever is greater |
| • Cash Advance Fee | $10 or 5%, whichever is greater |
| • Foreign Transaction Fee | 3% |
| • How We Calculate Your Balance | Daily Balance Method (See Section 3 of the Card Agreement for more details) |
| • How We Calculate Your Minimum Payment Due | See Section 5 of the Card Agreement for more details |

\*  APRs noted above will vary with the market based on the Prime Rate, which is 3.50% as of 04/01/16.

†  Penalty APR may be applied if you have a late/returned payment and may be applied indefinitely. Refer to Section 3 of your Card Agreement for details.
*For full pricing information, see the enclosed Facts about Interest and Fees document (**Fact Sheet**) and Card Agreement.*

### Your Existing Balances, Promotional Offers and New Purchases
- Any existing balances from your Costco card from American Express will remain at their current APRs.
  — Existing balances subject to interest will be calculated using the Daily Balance Method.
- New purchases starting June 20, will be subject to the standard purchase APR of 15.49%.
- Any current promotional APR offers outstanding on your account will be honored in accordance with the terms disclosed in the promotional offer.

### Your New Payment Due Date (to be reflected on your first statement from Citi)
- When you receive a statement from American Express, you should direct your payments to American Express by mail, phone, or online. When you receive a statement from Citi, payments can be made by sending payment to: PO BOX 78019, Phoenix, AZ 85062-8019 or online once you register for Citi Online at **citi.com/CostcoSetup.**
- Your new Payment Due Date will now be at least **23 days** after the close of each billing cycle. It will be the same as or close to your current Payment Due Date and will remain the same each month going forward.



**Please see the reverse side for more information — including your new Costco Cash Rewards!**

0. L00 20 4290 01. H2016041770161061. 524. I. ZZ. SY. 8000. SYSTEM B7751589647517554.

NICHOLAS PADAO
Account ending 0103
Page 2 of 4

**Starting on June 20, your new card will also feature a new and exciting rewards program:**

**New Costco Cash Rewards**
- 4% cash back on eligible gas worldwide, including gas at Costco, for the first $7,000 per year and then 1% thereafter
- 3% cash back on restaurant and eligible travel purchases worldwide
- 2% cash back on all other purchases from Costco and Costco.com
- 1% cash back on all other purchases

*For full terms and conditions, see enclosed Costco Cash Rewards Program Terms.*

**How will the new Costco Cash Rewards affect my current rewards program?**
Any rewards earned with your current card will automatically transfer to your new Costco Anywhere Visa Card account on June 20, 2016. Until then, continue to use your Costco card from American Express as your Costco membership card and for purchases in the warehouse and elsewhere.

## ANSWERS TO FREQUENTLY ASKED QUESTIONS

**How long can I continue to use my Costco card from American Express?**
You can use your Costco card from American Express until June 20, 2016 — both at Costco and wherever American Express is accepted. Your new Costco Anywhere Visa Card will be available for use on June 20, 2016.

**Do I have to apply for my Costco Anywhere Visa Card? Will it still be my Costco membership card?**
You do not need to apply. Your new Costco Anywhere Visa Card will arrive in the next 6–8 weeks, and replace your current card on June 20, 2016. It will act as your Costco membership card.

**What happens to the rewards I earned with my Costco card from American Express?**
You will continue to earn rewards from American Express through June 19, 2016. Rewards earned in 2016 will be transferred and included in your February 2017 rewards coupon.

**What do I need to do once I receive my new card?**
When your new card arrives, simply:
- **Follow the activation instructions included with your new card so that it will be ready to use starting June 20.**
- **Continue to use your current card until June 20, when your new card will be accepted at Costco and everywhere Visa® is accepted worldwide.**
- **On June 20, contact service providers/online merchants who automatically bill your account to inform them of your new card number and expiration date.**

**If I have additional Card Members who are authorized users, will they remain on my account?**
The authorized users will remain on your account and their cards will be sent to you at the basic card member address for use on June 20, 2016.  However, please note there will be no spend limits on the authorized user cards and if you would like to set spending limits on them, please call Citi after June 20, 2016.

**Where do I direct my payments?**
When you receive a statement from American Express, you should direct your payments to American Express by mail, phone, or online. When you receive a statement from Citi, payments can be made by sending your payment to: PO BOX 78019, Phoenix, AZ 85062-8019 or online once you register for Citi Online at **citi.com/CostcoSetup**.

**I use Autopay and/or scheduled payments. What happens next?**
Autopay payments and scheduled payments that are scheduled to occur after June 18, 2016 will be cancelled by American Express. If you use Autopay and/or scheduled payments, any payments due to American Express after June 18, 2016 should be paid using another payment option. After June 20, 2016 Citi will provide information for future payment options.

**Where can I find more information on my new card?**
Just go to **citi.com/WelcomeCostco**, call 1-866-241-8684 (TTT/TDD: 1-866-210-0617) or refer to the enclosed information for additional details.



NICHOLAS PADAO
Account ending 0103
Page 3 of 4

## Facts about Interest and Fees

### Interest Rates and Interest Charges

| | |
|---|---|
| Annual Percentage Rate (APR) for Purchases | **15.49%**<br>This APR will vary with the market based on the Prime Rate. |
| APR for Balance Transfers | **15.49%.** Balance transfers must be completed by 08/20/2016.<br>This APR will vary with the market based on the Prime Rate. |
| APR for Cash Advances | 25.49%<br>This APR will vary with the market based on the Prime Rate. |
| Penalty APR and When it Applies | Up to **29.99%**, based on your creditworthiness. This APR will vary with the market based on the Prime Rate.<br>This APR may be applied to your account if you:<br>(1) Make a late payment or<br>(2) Make a payment that is returned.<br>**How Long Will the Penalty APR Apply?** If your APRs are increased for either of these reasons, the Penalty APR may apply indefinitely. |
| Paying Interest | Your due date is at least 23 days after the close of each billing cycle. We will not charge you any interest on purchases if you pay your entire balance by the due date each month. We will begin charging interest on cash advances and balance transfers on the transaction date. |
| Minimum Interest Charge | If you are charged interest, the charge will be no less than 50 cents. |
| For Credit Card Tips from the Consumer Financial Protection Bureau | To learn more about factors to consider when applying for or using a credit card, visit the website of the Consumer Financial Protection Bureau at **http://www.consumerfinance.gov/learnmore** |

### Fees

| | |
|---|---|
| Annual Fee | **No annual fee for this credit card with your paid Costco Membership** |
| Transaction Fees | |
| • Balance Transfer | Either **$5** or **3%** of the amount of each transfer, whichever is greater. |
| • Cash Advance | Either **$10** or **5%** of the amount of each cash advance, whichever is greater. |
| • Foreign Purchase Transaction | **3%** of each purchase transaction in US dollars. **No fee** for purchases at Costco worldwide. |
| Penalty Fees | |
| • Late Payment | Up to **$37**. |
| • Returned Payment | Up to **$37**. |

**How We Will Calculate Your Balance:** We use a method called "daily balance (including new transactions)." See enclosed Card Agreement for more details.

**Loss of Introductory APR:** We may end your introductory APR and apply the Penalty APR if you make a late payment.

NICHOLAS PADAO
Account ending 0103
Page 4 of 4

**Billing Rights:** Information on your rights to dispute transactions and how to exercise those rights is provided in the enclosed Card Agreement.

| Details About Your Interest Rates | APR as of 04/01/2016 * | Daily Periodic Rate as of 04/01/2016 * | For variable rates: U.S. Prime Rate Plus |
|---|---|---|---|
| Purchases | 15.49% (v) | 0.04243% | 11.99% |
| Balance Transfers | 15.49% (v) | 0.04243% | 11.99% |
| Cash Advances | 25.49% (v) | 0.06983% | 21.99% |
| Penalty APR | 29.99% (v) | 0.08216% | Up to 26.74% |
| **\* Prime Rate:** The variable rates shown here are accurate as of the 3.50% Prime Rate as of 04/01/2016. | | | |
| (v) = Variable rate. Variable rate APRs will not exceed 29.99%. | | | |

# Card Agreement Guide

**This Guide will help you easily identify sections of the Card Agreement and give you a brief overview of the contents of each section. This is not intended to be a complete summary of the Card Agreement's contents, and we encourage you to read your entire Card Agreement, including the arbitration provision, before you use your Account.**

**1** **DEFINITIONS**
Lists the meanings of particular phrases and terms used in the Card Agreement.

**2** **YOUR ACCOUNT**
Describes some of your responsibilities for using your Account.

**3** **ANNUAL PERCENTAGE RATES & INTEREST CHARGES**
Shows how we calculate interest rates and how that affects your Account balance.

**4** **FEES & FOREIGN CURRENCY CONVERSION**
Describes the fees that can be applied to your Account, including late fees, returned payment fees, as well as foreign transaction fees for Purchases not in U.S. dollars.

**5** **PAYMENTS**
Shows how your monthly Minimum Payment Due is calculated, tells you how we apply your payments to balances, and gives you certain instructions for making payments (and tells you the possible consequences of not following those instructions).

**6** **AUTHORIZED USERS**
Describes an Authorized User's rights and your responsibility for that user. Also describes what information we can share about you and your Authorized User.

**7** **DEFAULT, CLOSING OR SUSPENDING YOUR ACCOUNT**
Tells you when we may require immediate payment of your total Account balance, and explains when we may close or suspend your Account, and when you may close your Account.

**8** **CREDIT REPORTING**
Describes what information we provide about you to credit reporting agencies, and how to dispute items on your report. This section also explains how we use information we get about you from those agencies.

**9** **ACCOUNT INFORMATION, INFORMATION SHARING AND COMMUNICATIONS**
Explains that your personal information we use to manage your Account should always be up to date. Also notes that we share information about you and your Account. In addition, this section describes how we may contact you.

**10** **TRANSACTIONS**
Provides important information about merchant credits, recurring Transactions and card refusals.

**11** **ARBITRATION**
Explains that you cannot go to court, have a jury trial or initiate or participate in a class action if you have a dispute with us. Instead, this provision tells you that the dispute must be resolved by a professional arbitrator, not a judge or jury. This section also explains how arbitration works and some of the differences between resolving a dispute in arbitration and resolving one in court.

**12** **AGREEMENT & BENEFIT CHANGES**
Explains that we can make changes to the Card Agreement and your card benefits and features.

**13** **MISCELLANEOUS**
Explains subjects that aren't included in previous sections.

**14** **YOUR BILLING RIGHTS**
Explains your billing rights, which include how to address possible statement mistakes and your rights if you're not satisfied with a Purchase.

# Card Agreement

This Card Agreement (**Agreement**) is your contract with us.

The *Facts about Interest and Fees* document (***Fact Sheet***) is part of this Agreement. The **Fact Sheet** shows important information about your Account, such as your annual percentage rates and certain fees. Any amendments to this Agreement also are part of this Agreement.

**Please read all parts of this Agreement, including the arbitration provision, and keep it for your records.**

---

*Note: Throughout the Agreement are examples, helpful tips, and additional explanations that will make the Agreement easier to understand.*

---

## 1

## DEFINITIONS

**Account** - Your Costco Anywhere Visa® Card Account.

**Annual Percentage Rate or (APR)** - A rate, shown as a percentage, used to calculate interest on the balance on your Account.

**Authorized User** - Any person you allow to use your Account with a Card we provided with that person's name.

**Balance Transfer** - Use of a Balance Transfer offer, including use of a check that accesses your Account for any transaction, or the transfer of a balance from another credit account to your Account.

**Billing Period** - The period of time between each date when we create a statement for your Account. A Billing Period is usually 28-33 days. For each Billing Period, your statement will show any Transactions, other charges, payments and other credits posted during that Billing Period.

**Business Day** - Monday through Friday, excluding federal holidays.

**Card** - One or more cards or other devices (including an account number) used to access your Account to obtain credit.

**Card Networks** - Organizations, such as MasterCard, Visa and American Express, that facilitate the payment process between a cardmember, merchants and a card issuer.

**Cash Advance** - Use of your Card to get cash, including foreign currency, or for what we consider a cash-like transaction. Examples include using your Card for: ATM and teller withdrawals, wire transfers, money orders, traveler's checks, lottery tickets, gaming chips and other methods used for gambling, wagers and other betting transactions.

**Consumer Reporting Agency** - An organization, such as Experian,

Equifax and TransUnion, that compiles credit information for the purpose of generating consumer credit reports. It's also known as a "credit bureau" and a "credit reporting agency."

**Include and including** - These terms mean "include [or including] without limitation."

**Late Payment** - A payment is late if you don't pay at least an amount equal to the Minimum Payment Due minus any Overlimit Amount by the payment due date.

**New Balance** - The total amount you owe us at the end of each Billing Period. This amount is shown on each statement under the heading "New Balance". We explain how we calculate the New Balance below.

**Overlimit Amount** - The amount by which your Account balance exceeds your credit limit in any Billing Period.

**Purchase** - Use of your Card to buy goods and services. Balance Transfers and Cash Advances are not Purchases.

**Returned Payment** - A payment that isn't honored by your financial institution.

**Transaction** - A Balance Transfer, Cash Advance or Purchase, as applicable.

**we, us,** and **our** - Citibank, N.A.

**you** and **your** - The cardmember who opened the Account.

*You'll find definitions of other terms within this Agreement.*

## 2

## YOUR ACCOUNT

Your Account use is subject to this Agreement. You must pay us for all amounts due on your Account, including:

1. Transactions you make, even if you didn't present your Card or sign for the Transaction;

2. Transactions an Authorized User makes;

3. Transactions that other people make if you or an Authorized User let them use your Account; and

4. Any fees and interest charges on the Account.

**Binding Agreement.** This Agreement takes effect once you use your Card. Even if you don't use your Card, this Agreement will take effect unless you contact us to cancel your Account within 30 days after we sent you this Agreement.

**Credit Limit.** We assign a credit limit to your Account. Part of this credit limit may be available for Cash Advances, and there may be a limit on the amount of Cash Advances you can take in a given period. We may authorize Transactions that cause your balance to exceed your credit limit.

**ACCOUNT USE**

**Consumer Purposes.** You aren't permitted to use your Account for business purposes. If you do use your Account for business purposes, this Agreement still applies, and you must pay us for those Transactions. You may also have to pay us for any damages and/or expenses resulting from that use. In addition, we may close your Account.

**Unlawful Transactions.** You aren't permitted to use your Account for unlawful Transactions. If you do use your Account for unlawful Transactions, this Agreement still applies and you must pay us for those Transactions. You also may have to pay the Card Network and/or us for any damages and expenses resulting from that use. In addition, we may close your Account.

**Mobile Phones or Other Devices.** Smart phones, tablets and other electronic devices can store your Card (such as through a mobile wallet). This means they can be used to make Purchases or other Transactions. Any such Transactions are covered by this Agreement. Apps that use your Card to make Transactions may have separate terms of use. We're not responsible if you violate those terms, or for any consequences resulting from any violation.

*Note: It's important to protect your devices the same way you protect your Card. Anyone who can access your Card using your device also can make charges to your Account using that device.*

## 3

## ANNUAL PERCENTAGE RATES & INTEREST CHARGES

**The following sections explain how we calculate the interest you owe each Billing Period.**

**APRs.** We use APRs to calculate interest charges on your Account. Different APRs may apply to different Transactions. See the listing of your APRs on the **Fact Sheet.**

**Variable APRs.** A variable APR is an APR that can change each Billing Period. We calculate each variable APR first by taking the U.S. Prime Rate from *The Wall Street Journal* (**WSJ**) two Business Days before the last day of each Billing Period. (If the *WSJ* doesn't publish the U.S. Prime Rate that day, then we'll use another publication.) Then we add to the U.S. Prime Rate a certain percentage amount, which we call the **Margin**. You can find the Margin we use for your Account in the Details About Your Interest Rate section of the **Fact Sheet.**

**How is a variable APR calculated?**

If the U.S. Prime Rate published in the WSJ two Business Days before the end of a Billing Period is **5%;** and
If the Margin is **13.99%;** then
Add the two together to calculate a variable APR:

**5% + 13.99% = 18.99%**

Your variable APRs will increase if the U.S. Prime Rate increases and decrease if the U.S. Prime Rate decreases. If a variable APR increases, then your interest charges and Minimum Payment Due may increase.

If the U.S. Prime Rate changes, we'll apply the new variable APR starting from the first day of the Billing Period when we take the U.S. Prime Rate from the *WSJ*. The new APR will apply to existing balances, as well as balances added to your Account after the change.

**Penalty APR.** If you have a Late or Returned Payment, we may apply a penalty APR to your Account. We determine your penalty APR based on your creditworthiness.

- **Penalty APR for new Transactions (less than 60 days late).** If you make a Late Payment and it's less than 60 days late or you have a Returned Payment, the penalty APR only will apply to new Transactions. We'll review your Account from time to time to determine if a penalty APR should be reduced.
- **Penalty APR for existing balances and new Transactions (60 or more days late).** If we haven't received your Minimum Payment Due within 60 days after its due date, we may apply the penalty APR to both the existing balances and new Transactions. If you make your next six consecutive Minimum Payments Due on time, we'll stop applying the penalty APR to existing balances and new Transactions. If you don't make your next six consecutive Minimum Payments Due on time, the penalty APR may continue to apply indefinitely to existing balances and new Transactions.

### Daily Balance

We calculate interest on your Account each Billing Period first by calculating your daily balances. The following explains how we do that.

**Here's how and when Transactions, fees and credits are applied to the balances on your Account:**

- We add the amount of a Purchase or Balance Transfer to the Purchase balance as of the post date on your statement.
- We add the amount of a Cash Advance to the Cash Advance balance as of the post date on your statement.
- We add a Balance Transfer fee to the Purchase balance as of the post date on your statement. We add a Cash Advance fee to the Cash Advance balance as of the post date on your statement. We'll add any other fees to the balance of our choice. If you're charged interest in a Billing Period, but the amount calculated is less than $0.50, we'll add additional interest to the balance(s) of our choice so that you'll be charged $0.50 in interest for that Billing Period.
- We subtract credits and payments as of the post date shown on your statement.
- Each balance may have a different APR. Certain categories of Transactions in a balance may have multiple APRs. For example, you may make a Purchase or Balance Transfer that's subject to a promotional APR. Your balances, and their corresponding APRs, are shown on your statement.

> **Note:** The post date shown on your statement will usually be the date of the Transaction, but it may be later.

**Here's how we calculate each of the daily Purchase and Cash Advance balances on your Account:**

- We start with the daily balance from the end of the previous day.
- We add any new Transactions, fees and other charges, including interest accrued on the previous day's balance. This means that interest is compounded daily.
- We subtract any credits or payments credited as of that day.

- We make additional adjustments as appropriate, subject to applicable law (as an example, for a disputed charge).

This gives us the daily balance for that day.

> Daily balance for purchases from the previous day
> \+ New purchases
> \+ Fees and interest accrued on the previous day's Purchase balance
> \- Payments, credits and adjustments posted that day
> = New daily balance for Purchases

**Interest Calculation.** Each daily balance may have a different APR. Certain categories of Transactions in a daily balance may have multiple APRs. For example, you may make a Purchase or Balance Transfer that's subject to a promotional APR. If a daily balance on your Account is subject to an APR, we'll charge interest on that daily balance. We use the daily balance method (which includes new Transactions). If interest applies to a balance, it will start applying on the day a charge is added to that balance and continue until that balance is paid in full. We consider a credit balance as a balance of zero when calculating interest on that balance.

- We multiply each daily balance by its applicable daily periodic rates (each applicable APR divided by 365).
- We do this for each day in the Billing Period. This gives us the daily interest amounts.
- Then we total all the daily interest amounts for all the daily balances. This gives us the total interest for the Billing Period.

> **Note:** Your balances, and their corresponding APRs, are shown on your statement.

**Calculating the New Balance.** To calculate the New Balance at the end of each Billing Period, we begin with the total Account balance at the start of that Billing Period. Then we add any Transactions that are new to the Account during that Billing Period. Then we subtract any credits applied or payments made during that Billing Period. Then we add any interest charges or fees incurred during that Billing Period and make any other adjustments, as applicable (for example, if you have disputed a charge).

**Grace Period on Purchases.** You won't pay any interest on Purchases if you pay the New Balance, including any Balance Transfers, in full by the payment due date shown on your statement each Billing Period. We call this a *grace period on purchases.* If you don't pay your New Balance, including any Balance Transfers, in full by the payment due date in a Billing Period, you'll pay interest on your Purchases from the date they're posted to your Account. You also won't have a grace period on Purchases again until you pay the New Balance in full by the payment due date 2 Billing Periods in a row.

There's no grace period on Balance Transfers and Cash Advances. This means you'll pay interest on Balance Transfers and Cash Advances from the date these Transactions post to your Account.

**4**

## FEES & FOREIGN CURRENCY CONVERSION

| Fees | Amount | About the Fee |
|------|--------|---------------|
| **Annual Membership Fee** | None | There is no annual membership fee for this credit card. We will close your Account if you do not maintain a Costco membership. |
| **Late Fee** | Up to $37 | We have the right to charge you a late fee if you don't pay at least an amount equal to the Minimum Payment Due minus any Overlimit Amount by the payment due date. The late fee is $27 and, if you make another Late Payment within the next 6 Billing Periods the late fee will be $37. The amount of your late fee will never be higher than your Minimum Payment Due. |
| **Returned Payment Fee** | Up to $37 | We have the right to charge you a Returned Payment fee of $27 if your bank doesn't honor your payment. If that happens, we'll resubmit the payment request. If your bank doesn't honor another payment within 6 consecutive Billing Periods, the Returned Payment fee will go up to $37. |
| **Transaction Fee for Balance Transfers** | Either $5 or 3% of the amount of each transfer, whichever is greater. | We charge you a fee for each Balance Transfer. |
| **Transaction Fee for Cash Advances** | Either $10 or 5% of the amount of each cash advance, whichever is greater. | We charge you a fee for each Cash Advance. |
| **Transaction Fee for  non-Costco Purchases in Foreign Currency** | 3% of the amount of the Transaction after conversion to U.S. dollars. | Except for Purchases at Costco worldwide, we charge you a fee for a Purchase made in a currency other than U.S. dollars, regardless of where the Transaction takes place or who the merchant is. There is no fee for Purchases at Costco worldwide. |

### FOREIGN CURRENCY CONVERSION

**Foreign Currency Conversion - Purchases.** A Card Network converts the amount of a Purchase in a foreign currency into U.S. dollars. Each Card Network follows its own procedures for conversion. These procedures include how the Card Network chooses an exchange rate and when to do the conversion. For example, Visa chooses either a government-mandated exchange rate or chooses from a range of rates available on wholesale currency markets (and, in either case, the exchange rate that it chooses may be less favorable than the rate that Visa itself receives when it makes foreign currency transactions). Depending on the policies of each Card Network, the exchange rate chosen may be the one in effect on the day the Card Network does the conversion, or on the day before. The exchange rate that a Card Network uses to convert the Purchase to U.S. dollars may differ from the rate in effect on the date you made the Purchase or on the post date for that Purchase shown on your statement. The Card Network's procedures may change without notice.

If a third party, such as a merchant, converts the amount of a Purchase into U.S. dollars before sending the Purchase to a Card Network, the third party chooses the conversion rate instead of the Card Network.

**Foreign Currency Conversion - Cash Advances.** If you take a Cash Advance in a foreign currency at an ATM or branch of a financial institution, it may not be the Card Network in all instances that converts the Transaction into U.S. dollars. Instead, depending on where the Transaction takes place, another third party, such as a financial institution, ATM network, or ATM operator, may do the conversion. We do not control this. However, if you use your Card for a Cash Advance at a Citibank ATM or branch, then we or our affiliates may do the conversion.

The party that converts a Cash Advance to U.S. dollars will choose the exchange rate and when to do the conversion. The exchange rate in effect on the date the Cash Advance is converted to U.S. dollars may differ from the rate in effect on the date you took the Cash Advance or the post date for that Transaction shown on your statement. The exchange rate may also differ from any rate quoted to you when you made the Transaction.

5

# 5

## PAYMENTS

**Minimum Payment Due.** You may pay all or a part of your Account balance at any time. You must pay at least the Minimum Payment Due by the Payment Due date each Billing Period.

Your **"Minimum Payment Due"** equals:

- Any amount past due; plus
- Any Overlimit Amount; plus
- The greater of:
  1. The New Balance, if it's less than $25;
  2. $25 if the New Balance is at least $25;
  3. 1% of the New Balance (rounded to the nearest dollar), plus any billed interest or minimum interest charge, plus any late fee; or
  4. 1.5% of the New Balance (rounded to the nearest dollar).

The Minimum Payment Due is never more than the New Balance.

> **Note:** Your Payment Due date is typically the same day of the month, every month. You may request a change to your monthly due date.

**How is the Minimum Payment Due calculated?**

*For example, in a sample Billing Period, an Account with no past due or Overlimit amounts has:*

*New Balance: $2,500*

*Interest: $18.54*

*Since the New Balance is more than $25, and there are no past due or Overlimit amounts, the Minimum Payment Due will be the greater of:*

*1% of the New Balance (1.0% x $2,500: $25.00) + interest ($18.54): $43.54*
*or*
*1.5% of the New Balance (1.5% x $2,500): $37.50*

*Since 1% of the New Balance plus interest ($43.54) is greater than 1.5% of the New Balance ($37.50) the Minimum Payment Due is $43.54.*

**Application of Payments.** We decide how to apply your payments, up to the Minimum Payment Due, to the balances on your Account. We may apply the Minimum Payment Due first to interest charges, then to the balance with the lowest APR and then to balances with higher APRs. If you pay more than the Minimum Payment Due, we'll apply the amount over the Minimum Payment Due first to the balance with the highest APR, then to the balance with the next highest APR, and so on, except as otherwise required by applicable law.

**Payment Instructions.** You must follow the instructions below when making a payment. If you do, we'll credit the payment to your Account as of the day we receive it.

1. You must pay in U.S. dollars.
2. You must use a check or electronic debit issued by a bank in the United States.
3. You must not send us a check dated after the date that we receive it.
4. You must not enclose more than one check per envelope.
5. You must not include any restrictive endorsements on the check.
6. You must follow the additional payment instructions shown on your statement.

If you don't pay in U.S. dollars and we accept your payment, we'll select the currency conversion rate, and you must pay our costs. If you don't follow our payment instructions, we may not accept your payment, or there may be a delay in crediting your Account. Either may result in late fees and additional interest charges to your Account. If you don't follow the instructions in this Agreement or on your statement, we may accept your payment without losing our rights.

We may reject a payment if it's more than the outstanding Account balance. We also may close your Account.

# 6



## AUTHORIZED USERS

**Adding and Removing Authorized Users.** You can ask us to add one or more Authorized Users to your Account. If we approve, use of your Account by an Authorized User is subject to the terms of this Agreement. You must:

- Obtain permission from each Authorized User before naming him or her as an Authorized User on your Account.
- Make a copy of this Agreement available to each Authorized User.

You must notify us to remove an Authorized User from your Account. If we remove an Authorized User, in some cases we may close your Account, open a new Account, and issue you a new Card.

**Your Responsibility for Authorized Users.** You must pay us for:

- Any Transactions made by an Authorized User on your Account.
- Any Transaction made by an Authorized User even if the post date shown on your statement for that Transaction occurs after the date you ask us to remove the Authorized User from your Account.
- Any Transactions made by others if an Authorized User allows them to use your Account.
- Fees and charges resulting from any Transactions made by an Authorized User or others if an Authorized User allows them to use your Account.

**Account Rights for Authorized Users.** You agree that an Authorized User may use and receive information about the Account, such as the Authorized Users Transaction information and history, Account Balance and Minimum Payment Due. You allow us to discuss your Account with an Authorized User. We may also provide you the option to give Authorized Users expanded access to your Account, such as permitting the Authorized Users to set up recurring payments or to obtain your Transaction history. If we provide this expanded access, we will explain the available options. An Authorized User won't be able to add other Authorized Users, adjust the credit limit or close the Account.

**What can Authorized Users do?**

- Report lost or stolen Cards
- Make payments
- Obtain certain information about the Account, such as the Authorized User's Transaction history, the Account balance and Minimum Payment Due.
- Initiate billing disputes
- Request refund checks

**Information about Authorized Users.** You agree to give us certain personal information about each Authorized User. You must let each one know that you'll give us that information and you must have his or her permission to do so. You must have permission from each one to allow us to share information about him or her as allowed by applicable law. This includes information we may get from you, any Authorized User and others. It also includes information about their Transactions on the Account.

**Credit Reporting.** We report information about this Account to Consumer Reporting Agencies in the Authorized User's name that may appear on their credit report. This could include information about:

- Late Payments;
- Returned Payments;
- Overlimit Amounts; and
- Other violations of this Agreement.

You must let each Authorized User know that we report Account information in his or her name. Also, see **Credit Reporting** in Section 8.



**7**

---

## DEFAULT, CLOSING OR SUSPENDING YOUR ACCOUNT

**Default.** We may require immediate payment of your total Account balance, to the extent allowed by law, if any of the following occurs:

1. You don't pay at least the Minimum Payment Due by the due date.
2. You have a Returned Payment.
3. You file for bankruptcy or some other insolvency proceeding is filed by or against you.
4. You don't honor the terms of this Agreement.
5. You default under any other card agreement you have with us.
6. You're declared incompetent or mentally incapacitated, or in the event of your death.

**Closing or Suspending Your Account.** We may close or suspend your Account if any of the events listed above occurs, or for any reason, or for no reason. We may do this at any time, without notifying you, as allowed by law. We may cancel your current Card and issue you a substitute Card at any time. You also may close your Account at any time by notifying us by telephone or in writing. If we close or suspend your Account, or if you close your Account, you must pay us all amounts you owe on the Account, even if they post to your Account after it's closed or suspended.

**Note:** We will close your Account if you do not maintain a Costco membership.

910306

# 8

## CREDIT REPORTING

You allow us to get information about you. We get it from Consumer Reporting Agencies and other sources that provide consumer financial information. You allow us to use it for:

- Renewal of your Account;
- Credit line increases or decreases;
- Administration or review of your Account, collection and any other servicing;
- All other credit-related purposes connected with this Agreement;
- Offers for other cards, insurance products and other services; and
- Other uses permitted by law.

We report Account information in your name, as well as information about you to Consumer Reporting Agencies, on a monthly basis. The information we provide may appear on your credit reports. This can include information about:

- Late Payments;
- Returned Payments;
- Overlimit Amounts; and
- Other violations of this Agreement.

If you think we've given incorrect information to a Consumer Reporting Agency about you (or about an Authorized User), contact Customer Service and we'll research it. We'll let you know if we agree or disagree with you. If we agree with you, we'll contact each Consumer Reporting Agency we reported to and request a correction.

# 9

## ACCOUNT INFORMATION, INFORMATION SHARING AND COMMUNICATIONS

**Changes to Account Information.** You provided certain personal information to us when you opened your Account. You agree to notify us if this information changes. If you don't, or if we ask you to verify your Account information and you cannot, we may suspend or close your Account.

**Information Sharing.** You agree to let us share information about you and your Account as allowed by law. This includes information we get from you and others. Our privacy notice, which is enclosed with your new Account materials, describes reasons Citi can share its customers' personal information.

**COMMUNICATIONS**
**Contacting You.** You agree that we (and/or our service providers or anyone we authorize) may contact you at any phone number, email address, or mailing address you provide or we obtain in other ways. This

includes communications to mobile, cellular/wireless, or similar devices. We may contact you by live operator, auto-dialer, recorded or artificial voice, text, or email.

You agree to pay any charges from your plan provider for communications we send to you, as well as communications you send to us.

**How We Capture and Use Voiceprints.** We may use voice recognition technology to verify your identity when you call. We may capture and store your voiceprint for this purpose.

**Call Monitoring.** We may monitor and record any calls between you and us.

**Notices.** We send any notices to your billing address or, if you've agreed, by email to the address you gave us. We consider a notice sent as soon as we mail it. We consider an electronic notice sent as soon as we email it, unless we receive notification that the email was undeliverable.

# 10

## TRANSACTIONS

**Merchant Refunds.** A merchant refund to your Account will post to your Account as a credit. We don't control when a merchant sends an Account credit. We'll choose how to apply the credit to your existing Account balances. If a credit creates a credit balance on your Account, we'll mail you a check for the amount of the credit balance.

**Note: Merchant Surcharges.** Some merchants, including merchants outside of the U.S., may charge you a fee to use your Card for a Purchase. The fee will be either a percentage of the amount of your Purchase, or a flat fee, and will be added to the amount of your Purchase. Usually, a merchant will tell you about this fee before you use your Card, but not always. We don't control these fees, and can't prevent them.

**Recurring Authorized Transactions.** If you authorize a merchant or any other person to charge your Account for recurring Transactions, you must notify the merchant if:

- You want to discontinue these Transactions;
- Your Account is closed;
- Your Account number changes;
- Your Card expiration date changes.

You're responsible for reinstating any recurring authorized Transactions.

**Refusal of the Card.** We don't guarantee approval of Transactions. We are not liable for those that aren't approved, even if you have enough available credit on your Account. We also may limit the number of Transactions approved in a single day. If we detect unusual or suspicious activity, we may suspend credit privileges on the Account or the impacted card.

## 11

## ARBITRATION

**PLEASE READ THIS PROVISION OF THE AGREEMENT CAREFULLY.**

This section provides that disputes may be resolved by binding arbitration. Arbitration replaces the right to go to court, have a jury trial or initiate or participate in a class action. In arbitration, disputes are resolved by an arbitrator, not a judge or jury. Arbitration procedures are simpler and more limited than in court. This arbitration provision is governed by the Federal Arbitration Act (FAA), and shall be interpreted in the broadest way the law will allow.

### Covered claims

- **You or we may arbitrate** any claim, dispute or controversy between you and us arising out of or related to your Account, a previous related Account or our relationship (called "Claims").
- **If arbitration is chosen by any party, neither you nor we will have the right to litigate that Claim in court or have a jury trial on that Claim.**

Except as stated below, all Claims are subject to arbitration, no matter what legal theory they're based on or what remedy (damages, or injunctive or declaratory relief) they seek, including Claims based on contract, tort (including intentional tort); fraud, agency, your or our negligence, statutory or regulatory provisions, or any other sources of law; Claims made as counterclaims, cross-claims, third-party claims, interpleaders or otherwise; Claims made regarding past, present, or future conduct; and Claims made independently or with other claims. This also includes Claims made by or against anyone connected with us or you or claiming through us or you, or by someone making a claim through us or you, such as a co-applicant, authorized user, employee, agent, representative or an affiliated/parent/subsidiary company.

### Arbitration limits

- Individual Claims filed in a small claims court are not subject to arbitration, as long as the matter stays in small claims court.
- We won't initiate arbitration to collect a debt from you unless you choose to arbitrate or assert a Claim against us. If you assert a Claim against us, we can choose to arbitrate, including actions to collect a debt from you. You may arbitrate on an individual basis Claims brought against you, including Claims to collect a debt.
- Claims brought as part of a class action, private attorney general or other representative action can be arbitrated only on an individual basis. The arbitrator has no authority to arbitrate any claim on a class or representative basis and may award relief only on an individual basis. If arbitration is chosen by any party, neither you nor we may

pursue a Claim as part of a class action or other representative action. Claims of 2 or more persons may not be combined in the same arbitration. However, applicants, co-applicants, authorized users on a single Account and/or related Accounts, or corporate affiliates are here considered as one person.

### How arbitration works

- Arbitration shall be conducted by the American Arbitration Association ("AAA") according to this arbitration provision and the applicable AAA arbitration rules in effect when the claim is filed ("AAA Rules"), except where those rules conflict with this arbitration provision. You can obtain copies of the AAA Rules at the AAA's website (www.adr.org) or by calling 800-778-7879. You or we may choose to have a hearing, appear at an hearing by phone or other electronic means, and/or be represented by counsel. Any in-person hearing will be held in the same city as the U.S. District Court closest to your billing address.
- Arbitration may be requested any time, even where there is a pending lawsuit, unless a trial has begun or a final judgment entered. Neither you nor we waive the right to arbitrate by filing or serving a complaint, answer, counterclaim, motion, or discovery in a court lawsuit. To choose arbitration, a party may file a motion to compel arbitration in a pending matter and/or commence arbitration by submitting the required AAA forms and requisite filing fees to the AAA.
- The arbitration shall be conducted by a single arbitrator in accord with this arbitration provision and the AAA Rules, which may limit discovery. The arbitrator shall not apply any federal or state rules of civil procedure for discovery, but the arbitrator shall honor claims of privilege recognized at law and shall take reasonable steps to protect Account information and other confidential information of either party if requested to do so. The arbitrator shall apply applicable substantive law consistent with the FAA and applicable statute of limitations, and may award damages or other relief under applicable law.
- The arbitrator shall make any award in writing and, if requested by you or us, may provide a brief statement of the reasons for the award. An arbitration award shall decide the rights and obligations only of the parties named in the arbitration, and shall not have any bearing on any other person or dispute.

### Paying for arbitration fees

- We will pay your share of the arbitration fee for an arbitration of Claims of $75,000 or less if they are unrelated to debt collection. Otherwise, arbitration fees will be allocated according to the applicable AAA

Rules. If we prevail, we may not recover our arbitration fees, unless the arbitrator decides your Claim was frivolous. All parties are responsible for their own attorney's fees, expert fees and any other expenses, unless the arbitrator awards such fees or expenses to you or us based on applicable law.

**The final award**

- Any award by an arbitrator is final unless a party appeals it in writing to the AAA within 30 days of notice of the award. The arbitration appeal shall be determined by a panel of 3 arbitrators. The panel will consider all facts and legal issues anew based on the same evidence presented in the prior arbitration, and will make decisions based on a majority vote. Arbitration fees for the arbitration appeal shall be allocated according to the applicable AAA Rules. An award by a panel on appeal is final. A final award is subject to judicial review as provided by applicable law.

**Survival and Severability of Terms**
This arbitration provision shall survive changes in this Agreement and termination of the Account or the relationship between you and us, including the bankruptcy of any party and any sale of your Account, or amounts owed on your Account, to another person or entity. If any part of this arbitration provision is deemed invalid or unenforceable, the other terms shall remain in force, except that there can be no arbitration of a class or representative Claim. This arbitration provision may not be amended, severed or waived, except as provided in this Agreement or in a written agreement between you and us.

**Rules for rejecting this arbitration provision**
You may reject this arbitration provision by sending a written rejection notice to us at: PO Box 790085; St. Louis, MO 63179-0085. Your rejection notice must be postmarked by 08/03/2016. Your rejection notice must state that you reject the arbitration provision and include your name, address, Account number and personal signature. No one else may sign the rejection notice. Your rejection notice will not apply to the arbitration provision(s) governing any other account(s) that you have or had with us. Rejection of this arbitration provision won't affect your other rights or responsibilities under this Agreement, including use of the Account.

## 12
## AGREEMENT & BENEFIT CHANGES

**Changes to this Agreement.** We may change this Agreement for any reason and at any time, subject to applicable law. This means that we can change rates, and fees that apply to your Account. It also means we can add, replace or remove provisions of this Agreement. If required by applicable law, we'll give you notice of the changes. If you have the right to reject a change, we'll notify you and tell you

how to reject. If we notify you of a change, we may do so on your statement or send you a separate written notice, either of which may be sent electronically if permitted by applicable law.

**Changing Benefits.** Any benefit, reward, service or feature offered may change or be discontinued at any time for any reason. Separate terms and conditions will describe any exceptions.

## 13
## MISCELLANEOUS

**Assignment.** We may assign any or all of our rights and obligations under this Agreement to a third party. You may not sell, assign or transfer your Account or any of your obligations under this Agreement.

**Governing Law.** Federal law and the law of South Dakota govern the terms and enforcement of this Agreement.

**Enforcing this Agreement.** We won't lose our rights under this Agreement because we delay in enforcing them or fail to enforce them. If any provision of this Agreement is found to be unenforceable, all other provisions of the Agreement will remain in effect.

**Collection Costs.** To the extent allowed by law, you're liable to us for our legal costs if we refer collection of your Account to a lawyer who isn't our salaried employee. These costs may include reasonable attorneys' fees, as well as costs and expenses of any legal action.

**Unforeseen Circumstances.** From time to time, our services might be unavailable due to circumstances beyond our control (such as fires, floods, natural disasters, system failures or other unpredictable events). When this happens, you might not be able to use your Card or obtain information about your Account. We're not responsible or liable if this happens.

**Lost or Stolen Cards, Account Numbers or Account Checks.** You must try to prevent the unauthorized use of your Account and any Card, including your Account number. You must call us if any Card is lost or stolen. Also, you must call us if you think someone has used or may use these items without permission.

**Headings.** The headings in this Agreement are included as a matter of convenience and do not define, limit or enlarge the scope of this Agreement or any of its provisions.

# 14

## YOUR BILLING RIGHTS

**This notice tells you about your rights and our responsibilities under the Fair Credit Billing Act. Keep this document for future use.**

**What to Do if You Find a Mistake on Your Statement**

If you think there is an error on your statement, write to us at the address for billing inquiries and correspondence shown on the front of your statement.

In your letter, give us the following information:

- Account information: Your name and account number.
- Dollar amount: The dollar amount of the suspected error.
- Description of problem: If you think there is an error on your bill, describe what you believe is wrong and why you believe it is a mistake.

You must contact us:

- Within 60 days after the error appeared on your statement.
- At least 3 business days before an automated payment is scheduled, if you want to stop payment on the amount you think is wrong.

You must notify us of any potential errors in writing. You may call us, but if you do we are not required to investigate any potential errors and you may have to pay the amount in question.

**What Will Happen After We Receive Your Letter**

When we receive your letter, we must do 2 things:

1. Within 30 days of receiving your letter, we must tell you that we received your letter. We also will tell you if we have already corrected the error.
2. Within 90 days of receiving your letter, we must either correct the error or explain to you why we believe the bill is correct.

**While we investigate whether or not there has been an error:**

- We cannot try to collect the amount in question, or report you as delinquent on that amount.
- The transaction in question may remain on your statement, and we may continue to charge you interest on that amount.
- While you do not have to pay the amount in question, you are responsible for the remainder of your balance.
- We can apply any unpaid amount against your credit limit.

**After we finish our investigation, one of 2 things will happen:**

- If we made a mistake You will not have to pay the amount in question or any interest or other fees related to that amount.
- If we do not believe there was a mistake: You will have to pay the amount in question, along with applicable interest and fees. We will send you a statement of the amount you owe and the date payment is due. We may then report you as delinquent if you do not pay the amount we think you owe.

If you receive our explanation but still believe your bill is wrong, you must write to us within 10 days telling us that you still refuse to pay. If you do so, we cannot report you as delinquent without also reporting that you are questioning your bill. We must tell you the name of anyone to whom we reported you as delinquent, and we must let those organizations know when the matter has been settled between us.

If we do not follow all of the rules above, you do not have to pay the first $50 of the amount you question even if your bill is correct.

**Your Rights if You're Dissatisfied with Your Credit Card Purchases**

If you are dissatisfied with the goods or services that you have purchased with your credit card, and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the purchase.

**To use this right, all of the following must be true:**

1. The purchase must have been made in your home state or within 100 miles of your current mailing address, and the purchase price must have been more than $50. (Note: Neither of these are necessary if your purchase was based on an advertisement we mailed to you, or if we own the company that sold you the goods or services.)
2. You must have used your credit card for the purchase. Purchases made with cash advances from an ATM or with an Account check do not qualify.
3. You must not yet have fully paid for the purchase.

If all of the criteria above are met and you are still dissatisfied with the purchase, contact us in writing at the address for billing inquiries and correspondence shown on the front of your statement.

While we investigate, the same rules apply to the disputed amount as discussed above. After we finish our investigation, we will tell you our decision. At that point, if we think you owe an amount and you do not pay, we may report you as delinquent.

---

**For Further Information:** Call the Customer Service number shown on the statement or on the back of your Card if you need more information.

© 2016 Citibank, N.A.

# Costco Cash Rewards Program Terms

Your Costco Anywhere Visa® Card by Citi account ("Card Account") will earn Costco Cash Rewards based on your purchases that can be redeemed for merchandise or cash back at any U.S. Costco warehouse, including Puerto Rico ("Costco Cash Rewards").

**Earning Costco Cash Rewards on Purchases:** You'll earn Costco Cash Rewards for purchases using your Card Account, minus returns and refunds, as follows:

- 4% cash back on eligible gas worldwide, including gas at Costco, for the first $7,000 per year in gas purchases and then 1% thereafter.
  - ° **Certain Non-Qualifying Purchases.** You will only earn 1% cash back, not 4%, for gas purchased at superstores, supermarkets, convenience stores and warehouse clubs other than Costco or for fuel used for non-automobile purposes.
- 3% cash back on restaurant (including cafes, bars, lounges and fast food restaurants) and eligible travel purchases worldwide, including airfare, hotels, car rentals, travel agencies, cruise lines and Costco Travel.
  - ° **Certain Non-Qualifying Purchases.** You will only earn 1%, not 3%, for purchases made at bakeries and certain restaurants/cafes inside department, grocery or warehouse clubs.
- 2% cash back on all other purchases from Costco and Costco.com.
- 1% cash back on all other purchases, including the non-qualifying purchases listed above.

    **Merchant Classification:** Each merchant – that is a retailer, business or any other place where you can make a purchase – is assigned a code that indicates the merchant's area of business. For example, restaurants are generally assigned a specific merchant code. We don't assign or have any control over merchant codes. Codes are chosen and assigned by a third party, who may change the codes from time to time. When you make a purchase at a merchant, we're provided the code for that merchant. If the code matches a category that gives you additional Costco Cash Rewards – for example, if the merchant code tells us that you made a purchase at a restaurant – we'll give you the additional Costco Cash Rewards for that purchase. Because we don't control what code a merchant is assigned, sometimes a purchase that you think fits a certain category may not earn additional Costco Cash Rewards. For example, a restaurant located within a large retail outlet may not be assigned a "restaurant" code, but rather a "retailer" code. This means that even though you receive additional Costco Cash Rewards for purchases at "restaurants," you won't earn additional Costco Cash Rewards for purchases at that restaurant.

**What doesn't qualify as a purchase?:** The following types of transactions don't qualify as purchases that earn Costco Cash Rewards:

- ° Use of checks that access your Card Account
- ° Balance transfers
- ° Cash advances
- ° Travelers checks, foreign currency purchases, money orders, wire transfers and similar cash-like transactions
- ° Lottery tickets, gaming chips and similar betting transactions
- ° Interest and account fees
- ° Unauthorized charges
- ° Items returned for credit

    **Returns:** Returned items may result in credits being applied to your Card Account which will reduce or may eliminate accumulated Costco Cash Rewards and may result in a negative cash rewards balance. If your Card Account has a negative Costco Cash Rewards balance, any newly earned Costco Cash Rewards will be used to offset such negative Costco Cash Rewards balance until such balance has been brought to zero.

**Redeeming Costco Cash Rewards** Your reward is distributed annually via U.S. Mail in the form of a reward coupon included in your February billing statement, and is redeemable through December 31 of the year issued in a single transaction at any U.S. Costco warehouse, including in Puerto Rico, for merchandise or cash back. The reward coupon will contain your Costco Cash Rewards balance based on your eligible purchases during the annual reward period. The annual reward period is based on January through December billing statements. Should you choose to redeem only a portion of the coupon for merchandise, you will receive the remaining balance in cash at the Costco warehouse register upon checkout. Some warehouses may not permit

the reward coupon to be redeemed for alcohol purchases. Requests for cash may be fulfilled in the form of a check at Costco's discretion. If you are enrolled in Paperless Statements, a paper billing statement will be provided to you in February if you earned a reward coupon during the previous annual reward period. Coupon must be redeemed in person on or prior to its expiration date of December 31 in the year in which it is issued. Any Costco Cash Rewards you have earned on purchases made by authorized users on your Card Account will be added to your Costco Cash Rewards Total. Only you, the primary cardmember, are eligible to receive the annual reward coupon, however, you or any authorized user on your Card Account may redeem your coupon. You may not transfer it to anyone else. **You will not receive a reward coupon if your reward is less than $1 or your account is closed at the time it is scheduled to be sent; any Costco Cash Rewards that had been accrued at that time will be forfeited. You must maintain your Costco Membership to receive and redeem the reward coupon.**

**Account Closure**: If we close your Card Account, you will no longer be able to earn or redeem your Costco Cash Rewards, and you will forfeit any accumulated Costco Cash Rewards. If you close or convert your Card Account prior to receiving the reward coupon in your February billing statement, any earned Costco Cash Rewards will be forfeited.

**Forfeiture**: All Costco Cash Rewards not disbursed via an annual reward coupon due to the reward amount being less than $1, the account status (including account closure due to death), or other reason will be forfeited. Similarly, any Costco Cash Rewards not redeemed by December 31 of the year issued will also be forfeited.

**Value of Costco Cash Rewards:** Costco Cash Rewards have no cash value until such time as they are redeemed at a Costco warehouse.

**Property Rights**: You have no property rights or other legal interests in Costco Cash Rewards. Costco Cash Rewards may not be transferred to any other person including through such events as inheritance, bankruptcy or divorce. Costco Cash Rewards cannot be assigned or pledged.

**Changes to Program Rules**: We may make changes to the Costco Cash Rewards Program at any time without notice. We will give you 30 days' written notice if we make any of the following changes: a change that negatively affects the number of Costco Cash Rewards you can earn, a change that negatively affects how/when you may lose your Costco Cash Rewards, a change that negatively affects how you can exercise your rights with respect to Costco Cash Rewards, or if we cancel the program.

**Fraud**: If we see evidence of fraud, misuse, abuse, or suspicious activity, we will investigate and, if we determine that fraud, misuse or abuse has occurred, we may take actions against you. These actions may include, without limitation:
- Taking away the Costco Cash Rewards you earned because of fraud, misuse or abuse
- Preventing you from earning Costco Cash Rewards
- Suspending or closing your Costco Cash Rewards Account
- Taking legal action to recover Costco Cash Rewards redeemed because of such activity and to recover our monetary losses, including litigation costs and damages

Some examples of fraud, misuse, abuse and suspicious activity include:
- Using your Card Account in an abusive manner for the primary purpose of acquiring Costco Cash Rewards
- Using your Consumer Card Account other than primarily for personal, consumer or household purposes

**GZJ KDKV'F"**

SITE:SD-PH TM:PH-0114 ACID:ISEROOP
09/27/22    14:31:50

# Costco Anywhere Visa® Card by Citi

**NICHOLAS PADAO**
Member Since 2011  Account number ending in: 0103
Billing Period: **05/27/16-06/24/16**

**www.citicards.com**
**Customer Service 1-855-378-6467**
**TTY:711**
PO Box 790046 ST. LOUIS, MO 63179-0046

## JUNE STATEMENT

| | |
|---|---|
| **Minimum payment due:** | **$1.48** |
| **New balance as of 06/24/16:** | **$1.48** |
| **Payment due date:** | **07/22/16** |

### Account Summary

| | |
|---|---|
| Previous balance | $368.41 |
| Payments | -$457.03 |
| Credits | -$0.00 |
| Purchases | +$88.62 |
| Cash advances | +$0.00 |
| Fees | +$0.00 |
| Interest | +$1.48 |
| **New balance** | **$1.48** |

### Credit Limit

| | |
|---|---|
| Credit Limit | $5,900 |
| Includes $800.00 cash advance limit | |
| Available Credit Limit | $5,898 |
| Includes $800 available for cash advance | |

**Late Payment Warning:**If we do not receive your minimum payment by the date listed above, you may have to pay a late fee of up to $37 and your APRs may be increased up to the variable Penalty APR of 29.99%.

**Minimum payment warning:**If you make only the minimum payment each period, you will pay more in interest, and it will take you longer to pay off your balance. For example:

| If you make no additional charges using this card and each month you pay... | You will pay off the balance shown on this statement in about... | And you will end up paying an estimated total of... |
|---|---|---|
| Only the minimum payment | 1 months | $1 |

For information about credit counseling services, call 1-877-337-8187.

**Costco Cash
Rewards Summary**

as of 06/24/16

**$141.24**

**» See page 3 for more information
about your rewards**

**For Payments, send check to: Citi Cards, PO BOX 78019, Phoenix, AZ, 85062-8019**

| | |
|---|---|
| **Minimum payment due** | **$1.48** |
| **New balance** | **$1.48** |
| **Payment due date** | **07/22/16** |

**Amount enclosed:**

Account number ending in 0103
**Please make check payable to Citi Cards.**

NICHOLAS PADAO

AMARILLO  TX  79109-7923

Citi Cards
PO BOX 78019
Phoenix, AZ 85062-8019

**www.citicards.com**

**NICHOLAS PADAO**

Customer Service 1-855-378-6467
TTY:711

Page 2 of 3

## CARDHOLDER SUMMARY

### NICHOLAS PADAO
**New Charges**

Card ending in 0103
**$88.62**

## ACCOUNT SUMMARY

| Sale Date | Post Date | Description | Amount |
|---|---|---|---|
| **Payments, Credits and Adjustments** | | | |
| | 06/02 | ONLINE PAYMENT - THANK YOU | -$140.00 |
| QPK8QPPF | 70 | J0000 | 0 |
| | 06/16 | PAYMENT RECEIVED - THANK YOU | -$132.85 |
| CGWWMP2L | 70 | J0000 | 0 |
| | 06/22 | ONLINE PAYMENT, THANK YOU | -$184.18 |
| | 70 | 0000 | 0 |

### NICHOLAS PADAO
### Standard Purchases

| Sale Date | Post Date | Description | Amount |
|---|---|---|---|
| 05/27 | 05/28 | SW AIR | $3.00 |
| FTF9H29Q | 61 | K4511USA | 0 |
| 06/01 | 06/02 | COSTCO WHSE #1085 000000000991085 | $40.87 |
| 9NFY*PPF | 61 | K5300USA | 0 |
| 06/17 | 06/20 | COSTCO GAS | $44.75 |
| G5Y272CL | 61 | K5542USA | 0 |

### Fees Charged

| | |
|---|---|
| **TOTAL FEES FOR THIS PERIOD** | **$0.00** |

### Interest Charged

| | | |
|---|---|---|
| 06/24 | INTEREST CHARGED TO STANDARD PURCH | $1.48 |
| 00000000 | 84    0000 | 0 |
| **TOTAL INTEREST FOR THIS PERIOD** | | **$1.48** |

### 2016 totals year-to-date

| | |
|---|---|
| Total fees charged in 2016 | **$0.00** |
| Total interest charged in 2016 | **$1.48** |

### Interest charge calculation

Days in billing cycle: **29**

Your **Annual Percentage Rate (APR)** is the annual interest rate on your account.

| Balance type | Annual percentage rate (APR) | Balance subject to interest rate | Interest charge |
|---|---|---|---|
| PURCHASES | | | |
| Standard Purch | 15.49% (V) | $120.27 (D) | $1.48 |
| ADVANCES | | | |
| Standard Adv | 25.49% (V) | $0.00 (D) | $0.00 |

Your Annual Percentage Rate (APR) is the annual interest rate on your account. APRs followed by (V) may vary. Balances followed by (D) are determined by the daily balance method (including current transactions).

### Account messages

We're pleased to welcome you as a card member of Costco Anywhere Visa® Card by Citi! Many benefits come with your card, including the opportunity to earn cash back on purchases inside and outside of Costco. Visit citi.com/costco to learn more.

## Costco Cash Rewards Summary

Total Costco Cash Rewards Balance:
**$141.24**

### Costco Cash Rewards Summary

Rewards balance as of last statement from your Costco card from American Express[1] ............................ +$118.49

Costco Cash Rewards balance as of last statement [1] ............................. +$0.00

Earned this period.................................. +$22.75

**Total Costco Cash Rewards Balance Year To Date[1]:**     **$141.24**

### Costco Cash Rewards Earned This Period

4% on eligible gas worldwide, including gas at Costco [2] ......................................... +$0.00

3% on restaurants .................................. +$0.00

3% on eligible travel worldwide .......... +$0.00

2% on Costco and Costco.com ................................................. +$0.00

1% on all other purchases ................................................ +$0.00

Earned this period from your Costco card from American Express ...................... +$22.75

**Total Earned:**     **$22.75**

» Visit

[1] Includes 2016 rewards balance from your Costco card from American Express
[2] Up to $7,000 per year in purchases, then 1% cash back

**www.citicards.com**

**NICHOLAS PADAO**

Remember, any charges above your credit limit MUST BE PAID IN FULL by your statement's payment due date.

If you have not received your new card, please call the Customer Service number on this statement.

Please be sure to pay on time. If you submit your payment by mail, we suggest you mail it no later than 07/15/2016 to allow enough time for regular mail to reach us.

**Customer Service 1-855-378-6467**
**TTY:711**

Page 3 of 3

# GZJ KDKV'G''

# CARD AGREEMENT

This Card Agreement is your contract with us. It governs the use of your card and account. The enclosed Facts About Interest and Fees ("Fact Sheet") is part of this Agreement. Please read this Agreement, including the Fact Sheet, carefully. Keep them for your records.

## Definitions

*account* means the relationship established between you and us by this Agreement.

*APR* means an annual percentage rate.

*authorized user* means any person you allow to use your account.

*card* means one or more cards or other access devices that we give you to get credit under this Agreement. This includes account numbers.

*we, us,* and *our* mean Citibank, N.A., the issuer of your account.

*you, your,* and *yours* mean the person who applied to open the account. It also means any other person responsible for complying with this Agreement.

## Your Account

You agree to use your account in accordance with this Agreement. You must pay us for all amounts due on your account. This Agreement is binding on you unless you close your account within 30 days after receiving the card and you have not used or authorized use of the card. Your account must only be used for lawful transactions.

**Authorized Users.** You may request additional cards for authorized users. You must pay us for all charges made by authorized users. You must pay us even if you did not intend to be responsible for those charges. You must notify us to withdraw any permission you give to an authorized user to use your account.

**Revolving Credit Limit.** Your initial revolving credit limit is on the card carrier. The full amount of your revolving credit limit is available to use where the card is honored. Part of your revolving credit limit is called the cash advance limit. It is available for cash advances. We may reduce or increase your revolving credit limit or cash advance limit at any time for any reason as permitted by law. We will notify you of any change, but the change may take effect before you receive the notice.

Your account does not have a pre-set spending limit. As a result, we may permit you to incur charges that cause your New Balance to go over your revolving credit limit. We evaluate these charges based on your account performance, other credit accounts with us, and experience with other creditors. Your minimum payment due will include the amount by which your New Balance goes over your revolving credit limit. You must pay this amount whether it is due to purchases, cash advances, interest charges, fees, or other charges.

**Balance Transfers.** Balance transfers are an account feature that we make available to you through offers. If there is an offer available at account opening, the Citi Disclosures will describe the terms of that offer. If we make an offer after your account is opened, the offer will describe the terms. All balance transfers are subject to the standard purchase APR unless a promotional rate applies.

**Checks.** We may provide you with balance transfer checks. You may use them to transfer a balance to your account or make other transactions. We may also provide you with cash convenience checks. You may use them to get a cash advance. Use of a cash convenience check will be a cash advance even if you use the check to make a payment to another creditor. You may not use balance transfer checks or cash convenience checks to pay an amount owed to us under this Agreement or to pay another account with us or an affiliate. We do not certify these checks or return any checks that have been paid.

**Billing Statement.** Your billing statement shows the New Balance. This is the total amount you owe us on the Statement Closing Date. To determine the New Balance, we begin with the total balance at the start of the billing period. We add any purchases, balance transfers or cash advances. We subtract any credits or payments. We then add any interest charges or fees and make other adjustments.

We deliver a billing statement to only one address. You must notify Customer Service of a change in address. We may stop sending you statements if we deem your account uncollectible or start collection proceedings; but we may continue to add interest and fees as permitted by law.

# APRs

**Account APRs.** For the APRs on your account, see the Fact Sheet.

**Variable APRs Based on Prime.** If any APR is based on the U.S. Prime Rate ("Prime Rate"), the APR will equal the

Prime Rate plus an additional amount. The additional amount appears on the Fact Sheet in the Details About Your Interest Rate table. If the Prime Rate increases, it will cause the APR to increase. If the Prime Rate decreases, it will cause the APR to decrease. For each billing period we use the Prime Rate published in *The Wall Street Journal* two business days before the Statement Closing Date. If the Prime Rate causes an APR to change, we put the new APR into effect as of the first day of the billing period for which we calculate the APR. We apply the new APR to any existing balances, subject to any promotional rate that may apply. If *The Wall Street Journal* does not publish the Prime Rate, we will use a similar published rate.

**Penalty APR.** The Penalty APR may be applied to your account if you:
  • make a late payment or
  • make a payment that is returned.

We set your Penalty APR based on your creditworthiness.

If the Penalty APR is applied to your account because you make a late payment that is not more than 60 days late or make a payment that is returned, it will apply only to new transactions and may continue to apply indefinitely. However, if the Penalty APR is applied to your account because your payment is more than 60 days late, the Penalty APR will apply to both existing and new transactions. It will no longer apply to existing transactions if you make the next six consecutive minimum payments when due. If you do not make these six consecutive minimum payments, the Penalty APR may continue to apply to both new and existing balances indefinitely.

**Effect of APR Increases.** If an APR increases, interest charges increase. Your minimum payment may increase as well.

## Interest Charges Based on APRs

**Interest Charges.** We impose interest charges when we apply APRs to your account balances. We do this every day by using a daily periodic rate. To get a daily periodic rate, we divide the APR by 365.

**When Interest Charges Begin.** We begin to impose interest charges the first day we add a charge to a daily balance. The charges we add to a daily balance include purchases, balance transfers, and cash advances. They also include interest charges and fees. We continue to impose interest charges until we credit your account with full payment of the total amount you owe us.

**Grace Period on Purchases.** You can avoid interest charges on purchases, but not on balance transfers and cash advances. This is called a grace period on purchases. The grace period is at least 23 days. To get a grace period on purchases, you must pay the New Balance in full by the due date every billing period. If you do not, you will not get a grace period until you pay the New Balance in full for two billing periods in a row. Certain balance transfer offers may take away the grace period on purchases. If that is the case, the balance transfer offer will describe what happens.

**Calculation of Interest Charges—Daily Balance Method (Including Current Transactions).** We calculate interest charges each billing period. To do this:

- We start with each of your different balances. These balances include, for example, standard purchases, standard cash advances, and different promotional balances. (When we calculate interest charges, we treat balance transfers as standard purchases unless a promotional rate applies.)
- We calculate the daily balance for each of your different balances. To get a daily balance, we start with the balance as of the end of the previous day. We add any interest charge on the previous day's balance. (This results in daily compounding of interest charges.) We add any new charges. We then subtract any new credits or payments.
- We multiply each daily balance by the daily periodic rate that applies to it. We do this for each day in the billing period. This gives us the daily interest charges for each of your different balances.
- We add up all the daily interest charges. The sum is the total interest charge for the billing period.

When we calculate daily balances, we add a purchase as of the Sale Date on the billing statement. We add a balance transfer or cash advance as of the Post Date on the billing statement. (The Post Date is the date we get a request to complete a balance transfer or cash advance transaction. When you send a balance transfer or cash convenience check directly to someone, the Post Date is the date we receive the check for payment.) We add a transaction fee to the same balance as the transaction. We generally add other fees to the standard purchase balance. We subtract a payment or credit as of the day it is credited to the account and then make other adjustments. We treat a credit balance as a balance of zero.

**Balance Subject to Interest Rate.** Your statement shows a Balance Subject to Interest Rate. It shows this for each different balance. The Balance Subject to Interest Rate is the average of the daily balances during the billing period. A billing period begins on the day after the Statement Closing Date of the previous billing period. It includes the Statement Closing Date of the current billing period.

# Fees

**Annual Membership Fee.** If an annual membership fee applies, the Fact Sheet shows it. We will refund this fee if you notify us that you are closing your account within 30 days of the mailing or delivery date of the statement on which the fee appears. The fee is otherwise non-refundable.

**Transaction Fee for Balance Transfers.** The Fact Sheet shows the amount of this fee. We add this fee for each balance transfer. This fee is in addition to any periodic fee that may be imposed with a promotional offer. You make a balance transfer when you use a balance transfer check or contact us to transfer a balance.

**Transaction Fee for Cash Advances.** The Fact Sheet shows the amount of this fee. We add this fee for each cash advance. You take a cash advance if you use a cash convenience check; get money through an automated teller machine (ATM); or get money through home banking or a financial institution. You also take a cash advance if you make a wire transfer; buy a money order, traveler's check, lottery ticket, casino chip, or similar item; or engage in a similar transaction.

**Transaction Fee for Foreign Purchases.** The Fact Sheet shows the amount of this fee, which is a percentage of the U.S. dollar amount of the purchase. We add this fee for each purchase made outside the U.S., whether made in U.S. dollars or in a foreign currency.

**Late Fee.** We may add a late fee for each billing period in which you have a past due payment. For late fee purposes, you have a past due payment any time you fail to pay the Minimum Payment Due (less the Amount Over Revolving Credit Limit shown on your billing statement) by the payment due date. The fee is based on your account balance as of the payment due date. The fee will be $15 on balances up to $100; or $25 on balances of $100 and over. However, for any additional past due payment during the next six billing periods after a past due payment, the fee will be $15 on balances up to $100; $29 on balances of $100 up to $250; or $35 on balances of $250 and over. The fee will not exceed the

**Returned Payment Fee.** We may add a returned payment fee for a returned payment. A returned payment is an electronic debit, payment check, or similar payment instrument, that is returned unpaid. We may add this fee the first time your payment is returned, even if it is not returned upon resubmission. The fee will be $25; or $35 for any additional returned payment during the next six billing periods after a returned payment. However, the fee will not exceed the amount permitted by law.

**Stop Payment on Cash Convenience Check Fee.** We add a $39 fee if we honor your request to stop payment on a cash convenience check. To stop payment on a cash convenience check write us at P.O. Box 6500, Sioux Falls, South Dakota 57117. You can also call the Customer Service number on the billing statement. If you call, you must confirm the call in writing within 14 days. A written stop payment order is good for 6 months unless renewed in writing.

## Information on Foreign Currency Conversion

Our network providers are MasterCard, Visa, and American Express. They convert transactions in foreign currencies into U.S. dollars. The type of card you have determines who does the conversion. Each network provider follows its own procedures. Each network provider's current procedures are described below. The procedures may change from time to time without notice.

- MasterCard uses a conversion rate in effect one day before its transaction processing date. It uses a government-mandated rate if required to do so. If not, it uses a wholesale market rate.
- Visa uses a conversion rate in effect on its applicable central processing date. It uses a government-mandated rate if required to do so. If not, it selects from the range of rates available in wholesale currency markets. The selected rate may vary from the rate Visa receives.
- American Express uses any conversion rate required by applicable law. If there is none, it uses the highest interbank rate it selects on the business day before the day it processes the transaction.

A third party may convert a transaction into U.S. dollars or another currency before sending it to our network provider. In these cases, the third party selects the conversion rate.

If you take a cash advance in a foreign currency at a branch or ATM of one of our affiliates, an affiliate of ours will convert it into U.S. dollars. This applies regardless of which network provider you use to take the cash advance. Our affiliate

currently uses a conversion rate in effect on its processing date. It uses a government-mandated rate if required to do so. If not, it uses a mid-point market rate. Our affiliate's procedure may change from time to time without notice.

The conversion rate you get is the one used on the transaction's processing date. This may be different from the one in effect on the transaction's Sale Date or Post Date.

## Payments

**Minimum Payment Due.** You must pay at least the Minimum Payment Due by the payment due date each billing period. The sooner you pay the New Balance, the less you will pay in interest charges.

To calculate the Minimum Payment Due, we begin with any past due amount. We then add any amount in excess of your revolving credit limit. We also add the largest of the following:

- The New Balance on the billing statement if it is less than $20;
- $20 if the New Balance is at least $20;
- 1% of the New Balance (the result is rounded down to the nearest dollar) plus the amount of your billed interest charges, any applicable late fee, and any applicable minimum interest charge; or
- 1.5% of the New Balance (the result is rounded down to the nearest dollar).

When we calculate the Minimum Payment Due, we may subtract from the New Balance certain fees added to your account during the billing period. We may also include in the Minimum Payment Due any additional amount specified in a promotional offer. The balance of any such promotional offer is not included in the four bullets above. The Minimum Payment Due is never more than the New Balance.

**Application of Payments.** Payments in excess of the Minimum Payment Due are applied in accordance with law. This means that we will generally apply payments in excess of the Minimum Payment Due to balances with higher APRs before balances with lower APRs. We generally apply payments equal to or less than the Minimum Payment Due and credits to lower APR balances first.

**Payment Instructions.** We credit your payments in accordance with our payment instructions on the billing statement. You must pay us in U.S. dollars. To do so, you must use a check, similar instrument, or electronic debit that is drawn on and honored by a bank in the U.S. Do not send cash. We can

accept late or partial payments, or payments that reflect "paid in full" or other restrictive endorsements, without losing our rights. We also reserve the right to accept payments made in foreign currency and instruments drawn on funds on deposit outside the U.S. If we do, we select the currency conversion rate. We will then credit your account in U.S. dollars after deducting any costs incurred in processing your payment. Or we may bill you separately for these costs.

**Optional Pay by Phone Service.** You may use our optional Pay by Phone Service to make your payment by phone. To do so, call us to request the service. You agree to pay us the Pay by Phone fee shown in the Pay by Phone section on the back of the billing statement when a representative of ours helps expedite your payment. Our representatives are trained to tell you this amount when you use this service.

## Credit Reporting

We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report. We may report account information in your name and the names of authorized users. We may also obtain follow-up credit reports on you.

If you think we reported incorrect information to a credit bureau, write us at the Customer Service address on the billing statement. We will investigate the matter. We will then tell you if we agree or disagree with you. If we agree with you, we will contact each credit bureau to which we reported and request a correction. If we disagree with you, we will tell you that.

## Information Sharing

You authorize us to share information about you as permitted by law. This includes information we get from you and others. It also includes information about your transactions with us. Please see our Privacy Notice for details about our information sharing practices.

## Changes to this Agreement

**We may change the rates, fees, and terms of this Agreement from time to time as permitted by law. The changes may add, replace, or remove provisions of this Agreement. We will give you advance written notice of the changes and a right to opt out to the extent required by law.**

## Default

You default under this Agreement if you fail to pay the Minimum Payment Due by its due date; pay by a check or

8

similar instrument that is not honored or that we must return because it cannot be processed; pay by electronic debit that is returned unpaid; file for bankruptcy; or default under any other Card Agreement that you have with us. If you default, we may close your account and, to the extent permitted by law, demand immediate payment of the total balance. If you gave us a security interest in a Certificate of Deposit, we may use the deposit amount to pay any amount you owe.

## Refusal of the Card, Closed Accounts, and Related Provisions

**Refusal of the Card.** We do not guarantee approval of transactions. We are not liable for transactions that are not approved. That is true even if you have enough credit. We may limit the number of transactions approved in one day. If we detect unusual or suspicious activity, we may suspend your credit privileges.

**Preauthorized Charges.** We may suspend any automatic or other preauthorized card charges you arrange with a third party. We may do this if you default; if the card is lost or stolen; or we change your account for any reason. If we do this, you are responsible for paying the third party directly if you wish to do so. You are also responsible for reinstating the preauthorized charges if you wish to do so and we permit it.

**Lost or Stolen Cards, Account Numbers, or Cash Convenience and Balance Transfer Checks.** You must call us if any card, account number, or check is lost or stolen. You must also call us if you think someone used or may use them without permission. When you call, we may require you to provide information to help our investigation. We may require you to provide this information in writing. For example, we may ask you to identify any charges that were not made by you or someone authorized by you. We may also ask you to confirm that you received no benefit from those charges.

**Closing Your Account.** You may close your account by notifying us in writing or over the phone. If you close your account, you must still repay the total balance in accordance with this Agreement. We may also close your account or suspend account privileges at any time for any reason. We may do this without prior notice to you. We may also reissue a different card at any time. You must return any card to us upon request.

**Closing Secured Accounts.** If your account is a secured account, you gave us a security interest in a Certificate of Deposit. This secures repayment of your account. If you

withdraw your funds from the Certificate of Deposit, we will close your account.

# ARBITRATION

***PLEASE READ THIS PROVISION OF THE AGREEMENT CAREFULLY.*** **IT PROVIDES THAT ANY DISPUTE MAY BE RESOLVED BY BINDING ARBITRATION. ARBITRATION REPLACES THE RIGHT TO GO TO COURT, INCLUDING THE RIGHT TO A JURY AND THE RIGHT TO PARTICIPATE IN A CLASS ACTION OR SIMILAR PROCEEDING. IN ARBITRATION, A DISPUTE IS RESOLVED BY AN ARBITRATOR INSTEAD OF A JUDGE OR JURY. ARBITRATION PROCEDURES ARE SIMPLER AND MORE LIMITED THAN COURT PROCEDURES.**

***Agreement to Arbitrate:*** Either you or we may, without the other's consent, elect mandatory, binding arbitration for any claim, dispute, or controversy between you and us (called "Claims").

## *Claims Covered*

**What Claims are subject to arbitration?** All Claims relating to your account, a prior related account, or our relationship are subject to arbitration, including Claims regarding the application, enforceability, or interpretation of this Agreement and this arbitration provision. All Claims are subject to arbitration, no matter what legal theory they are based on or what remedy (damages, or injunctive or declaratory relief) they seek. This includes Claims based on contract, tort (including intentional tort), fraud, agency, your or our negligence, statutory or regulatory provisions, or any other sources of law; Claims made as counterclaims, cross-claims, third-party claims, interpleaders or otherwise; and Claims made independently or with other claims. A party who initiates a proceeding in court may elect arbitration with respect to any Claim advanced in that proceeding by any other party. Claims and remedies sought as part of a class action, private attorney general or other representative action are subject to arbitration on an individual (non-class, non-representative) basis, and the arbitrator may award relief only on an individual (non-class, non-representative) basis.

**Whose Claims are subject to arbitration?** Not only ours and yours, but also Claims made by or against anyone connected with us or you or claiming through us or you, such as a co-applicant or authorized user of your account, an employee, agent, representative, affiliated company, predecessor or successor, heir, assignee, or trustee in bankruptcy.

**What time frame applies to Claims subject to arbitration?**
Claims arising in the past, present, or future, including Claims arising before the opening of your account, are subject to arbitration.

**Broadest interpretation.** Any questions about whether Claims are subject to arbitration shall be resolved by interpreting this arbitration provision in the broadest way the law will allow it to be enforced. This arbitration provision is governed by the Federal Arbitration Act (the "FAA").

**What about Claims filed in Small Claims Court?** Claims filed in a small claims court are not subject to arbitration, so long as the matter remains in such court and advances only an individual (non-class, non-representative) Claim.

**What about debt collections?** We and anyone to whom we assign your debt will not initiate an arbitration proceeding to collect a debt from you unless you assert a Claim against us or our assignee. We and any assignee may seek arbitration on an individual basis of any Claim asserted by you, whether in arbitration or any proceeding, including in a proceeding to collect a debt. You may seek arbitration on an individual basis of any Claim asserted against you, including in a proceeding to collect a debt.

### *How Arbitration Works*

**How does a party initiate arbitration?** The party filing an arbitration must choose one of the following two arbitration firms and follow its rules and procedures for initiating and pursuing an arbitration: American Arbitration Association or JAMS. Any arbitration hearing that you attend will be held at a place chosen by the arbitration firm in the same city as the U.S. District Court closest to your then current billing address, or at some other place to which you and we agree in writing. You may obtain copies of the current rules of each of the arbitration firms and forms and instructions for initiating an arbitration by contacting them as follows:

> American Arbitration Association
> 800-778-7879 (toll-free)
> Website: www.adr.org

> JAMS
> 800-352-5267 (toll-free)
> Website: www.jamsadr.com

At any time you or we may ask an appropriate court to compel arbitration of Claims, or to stay the litigation of Claims pending arbitration, even if such Claims are part of a lawsuit,

Even if a party fails to exercise these rights at any particular time, or in connection with any particular Claims, that party can still require arbitration at a later time or in connection with any other Claims.

**What procedures and law are applicable in arbitration?**
A single, neutral arbitrator will resolve Claims. The arbitrator will be either a lawyer with at least ten years experience or a retired or former judge, selected in accordance with the rules of the arbitration firm. The arbitration will follow procedures and rules of the arbitration firm in effect on the date the arbitration is filed unless those procedures and rules are inconsistent with this Agreement, in which case this Agreement will prevail. Those procedures and rules may limit the discovery available to you or us. The arbitrator will take reasonable steps to protect customer account information and other confidential information if requested to do so by you or us. The arbitrator will apply applicable substantive law consistent with the FAA and applicable statutes of limitations, will honor claims of privilege recognized at law, and will have the power to award to a party any damages or other relief provided for under applicable law. You or we may choose to have a hearing and be represented by counsel. The arbitrator will make any award in writing and, if requested by you or us, will provide a brief statement of the reasons for the award. An award in arbitration shall determine the rights and obligations between the named parties only, and only in respect of the Claims in arbitration, and shall not have any bearing on the rights and obligations of any other person, or on the resolution of any other dispute.

**Who pays?** Whoever files the arbitration pays the initial filing fee. If we file, we pay; if you file, you pay, unless you get a fee waiver under the applicable rules of the arbitration firm. If you have paid the initial filing fee and you prevail, we will reimburse you for that fee. If there is a hearing, we will pay any fees of the arbitrator and arbitration firm for the first day of that hearing. All other fees will be allocated as provided by the rules of the arbitration firm and applicable law. However, we will advance or reimburse your fees if the arbitration firm or arbitrator determines there is good reason for requiring us to do so, or if you ask us and we determine there is good reason for doing so. Each party will bear the expense of that party's attorneys, experts, and witnesses, and other expenses, regardless of which party prevails, but a party may recover any or all expenses from another party if the arbitrator, applying applicable law, so determines.

**Who can be a party?** Claims must be brought in the name of an individual person or entity and must proceed on an individual (non-class, non-representative) basis. The arbitrator will not award relief for or against anyone who is not a party. If you or we require arbitration of a Claim, neither you, we, nor any other person may pursue the Claim in arbitration as a class action, private attorney general action or other representative action, nor may such Claim be pursued on your or our behalf in any litigation in any court. Claims, including assigned Claims, of two or more persons may not be joined or consolidated in the same arbitration. However, applicants, co-applicants, authorized users on a single account and/or related accounts, or corporate affiliates are here considered as one person.

**When is an arbitration award final?** The arbitrator's award is final and binding on the parties unless a party appeals it in writing to the arbitration firm within fifteen days of notice of the award. The appeal must request a new arbitration before a panel of three neutral arbitrators designated by the same arbitration firm. The panel will consider all factual and legal issues anew, follow the same rules that apply to a proceeding using a single arbitrator, and make decisions based on the vote of the majority. Costs will be allocated in the same way they are allocated for arbitration before a single arbitrator. An award by a panel is final and binding on the parties after fifteen days has passed. A final and binding award is subject to judicial review and enforcement as provided by the FAA or other applicable law.

### *Survival and Severability of Terms*

This arbitration provision shall survive: (i) termination or changes in the Agreement, the account, or the relationship between you and us concerning the account; (ii) the bankruptcy of any party; and (iii) any transfer, sale or assignment of your account, or any amounts owed on your account, to any other person or entity. If any portion of this arbitration provision is deemed invalid or unenforceable, the entire arbitration provision shall not remain in force. No portion of this arbitration provision may be amended, severed or waived absent a written agreement between you and us.

### Governing Law and Enforcing our Rights

**Governing Law.** Federal law and the law of South Dakota, where we are located, govern the terms and enforcement of this Agreement.

**Enforcing this Agreement.** We will not lose our rights under this Agreement because we delay in enforcing them or fail to enforce them.

**Collection Costs.** To the extent permitted by law, you are liable to us for our legal costs if we refer collection of your account to a lawyer who is not our salaried employee. These costs may include reasonable attorneys' fees. They may also include costs and expenses of any legal action.

**Assignment.** We may assign any or all of our rights and obligations under this Agreement to a third party.

## For Further Information

Call us toll-free for further information. Call the toll-free Customer Service telephone number shown on the billing statement or on the back of your card. You can also call local or toll-free Directory Assistance to get our telephone number.

Ken Stork
Vice President

Citibank, N.A.
P.O. Box 6000
Sioux Falls, SD 57117

## <u>Your Billing Rights: Keep this Document for Future Use</u>
**This notice tells you about your rights and our responsibilities under the Fair Credit Billing Act.**

## <u>What To Do If You Find A Mistake On Your Statement</u>

If you think there is an error on your statement, write to us at the address for billing inquiries and correspondence shown on the front of your statement.

In your letter, give us the following information:
- <u>Account information</u>: Your name and account number.
- <u>Dollar amount</u>: The dollar amount of the suspected error.
- <u>Description of problem</u>: If you think there is an error on your bill, describe what you believe is wrong and why you believe it is a mistake.

You must contact us:
- Within 60 days after the error appeared on your statement.
- At least 3 business days before an automated payment is scheduled, if you want to stop payment on the amount you think is wrong.

You must notify us of any potential errors <u>in writing</u>. You may call us, but if you do we are not required to investigate any potential errors and you may have to pay the amount in question.

## <u>What Will Happen After We Receive Your Letter</u>
**When we receive your letter, we must do two things:**
1. Within 30 days of receiving your letter, we must tell you that we received your letter. We will also tell you if we have already corrected the error.
2. Within 90 days of receiving your letter, we must either correct the error or explain to you why we believe the bill is correct.

**While we investigate whether or not there has been an error:**
- We cannot try to collect the amount in question, or report you as delinquent on that amount.
- The charge in question may remain on your statement, and we may continue to charge you interest on that amount.
- While you do not have to pay the amount in question, you are responsible for the remainder of your balance.
- We can apply any unpaid amount against your revolving credit limit.

**After we finish our investigation, one of two things will happen:**
- <u>If we made a mistake</u>: You will not have to pay the amount in question or any interest or other fees related to that amount.
- <u>If we do not believe there was a mistake</u>: You will have to pay the amount in question, along with applicable interest and fees. We will send you a statement of the amount you owe and the date payment is due. We may then report you as delinquent if you do not pay the amount we think you owe.

If you receive our explanation but still believe your bill is wrong, you must write to us within <u>10 days</u> telling us that you still refuse to pay. If you do so, we cannot report you as delinquent without also reporting that you are questioning your bill. We must tell you the name of anyone to whom we

reported you as delinquent, and we must let those organizations know when the matter has been settled between us.

If we do not follow all of the rules above, you do not have to pay the first $50 of the amount you question even if your bill is correct.

### Your Rights If You Are Dissatisfied With Your Credit Card Purchases

If you are dissatisfied with the goods or services that you have purchased with your credit card, and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the purchase.

To use this right, all of the following must be true:

1. The purchase must have been made in your home state or within 100 miles of your current mailing address, and the purchase price must have been more than $50. (Note: Neither of these are necessary if your purchase was based on an advertisement we mailed to you, or if we own the company that sold you the goods or services.)
2. You must have used your credit card for the purchase. Purchases made with cash advances from an ATM or with a check that accesses your credit card account do not qualify.
3. You must not yet have fully paid for the purchase.

If all of the criteria above are met and you are still dissatisfied with the purchase, contact us <u>in writing</u> at the address for billing inquiries and correspondence shown on the front of your statement.

While we investigate, the same rules apply to the disputed amount as discussed above. After we finish our investigation, we will tell you our decision. At that point, if we think you owe an amount and you do not pay, we may report you as delinquent.

© 2011 Citibank, N.A.

GZJ KDKV'H''

SITE:KC-PH TM:RC-0024 ACID:ISER545
09/27/22        14:12:41

**KEITH L TAYLOR**
Member Since 2013  Account number ending in: 8255
Billing Period: **03/23/13-04/19/13**

www.citicards.com
**Customer Service 1-888-419-7559**
**TTY:711**
BOX 6062 SIOUX FALLS, SD 57117

**APRIL  STATEMENT**
| | |
|---|---|
| Minimum payment due: | $71.00 |
| New balance as of 04/19/13: | $4,774.78 |
| Payment due date: | 05/17/13 |

**Late Payment Warning:** If we do not receive your minimum payment by the date listed above, you may have to pay a late fee of up to $35 and your APRs may be increased up to the variable Penalty APR of 29.99%.

For information about credit counseling services, call 1-877-337-8187.

**Account Summary**

| | |
|---|---|
| Previous balance | $0.00 |
| Payments | -$0.00 |
| Credits | -$58.17 |
| Purchases | +$4,832.95 |
| Cash advances | +$0.00 |
| Fees | +$0.00 |
| Interest | +$0.00 |
| **New balance** | **$4,774.78** |

**Credit Limit**

| | |
|---|---|
| Revolving Credit limit | $20,000 |
| Includes $6,000 cash advance limit | |
| Available Revolving credit | $15,225 |
| Includes $6,000 available for cash advances | |

AAdvantage® Miles
Earned this period:
**36,277**

For Payments, send check to: CITI CARDS, PO BOX 78045, Phoenix, AZ, 85062-8045

| | |
|---|---|
| **Minimum payment due** | **$71.00** |
| **New balance** | **$4,774.78** |
| **Payment due date** | **05/17/13** |

**Amount enclosed:**

Account number ending in 8255
**Please make check payable to CITI CARDS.**

KEITH L TAYLOR
EL PASO TX 79934-4130

CITI CARDS
PO BOX 78045
Phoenix, AZ 85062-8045

**www.citicards.com**

**KEITH L TAYLOR**

## Account Summary

| Trans. date | Post date | Description | Amount |
|---|---|---|---|
| **Payments, Credits and Adjustments** | | | |
| 03/31 | 03/31 | WAL-MART #4341   SE2  TRUTH OR CONSNM | -$58.17 |
| 9N7KF*34 | 71 | 5411US | 4E 0 | |
| **Standard Purchases** | | | |
| 03/29 | 03/29 | AAFES BLISS LOGAN HEIGHT FORT BLISS  TX | $42.06 |
| DJGNSHH9 | 61 | C5542US | AC 0 | |
| 03/29 | 03/29 | WAL-MART #4341   TRUTH OR CONSNM | $156.67 |
| 13C83HLB | 61 | Q5411US | JN 0 | |
| 03/29 | 03/29 | BUTTE GENERAL S   ELEPHANT BUTTNM | $16.10 |
| Y989SJ50 | 61 | Q5541US | AE 0 | |
| 03/29 | 03/29 | ELEPHANTE BUTTE STATE PK ELEPHANT BUTTNM | $42.00 |
| 4Y2R5LS5 | 61 | Q9399US | AE 0 | |
| 03/30 | 03/30 | WAL-MART #4341   TRUTH OR CONSNM | $66.46 |
| 5STBZGLB | 61 | Q5411US | JN 0 | |
| 03/30 | 03/30 | CHEVRON 00205878   ELEPHANT BUTTNM | $33.48 |
| 383N25HC | 61 | Q5541US | AE 0 | |
| 03/30 | 03/30 | RIVERBEND HOT SPRINGS   TRUTH OR CONSNM | $30.00 |
| Y0F1FNGW | 61 | Q7011US | ON 0 | |
| 03/31 | 03/31 | WAL-MART #4341   TRUTH OR CONSNM | $75.42 |
| 0RQR4HLB | 61 | Q5411US | JN 0 | |
| 03/31 | 03/31 | ZIA KAYAK OUTFITTERS   ELEPHANT BUTTNM | $53.73 |
| G36M2RGW | 61 | Q4457US | AE 0 | |
| 03/31 | 03/31 | RIVERBEND HOT SPRINGS   TRUTH OR CONSNM | $30.00 |
| Y0F1FNGW | 61 | Q7011US | ON 0 | |
| 04/01 | 04/01 | FASTOP 4   TRUTH OR CONSNM | $72.01 |
| 3YBCQO0O | 61 | C5542US | AC 0 | |
| 04/01 | 04/01 | SUBWAY   03147998  TRUTH OR CONSNM | $9.06 |
| TXC*6GD7 | 61 | Q5814US | AE 0 | |
| 04/02 | 04/02 | ALBERTSONS #0999   EL PASO   TX | $10.69 |
| 9GT3*JYL | 61 | Q5411US | AE 0 | |
| 04/02 | 04/02 | DIAMOND 1373 SHAMROCK  EL PASO   TX | $47.20 |
| M8NN9RF3 | 61 | C5542US | AC 0 | |
| 04/03 | 04/03 | CLASSY PET CUTS   EL PASO   TX | $90.50 |
| 1D0YHRP2 | 61 | Q7299US | AE 0 | |
| 04/04 | 04/04 | AAFES VAN HORNE GAS PUMP FT BLISS  TX | $75.00 |
| NDNN0JH9 | 61 | C5542US | AC 0 | |
| 04/04 | 04/04 | AMERICAN AI 0010642186857DALLAS   TX | $34.00 |
| M*GRD4BT | 61 | C3001US | AV10 | |
| 04/04 | 04/04 | AMERICAN AI 0010642186858DALLAS   TX | $34.00 |
| X*GRD4BT | 61 | C3001US | AV10 | |
| 04/04 | 04/04 | AMERICAN AI 0010642187089DALLAS   TX | $50.00 |
| WJHRD4BT | 61 | Q3001US | AV10 | |
| 04/04 | 04/04 | AMERICAN AI 0012321139917DALLAS   TX | $598.60 |
| M3GRD4BT | 61 | C3001US | AV10 | |
| 04/04 | 04/04 | AMERICAN AI 0012321139919DALLAS   TX | $598.60 |
| X3GRD4BT | 61 | C3001US | AV10 | |
| 04/05 | 04/05 | TEXAS GAS SERVICE   866-5592455 TX | $125.77 |
| H00*MJT2 | 61 | Q4900US | AV10 | |
| 04/06 | 04/06 | FT BLISS COMMISSARY   FORT BLISS  TX | $274.19 |
| H7C4XBX2 | 61 | Q5411US | 4E 0 | |
| 04/08 | 04/08 | AA MILES BY POINTS   POINTS.COM  IL | $921.88 |

**AAdvantage® Miles Reported to**

**American Airlines:**  **36,277**

| | |
|---|---|
| Purchase Miles | 4,833 |
| Bonus Miles | + 31,444 |
| **Accumulated This Period** | 36,277 |

**» Visit aa.com/aadvantage to redeem miles, book flights and much more**

American Airlines reserves the right to change the AAdvantage® program and its terms and conditions at any time without notice, and to end the AAdvantage® program with six months' notice. Any such changes may affect your ability to use the awards or mileage credits that you have accumulated. Unless specified, AAdvantage® miles earned through this promotion/offer do not count toward elite-status qualification or AAdvantage Million Miler[SM] status. American Airlines is not responsible for products or services offered by other participating companies. For complete details about the AAdvantage® program, visit www.aa.com/aadvantage. American Airlines, American Eagle, AAdvantage, AAdvantage Million Miler, MileSAAver, Business Extra, Flagship, Admirals Club, Platinum Pro, AAdvantage MileUp, AA Cargo, the Flight Symbol logo and the Tail Design are marks of American Airlines, Inc.

**www.citicards.com**

**Customer Service 1-888-419-7559**
**TTY:711**

Page 3 of 4

**KEITH L TAYLOR**

**Standard Purchases, cont'd**

| Trans. date | Post date | Description | Amount |
|---|---|---|---|
| YM6Z3D00 | | 61    Q7399US        AW70 | |
| 04/08 | 04/08 | AMERICAN AI 0012321273335DALLAS    TX | $64.25 |
| 4T2XK5BT | | 61    Q3001US        AV10 | |
| 04/08 | 04/08 | AMERICAN AI 0012321273336DALLAS    TX | $64.25 |
| YGBZK5BT | | 61    Q3001US        AV10 | |
| 04/10 | 04/10 | BED BATH & BEYOND #356  EL PASO    TX | $64.94 |
| Y51KLY3G | | 61    Q5719US        AE 0 | |
| 04/10 | 04/10 | THE CLEANERS #27      EL PASO    TX | $16.14 |
| W7DYJB00 | | 61    Q7216US        AE 0 | |
| 04/11 | 04/11 | AAFES BLISS LOGAN HEIGHT FORT BLISS  TX | $47.66 |
| W6ZT6JH9 | | 61    C5542US        AC 0 | |
| 04/13 | 04/13 | SHELL OIL 60541220022  BOWIE      AZ | $64.00 |
| 9MFQ0DYF | | 61    C5542US        AC 0 | |
| 04/13 | 04/13 | DIAMOND 1373 SHAMROCK  EL PASO    TX | $70.16 |
| RW5T9RF3 | | 61    C5542US        AC 0 | |
| 04/13 | 04/13 | BUDGET TIRE STORE      DEMING    NM | $40.29 |
| QB4X5S97 | | 61    C5542US        AC 0 | |
| 04/14 | 04/14 | AAFES D-MONTHAN NEW SHOP DAVIS MONTHANAZ | $33.54 |
| SBQP9JH9 | | 61    Q5399US        AE 0 | |
| 04/14 | 04/14 | AAFES DAVIS MONTHAN GAS  DAVIS MONTHANAZ | $46.64 |
| F3NL9JH9 | | 61    C5542US        AC 0 | |
| 04/14 | 04/14 | SHELL OIL 57445118409   WILLIAMS    AZ | $54.30 |
| SKJP8WYF | | 61    C5542US        AC 0 | |
| 04/14 | 04/14 | SHELL OIL 60541220424   BLACK CYN CTYAZ | $69.87 |
| WCD5Y6ZF | | 61    C5542US        AC 0 | |
| 04/15 | 04/15 | SOUTH RIM GENERAL STOR  928-638-2262 AZ | $138.16 |
| ZVJLF300 | | 61    Q5399US        AE 0 | |
| 04/15 | 04/15 | GRAND CANYON ACTVTES    GRAND CANYON AZ | $245.62 |
| J9F15600 | | 61    Q7011US        JN 0 | |
| 04/16 | 04/16 | SOUTH RIM GENERAL STOR  928-638-2262 AZ | $9.67 |
| R8NLF300 | | 61    Q5399US        AE 0 | |
| 04/16 | 04/16 | SOUTH RIM GENERAL STOR  928-638-2262 AZ | $18.45 |
| T7KLF300 | | 61    Q5399US        AE 0 | |
| 04/17 | 04/17 | CHEVRON 00208757       WILLIAMS    AZ | $56.20 |
| B8BM6500 | | 61    Q5542US        AC 0 | |
| 04/17 | 04/17 | MUSTANG #7193 SAPP      HOLBROOK    AZ | $41.18 |
| WX3LF2Y2 | | 61    C5542US        AC 0 | |
| 04/17 | 04/17 | GOLDEN CORRAL - #922    ALBUQERQUE NM | $25.77 |
| 53SJTW0H | | 61    Q5814US        AE 0 | |
| 04/17 | 04/17 | PILOT        Jamestown    NM | $45.73 |
| BS06*500 | | 61    Q5542US        AC 0 | |
| 04/17 | 04/17 | TUSAYAN MARKET          GRAND CANYON AZ | $10.95 |
| XRKMJQ00 | | 61    Q5499US        AE 0 | |
| 04/17 | 04/17 | SOPHIES MEXICAN KITCHE  GRAND CANYON AZ | $42.34 |
| *MK8WQ00 | | 61    Q5812US        AE 0 | |
| 04/17 | 04/17 | TRAILER VILLAGE        GRAND CANYON AZ | $75.42 |
| ZL7W2V00 | | 61    C7011US        AE 0 | |

## Fees charged

| Date | Description | Amount |
|---|---|---|
| 04/19 | MEMBERSHIP FEE APR 13-MAR 14 | $0.00 |
| 00000000 74 | 0000    0 | |

**www.citicards.com**

**KEITH L TAYLOR**

## Fees charged, cont'd

| Date | Description | Amount |
|------|-------------|--------|
| **Total fees charged in this billing period** | | **$0.00** |

## Interest charged

| | | |
|---|---|---|
| **Total interest charged in this billing period** | | **$0.00** |

### 2013 totals year-to-date

| | |
|---|---|
| Total fees charged in 2013 | **$0.00** |
| Total interest charged in 2013 | **$0.00** |

### Interest charge calculation

Days in billing cycle: **28**

Your **Annual Percentage Rate (APR)** is the annual interest rate on your account.

| Balance type | Annual percentage rate (APR) | Balance subject to interest rate | Interest charge |
|--------------|------------------------------|----------------------------------|-----------------|
| PURCHASES | | | |
| Standard Purch | 16.24% (V) | $0.00 (D) | $0.00 |
| ADVANCES | | | |
| Standard Adv | 25.24% (V) | $0.00 (D) | $0.00 |

Your Annual Percentage Rate (APR) is the annual interest rate on your account. APRs followed by (V) vary with the market based on the Prime Rate. Balances followed by (D) are determined by the daily balance method (including current transactions).

## Account messages

Remember, you MUST PAY IN FULL any charges over your revolving credit limit by your statement's Payment Due Date.

You may pay all or part of your account balance at any time.  However, you must pay, by the payment due date, at least the minimum payment due.

For customers who qualify for benefits for the same transaction under Citi Price Rewind, Internet Price Protection and Price Protection coverages, or any combination of those coverages, the Company will only pay under the coverage providing the highest benefit and no benefits will be due under the other coverages.

Please be sure to pay on time. If you submit your payment by mail, we suggest you mail it no later than 05/10/2013 to allow for enough time for regular mail to reach us.

# EXHIBIT "I"



Citibank, N.A.
PO Box 6148
Sioux Falls, SD 57117-6148

September 12, 2015



KEITH L TAYLOR

KETTERING OH 45420-3514

## Your new Card Agreement is here

We're replacing your existing Card Agreement with a new version. It's designed with you in mind and based on what our customers told us they want to see. The new Card Agreement is included with this letter and will be effective November 16, 2015.

| KEITH L TAYLOR |
| Account ending 8255 |

## A new, clean design with simple language

- The new format includes a Card Agreement Guide that describes the contents of each section, so you can easily find the information you need
- Credit card terms are important, so we've included examples to help you understand further - just look for the blue box
- Plus, when you see *"Note"* - that's where we've added tips and explanations to help you better use your card and manage your account

## Easily understand which terms have been updated

In addition to redesigning your Card Agreement, we're also changing some terms, which are detailed on the next page.

One of the changes we're making is giving you the choice to opt-out of the arbitration provision. To help you understand arbitration, we've also updated Section 11 of the Card Agreement. If you choose to opt-out of arbitration, follow the instructions on the next page.

## When you speak, we listen

Your feedback continues to help us understand the things that are important to you, and helped guide the creation of this new Card Agreement. If you have any questions or comments, contact us at 1-866-565-7030 (TTY/TDD: 1-800-325-2865).

0. L00 20 4250 09. I20150912 70238786. 204. I. ZZ. SY. 8000. S Y S T E M B 2831 71 2444790954.

JA154

KEITH L TAYLOR
Account ending 8255
Page 2 of 4

---

| **Important Changes to Your Account Terms** |
|---|

The following is a summary of certain changes being made to your account terms. These changes will take effect on 11/16/2015. For more detailed information, please see "Details about the changes" below.

**Late Fee and Returned Payment Fee**
We are increasing your Late Fee and Returned Payment Fee. See the new fees below:

| Revised Terms as of 11/16/2015 | |
|---|---|
| **Late Fee** | Up to **$38**. |
| **Returned Payment Fee** | Up to **$38**. |

**Minimum Payment Due**
We are changing the way we calculate your Minimum Payment Due each billing period by increasing "$20" in the calculation formula to "$25". Please see the new formula below under "Details about the changes." This change applies to any Minimum Payment Due calculated on or after 11/16/2015.

**Arbitration**
To review your new Arbitration provision, please see "Details about the changes" below.

**You have the right to reject the change to arbitration. If you reject this change, your account will no longer be subject to an arbitration provision. You can reject the change to arbitration by writing to us at PO Box 6195, Sioux Falls, SD 57117-6195 stating that you would like to reject the arbitration provision. Your letter must be postmarked on or before 11/16/2015. We will not close your account if you reject this change.**

**You do not have the right to reject any other changes in the attached Card Agreement.**

---

**Details About the Change(s):**

**Late Fee.** We have the right to charge you a late fee if you don't pay at least an amount equal to the Minimum Payment Due minus any Overlimit Amount by the payment due date. The late fee is $27 and, if you make another Late Payment within the next 6 Billing Periods, the late fee will be $38. The amount of your late fee will never be higher than your Minimum Payment Due.

**Returned Payment Fee.** We have the right to charge you a returned payment fee of $27 if your bank doesn't honor your payment. If that happens, we'll resubmit the payment request (but we will not charge you a second fee). If your bank doesn't honor another payment within six consecutive Billing Periods, the returned payment fee will go up to $38.

**Minimum Payment Due.** You may pay all or part of your Account balance at any time. You must pay at least the Minimum Payment Due by the payment due date each Billing Period.

Your ***"Minimum Payment Due"*** equals:
- Any amount past due; plus
- Any Overlimit Amount; plus
- The greater of:
1. The New Balance, if it's less than $25;
2. $25 if the New Balance is at least $25;
3. 1% of the New Balance (rounded to the nearest dollar), plus any billed interest or minimum interest charge, plus any late fee; or
4. 1.5% of the New Balance (rounded to the nearest dollar).

KEITH L TAYLOR
Account ending 8255
Page 3 of 4

The Minimum Payment Due is never more than the New Balance.

**Arbitration**

***Please read this provision of the Agreement carefully.***

This section provides that disputes may be resolved by binding arbitration. Arbitration replaces the right to go to court, have a jury trial or initiate or participate in a class action. In arbitration, disputes are resolved by an arbitrator, not a judge or jury. Arbitration procedures are simpler and more limited than in court. This arbitration provision is governed by the Federal Arbitration Act (FAA), and shall be interpreted in the broadest way the law will allow.

**Covered claims**
- You or we may arbitrate any claim, dispute or controversy between you and us arising out of or related to your Account, a previous related account or our relationship (called "Claims").
- If arbitration is chosen by any party, neither you nor we will have the right to litigate that Claim in court or have a jury trial on that Claim.

Except as stated below, all Claims are subject to arbitration, no matter what legal theory they're based on or what remedy (damages, or injunctive or declaratory relief) they seek, including Claims based on contract, tort (including intentional tort), fraud, agency, your or our negligence, statutory or regulatory provisions, or any other sources of law; Claims made as counterclaims, cross-claims, third-party claims, interpleaders or otherwise; Claims made regarding past, present, or future conduct; and Claims made independently or with other claims. This also includes Claims made by or against anyone connected with us or you or claiming through us or you, or by someone making a claim through us or you, such as a co-applicant, Authorized User, employee, agent, representative or an affiliated/parent/subsidiary company.

**Arbitration limits**
- Individual Claims filed in a small claims court are not subject to arbitration, as long as the matter stays in small claims court.
- We won't initiate arbitration to collect a debt from you unless you choose to arbitrate or assert a Claim against us. If you assert a Claim against us, we can choose to arbitrate, including actions to collect a debt from you. You may arbitrate on an individual basis Claims brought against you, including Claims to collect a debt.
- Claims brought as part of a class action, private attorney general or other representative action can be arbitrated only on an individual basis. The arbitrator has no authority to arbitrate any claim on a class or representative basis and may award relief only on an individual basis. If arbitration is chosen by any party, neither you nor we may pursue a Claim as part of a class action or other representative action. Claims of 2 or more persons may not be combined in the same arbitration. However, applicants, co-applicants, Authorized Users on a single account and/or related accounts, or corporate affiliates are here considered as one person.

**How arbitration works**
- Arbitration shall be conducted by the American Arbitration Association ("AAA") according to this arbitration provision and the applicable AAA arbitration rules in effect when the claim is filed ("AAA Rules"), except where those rules conflict with this arbitration provision. You can obtain copies of the AAA Rules at the AAA's website (www.adr.org) or by calling 800-778-7879. You or we may choose to have a hearing, appear at any hearing by phone or other electronic means, and/or be represented by counsel. Any in-person hearing will be held in the same city as the U.S. District Court closest to your billing address.
- Arbitration may be requested any time, even where there is a pending lawsuit, unless a trial has begun or a final judgment entered. Neither you nor we waive the right to arbitrate by filing or serving a complaint, answer, counterclaim, motion, or discovery in a court lawsuit. To choose arbitration, a party may file a motion to compel arbitration in a pending matter and/or commence arbitration by submitting the required AAA forms and requisite filing fees to the AAA.

KEITH L TAYLOR
Account ending 8255
Page 4 of 4

- The arbitration shall be conducted by a single arbitrator in accord with this arbitration provision and the AAA Rules, which may limit discovery. The arbitrator shall not apply any federal or state rules of civil procedure for discovery, but the arbitrator shall honor claims of privilege recognized at law and shall take reasonable steps to protect Account information and other confidential information of either party if requested to do so. The arbitrator shall apply applicable substantive law consistent with the FAA and applicable statute of limitations, and may award damages or other relief under applicable law.
- The arbitrator shall make any award in writing and, if requested by you or us, may provide a brief statement of the reasons for the award. An arbitration award shall decide the rights and obligations only of the parties named in the arbitration, and shall not have any bearing on any other person or dispute.

**Paying for arbitration fees**
- We will pay your share of the arbitration fee for an arbitration of Claims of $75,000 or less if they are unrelated to debt collection. Otherwise, arbitration fees will be allocated according to the applicable AAA Rules. If we prevail, we may not recover our arbitration fees, unless the arbitrator decides your Claim was frivolous. All parties are responsible for their own attorney's fees, expert fees and any other expenses, unless the arbitrator awards such fees or expenses to you or us based on applicable law.

**The final award**
- Any award by an arbitrator is final unless a party appeals it in writing to the AAA within 30 days of notice of the award. The arbitration appeal shall be determined by a panel of 3 arbitrators. The panel will consider all facts and legal issues anew based on the same evidence presented in the prior arbitration, and will make decisions based on a majority vote. Arbitration fees for the arbitration appeal shall be allocated according to the applicable AAA Rules. An award by a panel on appeal is final. A final award is subject to judicial review as provided by applicable law.

**Survival and Severability of Terms**
This arbitration provision shall survive changes in this Agreement and termination of the Account or the relationship between you and us, including the bankruptcy of any party and any sale of your Account, or amounts owed on your Account, to another person or entity. If any part of this arbitration provision is deemed invalid or unenforceable, the other terms shall remain in force, except that there can be no arbitration of a class or representative Claim. This arbitration provision may not be amended, severed or waived, except as provided in this Agreement or in a written agreement between you and us.

# Card Agreement Guide

This Guide will help you easily identify sections of the Card Agreement and give you a brief overview of the contents of each section. This is not intended to be a complete summary of the Card Agreement's contents, and we encourage you to read your entire Card Agreement, including the arbitration provision, before you use your account.

**1 DEFINITIONS**
Lists the meanings of particular phrases and terms used in the Card Agreement.

**2 YOUR ACCOUNT**
Describes some of your responsibilities for using your Account.

**3 ANNUAL PERCENTAGE RATES & INTEREST CHARGES**
Shows how we calculate interest rates and how that affects your Account balance.

**4 FEES & FOREIGN CURRENCY CONVERSION**
Describes the fees that can be charged to your Account, including annual membership fees, late fees, as well as foreign transaction fees for Purchases not in U.S. dollars.

**5 PAYMENTS**
Shows how your monthly Minimum Payment Due is calculated, tells you how we apply your payments to balances, and gives you certain instructions for making payments (and tells you the possible consequences of not following those instructions).

**6 AUTHORIZED USERS**
Describes an Authorized User's rights and your responsibility for that user. Also describes what information we can share about you and your Authorized User.

**7 DEFAULT, CLOSING OR SUSPENDING YOUR ACCOUNT**
Tells you when we may require immediate payment of your total Account balance, and explains when we may close or suspend your Account, and when you may close your account.

**8 CREDIT REPORTING**
Describes what information we provide about you to credit reporting agencies, and how to dispute items on your report. This section also explains how we use information we get about you from those agencies.

**9 ACCOUNT INFORMATION, INFORMATION SHARING AND COMMUNICATIONS**
Explains that your personal information we use to manage your Account should always be up to date. Also notes that we share information about you and your Account. In addition, this section describes how we may contact you.

**10 TRANSACTIONS**
Provides important information about merchant credits, recurring Transactions and card refusals.

**11 ARBITRATION**
Explains that you cannot go to court, have a jury trial or initiate or participate in a class action if you have a dispute with us. Instead, this provision tells you that the dispute must be resolved by a professional arbitrator, not a judge or jury. This section also explains how arbitration works and some of the differences between resolving a dispute in arbitration and resolving one in court.

**12 AGREEMENT & BENEFIT CHANGES**
Explains that we can make changes to the Card Agreement and your card benefits and features.

**13 MISCELLANEOUS**
Explains subjects that aren't included in previous sections.

**14 YOUR BILLING RIGHTS**
Explains your billing rights, which include how to address possible statement mistakes and your rights if you're not satisfied with a Purchase.

# Card Agreement

This Card Agreement (**Agreement**) is your contract with us.

The *Facts about Interest and Fees* document (***Fact Sheet***) is part of this Agreement. The **Fact Sheet** shows important information about your Account, such as your annual percentage rates and certain fees. Any amendments to this Agreement also are part of this Agreement.

**Please read all parts of this Agreement, including the arbitration provision, and keep it for your records.**

> *Note: Highlighted in blue throughout the Agreement are examples, helpful tips, and additional explanations that will make it easier to understand this Agreement.*

## 1

### DEFINITIONS

**Account** - Your Citi® / AAdvantage® Platinum Select® Visa® Signature Account.

**Annual Percentage Rate or (APR)** - A rate, shown as a percentage, used to calculate interest on the balance on your Account.

**Authorized User** - Any person you allow to use your Account with a Card we provided with that person's name.

**Balance Transfer** - Use of a Balance Transfer offer, including use of a check that accesses your Account for any transaction, or the transfer of a balance from another credit account to your Account.

**Billing Period** - The period of time between each date when we create a statement for your Account. A Billing Period is usually 28-33 days. For each Billing Period, your statement will show any Transactions, other charges, payments and other credits posted during that Billing Period.

**Business Day** - Monday through Friday, excluding federal holidays.

**Card** - One or more cards or other devices (including an account number) used to access your Account to obtain credit.

**Card Networks** - Organizations, such as MasterCard, Visa and American Express, that facilitate the payment process between a cardmember, merchants and a card issuer.

**Cash Advance** - Use of your Card to get cash, including foreign currency, or for what we consider a cash-like transaction. Examples include using your Card for: ATM and teller withdrawals, wire transfers, money orders, traveler's checks, lottery tickets, gaming chips and other methods used for gambling, wagers and other betting transactions.

**Consumer Reporting Agency** - An organization, such as Experian, Equifax and TransUnion, that compiles credit information for the purpose of generating consumer credit reports. It's also known as a "credit bureau" and a "credit reporting agency."

**Include and including** - These terms mean "include [or including] without limitation."

**Late Payment** - A payment is late if you don't pay at least an amount equal to the Minimum Payment Due minus any Overlimit Amount by the payment due date.

**New Balance** - The total amount you owe us at the end of each Billing Period. This amount is shown on each statement under the heading "New Balance". We explain how we calculate the New Balance below.

**Overlimit Amount** - The amount by which your Account balance exceeds your credit limit in any Billing Period.

**Purchase** - Use of your Card to buy goods and services. Balance Transfers and Cash Advances are not Purchases.

**Returned Payment** - A payment that isn't honored by your financial institution.

**Transaction** - A Balance Transfer, Cash Advance or Purchase, as applicable.

**we, us,** and **our** - Citibank, N.A.

**you** and **your** - The cardmember who opened the Account.

*You'll find definitions of other terms within this Agreement.*

## 2

## YOUR ACCOUNT

Your Account use is subject to this Agreement. You must pay us for all amounts due on your Account, including:

1. Transactions you make, even if you didn't present your Card or sign for the Transaction;

2. Transactions an Authorized User makes;

3. Transactions that other people make if you or an Authorized User let them use your Account; and

4. Any fees and interest charges on the Account.

**Binding Agreement.** This Agreement takes effect once you use your Card. Even if you don't use your Card, this Agreement will take effect unless you contact us to cancel your Account within 30 days after we sent you this Agreement.

**Credit Limit.** We assign a credit limit to your Account. Part of this credit limit may be available for Cash Advances, and there may be a limit on the amount of Cash Advances you can take in a given period. We may authorize Transactions that cause your balance to exceed your credit limit.

**ACCOUNT USE**

**Consumer Purposes.** You aren't permitted to use your Account for business purposes. If you do use your Account for business purposes, this Agreement still applies, and you must pay us for those Transactions. You may also have to pay us for any damages and/or expenses resulting from that use. In addition, we may close your Account.

**Unlawful Transactions.** You aren't permitted to use your Account for unlawful Transactions. If you do use your Account for unlawful Transactions, this Agreement still applies and you must pay us for those Transactions. You also may have to pay the Card Network and/or us for any damages and expenses resulting from that use. In addition, we may close your Account.

**Mobile Phones or Other Devices.** Smart phones, tablets and other electronic devices can store your Card (such as through a mobile wallet). This means they can be used to make Purchases or other Transactions. Any such Transactions are covered by this Agreement. Apps that use your Card to make Transactions may have separate terms of use. We're not responsible if you violate those terms, or for any consequences resulting from any violation.

*Note: It's important to protect your devices the same way you protect your Card. Anyone who can access your Card using your device also can make charges to your Account using that device.*

## 3

## ANNUAL PERCENTAGE RATES & INTEREST CHARGES

**The following sections explain how we calculate the interest you owe each Billing Period.**

**APRs.** We use APRs to calculate interest charges on your Account. Different APRs may apply to different Transactions. See the listing of your APRs on the **Fact Sheet.**

**Variable APRs.** A variable APR is an APR that can change each Billing Period. We calculate each variable APR first by taking the U.S. Prime Rate from *The Wall Street Journal* (*WSJ*) two Business Days before the last day of each Billing Period. (If the *WSJ* doesn't publish the U.S. Prime Rate that day, then we'll use another publication.) Then we add to the U.S. Prime Rate a certain percentage amount, which we call the **Margin.** You can find the Margin we use for your Account in the Details About Your Interest Rate section of the **Fact Sheet.**

**How is a variable APR calculated?**

If the U.S. Prime Rate published in the WSJ two Business Days before the end of a Billing Period is **5%;** and

If the Margin is **13.99%;** then

Add the two together to calculate a variable APR:

| 5% + 13.99% = 18.99% |
|---|

Your variable APRs will increase if the U.S. Prime Rate increases and decrease if the U.S. Prime Rate decreases. If a variable APR increases, then your interest charges and Minimum Payment Due may increase.

If the U.S. Prime Rate changes, we'll apply the new variable APR starting from the first day of the Billing Period when we take the U.S. Prime Rate from the *WSJ*. The new APR will apply to existing balances, as well as balances added to your Account after the change.

**Penalty APR.** If you have a Late or Returned Payment, we may apply a penalty APR to your Account. We determine your penalty APR based on your creditworthiness.

825505

- **Penalty APR for new Transactions (less than 60 days late).** If you make a Late Payment and it's less than 60 days late or you have a Returned Payment, the penalty APR only will apply to new Transactions. We'll review your Account from time to time to determine if a penalty APR should be reduced.
- **Penalty APR for existing balances and new Transactions (60 or more days late).** If you haven't received your Minimum Payment Due within 60 days after its due date, we may apply the penalty APR to both the existing balances and new Transactions. If you make your next six consecutive Minimum Payments Due on time, we'll stop applying the penalty APR to existing balances and new Transactions. If you don't make your next six consecutive Minimum Payments Due on time, the penalty APR may continue to apply indefinitely to existing balances and new Transactions.

825505

### Daily Balance

We calculate interest on your Account each Billing Period first by calculating your daily balances. The following explains how we do that.

**Here's how and when Transactions, fees and credits are applied to the balances on your Account:**

- We add the amount of a Purchase or Balance Transfer to the Purchase balance as of the post date on your statement.
- We add the amount of a Cash Advance to the Cash Advance balance as of the post date on your statement.
- We add a Balance Transfer fee to the Purchase balance as of the post date on your statement. We add a Cash Advance fee to the Cash Advance balance as of the post date on your statement. We'll add any other fees to the balance of our choice. If you're charged interest in a Billing Period, but the amount calculated is less than $.50, we'll add additional interest to the balance(s) of our choice so that you'll be charged $0.50 in interest for that Billing Period.
- We subtract credits and payments as of the post date shown on your statement.
- Each balance may have a different APR. Certain categories of Transactions in a balance may have multiple APRs. For example, you may make a Purchase or Balance Transfer that's subject to a promotional APR. Your balances, and their corresponding APRs, are shown on your statement.

> **Note:** The post date shown on your statement will usually be the date of the Transaction, but it may be later.

**Here's how we calculate each of the daily Purchase and Cash Advance balances on your Account:**

- We start with the daily balance from the end of the previous day.
- We add any new Transactions, fees and other charges, including interest accrued on the previous day's balance. This means that interest is compounded.
- We subtract any credits or payments credited as of that day.

- We make additional adjustments as appropriate, subject to applicable law (as an example, for a disputed charge).

This gives us the daily balance for that day.

> Daily balance for purchases from the previous day
> + New purchases
> + Fees and interest accrued on the previous day's Purchase balance
> - Payments, credits and adjustments posted that day
> = New daily balance for Purchases

**Interest Calculation.** Each daily balance may have a different APR. Certain categories of Transactions in a daily balance may have multiple APRs. For example, you may make a Purchase or Balance Transfer that's subject to a promotional APR. If a daily balance on your Account is subject to an APR, we'll charge interest on that daily balance. We use the daily balance method (which includes new Transactions). If interest applies to a balance, it will start applying on the day a charge is added to that balance and continue until that balance is paid in full. We consider a credit balance as a balance of zero when calculating interest on that balance.

- We multiply each daily balance by its applicable daily periodic rates (each applicable APR divided by 365).
- We do this for each day in the Billing Period. This gives us the daily interest amounts.
- Then we total all the daily interest amounts for all the daily balances. This gives us the total interest for the Billing Period.

> **Note:** Your balances, and their corresponding APRs, are shown on your statement.

**Calculating the New Balance.** To calculate the New Balance at the end of each Billing Period, we begin with the total Account balance at the start of that Billing Period. Then we add any Transactions that are new to the Account during that Billing Period. Then we subtract any credits applied or payments made during that Billing Period. Then we add any interest charges or fees incurred during that Billing Period and make any other adjustments, as applicable (for example, if you have disputed a charge).

**Grace Period on Purchases.** You won't pay any interest on Purchases if you pay the New Balance, including any Balance Transfers, in full by the payment due date shown on your statement each Billing Period. We call this a *grace period on purchases.* If you don't pay your New Balance, including any Balance Transfers, in full by the payment due date in a Billing Period, you'll pay interest on your Purchases from the date they're posted to your Account. You also won't have a grace period on Purchases again until you pay the New Balance in full by the payment due date 2 Billing Periods in a row.

There's no grace period on Balance Transfers and Cash Advances. This means you'll pay interest on Balance Transfers and Cash Advances from the date these Transactions post to your Account.

## 4

### FEES & FOREIGN CURRENCY CONVERSION

| Fees | Amount | About the Fee |
|---|---|---|
| **Annual Membership Fee** | $95 every 12 month(s) | Your Account has an annual membership fee. The **Fact Sheet** shows this fee. You'll see this annual fee on your first statement after opening your Account and each year after that. We'll charge the fee if your Account is open, even if you don't have a balance. |
| **Late Fee** | Up to $35 | We have the right to charge you a late fee if you don't pay at least an amount equal to the Minimum Payment Due minus any Overlimit Amount by the payment due date. The late fee is $25 and, if you make another Late Payment within the next 6 Billing Periods the late fee will be $35. The amount of your late fee will never be higher than your Minimum Payment Due. |
| **Returned Payment Fee** | Up to $35 | We have the right to charge you a Returned Payment fee of $25 if your bank doesn't honor your payment. If that happens, we'll resubmit the payment request. If your bank doesn't honor another payment within 6 consecutive Billing Periods, the Returned Payment fee will go up to $35. |
| **Transaction Fee for Balance Transfers** | Either $10 or 5% of the amount of each transfer, whichever is greater. | We charge you a fee for each Balance Transfer. |
| **Transaction Fee for Cash Advances** | Either $10 or 5% of the amount of each cash advance, whichever is greater. | We charge you a fee for each Cash Advance. |
| **Transaction Fee for Purchases in Foreign Currency** | 3% of the amount of the Transaction after conversion to U.S. dollars. | We charge you a fee for a Purchase made in a currency other than U.S. dollars, regardless of where the Transaction takes place or who the merchant is. |

#### FOREIGN CURRENCY CONVERSION

**Foreign Currency Conversion - Purchases.** A Card Network converts the amount of a Purchase in a foreign currency into U.S. dollars. Each Card Network follows its own procedures for conversion. These procedures include how the Card Network chooses an exchange rate and when to do the conversion. For example, Visa chooses either a government-mandated exchange rate or chooses from a range of rates available on wholesale currency markets (and, in either case, the exchange rate that it chooses may be less favorable than the rate that Visa itself receives when it makes foreign currency transactions). Depending on the policies of each Card Network, the exchange rate chosen may be the one in effect on the day the Card Network does the conversion, or on the day before. The exchange rate that a Card Network uses to convert the Purchase to U.S. dollars may differ from the rate in effect on the date you made the Purchase or on the post date for that Purchase shown on your statement. The Card Network's procedures may change without notice.

If a third party, such as a merchant, converts the amount of a Purchase into U.S. dollars before sending the Purchase to a Card Network, the third party chooses the conversion rate instead of the Card Network.

**Foreign Currency Conversion - Cash Advances.** If you take a Cash Advance in a foreign currency at an ATM or branch of a financial institution, it may not be the Card Network in all instances that converts the Transaction into U.S. dollars. Instead, depending on where the Transaction takes place, another third party, such as a financial institution, ATM network, or ATM operator, may do the conversion. We do not control this. However, if you use your Card for a Cash Advance at a Citibank ATM or branch, then we or our affiliates may do the conversion.

The party that converts a Cash Advance to U.S. dollars will choose the exchange rate and when to do the conversion. The exchange rate in effect on the date the Cash Advance is converted to U.S. dollars may differ from the rate in effect on the date you took the Cash Advance or the post date for that Transaction shown on your statement. The exchange rate may also differ from any rate quoted to you when you made the Transaction.

# 5

## PAYMENTS

**Minimum Payment Due.** You may pay all or a part of your Account balance at any time. You must pay at least the Minimum Payment Due by the Payment Due date each Billing Period.

Your **"Minimum Payment Due"** equals:

- Any amount past due; plus
- Any Overlimit Amount; plus
- The greater of:
  1. The New Balance, if it's less than $20;
  2. $20 if the New Balance is at least $20;
  3. 1% of the New Balance (rounded to the nearest dollar), plus any billed interest or minimum interest charge, plus any late fee; or
  4. 1.5% of the New Balance (rounded to the nearest dollar).

The Minimum Payment Due is never more than the New Balance.

> **Note:** Your Payment Due date is typically the same day of the month, every month. You may request a change to your monthly due date.

**How is the Minimum Payment Due calculated?**

*For example, in a sample Billing Period, an Account with no past due or Overlimit amounts has:*

*New Balance: $2,500*

*Interest: $18.54*

*Since the New Balance is more than $25, and there are no past due or Overlimit amounts, the Minimum Payment Due will be the greater of:*

*1% of the New Balance (1.0% x $2,500: $25.00) + interest ($18.54): $43.54*
*or*
*1.5% of the New Balance (1.5% x $2,500): $37.50*

*Since 1% of the New Balance plus interest ($43.54) is greater than 1.5% of the New Balance ($37.50) the Minimum Payment Due is $43.54.*

**Application of Payments.** We decide how to apply your payments, up to the Minimum Payment Due, to the balances on your Account. We may apply the Minimum Payment Due first to interest charges, then to the balance with the lowest APR and then to balances with higher APRs. If you pay more than the Minimum Payment Due, we'll apply the amount over the Minimum Payment Due first to the balance with the highest APR, then to the balance with the next highest APR, and so on, except as otherwise required by applicable law.

**Payment Instructions.** You must follow the instructions below when making a payment. If you do, we'll credit the payment to your Account as of the day we receive it.

1. You must pay in U.S. dollars.
2. You must use a check or electronic debit issued by a bank in the United States.
3. You must not send us a check dated after the date that we receive it.
4. You must not enclose more than one check per envelope.
5. You must not include any restrictive endorsements on the check.
6. You must follow the additional payment instructions shown on your statement.

If you don't pay in U.S. dollars and we accept your payment, we'll select the currency conversion rate, and you must pay our costs. If you don't follow our payment instructions, we may not accept your payment, or there may be a delay in crediting your Account. Either may result in late fees and additional interest charges to your Account. If you don't follow the instructions in this Agreement or on your statement, we may accept your payment without losing our rights.

We may reject a payment if it's more than the outstanding Account balance. We also may close your account.

# 6



## AUTHORIZED USERS

**Account Use by Authorized Users.** You can ask us to add one or more Authorized Users to your Account. If we approve, use of your Account by an Authorized User is subject to the terms of this Agreement. You must:

- Obtain permission from each Authorized User before naming him or her as an Authorized User on your Account.
- Make a copy of this Agreement available to each Authorized User.
- Pay us for all charges incurred by each Authorized User.

• Notify us to remove an Authorized User from your Account.

If we remove an Authorized User, in some cases we may close your Account, open a new Account, and issue you a new Card.

You're responsible for:

• Any Transactions made by an Authorized User on your Account.
• Any Transaction made by an Authorized User even if the post date shown on your statement for that Transaction occurs after the date you ask us to remove the Authorized User from your Account.
• Any Transactions made by others if an Authorized User allows them to use your Account.
• Fees and charges resulting from any Transactions made by an Authorized User or others if an Authorized User allows them to use your Account.

**What can Authorized Users do?**

| | |
|---|---|
| • Report lost or stolen Cards | • Request statement copies |
| • Initiate billing disputes | • Make payments |
| • Change the billing address for your Account | • Request refund checks |
| • Obtain Account information, such as Transaction histories | |

**Account Information Rights for Authorized Users.** You allow us to discuss your Account with an Authorized User. This includes giving him or her access to your Account information and history. You also agree that an Authorized User may use and receive information about the Account the same way you do. An Authorized User can't add other Authorized Users, adjust the credit limit or close the Account.

**Information about Authorized Users.** You agree to give us certain personal information about each Authorized User. You must let each one know that you'll give us that information and you must have his or her permission to do so. You must have permission from each one to allow us to share information about him or her as allowed by applicable law. This includes information we may get from you, any Authorized User and others. It also includes information about their Transactions on the Account.

**Credit Reporting.** We report information about this Account to Consumer Reporting Agencies in the Authorized User's name that may appear on their credit report. This could include information about:

| | |
|---|---|
| • Late Payments; | • Overlimit Amounts; and |
| • Returned Payments; | • Other violations of this Agreement. |

You must let each Authorized User know that we report Account information in his or her name. Also, see **Credit Reporting** in Section 8.

## 7

## DEFAULT, CLOSING OR SUSPENDING YOUR ACCOUNT

**Default.** We may require immediate payment of your total Account balance, to the extent allowed by law, if any of the following occurs:

1. You don't pay at least the Minimum Payment Due by the due date.
2. You have a Returned Payment.
3. You file for bankruptcy or some other insolvency proceeding is filed by or against you.
4. You don't honor the terms of this Agreement.
5. You default under any other card agreement you have with us.
6. You're declared incompetent or mentally incapacitated, or in the event of your death.

**Closing or Suspending Your Account.** We may close or suspend your Account if any of the events listed above occurs, or for any reason, or for no reason. We may do this at any time, without notifying you, as allowed by law. We may cancel your current Card and issue you a substitute Card at any time. You also may close your Account at any time by notifying us by telephone or in writing. If we close or suspend your Account, or if you close your Account, you must pay us all amounts you owe on the Account, even if they post to your Account after it's closed or suspended.

**Closing Secured Accounts.** If your Account is a secured Account, you gave us a security interest in a deposit account. This secures repayment of your Account. If you withdraw your funds from the deposit account, we will close your Account. If you gave us a security interest in a deposit account, we may use the deposit amount to pay any amount you owe.

## 8

## CREDIT REPORTING

You allow us to get information about you. We get it from Consumer Reporting Agencies and other sources that provide consumer financial information. You allow us to use it for:

• Renewal of your Account;
• Credit line increases or decreases;
• Administration or review of your Account, collection and any other

servicing;
• All other credit-related purposes connected with this Agreement;
• Offers for other cards, insurance products and other services; and
• Other uses permitted by law.

We report Account information in your name, as well as information about you to Consumer Reporting Agencies, on a monthly basis. The information

825507

we provide may appear on your credit reports. This can include information about:

- Late Payments;
- Returned Payments;
- Overlimit Amounts; and
- Other violations of this Agreement.

If you think we've given incorrect information to a Consumer Reporting Agency about you (or about an Authorized User), contact Customer Service and we'll research it. We'll let you know if we agree or disagree with you. If we agree with you, we'll contact each Consumer Reporting Agency we reported to and request a correction.



# 9

## ACCOUNT INFORMATION, INFORMATION SHARING AND COMMUNICATIONS

**Changes to Account Information.** You provided certain personal information to us when you opened your Account. You agree to notify us if this information changes. If you don't, or if we ask you to verify your Account information and you cannot, we may suspend or close your Account.

**Information Sharing.** You agree to let us share information about you and your Account as allowed by law. This includes information we get from you and others. Our privacy notice, which is enclosed with your new Account materials, describes reasons Citi can share its customers' personal information.

**COMMUNICATIONS**

**Contacting You.** You agree that we (and/or our service providers or anyone we authorize) may contact you at any phone number, email address, or mailing address you provide or we obtain in other ways. This includes communications to mobile, cellular/wireless, or similar devices. We may contact you by live operator, auto-dialer, recorded or artificial voice, text, or email.

You agree to pay any charges from your plan provider for communications we send to you, as well as communications you send to us.

**How We Capture and Use Voiceprints.** We may use voice recognition technology to verify your identity when you call. We may capture and store your voiceprint for this purpose.

**Call Monitoring.** We may monitor and record any calls between you and us.

**Notices.** We send any notices to your billing address or, if you've agreed, by email to the address you gave us. We consider a notice sent as soon as we mail it. We consider an electronic notice sent as soon as we email it, unless we receive notification that the email was undeliverable.

# 10

## TRANSACTIONS

**Merchant Refunds.** A merchant refund to your Account will post to your Account as a credit. We don't control when a merchant sends an Account credit. We'll choose how to apply the credit to your existing Account balances. If a credit creates a credit balance on your Account, we'll mail you a check for the amount of the credit balance.

**Note: Merchant Surcharges.** Some merchants, including merchants outside of the U.S., may charge you a fee to use your Card for a Purchase. The fee will be either a percentage of the amount of your Purchase, or a flat fee, and will be added to the amount of your Purchase. Usually, a merchant will tell you about this fee before you use your Card, but not always. We don't control these fees, and can't prevent them.

**Recurring Authorized Transactions.** If you authorize a merchant or any other person to charge your Account for recurring Transactions, you must notify the merchant if:

- You want to discontinue these Transactions;
- Your Account is closed;
- Your Account number changes;
- Your Card expiration date changes.

You're responsible for reinstating any recurring authorized Transactions.

**Refusal of the Card.** We don't guarantee approval of Transactions. We are not liable for those that aren't approved, even if you have enough available credit on your Account. If we detect unusual or suspicious activity, we may suspend your credit privileges. We also may limit the number of Transactions approved in a single day.

# 11

## ARBITRATION

**PLEASE READ THIS PROVISION OF THE AGREEMENT CAREFULLY.**

This section provides that disputes may be resolved by binding arbitration. Arbitration replaces the right to go to court, have a jury trial or initiate or participate in a class action. In arbitration, disputes are resolved by an arbitrator, not a judge or jury. Arbitration procedures are simpler and more limited than in court. This arbitration provision is governed by the Federal Arbitration Act (FAA), and shall be interpreted in the broadest way the law will allow.

### Covered claims

- **You or we may arbitrate** any claim, dispute or controversy between you and us arising out of or related to your Account, a previous related Account or our relationship (called "Claims").

- **If arbitration is chosen by any party, neither you nor we will have the right to litigate that Claim in court or have a jury trial on that Claim.**

Except as stated below, all Claims are subject to arbitration, no matter what legal theory they're based on or what remedy (damages, or injunctive or declaratory relief) they seek, including Claims based on contract, tort (including intentional tort), fraud, agency, your or our negligence, statutory or regulatory provisions, or any other sources of law; Claims made as counterclaims, cross-claims, third-party claims, interpleaders or otherwise; Claims made regarding past, present, or future conduct; and Claims made independently or with other claims. This also includes Claims made by or against anyone connected with us or you or claiming through us or you, or by someone making a claim through us or you, such as a co-applicant, authorized user, employee, agent, representative or an affiliated/parent/subsidiary company.

### Arbitration limits

- Individual Claims filed in a small claims court are not subject to arbitration, as long as the matter stays in small claims court.

- We won't initiate arbitration to collect a debt from you unless you choose to arbitrate or assert a Claim against us. If you assert a Claim against us, we can choose to arbitrate, including actions to collect a debt from you. You may arbitrate on an individual basis Claims brought against you, including Claims to collect a debt.

- Claims brought as part of a class action, private attorney general or other representative action can be arbitrated only on an individual basis. The arbitrator has no authority to arbitrate any claim on a class or representative basis and may award relief only on an individual basis. If arbitration is chosen by any party, neither you nor we may pursue a Claim as part of a class action or other representative action. Claims of 2 or more persons may not be combined in the same arbitration. However, applicants, co-applicants, authorized users on a single Account and/or related Accounts, or corporate affiliates are here considered as one person.

### How arbitration works

- Arbitration shall be conducted by the American Arbitration Association ("AAA") according to this arbitration provision and the applicable AAA arbitration rules in effect when the claim is filed ("AAA Rules"), except where those rules conflict with this arbitration provision. You can obtain copies of the AAA Rules at the AAA's website (www.adr.org) or by calling 800-778-7879. You or we may choose to have a hearing, appear at any hearing by phone or other electronic means, and/or be represented by counsel. Any in-person hearing will be held in the same city as the U.S. District Court closest to your billing address.

- Arbitration may be requested any time, even where there is a pending lawsuit, unless a trial has begun or a final judgment entered. Neither you nor we waive the right to arbitrate by filing or serving a complaint, answer, counterclaim, motion, or discovery in a court lawsuit. To choose arbitration, a party may file a motion to compel arbitration in a pending matter and/or commence arbitration by submitting the required AAA forms and requisite filing fees to the AAA.

- The arbitration shall be conducted by a single arbitrator in accord with this arbitration provision and the AAA Rules, which may limit discovery. The arbitrator shall not apply any federal or state rules of civil procedure for discovery, but the arbitrator shall honor claims of privilege recognized at law and shall take reasonable steps to protect account information and other confidential information of either party if requested to do so. The arbitrator shall apply applicable substantive law consistent with the FAA and applicable statute of limitations, and may award damages or other relief under applicable law.

- The arbitrator shall make any award in writing and, if requested by you or us, may provide a brief statement of the reasons for the award. An arbitration award shall decide the rights and obligations only of the parties named in the arbitration, and shall not have any bearing on any other person or dispute.

### Paying for arbitration fees

- We will pay your share of the arbitration fee for an arbitration of Claims of $75,000 or less if they are unrelated to debt collection. Otherwise, arbitration fees will be allocated according to the applicable AAA Rules. If we prevail, we may not recover our arbitration fees, unless the arbitrator decides your Claim was frivolous. All parties are responsible for their own attorney's fees, expert fees and any other expenses, unless the arbitrator awards such fees or expenses to you or us based on applicable law.

### The final award

- Any award by an arbitrator is final unless a party appeals it in writing to the AAA within 30 days of notice of the award. The arbitration appeal shall be determined by a panel of 3 arbitrators. The panel will consider all facts and legal issues anew based on the same evidence presented in the prior arbitration, and will make decisions based on a majority vote. Arbitration fees for the arbitration appeal shall be allocated

according to the applicable AAA Rules. An award by a panel on appeal is final. A final award is subject to judicial review as provided by applicable law.

**Survival and Severability of Terms**
This arbitration provision shall survive changes in this Agreement and termination of the account or the relationship between you and us, including the bankruptcy of any party and any sale of your account, or amounts owed on your account, to another person or entity. If any part of this arbitration provision is deemed invalid or unenforceable, the other terms shall remain in force, except that there can be no arbitration of a class or representative Claim. This arbitration provision may not be amended, severed or waived, except as provided in this Agreement or in a written agreement between you and us.

## 12

## AGREEMENT & BENEFIT CHANGES

**Changes to this Agreement.** We may change this Agreement for any reason and at any time, subject to applicable law. This means that we can change rates, and fees that apply to your Account. It also means we can add, replace or remove provisions of this Agreement. If required by applicable law, we'll give you notice of the changes. If you have the right to reject a change, we'll notify you and tell you how to reject. If we notify you of a change, we may do so on your statement or send you a separate written notice, either of which may be sent electronically if permitted by applicable law.

**Changing Benefits.** Any benefit, reward, service or feature offered may change or be discontinued at any time for any reason. Separate terms and conditions will describe any exceptions.

## 13

## MISCELLANEOUS

**Assignment.** We may assign any or all of our rights and obligations under this Agreement to a third party. You may not sell, assign or transfer your Account or any of your obligations under this Agreement.

**Governing Law.** Federal law and the law of South Dakota govern the terms and enforcement of this Agreement.

**Enforcing this Agreement.** We won't lose our rights under this Agreement because we delay in enforcing them or fail to enforce them. If any provision of this Agreement is found to be unenforceable, all other provisions of the Agreement will remain in effect.

**Collection Costs.** To the extent allowed by law, you're liable to us for our legal costs if we refer collection of your Account to a lawyer who isn't our salaried employee. These costs may include reasonable attorneys' fees, as well as costs and expenses of any legal action.

**Unforeseen Circumstances.** From time to time, our services might be unavailable due to circumstances beyond our control (such as fires, floods, natural disasters, system failures or other unpredictable events). When this happens, you might not be able to use your Card or obtain information about your Account. We're not responsible or liable if this happens.

**Lost or Stolen Cards, Account Numbers or Account Checks.** You must try to prevent the unauthorized use of your Account and any Card, including your Account number. You must call us if any Card is lost or stolen. Also, you must call us if you think someone has used or may use these items without permission.

**Headings.** The headings in this Agreement are included as a matter of convenience and do not define, limit or enlarge the scope of this Agreement or any of its provisions.

# 14

## YOUR BILLING RIGHTS

**This notice tells you about your rights and our responsibilities under the Fair Credit Billing Act. Keep this document for future use.**

**What to Do if You Find a Mistake on Your Statement**

If you think there is an error on your statement, write to us at the address for billing inquiries and correspondence shown on the front of your statement.

In your letter, give us the following information:

- Account information: Your name and account number.
- Dollar amount: The dollar amount of the suspected error.
- Description of problem: If you think there is an error on your bill, describe what you believe is wrong and why you believe it is a mistake.

You must contact us:

- Within 60 days after the error appeared on your statement.
- At least 3 business days before an automated payment is scheduled, if you want to stop payment on the amount you think is wrong.

You must notify us of any potential errors in writing. You may call us, but if you do we are not required to investigate any potential errors and you may have to pay the amount in question.

**What Will Happen After We Receive Your Letter**

When we receive your letter, we must do 2 things:

1. Within 30 days of receiving your letter, we must tell you that we received your letter. We also will tell you if we have already corrected the error.
2. Within 90 days of receiving your letter, we must either correct the error or explain to you why we believe the bill is correct.

**While we investigate whether or not there has been an error:**

- We cannot try to collect the amount in question, or report you as delinquent on that amount.
- The transaction in question may remain on your statement, and we may continue to charge you interest on that amount.
- While you do not have to pay the amount in question, you are responsible for the remainder of your balance.
- We can apply any unpaid amount against your credit limit.

**After we finish our investigation, one of 2 things will happen:**

- If we made a mistake: You will not have to pay the amount in question or any interest or other fees related to that amount.
- If we do not believe there was a mistake: You will have to pay the amount in question, along with applicable interest and fees. We will send you a statement of the amount you owe and the date payment is due. We may then report you as delinquent if you do not pay the amount we think you owe.

If you receive our explanation but still believe your bill is wrong, you must write to us within 10 days telling us that you still refuse to pay. If you do so, we cannot report you as delinquent without also reporting that you are questioning your bill. We must tell you the name of anyone to whom we reported you as delinquent, and we must let those organizations know when the matter has been settled between us.

If we do not follow all of the rules above, you do not have to pay the first $50 of the amount you question even if your bill is correct.

**Your Rights if You're Dissatisfied with Your Credit Card Purchases**

If you are dissatisfied with the goods or services that you have purchased with your credit card, and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the purchase.

**To use this right, all of the following must be true:**

1. The purchase must have been made in your home state or within 100 miles of your current mailing address, and the purchase price must have been more than $50. (Note: Neither of these are necessary if your purchase was based on an advertisement we mailed to you, or if we own the company that sold you the goods or services.)
2. You must have used your credit card for the purchase. Purchases made with cash advances from an ATM or with an account check do not qualify.
3. You must not yet have fully paid for the purchase.

If all of the criteria above are met and you are still dissatisfied with the purchase, contact us in writing at the address for billing inquiries and correspondence shown on the front of your statement.

While we investigate, the same rules apply to the disputed amount as discussed above. After we finish our investigation, we will tell you our decision. At that point, if we think you owe an amount and you do not pay, we may report you as delinquent.

**For Further Information:** Call the Customer Service number shown on the statement or on the back of your Card if you need more information.

KEITH L TAYLOR
Account ending 8255
Page 12 of 12

# Fact Sheet

## Pricing Information Table

| Interest Rates and Interest Charges | |
|---|---|
| **Annual Percentage Rate (APR) for Purchases** | 14.24%<br><br>This APR will vary with the market based on the Prime Rate. |
| **APR for Cash Advances** | 25.24%<br><br>This APR will vary with the market based on the Prime Rate. |
| **Penalty APR and When it Applies** | Up to 29.99%, based on your creditworthiness. This APR will vary with the market based on the Prime Rate.<br><br>This APR may be applied to your account if you:<br>(1) Make a late payment or<br>(2) Make a payment that is returned.<br><br>**How Long Will the Penalty APR Apply?** If your APRs are increased for either of these reasons, the Penalty APR may apply indefinitely. |
| **Paying Interest** | Your due date is at least 23 days after the close of each billing cycle. We will not charge you interest on purchases if you pay your entire balance by the due date each month. We will begin charging interest on cash advances and balance transfers on the transaction date. |
| **Minimum Interest Charge** | If you are charged interest, the charge will be no less than 50 cents. |
| **How We Calculate Your Balance** | Daily Balance (including current transactions) |

| Fees | |
|---|---|
| **Annual Fee** | $95 every 12 month(s) |
| **Transaction Fees** | |
| •   Balance Transfer | Either $10 or 5% of the amount of each transfer, whichever is greater. |
| •   Cash Advance | Either $10 or 5% of the amount of each cash advance, whichever is greater. |
| •   Foreign Purchase Transaction | 3% of each purchase transaction in US dollars. |
| **Penalty Fees** | |
| •   Late Payment | Up to $35 |
| •   Returned Payment | Up to $35 |

| Details About Your Interest Rates and Interest Calculations | Periodic Rate as of 09/12/2015 | For variable rates: U.S. Prime Rate Plus |
|---|---|---|
| Purchases | 0.03901% (D) | 10.99% |
| Cash Advances | 0.06915% (D) | 21.99% |
| Penalty APR | 0.08216% (D) | Up to 26.74% |
| (D) = Daily periodic rate. A daily periodic rate is the APR divided by 365. | | |

# EXHIBIT "I"

SITE:JX-CI TM:LG-8200 ACID:JALGPXQ

## CITI®/AADVANTAGE® PLATINUM SELECT® CARD

**KEITH L TAYLOR**
Member Since 2013  Account number ending in: 8255
Billing Period:**11/21/15-12/21/15**

**www.citicards.com**
**Customer Service 1-888-419-7559**
**TTY:711**
BOX 6062 SIOUX FALLS, SD 57117

**DECEMBER  STATEMENT**

| | |
|---|---:|
| **Minimum payment due:** | **$202.31** |
| **New balance as of 12/21/15:** | **$7,418.83** |
| **Payment due date:** | **01/17/16** |

**Late Payment Warning:**If we do not receive your minimum payment by the date listed above, you may have to pay a late fee of up to $35 and your APRs may be increased up to the variable Penalty APR of 29.99%.

**Minimum Payment Warning:**If you make only the minimum payment each period, you will pay more in interest and it will take you longer to pay off your balance. For example:

| If you make no additional charges using this card and each month you pay... | You will pay off the balance shown on this statement in about... | And you will end up paying an estimated total of... |
|---|---|---|
| Only the minimum payment | 23 year(s) | $15,457 |
| $254 | 3 year(s) | $9,159 (Savings=$6,298) |

For information about credit counseling services, call 1-877-337-8187.

### Account Summary

| | |
|---|---:|
| Previous balance | $12,214.53 |
| Payments | -$8,950.00 |
| Credits | -$151.25 |
| Purchases | +$4,177.24 |
| Cash advances | +$0.00 |
| Fees | +$0.00 |
| Interest | +$128.31 |
| **New balance** | **$7,418.83** |

### Credit Limit

| | |
|---|---:|
| Revolving Credit limit | $22,000 |

Includes $6,000 cash advance limit

| | |
|---|---:|
| Available Revolving credit | $14,581 |

Includes $6,000 available for cash advances

AMERICAN AIRLINES
AADVANTAGE® MILES

AAdvantage® Miles
Earned this period:

**5,133**

**For Payments, send check to: CITI CARDS, PO BOX 9001037, Louisville, KY, 40290-1037**

| | |
|---|---:|
| **Minimum payment due** | **$202.31** |
| **New balance** | **$7,418.83** |
| **Payment due date** | **01/17/16** |

**Amount enclosed:**

Account number ending in 8255
**Please make check payable to CITI CARDS.**

KEITH L TAYLOR

▬▬▬▬▬
KETTERING  OH  45420-3514

CITI CARDS
PO BOX 9001037
Louisville, KY 40290-1037

www.citicards.com

**KEITH L TAYLOR**

Customer Service 1-888-419-7559
TTY:711

Page 2 of 4

## Account Summary

| Trans. date | Post date | Description | Amount |
|---|---|---|---|
| **Payments, Credits and Adjustments** | | | |
| | 11/23 | ONLINE PAYMENT, THANK YOU | -$4,000.00 |
| | | 70     0000     0 | |
| | 12/21 | AA In-Flight Purchase Discount | -$1.25 |
| | | 72     0000     0 | |
| | 12/21 | ONLINE PAYMENT, THANK YOU | -$450.00 |
| | | 70     0000     0 | |
| | 12/21 | ONLINE PAYMENT, THANK YOU | -$4,500.00 |
| | | 70     0000     0 | |
| 11/30 | 11/30 | FOX RENT A CAR MIAMI     MIAMI     FL | -$150.00 |
| YF76*VZ5 | | 71     7512US     5N 0 | |
| **Standard Purchases** | | | |
| 11/20 | 11/21 | Amazon.com     AMZN.COM/BILLWA | $64.34 |
| *WVHDP00 | | 61     Q5942US     AW70 | |
| 11/20 | 11/21 | Amazon.com     AMZN.COM/BILLWA | $64.34 |
| 94YHDP00 | | 61     Q5942US     AW70 | |
| 11/20 | 11/21 | Amazon.com     AMZN.COM/BILLWA | $235.29 |
| RF9WTT00 | | 61     Q5942US     AW70 | |
| 11/21 | 11/21 | AMAZON.COM AMZN.COM/BILL AMZN.COM/BILLWA | $262.51 |
| PRXLTYD2 | | 61     Q5942US     AW70 | |
| 11/27 | 11/27 | AMERICAN AI 0010265161981DAYTON     OH | $25.00 |
| Z*MG0BDT | | 61     Q3001US     AP 0 | |
| 11/27 | 11/27 | AMERICAN AI 0010265161986DAYTON     OH | $25.00 |
| G5VMOBDT | | 61     Q3001US     AP 0 | |
| 11/28 | 11/28 | FOX RENT A CAR MIAMI     MIAMI     FL | $251.20 |
| VF76*VZ5 | | 61     Q7512US     AE 0 | |
| 11/30 | 11/30 | NGIS KEY WEST 80280019  KEY WEST     FL | $160.00 |
| 3NCJPWD3 | | 61     Q7011US     AE 0 | |
| 12/06 | 12/06 | SPLENDOR SAIL & SIGN  MIAMI     FL | $2,200.64 |
| HSLYYW30 | | 61     Q4411US     AP 0 | |
| 12/06 | 12/06 | AMERICAN AI 0010265894191MIAMI     FL | $25.00 |
| N9*LNDDT | | 61     Q3001US     AP 0 | |
| 12/06 | 12/06 | AMERICAN AI 0010265894186MIAMI     FL | $25.00 |
| LF6YNDDT | | 61     Q3001US     AP 0 | |
| 12/07 | 12/07 | IDENTITY GUARD     800-214-4791 VA | $22.99 |
| X*D5GV30 | | 61     Q5969US     AV20 | |
| 12/07 | 12/07 | CARNIVAL CRUISE TKT/RES  MIAMI     FL | $179.94 |
| HZVFVV30 | | 61     Q4411US     AP10 | |
| 12/08 | 12/08 | AA INFLIGHT VISA FACET 2 PHOENIX     AZ | $5.00 |
| HSLHMLY7 | | 61     Q5499US     AE 0 | |
| 12/15 | 12/15 | WM SUPERCENTER #2124     BEAVERCREEK OH | $97.27 |
| K5L2MKLB | | 61     A5411US     4E 0 | |
| 12/15 | 12/15 | MSX CHRYSLER* SVC     800-595-6286 MI | $158.87 |
| X9XB1000 | | 61     Q5969US     AV20 | |
| 12/16 | 12/16 | ORKIN 002     ATLANTA     GA | $82.58 |
| 7*CNCPX2 | | 61     Q7342US     JN10 | |
| 12/18 | 12/18 | SPRINT *WIRELESS     800-639-6111 KS | $152.44 |
| 7BZ3CG00 | | 61     Q4814US     AV20 | |
| 12/19 | 12/19 | ATT*BILL PAYMENT     800-288-2020 TX | $139.83 |
| 2MLS8D00 | | 61     Q4899US     AV20 | |

AADVANTAGE®
MILES EARNED
THIS PERIOD:

## 5,133

| | |
|---|---|
| Purchase | 4,027 |
| Bonus | 1,106 |
| **Accumulated This Period** | **5,133** |

» Visit aa.com/aadvantage to redeem miles, book flights and much more

American Airlines reserves the right to change the AAdvantage® program and its terms and conditions at any time without notice, and to end the AAdvantage® program with six months' notice. Any such changes may affect your ability to use the awards or mileage credits that you have accumulated. Unless specified, AAdvantage® miles earned through this promotion/offer do not count toward elite-status qualification or AAdvantage Million Miler℠ status. American Airlines is not responsible for products or services offered by other participating companies. For complete details about the AAdvantage® program, visit www.aa.com/aadvantage. American Airlines, American Eagle, AAdvantage, AAdvantage Million Miler, MileSAAver, Business Extra, Flagship, Admirals Club, Platinum Pro, AAdvantage MileUp, AA Cargo, the Flight Symbol logo and the Tail Design are marks of American Airlines, Inc.

**www.citicards.com**

**KEITH L TAYLOR**

## Fees charged

| | |
|---|---|
| **Total fees charged in this billing period** | **$0.00** |

## Interest charged

| Date | Description | Amount |
|---|---|---|
| 12/21 | INTEREST CHARGED TO STANDARD PURCH | $128.31 |
| 00000000 84 | 0000        0 | |
| **Total interest charged in this billing period** | | **$128.31** |

### 2015 totals year-to-date

| | |
|---|---|
| Total fees charged in 2015 | **$95.00** |
| Total interest charged in 2015 | **$805.58** |

### Interest charge calculation

Days in billing cycle: **31**

Your **Annual Percentage Rate (APR)** is the annual interest rate on your account.

| Balance type | Annual percentage rate (APR) | Balance subject to interest rate | Interest charge |
|---|---|---|---|
| PURCHASES | | | |
| Standard Purch | 14.24% (V) | $10,610.18 (D) | $128.31 |
| ADVANCES | | | |
| Standard Adv | 25.24% (V) | $0.00 (D) | $0.00 |

Your Annual Percentage Rate (APR) is the annual interest rate on your account. APRs followed by (V) may vary. Balances followed by (D) are determined by the daily balance method (including current transactions).

## Account messages

For Citi customers who may be impacted by the recent tragic events
We recognize that customers traveling in France and Lebanon, or with family members in the region, may face challenges due to the recent tragic events. Should you need account or travel assistance, we want to assure you that Citi is here to help.  Just call the number on the back of your card; we're available 24/7.

Remember, any charges above your revolving credit limit MUST BE PAID IN FULL by your statement's payment due date.

Please be sure to pay on time. If you submit your payment by mail, we suggest you mail it no later than 01/10/2016 to allow enough time for regular mail to reach us.

## Choose the Balance Transfer Offer That's Right For you!

### Interest and Fee Information

| | Offer 1 | Offer 2 |
|---|---|---|
| **APR for Check Transactions** | 0.000% (Promotional APR on transferred balances until 03/01/2017.) | 1.990% (Promotional APR on transferred balances until 09/01/2017.) |
| | After 03/01/2017, you will be charged the standard variable APR for purchases, currently 14.240%.  This APR will vary with the market based on the Prime rate. | After 09/01/2017, you will be charged the standard variable APR for purchases, currently 14.240%.  This APR will vary with the market based on the Prime rate. |

**www.citicards.com**

**KEITH L TAYLOR**

**Customer Service 1-888-419-7559**
**TTY:711**

Page 4 of 4

## Interest and Fee Information (continued)

| | | |
|---|---|---|
| **Use by Date** | The enclosed checks must post to your account by 02/05/2016 for the promotional APR and fee to apply.  We may still honor these checks after that date, but you will not receive the promotional APR or fee. Instead, the standard variable APR for purchases will apply and there will be no fee. | The enclosed checks must post to your account by 02/05/2016 for the promotional APR and fee to apply.  We may still honor these checks after that date, but you will not receive the promotional APR or fee. Instead, the standard variable APR for purchases will apply and there will be no fee. |
| **Fee** | $5 or 4.00% of the amount of each transaction, whichever is greater, for this offer until 02/05/2016.<br><br>The standard balance transfer fee is $10 or 5.00% of the amount of each transaction, whichever is greater. | $5 or 4.00% of the amount of each transaction, whichever is greater, for this offer until 02/05/2016.<br><br>The standard balance transfer fee is $10 or 5.00% of the amount of each transaction, whichever is greater. |
| **Paying Interest** | We charge interest on these checks, starting on the date the transaction posts to your account. (The interest charge will be $0 while the promotional APR is 0%.) | We will begin charging interest on these checks on the date the transaction posts to your account. |

• Use of the attached checks will constitute a charge against your credit account. Please see the back for important information about transferring balances.

• The checks must post to your account by 02/05/2016, so don't wait!

GZJ KDKV'4''

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
CASE NO. 5:22-cv-00383

PABLO ESPIN, NICHOLAS PADAO,                )
JEREMY BELL and KEITH TAYLOR,               )
*on behalf of themselves and others similarly*   )
*situated.*                                            )
                                            )
      Plaintiffs,                     )
                                            )
vs.                                         )
                                            )
CITIBANK, N.A.                              )
                                            )
      Defendant.                      )

<u>DECLARATION OF ANDREW GRAYOT</u>

I, ANDREW GRAYOT, hereby declare as follows:

1.    I am an employee of Citibank, N.A. ("Citibank"), a national bank located in Sioux Falls, South Dakota.  Citibank issues certain branded credit card accounts to persons throughout the country, including Home Depot-branded credit card accounts. Citibank is the sole owner and servicer of the above branded credit cards.

2.    I have worked with Citibank (or its affiliates) in different capacities for approximately 21 years.  In connection with my employment, I have personal knowledge of the general business practices of Citibank with respect to its credit card accounts.  My responsibilities include preparing declarations in connection with litigation involving Citibank, and I am authorized to provide this Declaration for Citibank.  I have access to the business records relating to the credit card accounts issued by Citibank including, in particular, the records of cardmember accounts and the applicable card agreements.

LA 52680777v1
   751254066.1

3.    The exhibits to this Declaration are all true and correct business records created and maintained by Citibank, or its predecessors and affiliates, in the course of regularly conducted business activity, and as part of the regular practice of Citibank to create and maintain such records, and also were made at the time of the act, transaction, occurrence or event or within a reasonable time thereafter.  The statements set forth in this Declaration are true and correct to the best of my knowledge, information, and belief. Except where based upon information provided by persons working under my direction and supervision, the statements contained herein are based on my personal knowledge or review of Citibank's records, including records pertaining to the Account issued to plaintiff, Jeremy Bell ("Bell").  If called as a witness, I am competent to testify to the statements contained herein.  Portions of the exhibits have been redacted to exclude personal information.

4.    I understand that Bell filed a complaint regarding purported conduct of Citibank in connection with an account issued by Citibank.  Citibank's records reflect that a Home Depot credit card account ending in '0089 was issued to Bell on or about October 10, 2014 (the "Bell Account").

5.    Based upon my review of the records pertaining to the Bell Account, and as discussed below, I have determined that the Bell Account is subject to an arbitration agreement contained in the written terms and conditions that are reflected in a Card Agreement, as amended from time to time.

LA 52680777v1
751254066.1

6.      Attached as **Exhibit A** is an exemplar of the Card Agreement provided to Bell when he applied for the Bell Account in October 2014.  The Card Agreement contains an arbitration provision.

7.      Attached as **Exhibit B** is a copy of the transaction detail reflected on the periodic billing statement for the Bell Account for the period ending October 26, 2014, reflecting Bell's use of the Bell Account after receiving the Card Agreement.

8.      On or about October, 2016, Citibank caused to be mailed to Bell a Notice of Important Changes to your Card Agreement and the Right To Reject ("2016 Change-In-Terms Notice"), which included a new Card Agreement for the Bell Account.  An exemplar of the 2016 Change-In-Terms Notice and accompanying Card Agreement are attached hereto as **Exhibit C**.  The Card Agreement contains an arbitration provision.

10.      I have reviewed Citibank's records for the Bell Account and there is no record that the postal service returned the 2016 Change-In-Terms Notice as undeliverable.

11.      The 2016 Change-In-Terms Notice expressly advised Plaintiff that Citibank is "changing your card agreement and replacing it with a new one." The effective date for these changes, including the changes to the Arbitration agreement, for the Bell Account was December 27, 2016.

12.      Plaintiff had the right to reject the Arbitration agreement contained in the new Bell Card Agreement as follows:

> **You have the right to reject the change to arbitration.  If you reject this change, we will not close your account, and your account will no longer be subject to an arbitration provision.  You can reject the change to arbitration by writing to**

3

**us at P.O. Box 790340, St Louis, MO 63179 stating that you would like to reject the arbitration provision. Your letter must be postmarked on or before December 27, 2016.**

9.    Citibank's records confirm that Bell received the 2016 Change-In-Terms for the Bell Account but that Bell did not opt out of the 2016 Change-In-Terms.

10.    Attached as **Exhibit D** is a copy of the monthly periodic billing statement for the Bell Account for the period ending January 26, 2017, reflecting Bell's use of the Bell Account after receipt of the 2016 Change-In-Terms.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 15-th day of December, 2022, in Atlanta, Georgia.

ANDREW GRAYOT

# EXHIBIT A



## Everyday Special Financing Available

### No Interest if Paid in Full Within 6 Months†

on purchases of $299 or more. Interest will be charged to your account from the purchase date if the purchase balance (including premiums for optional credit insurance) is not paid in full within 6 months.

## Additional benefits that work for you.

**Occasional Longer Term Promotions**
available throughout the year such as 12, 18, 24 months Special Financing†.

**Manage your account your way**
@ myhomedepotaccount.com

**Mobile Account Management**
Download **The Home Depot** app and have your account at your fingertips.

**Shop in-store without your card? No problem.**
With a valid ID, we can look up your account information at checkout.

**Hassle-free, no receipt returns**
on card purchases made within 90 days.

 **Receipt***   Now offering electronic receipts. **Register today!**

†See Promotion Terms inside.

†See Promotion Terms inside.
*Not available in MA, NY, NJ, CA, MD.



## EASY WAYS TO APPLY NOW

 **IN-STORE**
Visit customer service or ask an Associate at any register to submit your application today!

 **ONLINE**
Apply online at **myhomedepotaccount.com**

## THE HOME DEPOT CONSUMER CREDIT CARD IS WELCOME AT:





**homedepot.com**









JA184

# THE HOME DEPOT CONSUMER CREDIT CARD APPLICATION



Please complete entire application. Please print in black or blue ink, or apply online
@ myhomedepotaccount.com. Failure to complete the entire application will delay credit processing.

## 1. PERSONAL INFORMATION

LANGUAGE PREFERENCE FOR RECEIVING ACCOUNT INFORMATION ☐ English ☐ Spanish

First Name*              Middle Initial       Last Name*                                              Suffix

Home Address* (no P.O. Box)                  City*                                  State*      Zip*

Date of Birth*           Social Security Number*        Primary Phone Number*          Business Phone Number
    /    /                  —      —              (        )                        (        )

Email

If you provide your email address, Citibank, N.A. may use it to contact you about your account and tell you about useful products and services. You are also providing your email address to The Home Depot and by doing so you are signing up to receive special offers and promotions from The Home Depot.

If you have entered a cell phone number, or another number that you later consent to a cell phone number, you agree that we may contact you at this number. You also agree to receive calls and messages such as, pre-recorded messages, calls and messages from automated dialing systems, or text messages. Normal cell phone charges may apply.

## 2. FINANCIAL INFORMATION

Residence Status*       Monthly Mortgage or Rent Payment*     Annual Salary and Wages*¹   If you are 21 or older, you may include salary and wages from others that you can reasonably access to pay your bills.
☐ Own  ☐ Rent  ☐ Other   $                      $

Other Annual Income¹ Examples: interest, dividends, rental income, retirement benefits. If you are 21 or older, you may include income from others that you can reasonably access to pay your bills.
$

*Required Fields     ¹Alimony, child support or separate maintenance income need not be revealed if you do not wish to have it considered as a basis for repaying this obligation.

## 3. APPLICANT SIGNATURE REQUIRED BELOW

I understand and agree that by submitting this application, I am also giving all my contact information and other information excluding my social security number to Home Depot U.S.A., Inc. and its affiliates ("Home Depot") for their use in marketing products and services to me. I also provide my social security number to Home Depot so that if, for any reason, Citibank, N.A. does not approve my application, Home Depot can use my contact and other information I provide, and my social security number, to see if there may be another credit opportunity immediately available to me.

X
APPLICANT'S SIGNATURE                                                                              DATE

## 4. AUTHORIZED USER

First Name (Authorized User #1)    Initial  Last Name    Suffix    First Name (Authorized User #2)    Initial  Last Name    Suffix

FOR STORE USE ONLY

Buyer's License #          Expiration Date        State        Pending Sale Amount        Store Code        Stocking Code

Associate Reference #                             Credit Line         Store No.            Application Code

Please see the CREDIT CARD DISCLOSURES, which include rates, fees and other cost information.     72100BSP 06/14

---

### THE HOME DEPOT CONSUMER CREDIT CARD DISCLOSURES

| Interest Rates and Interest Charges | |
|---|---|
| Annual Percentage Rate (APR) for Purchases | **17.99%, 21.99%, 25.99%, or 26.99%,** based on your creditworthiness. See the sales receipt for the purchase APR for your account. |
| How to Avoid Paying Interest on Purchases | Your due date is at least 25 days after the close of each billing cycle. We will not charge you any interest on purchases if you pay your entire balance by the due date each month. |
| Minimum Interest Charge | If you are charged interest, the charge will be no less than $2.00. |
| For Credit Card Tips from the Consumer Financial Protection Bureau | To learn more about factors to consider when applying for or using a credit card, visit the website of the Consumer Financial Protection Bureau at http://www.consumerfinance.gov/learnmore |

| Fees | |
|---|---|
| Annual Fee | None |
| Penalty Fees | |
| • Late Payment | Up to $35 |
| • Returned Payment | Up to $35 |

How We Will Calculate Your Balance: We use a method called "daily balance (including current transactions)." See the Card Agreement for more details.

Billing Rights: Information on your rights to dispute transactions and how to exercise those rights is provided in the Card Agreement.

For more information call The Home Depot Credit Services at 1-800-677-0232. New York residents may contact the New York State Department of Financial Services by telephone, 1-800-342-3736, or visit its website, www.dfs.ny.gov, for free information on comparative credit card rates, fees and grace periods.

JA185

## ALL CREDIT IS GRANTED AND ACCOUNTS ARE OWNED BY CITIBANK, N.A. THIS OFFER IS SUBJECT TO FINAL REVIEW AND IN SOME INSTANCES CITIBANK MAY NOT OPEN AN ACCOUNT FOR YOU.

### TERMS AND CONDITIONS OF OFFER

- This offer is only valid for new accounts. You must be at least 18 years of age (21 years of age in Puerto Rico). If you are married, you may apply for a separate account. Citibank, N.A. ("we" or "us") is the issuer of your The Home Depot Consumer Credit Card account. Citibank, N.A. is located in Sioux Falls, SD.

- Federal law requires us to obtain, verify, and record information that identifies each person who opens an account. In order to help the government fight the funding of terrorism and money laundering activities. To process the application, we must have your name, home address, date of birth, and other identifying information, and we may ask for identifying documents from you as well.

- We may gather information about you, including from your employer, your bank, credit bureaus, and others, to verify your identity and determine your eligibility for credit, renewal of credit, and future extensions of credit. If you ask us, we will tell you whether or not we requested a credit bureau report and the names and addresses of any credit bureaus that provided us with such reports.

- To receive a The Home Depot Consumer Credit Card, you must meet our applicable criteria bearing on creditworthiness. Your credit limit will be determined by the income you provided and a review of your debt, including the debt listed on your credit report. You will be informed of the amount of your credit limit when you receive your card. Some credit limits may be as low as $500.

- You authorize us to share with The Home Depot and its affiliates experiential and transactional information regarding your activity with us.

- Please see the Card Agreement for important information.

- **Notice to Ohio Residents:** The Ohio laws against discrimination require that all creditors make credit equally available to all creditworthy customers, and that credit reporting agencies maintain separate credit histories on each individual upon request. The Ohio Civil Rights Commission administers compliance with this law.

- **Notice to Wisconsin Residents:** No marital property agreement, unilateral statement, or court decree adversely affects our rights, unless you give us a copy of such agreement, statement or court order before we grant you credit, or we have actual knowledge of its terms before your account is opened.

#### †Promotion Terms

With credit approval for qualifying purchases made on The Home Depot Consumer Credit Card, 17.99%-26.99% APR. Minimum interest charge: $2. See card agreement for details including APR applicable to you. Offer is only valid for consumer accounts. 6 months everyday credit offer is subject to change without notice. Minimum payments required.

© 2014 Citibank, N.A.

---

PNHDEX 04/14

| FACTS | WHAT DOES CITIBANK DO WITH YOUR PERSONAL INFORMATION? |
|---|---|
| Why? | Financial companies choose how they share your personal information. Federal law gives consumers the right to limit some but not all sharing. Federal law also requires us to tell you how we collect, share, and protect your personal information. Please read this notice carefully to understand what we do. |
| What? | The types of personal information we collect and share depend on the product or service you have with us. This information can include:<br>• Social Security number and income<br>• account balances and employment information<br>• credit history and transaction history |
| How? | All financial companies need to share customers' personal information to run their everyday business. In the section below, we list the reasons financial companies can share their customers' personal information; the reasons Citibank chooses to share; and whether you can limit this sharing. |

| Reasons we can share your personal information | Does Citibank share? | Can you limit this sharing? |
|---|---|---|
| **For our everyday business purposes —** such as to process your transactions, maintain your account(s), respond to court orders and legal investigations, or report to credit bureaus | Yes | No |
| **For our marketing purposes —** to offer our products and services to you | Yes | No |
| **For joint marketing with other financial companies** | Yes | No |
| **For our affiliates' everyday business purposes —** information about your transactions and experiences | Yes | No |
| **For our affiliates' everyday business purposes —** information about your creditworthiness | Yes | Yes |
| **For our affiliates to market to you** | Yes | Yes |
| **For our nonaffiliates to market to you** | Yes | Yes |

| To limit our sharing | Call 1-877-491-0607 — our menu will prompt you through your choice(s).<br>**Please note:**<br>If you are a new customer, we can begin sharing your information 30 days from the date we sent this notice. When you are no longer our customer, we continue to share your information as described in this notice.<br>However, you can contact us any time to limit our sharing. |
|---|---|
| Questions? | Call 1-877-491-0607 or call the Customer Service number on the back of your credit card or on your billing statement. |

| Who we are | |
|---|---|
| Who is providing this notice? | You are receiving this notice from the retail partner cards group of Citibank, N.A., the bank that issues your credit card. |

| What we do | |
|---|---|
| How does Citibank protect my personal information? | To protect your personal information from unauthorized access and use, we use security measures to comply with federal law. These measures include computer safeguards and secured files and buildings. |
| How does Citibank collect my personal information? | We collect your personal information, for example, when you<br>• provide account information or give us your contact information<br>• provide employment information or apply for a loan<br>• use your credit or debit card<br>We also collect your personal information from others, such as credit bureaus, affiliates, or other companies. |
| Why can't I limit all sharing? | Federal law gives you the right to limit only<br>• sharing for affiliates' everyday business purposes – information about your creditworthiness<br>• affiliates from using your information to market to you<br>• sharing for nonaffiliates to market to you<br>State laws and individual companies may give you additional rights to limit sharing. See below for more on your rights under state law. |
| What happens when I limit sharing for an account I hold jointly with someone else? | Your choices will apply to everyone on your account. |

| Definitions | |
|---|---|
| Affiliates | Companies related by common ownership or control. They can be financial and nonfinancial companies.<br>• Our affiliates include companies with a Citi name; financial companies such as Citigroup Global Markets Inc. and Banamex USA. |
| Nonaffiliates | Companies not related by common ownership or control. They can be financial and nonfinancial companies.<br>• Nonaffiliates we share with can include companies engaged in direct marketing and the selling of consumer products and services. |
| Joint marketing | A formal agreement between nonaffiliated financial companies that together market financial products and services to you.<br>• Our joint marketing partners include insurance companies and other financial companies. |

### Other important information

**For Vermont Residents:** We will not share information we collect about you with nonaffiliated third parties, except as permitted by Vermont law, such as to process your transactions or to maintain your account. In addition, we will not share information about your creditworthiness with our affiliates except with your authorization.

**For California Residents:** We will not share information we collect about you with nonaffiliated third parties, except as permitted by California law, such as to process your transactions or to maintain your account.

We may share your personal information, as permitted by law, with the retailer whose name is on your card and with the companies related to the retailer. You cannot limit this sharing.

### Important Information about Credit Reporting

We may report information about your account to credit bureaus. Late payments, missed payments or other defaults on your account may be reflected in your credit report.

## Card Agreement

This Card Agreement is your contract with us. It governs the use of your card and account. The Home Depot Consumer Credit Card Disclosures and Temporary Charge Pass ("printout") are part of this Agreement. Please read these documents carefully. Keep these documents for your records.

### Definitions

*account* means the relationship established between you and us by this Agreement.

*APR* means an annual percentage rate.

*authorized user* means any person you allow to use your account.

*card* means one or more cards or other access devices that we give you to get credit under this Agreement. This includes account numbers.

*we*, *us*, and *our* mean Citibank, N.A., the issuer of your account. Citibank N.A. is located in Sioux Falls, SD.

*you*, *your*, and *yours* mean the person who applied to open the account. It also means any other person responsible for complying with this Agreement.

### Your Account

You agree to use your account in accordance with this Agreement. You must pay us for all amounts due on your account. This Agreement is binding on you unless you close your account within 30 days after receiving the card and you have not used or authorized use of the card. Your account must only be used for lawful transactions.

**Authorized Users.** You may request cards for authorized users. You must pay us for any charges they make even if you did not intend to be responsible for those charges. You agree that they may receive information about the account, subject to any limitations we impose. You must tell us if you no longer want them to use your account.

**Joint Accounts.** If this is a joint account, each of you is responsible individually and together for all amounts owed. Each of you is responsible even if the account is used by only one of you. You will continue to be liable for the entire balance of the account, even if your co-applicant is ordered by a court to pay us. You will remain liable to us if your co-applicant fails to pay as ordered by the court. Your account status will continue to be reported to the credit bureau under each of your names. The delivery of notices or billing statements to either of you serves as delivery to each of you. We may rely on instructions given by either of you. We are not liable to either of you for relying upon such instructions.

**Credit Limit.** Your initial credit limit is on the printout. After that, your credit limit appears on your billing statement. The full amount of your credit limit is available to use where the card is honored. We may reduce or increase your credit limit at any time for any reason as permitted by law. We will notify you of any change, but the change may take effect before you receive the notice. You should always keep your total balance below the credit limit. However, if the total balance goes over your credit limit you still must pay us. If your account has a credit balance, we may reduce the credit balance by any new charges on your account. You may not maintain a credit balance in excess of your credit limit.

**Billing Statement.** Your billing statement shows the New Balance. This is the total amount you owe us on the Statement Closing Date. To determine the

New Balance, we begin with the total balance at the start of the billing cycle. We add any purchases. We subtract any credits or payments. We then add any interest charges or fees and make other adjustments.

Your billing statement also shows your transactions; the Minimum Payment Due and payment due date; your credit limit; and your interest charges and fees. On the billing statement, a regular purchase balance will appear under the heading "regular revolve credit plan."

We deliver a billing statement to only one address. You must notify Customer Service of a change in address. We may stop sending you statements if we deem your account uncollectible or start collection proceedings; but we may continue to add interest and fees as permitted by law.

## APRs

**Regular Purchase APR.** See printout.

**Effect of APR Increases.** If an APR increases, interest charges increase. Your minimum payment may increase as well.

## Promotions

We may offer promotional terms for all or a part of any balances. Any promotional terms may apply for a limited period of time. They will be governed by the terms of the promotional offer and this Agreement. Your promotional terms will end when the promotional period expires or, to the extent permitted by law, if you make a late payment. The promotional offer will tell you if we require a separate minimum payment on the promotional balance.

If a promotional offer is a deferred interest offer, no interest charges will be imposed on the deferred interest balance if you pay the balance in full by the end of the promotional period for that deferred interest balance. We will impose interest charges on the deferred interest balance at the APR for regular purchases from the date of purchase if you do not pay the balance in full by the end of the promotional period.

## Interest Charges Based on APRs

**Interest Charges.** We impose interest charges when we apply APRs to your account balances. We do this every day by using a daily periodic rate. To get a daily periodic rate, we divide the APR by 365.

**When Interest Charges Begin.** We begin to impose interest charges the first day we add a charge to a daily balance. The charges we add to a daily balance include purchases, interest charges and fees. We continue to impose interest charges until we credit your account with full payment of the total amount you owe us.

**Grace Period on Purchases.** You can avoid interest charges on purchases. This is called a grace period on purchases. The grace period is at least 25 days. To get a grace period on purchases, you must pay the New Balance by the payment due date every billing cycle. If you do not, you will not get a grace period until you pay the New Balance for two billing cycles in a row.

If you have a balance subject to a deferred interest or 0% APR promotion and that promotion does not expire before the payment due date, that balance (the "excluded promotional balance") is excluded from the amount you must pay in full to get a grace period. However, you must still pay any separately required payment on the excluded promotional balance. In billing cycles in which payments are allocated to deferred interest balances first, the deferred

interest balance will be reduced before any other balance on the account. However, you will continue to get a grace period on purchases so long as you pay the New Balance less any excluded promotional balances in full by the payment due date each billing cycle.

In addition, certain promotional offers may take away the grace period on purchases. Other promotional offers not described above may also allow you to have a grace period on purchases without having to pay all or a portion of the promotional balance by the payment due date. If either is the case, the promotional offer will describe what happens.

**Calculation of Interest Charges – Daily Balance Method (Including Current Transactions).** We calculate interest charges each billing cycle. To do this:

- We start with each of your different balances. These balances include, for example, regular purchases and different promotional balances. (Purchases made under the same promotional terms, including APR and expiration date, will be part of the same promotional balance.)

- We calculate the daily balance for each of your different balances. "To get a daily balance, we start with the balance as of the end of the previous day. We add any interest charge on the previous day's balance. (This results in daily compounding of interest charges.) We add any new charges. We then subtract any new credits or payments.

- We multiply each daily balance by the daily periodic rate that applies to it. We do this for each day in the billing cycle. This gives us the daily interest charges for each of your different balances.

- We add up all the daily interest charges. The sum is the total interest charge for the billing cycle.

- You authorize us to round interest charges to the nearest cent.

When we calculate daily balances, we add a purchase as of the Transaction Date. The Transaction Date is shown on the billing statement. We subtract a payment or credit as of the day it is credited to the account and then make other adjustments. We treat a credit balance as a balance of zero.

**Minimum Interest Charge.** If we charge you interest, the charge will be no less than $2. We add the charge to the regular purchase balance or allocate it among one or more of the balances that accrues interest.

**Balance Subject to Interest Rate.** Your statement shows a Balance Subject to Interest Rate. It shows this for each different balance. The Balance Subject to Interest Rate is the average of the daily balances during the billing cycle. A billing cycle begins on the day after the Statement Closing Date of the previous billing cycle. It includes the Statement Closing Date of the current billing cycle.

## Fees

**Late Fee.** We may add a late fee for each billing cycle in which you have a past due payment. For late fee purposes, you have a past due payment any time you fail to pay the Minimum Payment Due by the payment due date. The fee will be $25; or $35 for any additional past due payment during the next six billing cycles after a past due payment. However, the fee will not exceed the amount permitted by law. We add this fee to the regular purchase balance.

**Returned Payment Fee.** We may add a returned payment fee for a returned payment. A returned payment is an electronic debit, payment check, or similar

payment instrument, that is returned unpaid. We may add this fee the first time your payment is returned, even if it is not returned upon resubmission. The fee will be $25; or $35 for any additional returned payment during the same or next six billing cycles after a returned payment. However, the fee will not exceed the amount permitted by law. We add this fee to the regular purchase balance.

## Payments

**Making Payments.** You may pay all or part of your account balance at any time. However, you must pay at least the Minimum Payment Due by the payment due date each billing cycle. The sooner you pay the New Balance, the less you will pay in interest charges.

We calculate the Minimum Payment Due as follows. We begin with any past due amount. We add any amount specified in a promotional offer. We add any amount required by the Promotion Calculation. We also add the largest of the following:

- The Calculated New Balance if it is less than $25;
- $25 if the Calculated New Balance is at least $25; or
- 1% of the Calculated New Balance plus the amount of your billed interest charges on that balance, any minimum interest charge allocated to that balance, and any applicable late fee. (The result is rounded up to the nearest dollar.) However, we subtract interest charges that accrued during prior billing cycles on a deferred interest balance that ended during the billing cycle covered by the statement.

The Calculated New Balance equals the New Balance on the billing statement less balances subject to the Promotion Calculation and less any balances subject to either of two types of promotional terms. The first type are terms that do not require a minimum payment. The second type are terms that require an additional amount as part of the Minimum Payment Due.

The Promotion Calculation applies to some deferred interest or 0% APR transactions. The Promotion Calculation is based on the transaction amount as shown on the first statement that displays the transaction. It applies if, paying $25 on this balance each billing cycle would result in repayment before the end of the promotion period. The Promotion Calculation equals 1% of this balance during the promotion period. (The result is rounded up to the nearest cent.) The Promotion Calculation only applies during the promotion period.

The Minimum Payment Due may reflect adjustments to the New Balance. The Minimum Payment Due is never more than the Calculated New Balance plus two amounts. The first is any amount required by a promotional offer. The second is any amount required by the Promotion Calculation.

**Application of Payments.** Payments in excess of the Minimum Payment Due are applied in accordance with law. This means that we will generally apply payments in excess of the Minimum Payment Due to higher APR balances first. However, excess payments received before a deferred interest promotion expires are applied to the deferred interest promotional balance first in the last two billing cycles of the promotional period. And, if the expiration date of a deferred interest promotion is before the payment due date in the billing cycle in which the deferred interest promotion expires, excess payments received before the deferred interest promotion expires are applied to the deferred interest promotional balance first in the last three

billing cycles of the promotional period. Payments equal to or less than the Minimum Payment Due and credits are applied at our discretion and you authorize us to apply payments and credits in a way that is most favorable or convenient for us. This may include applying such payments and credits to lower APR balances first.

**Payment Instructions.** We credit your payments in accordance with our payment instructions on the billing statement. You must pay us in U.S. dollars. To do so, you must use a check, similar instrument, or electronic debit that is drawn on and honored by a bank in the U.S. Do not send cash. We can accept late or partial payments, or payments that reflect "paid in full" or other restrictive endorsements, without losing our rights. We also reserve the right to accept payments made in foreign currency and instruments drawn on funds on deposit outside the U.S. If we do, we select the currency conversion rate. We will then credit your account in U.S. dollars after deducting any costs incurred in processing your payment. Or we may bill you separately for these costs.

**Optional Pay by Phone Service.** You may use our optional Pay by Phone Service to make your payment by phone. To do so, call us to request the service. You agree to pay us the Pay by Phone fee shown in the Pay by Phone section on the back of the billing statement when a representative of ours helps expedite your payment. Our representatives are trained to tell you this amount when you use this service.

## Credit Reporting

We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report. We may report account information in your name and the names of authorized users. We may also obtain follow-up credit reports on you.

If you think we reported incorrect information to a credit bureau, write us at the Customer Service address on the billing statement. We will investigate the matter. We will then tell you if we agree or disagree with you. If we agree with you, we will contact each credit bureau to which we reported and request a correction. If we disagree with you, we will tell you that.

## Information Sharing

You authorize us to share information about you as permitted by law. This includes information we get from you and others. It also includes information about your transactions with us. Please see our Privacy Notice for details about our information sharing practices.

## Changes to this Agreement

**We may change the rates, fees, and terms of this Agreement from time to time as permitted by law. The changes may add, replace, or remove provisions of this Agreement. We will give you advance written notice of the changes and a right to opt out to the extent required by law.**

## Default

You default under this Agreement if you fail to pay the Minimum Payment Due by its due date; go over your credit limit; pay by a check or similar instrument that is not honored or that we must return because it cannot be processed; pay by electronic debit that is returned unpaid; file for bankruptcy; or fail to

comply with the terms of this Agreement. If you default, we may close your account and, to the extent permitted by law, demand immediate payment of the total balance.

**Refusal of the Card, Closed Accounts, and Related Provisions**
**Refusal of the Card.** We do not guarantee approval of transactions. We are not liable for transactions that are not approved. That is true even if you have enough credit. We may limit the number of transactions approved in one day. If we detect unusual or suspicious activity, we may suspend your credit privileges.

**Preauthorized Charges.** We may suspend any automatic or other preauthorized card charges you arrange with a third party. We may do this if you default; if the card is lost or stolen; or we change your account for any reason. If we do this, you are responsible for paying the third party directly if you wish to do so. You are also responsible for reinstating the preauthorized charges if you wish to do so and we permit it.

**Lost or Stolen Cards or Account Numbers.** You must call us if any card or account number is lost or stolen. You must also call us if you think someone used or may use them without permission. When you call, we may require you to provide information to help our investigation. We may require you to provide this information in writing. For example, we may ask you to identify any charges that were not made by you or someone authorized by you. We may also ask you to confirm that you received no benefit from those charges.

**Closing Your Account.** You may close your account by notifying us in writing or over the phone. If you close your account, you must still repay the total balance in accordance with this Agreement. We may also close your account or suspend account privileges at any time for any reason. We may do this without prior notice to you. We may also reissue a different card at any time. You must return any card to us upon request.

---

### ARBITRATION

*PLEASE READ THIS PROVISION OF THE AGREEMENT CAREFULLY.* **IT PROVIDES THAT ANY DISPUTE MAY BE RESOLVED BY BINDING ARBITRATION. ARBITRATION REPLACES THE RIGHT TO GO TO COURT, INCLUDING THE RIGHT TO A JURY AND THE RIGHT TO INITIATE OR PARTICIPATE IN A CLASS ACTION OR SIMILAR PROCEEDING. IN ARBITRATION, A DISPUTE IS RESOLVED BY AN ARBITRATOR INSTEAD OF A JUDGE OR JURY. ARBITRATION PROCEDURES ARE SIMPLER AND MORE LIMITED THAN COURT PROCEDURES.**

**Agreement to Arbitrate:** Either you or we may, without the other's consent, elect mandatory, binding arbitration for any claim, dispute, or controversy between you and us (called "Claims").

#### Claims Covered

**What Claims are subject to arbitration?** All Claims relating to your account, a prior related account, or our relationship are subject to arbitration, including Claims regarding the application, enforceability, or interpretation of this Agreement and this arbitration provision. All Claims are subject to arbitration, no matter what legal theory they are based on or what remedy (damages, or injunctive or declaratory relief) they seek. This includes Claims based on contract, tort (including intentional tort), fraud, agency, your or

our negligence, statutory or regulatory provisions, or any other sources of law; Claims made as counterclaims, cross-claims, third-party claims, interpleaders or otherwise; and Claims made independently or with other claims. A party who initiates a proceeding in court may elect arbitration with respect to any Claim advanced in that proceeding by any other party. Claims and remedies sought as part of a class action, private attorney general or other representative action are subject to arbitration on an individual (non-class, non-representative) basis, and the arbitrator may award relief only on an individual (non-class, non-representative) basis.

**Whose Claims are subject to arbitration?** Not only ours and yours, but also Claims made by or against anyone connected with us or you or claiming through us or you, such as a co-applicant or authorized user of your account, an employee, agent, representative, affiliated company, predecessor or successor, heir, assignee, or trustee in bankruptcy.

**What time frame applies to Claims subject to arbitration?** Claims arising in the past, present, or future, including Claims arising before the opening of your account, are subject to arbitration.

**Broadest interpretation.** Any questions about whether Claims are subject to arbitration shall be resolved by interpreting this arbitration provision in the broadest way the law will allow it to be enforced. This arbitration provision is governed by the Federal Arbitration Act (the "FAA").

**What about Claims filed in Small Claims Court?** Claims filed in a small claims court are not subject to arbitration, so long as the matter remains in such court and advances only an individual (non-class, non-representative) Claim.

**What about debt collections?** We and anyone to whom we assign your debt will not initiate an arbitration proceeding to collect a debt from you unless you assert a Claim against us or our assignee. We and any assignee may seek arbitration on an individual basis of any Claim asserted by you, whether in arbitration or any proceeding, including in a proceeding to collect a debt. You may seek arbitration on an individual basis of any Claim asserted against you, including in a proceeding to collect a debt.

#### How Arbitration Works

**How does a party initiate arbitration?** The party filing an arbitration must choose one of the following two arbitration firms and follow its rules and procedures for initiating and pursuing an arbitration: American Arbitration Association or JAMS. Any arbitration hearing that you attend will be held at a place chosen by the arbitration firm in the same city as the U.S. District Court closest to your then current billing address, or at some other place to which you and we agree in writing. You may obtain copies of the current rules of each of the arbitration firms and forms and instructions for initiating an arbitration by contacting them as follows:

American Arbitration Association
800-778-7879 (toll-free)
Website: www.adr.org

JAMS
800-352-5267 (toll-free)
Website: www.jamsadr.com

At any time you or we may ask an appropriate court to compel arbitration of Claims, or to stay the litigation of Claims pending arbitration, even if such

Claims are part of a lawsuit, unless a trial has begun or a final judgment has been entered. Even if a party fails to exercise these rights at any particular time, or in connection with any particular Claims, that party can still require arbitration at a later time or in connection with any other Claims.

**What procedures and law are applicable in arbitration?** A single, neutral arbitrator will resolve Claims. The arbitrator will be either a lawyer with at least ten years experience or a retired or former judge, selected in accordance with the rules of the arbitration firm. The arbitration will follow procedures and rules of the arbitration firm in effect on the date the arbitration is filed unless those procedures and rules are inconsistent with this Agreement, in which case this Agreement will prevail. Those procedures and rules may limit the discovery available to you or us. The arbitrator will take reasonable steps to protect customer account information and other confidential information if requested to do so by you or us. The arbitrator will apply applicable substantive law consistent with the FAA and applicable statutes of limitations, will honor claims of privilege recognized at law, and will have the power to award to a party any damages or other relief provided for under applicable law. You or we may choose to have a hearing and be represented by counsel. The arbitrator will make any award in writing and, if requested by you or us, will provide a brief statement of the reasons for the award. An award in arbitration shall determine the rights and obligations between the named parties only, and only in respect of the Claims in arbitration, and shall not have any bearing on the rights and obligations of any other person, or on the resolution of any other dispute.

**Who pays?** Whoever files the arbitration pays the initial filing fee. If we file, we pay; if you file, you pay, unless you get a fee waiver under the applicable rules of the arbitration firm. If you have paid the initial filing fee and you prevail, we will reimburse you for that fee. If there is a hearing, we will pay any fees of the arbitrator and arbitration firm for the first day of that hearing. All other fees will be allocated as provided by the rules of the arbitration firm and applicable law. However, we will advance or reimburse your fees if the arbitration firm or arbitrator determines there is good reason for requiring us to do so, or if you ask us and we determine there is good reason for doing so. Each party will bear the expense of that party's attorneys, experts, and witnesses, and other expenses, regardless of which party prevails, but a party may recover any or all expenses from another party if the arbitrator, applying applicable law, so determines.

**Who can be a party?** Claims must be brought in the name of an individual person or entity and must proceed on an individual (non-class, non-representative) basis. The arbitrator will not award relief for or against anyone who is not a party. If you or we require arbitration of a Claim, neither you, we, nor any other person may pursue the Claim in arbitration as a class action, private attorney general action or other representative action, nor may such Claim be pursued on your or our behalf in any litigation in any court. Claims, including assigned Claims, of two or more persons may not be joined or consolidated in the same arbitration. However, applicants, co-applicants, authorized users on a single account and/or related accounts, or corporate affiliates are here considered as one person.

**When is an arbitration award final?** The arbitrator's award is final and binding on the parties unless a party appeals it in writing to the arbitration firm within fifteen days of notice of the award. The appeal must request a new arbitration before a panel of three neutral arbitrators designated by the same arbitration firm. The panel will consider all factual and legal issues anew, follow the same rules that apply to a proceeding using a single arbitrator, and make decisions based on the vote of the majority. Costs will be allocated in the same way they are allocated for arbitration before a single arbitrator. An award by a panel is final and binding on the parties after fifteen days has passed. A final and binding award is subject to judicial review and enforcement as provided by the FAA or other applicable law.

### Survival and Severability of Terms

This arbitration provision shall survive: (i) termination or changes in the Agreement, the account, or the relationship between you and us concerning the account; (ii) the bankruptcy of any party; and (iii) any transfer, sale or assignment of your account, or any amounts owed on your account, to any other person or entity. If any portion of this arbitration provision is deemed invalid or unenforceable, the entire arbitration provision shall not remain in force. No portion of this arbitration provision may be amended, severed or waived absent a written agreement between you and us.

### Governing Law and Enforcing our Rights

**Governing Law.** Federal law and the law of South Dakota, where we are located, govern the terms and enforcement of this Agreement.

**Enforcing this Agreement.** We will not lose our rights under this Agreement because we delay in enforcing them or fail to enforce them.

**Collection Costs.** To the extent permitted by law, you are liable to us for our legal costs if we refer collection of your account to a lawyer who is not our salaried employee. These costs may include reasonable attorneys' fees. They may also include costs and expenses of any legal action.

**Assignment.** We may assign any or all of our rights and obligations under this Agreement to a third party.

### For Further Information

Call us toll-free for further information. Call the toll-free Customer Service telephone number shown on the billing statement or on the back of your card. You can also call local or toll-free Directory Assistance to get our telephone number.

Ken Stork          Citibank, N.A.
Vice President     P.O. Box 6000
                   Sioux Falls, SD 57117

### Your Billing Rights:

***Keep this Document for Future Use***

This notice tells you about your rights and our responsibilities under the Fair Credit Billing Act.

***What To Do If You Find A Mistake On Your Statement***

If you think there is an error on your statement, write to us at the address for billing inquiries and correspondence shown on the front of your statement.

In your letter, give us the following information:

- *Account information:* Your name and account number.
- *Dollar amount:* The dollar amount of the suspected error.
- *Description of problem:* If you think there is an error on your bill, describe what you believe is wrong and why you believe it is a mistake.

You must contact us:

- Within 60 days after the error appeared on your statement.
- At least 3 business days before an automated payment is scheduled, if you want to stop payment on the amount you think is wrong.

You must notify us of any potential errors *in writing*. You may call us, but if you do we are not required to investigate any potential errors and you may have to pay the amount in question.

***What Will Happen After We Receive Your Letter***

When we receive your letter, we must do two things:

1. Within 30 days of receiving your letter, we must tell you that we received your letter. We will also tell you if we have already corrected the error.
2. Within 90 days of receiving your letter, we must either correct the error or explain to you why we believe the bill is correct.

While we investigate whether or not there has been an error:

- We cannot try to collect the amount in question, or report you as delinquent on that amount.
- The charge in question may remain on your statement, and we may continue to charge you interest on that amount.
- While you do not have to pay the amount in question, you are responsible for the remainder of your balance.
- We can apply any unpaid amount against your credit limit.

After we finish our investigation, one of two things will happen:

- *If we made a mistake:* You will not have to pay the amount in question or any interest or other fees related to that amount.
- *If we do not believe there was a mistake:* You will have to pay the amount in question, along with applicable interest and fees. We will send you a statement of the amount you owe and the date payment is due. We may then report you as delinquent if you do not pay the amount we think you owe.

If you receive our explanation but still believe your bill is wrong, you must write to us within *10 days* telling us that you still refuse to pay. If you do so, we cannot report you as delinquent without also reporting that you are questioning your bill. We must tell you the name of anyone to whom we reported you as delinquent, and we must let those organizations know when the matter has been settled between us.

If we do not follow all of the rules above, you do not have to pay the first $50 of the amount you question even if your bill is correct.

***Your Rights If You Are Dissatisfied With Your Credit Card Purchases***

If you are dissatisfied with the goods or services that you have purchased with your credit card, and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the purchase.

To use this right, all of the following must be true:

1. The purchase must have been made in your home state or within 100 miles of your current mailing address, and the purchase price must have been more than $50. (Note: Neither of these are necessary if your purchase was based on an advertisement we mailed to you, or if we own the company that sold you the goods or services.)
2. You must have used your credit card for the purchase. Purchases made with cash advances from an ATM or with a check that accesses your credit card account do not qualify.
3. You must not yet have fully paid for the purchase.

If all of the criteria above are met and you are still dissatisfied with the purchase, contact us *in writing* at the address for billing inquiries and correspondence shown on the front of your statement.

While we investigate, the same rules apply to the disputed amount as discussed above. After we finish our investigation, we will tell you our decision. At that point, if we think you owe an amount and you do not pay, we may report you as delinquent.

©2014 Citibank, N.A.

72100BSP  08/14

### Qué Hacer si Usted Encuentra un Error en Su Estado de Facturación

Si usted considera que existe un error en su estado de facturación, escríbanos a la dirección para consultas sobre facturación y correspondencia que se indica en el frente de su estado de facturación.

En su carta, proporciónenos la siguiente información:

- *Información de cuenta:* su nombre y número de cuenta.
- *Monto en dólares:* el monto en dólares del presunto error.
- *Descripción del problema:* si usted considera que existe un error en su factura, describa lo que usted considera erróneo y el motivo por el cual considera que se trata de un error.

Usted deberá comunicarse con nosotros:

- En un plazo de 60 días a partir de la fecha en que el error haya aparecido en su estado de facturación.
- Como mínimo 3 días hábiles antes de la fecha en que se encuentre programado un pago automatizado si usted desea suspender el pago del monto que considere erróneo.

Deberá notificarnos cualquier posible error *por escrito*. Podrá llamarnos por teléfono, pero en ese caso no tendremos la obligación de investigar ningún posible error y usted posiblemente deba pagar el monto en cuestión.

### Qué Sucederá Luego de que Recibamos su Carta

Cuando recibamos su carta, deberemos hacer dos cosas:

1. En un plazo de 30 días a partir del recibo de su carta, deberemos informarle que hemos recibido su carta. También le informaremos si ya hemos corregido el error.
2. En un plazo de 90 días a partir del recibo de su carta, deberemos corregir el error o explicarle a usted por qué consideramos que la factura es correcta.

Mientras investigamos si se ha producido o no un error:

- No podremos intentar cobrar el monto en cuestión, ni reportarle a usted como deudor moroso sobre dicho monto.
- El cargo en cuestión podrá permanecer en su estado de facturación, y podemos continuar cobrándole intereses sobre dicho monto.
- Si bien usted no tendrá la obligación de pagar el monto en cuestión, será responsable por el resto de su saldo.
- Podremos aplicar cualquier monto sin pagar contra su límite de crédito.

Una vez que finalicemos nuestra investigación, sucederá una de dos cosas:

- *Si hemos cometido un error:* usted no tendrá la obligación de pagar el monto en cuestión ni ningún tipo de intereses u otros cargos relacionados con dicho monto.
- *Si consideramos que no se ha producido un error:* usted tendrá la obligación de pagar el monto en cuestión, junto con los intereses y cargos aplicables. Le enviaremos un estado de facturación del monto que usted adeuda y la fecha de vencimiento del pago. Posteriormente podremos reportarle a usted como deudor moroso si usted no paga el monto que consideramos que adeuda.

Si usted recibe nuestra explicación pero igualmente considera que su factura es errónea, deberá escribirnos en un plazo de *10 días* para indicarnos que continúa negándose a pagar. En ese caso, no podremos reportarle como deudor moroso sin reportar también que usted cuestiona su factura.

Deberemos informarle a usted el nombre de cualquier persona o entidad a la cual le reportemos a usted como deudor moroso, y deberemos informarles a dichas entidades cuando el asunto se haya solucionado entre nosotros.

Si no cumplimos con todas las reglas que se indican arriba, usted no tendrá la obligación de pagar los primeros $50 del monto que usted cuestione, aunque su factura sea correcta.

### Sus Derechos si Usted No está Satisfecho con sus Compras con Tarjeta de Crédito

Si usted no está satisfecho con los productos o servicios que ha comprado con su tarjeta de crédito, y ha intentado de buena fe corregir el problema con el comerciante, podría tener el derecho de no pagar el monto restante adeudado sobre la compra.

Para ejercer este derecho, deben ser ciertos todos los siguientes enunciados:

1. La compra debe haberse realizado en el estado donde usted reside o dentro de un radio de 100 millas de su dirección postal actual, y el precio de la compra debe haber sido superior a $50. (Nota: Ninguna de estas condiciones es necesaria si su compra se basó en una publicidad enviada por nosotros o si somos propietarios de la empresa que le vendió los productos o los servicios.)
2. Usted debe haber utilizado su tarjeta de crédito para la compra. No califican las compras efectuadas con adelantos en efectivo a través de un cajero automático (ATM) o con un cheque que acceda a su cuenta de tarjeta de crédito.
3. Usted no debe haber pagado aún la totalidad de la compra.

Si se cumplen todos los criterios que se indican arriba y usted continúa insatisfecho con la compra, comuníquese con nosotros *por escrito* a la dirección para consultas sobre facturación y correspondencia que se indica en el frente de su estado de facturación.

Durante nuestra investigación, aplican las mismas reglas al monto en disputa, tal y como se describe arriba. Una vez que finalicemos nuestra investigación, le informaremos nuestra decisión. En ese momento, si consideramos que usted adeuda un monto y usted no efectúa el pago, podremos reportarle como deudor moroso.

©2014 Citibank, N.A.

72100BSP 08/14

dicha parte podrá igualmente exigir el arbitraje en un momento posterior o en relación con cualquier otro Reclamo.

**¿Qué procedimientos y leyes son aplicables en el arbitraje?** Los Reclamos serán resueltos por un único árbitro neutral. El árbitro será un abogado con un mínimo de 10 años de experiencia, o bien haberse desempeñado como juez o estar retirado de ese cargo. Se le seleccionará conforme a las reglas de la firma de arbitraje que tenga a su cargo el arbitraje. El arbitraje obedecerá los procedimientos y reglas de la firma de arbitraje vigentes en la fecha en que se solicite el arbitraje, a menos que dichos procedimientos y reglas sean contradictorios con este Contrato, en cuyo caso prevalecerá este Contrato. Dichos procedimientos y reglas podrán limitar la producción y el descubrimiento de prueba tanto a usted como a nosotros. El árbitro tomará medidas razonables para proteger la información sobre la cuenta del cliente y otra información confidencial, si usted o nosotros se lo solicitamos. El árbitro aplicará la ley sustantiva aplicable conforme a la FAA y a los plazos prescriptivos aplicables, respetará los reclamos de privilegio reconocidos por la ley, y tendrá el poder de otorgarle a una parte compensación por daños y perjuicios, o remedio de otro tipo de conformidad con la ley aplicable. Usted o nosotros podremos optar por tener una audiencia y ser representados por un asesor legal. El árbitro dictará el laudo arbitral por escrito y, si usted o nosotros se lo solicitamos, suministrará una breve declaración de los motivos que fundamentaron dicho laudo. Un laudo arbitral determina los derechos y obligaciones únicamente entre las partes nombradas y únicamente con respecto a los Reclamos en arbitraje, y no tendrá peso alguno sobre los derechos y obligaciones de ninguna otra persona ni sobre la resolución de ninguna otra disputa.

**¿Quién paga?** Los cargos y honorarios iniciales de presentación serán pagados por quien presente la solicitud de arbitraje. Si nosotros interponemos la acción, pagamos nosotros; si la inicia usted, paga usted, a menos que usted obtenga una exención de cargos y honorarios conforme a las reglas aplicables de la firma de arbitraje. Si usted ha pagado los cargos y honorarios iniciales de presentación y el arbitraje resulta a su favor, le reembolsaremos dichos cargos y honorarios. Si hay una audiencia, pagaremos los cargos y honorarios del árbitro y de la firma de arbitraje correspondientes al primer día de dicha audiencia. Todos los demás cargos y honorarios se asignarán según lo dispuesto por las reglas de la firma de arbitraje y por la ley aplicable. Sin embargo, le adelantaremos o reembolsaremos sus cargos y honorarios si la firma de arbitraje o el árbitro determinan que existe un motivo válido para exigirnos hacerlo, o si usted nos lo solicita y determinamos que existe un motivo válido para hacerlo. Cada una de las partes se encargará de los gastos de los abogados, peritos, testigos y otros gastos de dicha parte, independientemente de la parte que salga favorecida, pero una parte podrá recuperar la totalidad o parte de los gastos de otra parte si el árbitro así lo determina de conformidad con la ley aplicable.

**¿Quién puede ser parte?** Los Reclamos deberán presentarse a nombre de una persona o entidad individual, y deberán proceder en forma individual (no de clase y no representativa). El árbitro no otorgará remedios a favor o en contra de ninguna persona o entidad que no sea parte. Si usted o nosotros exigimos el arbitraje de un Reclamo, ni usted, ni nosotros, ni ninguna otra persona podrá presentar el Reclamo en arbitraje como acción de clase, acción de un procurador general privado ni otra acción representativa, ni tampoco podrá presentarse dicho Reclamo en nombre de usted o de nosotros en ningún litigio ante tribunal de derecho alguno. Los Reclamos, incluidos los Reclamos cedidos, de dos o más personas no podrán unirse ni consolidarse en el mismo arbitraje. Sin embargo, los solicitantes, co-solicitantes, usuarios

autorizados en una misma cuenta y/o cuentas relacionadas, o afiliados corporativos se consideran aquí como una sola persona.

**¿En qué casos es definitivo un laudo arbitral?** El laudo del árbitro es definitivo y vinculante para las partes, a menos que una parte apele dicho laudo por escrito ante la firma de arbitraje en un plazo de quince días a partir del aviso del laudo. La apelación deberá solicitar un nuevo arbitraje ante un panel de tres árbitros neutrales designados por la misma firma de arbitraje. El panel considerará todas las controversias de hecho y de derecho nuevamente, obedecerá las mismas reglas que se aplican a un procedimiento que utiliza un único árbitro y se pronunciará en función del voto de la mayoría. Los honorarios y costas se asignarán de la misma manera en que se asignan para un arbitraje ante un solo árbitro. Un laudo efectuado por un panel es definitivo y vinculante para las partes después del transcurso de 15 días. Un laudo arbitral definitivo y vinculante se encuentra sujeto a revisión y ejecución judicial según lo dispuesto por la FAA u otras leyes aplicables.

**Supervivencia y Divisibilidad de los Términos**
Esta cláusula de arbitraje permanecerá válida aun después de: (i) la cancelación o las modificaciones del Contrato, la cuenta, o la relación entre usted y nosotros con respecto a la cuenta; (ii) la bancarrota de cualquiera de las partes; y (iii) cualquier transferencia, venta o cesión de su cuenta, o cualquier monto adeudado en su cuenta, a cualquier otra persona o entidad. Si se determina que alguna de las partes de esta cláusula de arbitraje es inválida o su cumplimiento inexigible, la totalidad de la cláusula de arbitraje será inejecutable. No se podrá modificar, dividir o renunciar a ninguna porción de esta cláusula de arbitraje sin un acuerdo por escrito entre usted y nosotros.

**Ley Aplicable y Ejercicio de nuestros Derechos**
**Ley Aplicable.** Los términos y el cumplimiento de este Contrato están regidos por las leyes federales y las leyes de South Dakota, donde estamos ubicados.

**Cumplimiento de este Contrato.** La demora u omisión en el ejercicio de cualquiera de nuestros derechos adquiridos en virtud de este Contrato no implica la pérdida de dichos derechos.

**Costos por Gestión de Cobro.** En la medida en que lo permita la ley, usted será responsable ante nosotros por nuestros costos legales si referimos el cobro de su cuenta a un abogado que no sea empleado asalariado nuestro. Estos costos podrán incluir honorarios razonables de abogados. También podrán incluir los costos y gastos de cualquier acción legal.

**Cesión.** Podremos ceder a un tercero la totalidad o cualquiera de nuestros derechos y obligaciones de conformidad con este Contrato.

**Para Obtener Más Información**
Para obtener información adicional, llámenos sin cargo. Llame sin cargo al número telefónico de Servicio al Cliente que figura en el estado de facturación o al dorso de su tarjeta. También puede llamar localmente o sin cargo a la Asistencia de Directorio para obtener nuestro número telefónico.

Ken Stork          Citibank, N.A.
Vice-presidente   P.O. Box 6000
                  Sioux Falls, SD 57117

**Sus Derechos de Facturación:**
***Conserve este Documento para Uso Futuro***
Este aviso le informa sobre sus derechos y nuestras responsabilidades conforme a la Ley de Facturación Justa de Crédito "Fair Credit Billing Act".

**Pérdida o Robo de Tarjetas o Números de Cuenta.** Usted deberá llamarnos en caso de pérdida o robo de cualquier tarjeta o número de cuenta. También deberá llamarnos si cree que alguien los ha utilizado o podría utilizarlos sin permiso. Cuando llame, podremos solicitarle que suministre información para contribuir con nuestra investigación. Podremos solicitarle que suministre esta información por escrito. Por ejemplo, podremos solicitarle que identifique todos los cargos que no hayan sido realizados por usted ni por ninguna persona autorizada por usted. También podremos solicitarle que confirme no haber recibido beneficio de dichos cargos.

**Cierre de Su Cuenta.** Usted podrá cerrar su cuenta notificándonos por escrito o por teléfono. Si usted cierra su cuenta, aún deberá pagar el saldo total de conformidad con este Contrato. También podremos cerrar su cuenta o suspender los privilegios de la cuenta en cualquier momento y por cualquier razón. Podremos hacerlo sin suministrarle a usted un aviso previo. También podremos volver a emitir una tarjeta diferente en cualquier momento. Usted deberá devolvernos cualquier tarjeta a pedido nuestro.

### ARBITRAJE

***POR FAVOR, LEA CON DETENIMIENTO ESTA CLÁUSULA DEL CONTRATO*. LA MISMA DISPONE QUE CUALQUIER DISPUTA PODRÁ SER RESUELTA POR ARBITRAJE VINCULANTE. EL ARBITRAJE REEMPLAZA EL DERECHO DE ACUDIR A UN TRIBUNAL, INCLUIDOS EL DERECHO A UN JURADO Y EL DERECHO DE INICIAR O PARTICIPAR EN UNA ACCIÓN DE CLASE O PROCEDIMIENTO SIMILAR. EN UN ARBITRAJE, UNA DISPUTA ES RESUELTA POR UN ÁRBITRO EN LUGAR DE UN JUEZ O JURADO. LOS PROCEDIMIENTOS DE ARBITRAJE SON MÁS SENCILLOS Y MÁS LIMITADOS QUE LOS PROCEDIMIENTOS DE TRIBUNALES.**

**Aceptación del Arbitraje:** Usted o nosotros podremos, sin el consentimiento del otro, elegir un arbitraje obligatorio y vinculante para cualquier reclamo, disputa o controversia entre usted y nosotros (denominados "Reclamos").

### Reclamos Cubiertos

**¿Qué Reclamos están sujetos a arbitraje?** Todos los Reclamos relacionados con su cuenta, con una cuenta anterior relacionada o con nuestra relación están sujetos a arbitraje, incluidos los Reclamos relacionados con la aplicación, el carácter ejecutorio o la interpretación de este Contrato y esta cláusula de arbitraje. Todos los Reclamos están sujetos a arbitraje, independientemente de la teoría legal en la que se fundamenten, o del remedio (daños y perjuicios, sentencias declaratorias en derecho, o interdicto) que procuren obtener. Esto incluye Reclamos originados en obligaciones y contratos, culpa extracontractual (incluida la culpa extracontractual intencional), fraude, representación o agencia, negligencia de parte suya o nuestra, disposiciones estatutarias o reglamentarias, o cualquier otra fuente de derecho; Reclamos efectuados como reconvenciones, demandas contra co-parte, reclamos de/contra terceros, procedimientos de consignación, u otros; y Reclamos efectuados en forma independiente o con otros reclamos. Una parte que inicie un procedimiento en un tribunal podrá optar por el arbitraje con respecto a cualquier Reclamo presentado en dicho procedimiento por cualquier otra parte. Los Reclamos y remedios procurados como parte de una acción de clase, procurador general privado u otra acción representativa están sujetos a arbitraje en forma individual (no de clase y no representativa), y el árbitro podrá otorgar un remedio únicamente en forma individual (no de clase y no representativa).

**¿Los Reclamos de qué personas están sujetos a arbitraje?** No sólo los nuestros y los de usted, sino también los Reclamos efectuados por o contra cualquier persona conectada con nosotros o con usted, o que reclame a través de nosotros o de usted, como un co-solicitante o usuario autorizado de su cuenta, un empleado, agente, representante, compañía afiliada, predecesor o sucesor, heredero, cesionario o síndico en bancarrota.

**¿Qué plazo se aplica a los Reclamos sujetos a arbitraje?** Los Reclamos sujetos a arbitraje son los surgidos en el pasado, presente o futuro, incluidos los Reclamos que hayan surgido antes de la apertura de su cuenta.

**Interpretación más amplia.** Toda pregunta que surja respecto a la sujeción de Reclamos al proceso de arbitraje será resuelta mediante la interpretación más amplia permitida por la ley para esta cláusula de arbitraje. Esta cláusula de arbitraje está regida por la Ley Federal de Arbitraje, "Federal Arbitration Act" (FAA).

**¿Qué sucede con los Reclamos presentados en un Tribunal para Casos de Cuantía Menor?** Los Reclamos presentados en un tribunal para casos de cuantía menor no están sujetos a arbitraje, siempre y cuando el caso permanezca en dicho tribunal y presente únicamente un Reclamo individual (no de clase y no representativo).

**¿Qué sucede con los cobros de deudas?** Ni nosotros ni ninguna persona o entidad a quien le cedamos su deuda iniciaremos un procedimiento de arbitraje para cobrarle a usted una deuda a menos que usted presente un Reclamo contra nosotros o contra nuestro cesionario. Nosotros o cualquier cesionario podremos solicitar el arbitraje en forma individual de cualquier Reclamo presentado por usted, ya sea en arbitraje o en cualquier procedimiento, lo cual incluye un procedimiento para el cobro de una deuda. Usted podrá solicitar el arbitraje en forma individual de cualquier Reclamo presentado en contra de usted, lo cual incluye un procedimiento para el cobro de una deuda.

### Cómo Funciona el Arbitraje

**¿Cómo inicia el arbitraje una de las partes?** La parte que solicite un arbitraje deberá elegir una de las dos firmas de arbitraje indicadas a continuación, y obedecer sus reglas y procedimientos para iniciar y procurar un arbitraje: American Arbitration Association (Asociación Americana de Arbitraje) o JAMS. Cualquier audiencia de arbitraje a la que usted asista se celebrará en un lugar elegido por la firma de arbitraje, en la misma ciudad donde se encuentre el Tribunal de Distrito de los Estados Unidos más cercano a su dirección de facturación vigente en ese momento, o en otro lugar que usted y nosotros acordemos por escrito. Usted podrá obtener copias de las reglas actuales de cada una de las firmas de arbitraje, y los formularios e instrucciones para iniciar un arbitraje, comunicándose con ellos a través de los siguientes medios:

American Arbitration Association
800-778-7879 (sin cargo)
Website: www.adr.org

JAMS
800-352-5267 (sin cargo)
Website: www.jamsadr.com

En cualquier momento, usted o nosotros podremos solicitar a un tribunal competente que imponga el arbitraje de Reclamos o que suspenda el litigio de Reclamos en espera del arbitraje, aun si dichos Reclamos son parte de un pleito judicial, a menos que ya haya comenzado un juicio o se haya emitido un fallo final. Aunque una de las partes no ejerza estos derechos en cualquier momento en particular, o en relación con cualquier Reclamo en particular,

en el monto que se refleja en el primer estado de facturación que muestra la transacción. El mismo aplica si, pagando $25 de este saldo en cada ciclo de facturación resultara en el pago total antes de la fecha final del periodo promocional. El Cálculo de Promoción equivale a 1% de este saldo durante el periodo promocional. (El resultado se redondea hacia arriba hasta al centavo más cercano). El Cálculo de Promoción aplica únicamente durante el periodo promocional.

El Pago Mínimo Adeudado puede reflejar ajustes al Nuevo Saldo y nunca es superior al Nuevo Saldo Calculado más dos montos. El primero es cualquier monto requerido por una oferta promocional. El segundo es cualquier monto requerido por el Cálculo de Promoción.

**Aplicación de Pagos.** Los pagos que excedan el Pago Mínimo Adeudado se aplican de conformidad con la ley. Esto significa que generalmente aplicaremos los pagos que excedan el Pago Mínimo Adeudado primero a los saldos con tasas APR más altas. Sin embargo, los pagos excedentes recibidos antes del vencimiento de una promoción de intereses diferidos se aplican primero al saldo promocional de intereses diferidos en los últimos dos ciclos de facturación del período promocional. Además, si la fecha de vencimiento de una promoción de intereses diferidos es anterior a la fecha de vencimiento de pago del ciclo de facturación en el cual venza la promoción de intereses diferidos, los pagos excedentes recibidos antes del vencimiento de la promoción de intereses diferidos se aplican primero al saldo promocional de intereses diferidos en los últimos tres ciclos de facturación del período promocional. Los pagos que sean menores o iguales al Pago Mínimo Adeudado y los créditos se aplican a nuestro criterio y usted nos autoriza a aplicar pagos y créditos de la manera que nos resulte más favorable o conveniente. Esto puede incluir la aplicación de dichos pagos y créditos en primer lugar a los saldos con tasas APR más bajas.

**Instrucciones de Pago.** Acreditamos sus pagos de conformidad con nuestras instrucciones de pago que se indican en el estado de facturación. Usted deberá pagarnos en dólares de EE.UU. Para hacerlo, deberá usar un cheque, instrumento similar o débito electrónico librado y aceptado por un banco en Estados Unidos. No envíe dinero en efectivo. Podremos aceptar pagos con demora o parciales, o pagos que reflejen endosos de "pagado en su totalidad" u otro tipo de endosos restrictivos, sin perder nuestros derechos. También nos reservamos el derecho de aceptar pagos realizados en moneda extranjera e instrumentos librados sobre fondos en depósito fuera de EE.UU. Si lo hacemos, seleccionaremos la tasa de conversión de moneda. Luego acreditaremos su cuenta en dólares de EE.UU después de deducir los costos incurridos en el procesamiento de su pago. O bien, podremos facturarle dichos costos en forma separada.

**Servicio Opcional de Pago por Teléfono.** Usted puede utilizar nuestro Servicio opcional de Pago por Teléfono (Pay by Phone) para efectuar sus pagos por teléfono. Para hacerlo, llámenos a fin de solicitar el servicio. Usted acepta pagarnos el cargo correspondiente al Pago por Teléfono que se indica en la sección titulada Pago por Teléfono (Pay by Phone) que figura al dorso del estado de facturación cuando un representante nuestro ayude a acelerar su pago. Nuestros representantes están capacitados para informarle de este monto cuando usted utilice este servicio.

### Informes de Crédito

Podremos reportar información sobre su cuenta a agencias de informes de crédito. Los pagos con demora, pagos omitidos u otros incumplimientos en su cuenta podrían reflejarse en su informe de crédito. Podremos proporcionar información de la cuenta en su nombre y en nombre de usuarios autorizados. También podemos obtener informes de crédito de seguimiento sobre su persona.

Si usted considera que hemos suministrado información incorrecta a una agencia de informes de crédito, escríbanos a la dirección de Servicio al Cliente que se indica en el estado de facturación. Investigaremos el asunto. Luego le comunicaremos si estamos de acuerdo o en desacuerdo con usted. Si estamos de acuerdo con usted, nos comunicaremos con cada agencia de informes de crédito a la que hayamos suministrado informes y solicitaremos una corrección. Si estamos en desacuerdo con usted, se lo informaremos.

### Intercambio de Información

Usted nos autoriza a compartir información sobre su persona según lo permitido por la ley. Esto incluye información suministrada por usted y por terceros. También incluye información sobre sus transacciones con nosotros. Por favor, consulte nuestro Aviso de Privacidad para conocer detalles sobre nuestras prácticas de intercambio de información.

### Modificaciones a este Contrato

**Podremos modificar las tasas, cargos y términos de este Contrato en forma periódica según lo permitido por la ley. Las modificaciones podrán agregar, reemplazar o eliminar disposiciones de este Contrato. Le suministraremos a usted en forma anticipada un aviso por escrito con respecto a las modificaciones y al derecho de exclusión en la medida en que lo exija la ley.**

### Incumplimiento

Usted incurrirá en incumplimiento de este Contrato si usted no efectúa el Pago Mínimo Adeudado en o antes de la fecha de vencimiento; si excede su límite de crédito; si paga mediante un cheque o instrumento similar que no sea aceptado o que nosotros debamos devolver porque no puede ser procesado; si paga mediante un débito electrónico que se devuelva sin pagar; si se declara en bancarrota; o si no cumple con los términos de este Contrato. Si usted incurre en incumplimiento, podremos cerrar su cuenta y, en la medida en que lo permita la ley, exigir el pago inmediato del saldo total.

### Denegación de la Tarjeta, Cuentas Cerradas y Disposiciones Relacionadas

**Denegación de la Tarjeta.** No garantizamos la aprobación de las transacciones. No asumiremos ninguna responsabilidad por las transacciones que no sean aprobadas. Esto se aplicará aunque usted tenga crédito suficiente. Podremos limitar el número de transacciones aprobadas en un mismo día. Si detectamos actividad inusual o sospechosa, podremos suspender sus privilegios de crédito.

**Cargos Previamente Autorizados.** Podremos suspender cualquier cargo automático u otro cargo de tarjeta previamente autorizado que usted disponga con un tercero. Podremos hacer esto si usted incurre en incumplimiento; si la tarjeta es extraviada o robada; o si modificamos su cuenta por cualquier motivo. Si lo hacemos, usted será responsable de pagarle al tercero directamente si así lo desea. Usted también será responsable de restablecer los cargos previamente autorizados si así lo desea y si lo permitimos.

sobre las compras. Esto se denomina período de gracia para compras. El período de gracia es de por lo menos 25 días. Para obtener un período de gracia para compras, deberá pagar el Nuevo Saldo en o antes de la fecha de vencimiento de pago en cada ciclo de facturación. Si no lo hace, no obtendrá un período de gracia hasta que pague el Nuevo Saldo durante dos ciclos de facturación consecutivos.

Si usted tiene un saldo sujeto a una promoción de intereses diferidos o de un APR de 0% y dicha promoción no vence antes de la fecha de vencimiento de pago, ese saldo (un "saldo promocional excluido") queda excluido del monto que usted debe pagar en su totalidad para obtener un período de gracia. Sin embargo, de todos modos deberá efectuar cualquier pago requerido por separado sobre el saldo promocional excluido. En los ciclos de facturación en los cuales los pagos se asignan primero a los saldos de intereses diferidos, el saldo de intereses diferidos se reducirá antes que cualquier otro saldo en la cuenta. No obstante, usted seguirá obteniendo un período de gracia para compras, siempre y cuando pague el Nuevo Saldo, menos cualquier saldo promocional excluido, en su totalidad en o antes de la fecha de vencimiento de pago en cada ciclo de facturación.

Además, determinadas ofertas promocionales pueden eliminar el período de gracia para compras. Otras ofertas promocionales no descritas con anterioridad también pueden permitirle tener un período de gracia para compras sin tener que pagar la totalidad o una parte del saldo promocional en o antes de la fecha de vencimiento de pago. En cualquiera de estos casos, la oferta promocional describirá qué sucede.

**Cálculo de Cargos por Intereses – Método de Saldo Diario (Incluidas las Transacciones Actuales).** Calculamos los cargos por intereses en cada ciclo de facturación. Para hacerlo:

- Comenzamos con cada uno de sus saldos diferentes. Estos saldos incluyen, por ejemplo, compras regulares y diferentes saldos promocionales. (Las compras efectuadas en virtud de los mismos términos promocionales, incluida la tasa APR y la fecha de vencimiento, formarán parte del mismo saldo promocional.)

- Calculamos el saldo diario para cada uno de sus saldos diferentes. Para obtener un saldo diario, comenzamos con el saldo a partir de la finalización del día anterior. Sumamos todos los cargos por intereses al saldo del día anterior. (Esto da como resultado la capitalización diaria de los cargos por intereses). Sumamos todos los cargos nuevos. Luego restamos todos los créditos o pagos nuevos.

- Multiplicamos cada saldo diario por la tasa periódica diaria que se aplica al mismo. Hacemos esto para cada día del ciclo de facturación. Esto nos da los cargos por intereses diarios correspondientes a cada uno de sus saldos diferentes.

- Sumamos todos los cargos por intereses diarios. La suma es el cargo total por intereses correspondiente al ciclo de facturación.

- Usted nos autoriza a redondear los cargos por intereses al centavo más cercano.

Cuando calculamos saldos diarios, sumamos una compra en la Fecha de Transacción. La Fecha de Transacción se indica en el estado de cuenta. Restamos un pago o un crédito el día en que se acredita a la cuenta y luego realizamos otros ajustes. Consideramos un saldo acreedor o a favor como un saldo de cero.

**Cargo Mínimo por Intereses.** Si le cobramos a usted intereses, el cargo no será inferior a $2. Sumamos el cargo al saldo de compras regulares o lo distribuimos entre uno o más de los saldos que acumulen intereses.

**Saldo Sujeto a Tasa de Interés.** Su estado de facturación indica un Saldo Sujeto a Tasa de Interés. Indica esto para cada saldo diferente. El Saldo Sujeto a Tasa de Interés es el promedio de los saldos diarios durante el ciclo de facturación. Un ciclo de facturación comienza el día posterior a la Fecha de Cierre del Estado de Cuenta del ciclo de facturación anterior. Incluye la Fecha de Cierre del Estado de Cuenta del ciclo de facturación actual.

### Cargos

**Cargo por Demora.** Podremos agregar un cargo por demora por cada ciclo de facturación en el que tenga un pago vencido. A los fines del cargo por demora, usted tendrá un pago vencido toda vez que no efectúe el Pago Mínimo Adeudado en o antes de la fecha de vencimiento de pago. El cargo será de $25, o de $35 por cualquier pago vencido adicional durante los siguientes seis ciclos de facturación después de un pago vencido. Sin embargo, el cargo no superará el monto permitido por ley. Sumamos este cargo al saldo de compras regulares.

**Cargo por Pago Devuelto.** Podremos agregar un cargo por pago devuelto por un pago devuelto. Un pago devuelto es un débito electrónico, un cheque de pago o un instrumento de pago similar que se devuelve sin pagar. Podremos agregar este cargo la primera vez que su pago sea devuelto, aunque no sea devuelto al volver a presentarlo. El cargo será de $25, o de $35 por cualquier pago devuelto adicional durante el mismo o los siguientes seis ciclos de facturación después de un pago devuelto. Sin embargo, el cargo no superará el monto permitido por ley. Sumamos este cargo al saldo de compras regulares.

### Pagos

**Hacer Pagos.** Usted puede pagar todo o parte del saldo de su cuenta en cualquier momento. Sin embargo, cada ciclo de facturación, usted deberá pagar al menos el Pago Mínimo Adeudado en o antes de la fecha de vencimiento de pago. Cuanto antes pague el Nuevo Saldo, menos deberá pagar en cargos por intereses.

Para calcular el Pago Mínimo Adeudado, comenzamos con todo monto vencido. Sumamos todo monto adicional especificado en una oferta promocional. Agregamos cualquier monto requerido por el Cálculo de Promoción. También sumamos una de las siguientes opciones, la que sea mayor:

- El Nuevo Saldo Calculado, si es inferior a $25;

- $25 si el Nuevo Saldo Calculado es de $25 como mínimo; o bien

- 1% del Nuevo Saldo Calculado más el monto de sus cargos por intereses facturados sobre dicho saldo, todo cargo mínimo por intereses asignado a dicho saldo, y todos los cargos por demora correspondientes. (El resultado se redondea hacia arriba hasta el dólar más cercano). Sin embargo, restamos los cargos por intereses que se hayan acumulado durante ciclos de facturación anteriores sobre un saldo de intereses diferidos que haya finalizado durante el ciclo de facturación cubierto por el estado de facturación.

El Nuevo Saldo Calculado equivale al Nuevo Saldo que figura en el estado de facturación menos todo saldo sujeto al Cálculo de Promoción y menos cualquier saldo sujeto a cualquiera de los siguientes dos tipos de términos promocionales. El primer tipo corresponde a términos que no requieren un pago mínimo. El segundo tipo corresponde a términos que requieren un monto adicional como parte del Pago Mínimo Adeudado.

El Cálculo de Promoción aplica a algunas transacciones de interés diferido o transacciones con una tasa APR de 0%. El Cálculo de Promoción está basado

# Contrato de Tarjeta de Crédito

Este Contrato de Tarjeta de Crédito es su contrato con nosotros. El mismo gobierna el uso de su tarjeta y de su cuenta. Las Divulgaciones de la Tarjeta de Crédito del Consumidor de The Home Depot y su Pase Temporero de Cargos (Temporary Charge Pass) ("copia impresa") son partes de este Contrato. Por favor lea con detenimiento estos documentos. Conserve estos documentos para sus archivos.

## Definiciones

***cuenta*** significa la relación establecida entre usted y nosotros mediante este Contrato.

***APR*** significa una tasa de porcentaje anual.

***tarjeta*** significa una o más tarjetas u otros instrumentos de acceso que nosotros le proporcionemos a usted para obtener crédito en virtud de este Contrato. Esto incluye los números de cuenta.

***usuario autorizado*** significa cualquier persona a quien usted le permita utilizar su cuenta.

***nosotros, nos*** y ***nuestro(a)*** o ***nuestros(as)*** hacen referencia a Citibank, N.A., el emisor de su cuenta. Citibank, N.A. está localizado en Sioux Falls, SD.

***usted, su(s)*** y ***suyo(a)*** o ***suyos(as)*** hacen referencia a la persona que haya solicitado la apertura de la cuenta. También hacen referencia a cualquier otra persona responsable de cumplir con este Contrato.

## Su Cuenta

Usted acepta utilizar su cuenta de conformidad con este Contrato. Usted deberá pagarnos todos los montos adeudados en su cuenta. Este Contrato es vinculante para usted a menos que usted cierre su cuenta en un plazo de 30 días luego de recibir la tarjeta y que no haya utilizado ni autorizado el uso de la tarjeta. Su cuenta deberá utilizarse únicamente para transacciones lícitas.

**Usuarios Autorizados.** Usted podrá solicitar tarjetas para usuarios autorizados. Usted deberá pagarnos los cargos que ellos generen aunque no haya tenido la intención de ser responsable de dichos cargos. Usted acepta que ellos podrán recibir información sobre la cuenta, con sujeción a cualquier limitación que nosotros impongamos. Deberá informarnos si ya no desea que utilicen su cuenta.

**Cuentas Conjuntas.** Si ésta es una cuenta conjunta, cada uno de ustedes es responsable en forma individual y conjunta de todos los montos adeudados. Cada uno de ustedes es responsable aunque la cuenta sea utilizada por uno solo de ustedes. Usted continuará siendo responsable por la totalidad del saldo de la cuenta aun si un tribunal le ordena a su co-solicitante que nos pague. Usted continuará siendo responsable ante nosotros si su co-solicitante no paga según lo ordenado por el tribunal. El estatus de su cuenta continuará siendo reportado a la agencia de informes de crédito con cada uno de los nombres de ustedes. La entrega de avisos o estados de facturación a cualquiera de ustedes sirve como entrega a cada uno de ustedes. Podremos ampararnos en instrucciones suministradas por cualquiera de ustedes. No seremos responsables ante ninguno de ustedes por ampararnos en dichas instrucciones.

**Límite de Crédito.** Su límite de crédito inicial se indica en la copia impresa. Posteriormente, su límite de crédito aparece en su estado de facturación. El monto total de su límite de crédito está disponible para utilizarse donde se acepte la tarjeta. Podremos reducir o aumentar su límite de crédito en cualquier momento y por cualquier razón, según lo permita la ley. Le notificaremos a usted sobre cualquier cambio, pero éste podría entrar en vigencia antes de que reciba el aviso. Usted deberá mantener siempre su saldo total por debajo

del límite de crédito. Sin embargo, si el saldo total excede su límite de crédito, aun así deberá pagarnos. Si su cuenta tiene un saldo de crédito, podremos reducir el saldo de crédito en la cantidad de cualquier nuevo cargo en su cuenta. Usted no podrá mantener un saldo de crédito que exceda su límite de crédito.

**Estado de Facturación.** Su estado de facturación indica el Nuevo Saldo. Éste es el monto total que usted nos adeuda en la Fecha de Cierre del Estado de Cuenta. Para determinar el Nuevo Saldo, comenzamos con el saldo total al comienzo del ciclo de facturación. Sumamos todas las compras. Restamos todos los créditos o pagos. Luego sumamos todos los cargos por intereses u otros cargos y realizamos otros ajustes.

Su estado de facturación también indica sus transacciones; el Pago Mínimo Adeudado y la fecha de vencimiento de pago; su límite de crédito; y sus cargos por intereses y otros cargos. En el estado de facturación, un saldo de compras regulares aparecerá debajo del encabezamiento "plan de crédito rotativo regular".

Entregamos un estado de facturación a una sola dirección. Usted deberá notificar cualquier cambio de dirección a Servicio al Cliente. Podremos dejar de enviarle estados de facturación si consideramos su cuenta como incobrable o iniciamos procedimientos de cobro, pero podremos continuar agregando intereses y cargos según lo permita la ley.

## Tasas de Porcentaje Anual (APR)

**Tasas APR Para Compras Regulares.** Vea la copia impresa.

**Efecto de los Aumentos de la Tasa APR.** Si aumenta una tasa APR, aumentan los cargos por intereses. Su pago mínimo también podría aumentar.

## Promociones

Podremos ofrecer términos promocionales para la totalidad o parte de cualquier saldo. Todos los términos promocionales podrán aplicarse durante un período de tiempo limitado. Dichos términos promocionales estarán regidos por los términos de la oferta promocional y de este Contrato. Sus términos promocionales finalizarán cuando venza el período promocional o, según lo permita la ley, si realiza un pago con demora. La oferta promocional le informará en caso de que exijamos un pago mínimo por separado sobre el saldo promocional.

Si una oferta promocional es una oferta de intereses diferidos, no se impondrán cargos por intereses sobre el saldo de intereses diferidos si usted paga el saldo en su totalidad en o antes de la finalización del período promocional correspondiente a dicho saldo de intereses diferidos. Impondremos cargos por intereses sobre el saldo de intereses diferidos con la tasa APR para compras regulares a partir de la fecha de compra si usted no paga el saldo en su totalidad en o antes de la finalización del período promocional.

## Cargos por Intereses Basados en Tasas APR

**Cargos por Intereses.** Imponemos cargos por intereses cuando aplicamos tasas APR a los saldos de su cuenta. Lo hacemos todos los días usando una tasa periódica diaria. Para obtener una tasa periódica diaria, dividimos la tasa APR por 365.

**Cuándo Comienzan los Cargos por Intereses.** Comenzamos a imponer cargos por intereses el primer día en que agregamos un cargo a un saldo diario. Los cargos que sumamos a un saldo diario incluyen compras, cargos por intereses y otros cargos. Continuamos imponiendo cargos por intereses hasta que acreditamos a su cuenta el pago total del monto total que usted nos adeuda.

**Período de Gracia para Compras.** Puede evitar los cargos por intereses

SPDHEX 04/14

| DATOS | ¿QUÉ HACE CITIBANK CON SU INFORMACIÓN PERSONAL? |
|---|---|
| ¿Por qué? | Las compañías financieras deciden cómo comparten la información personal de usted. La ley federal les otorga a los consumidores el derecho en una parte, pero no la totalidad, de la información que se comparte. La ley federal también nos exige que le informemos a usted cómo recopilamos, compartimos y protegemos su información personal. Por favor, lea este aviso con detenimiento para entender lo que hacemos. |
| ¿Qué? | Los tipos de información personal que recopilamos y compartimos dependen del producto o servicio que le proporcionemos. Esta información puede incluir: • Número de Seguro Social e ingresos • saldos de sus cuentas e información sobre su empleo • historial de crédito e historial de transacciones |
| ¿Cómo? | Todas las compañías financieras necesitan compartir la información personal de sus clientes para llevar a cabo sus actividades comerciales diarias. En la sección a continuación, enumeramos las razones por las cuales las compañías financieras pueden compartir la información personal de sus clientes; las razones por las cuales Citibank decide compartirla; y si usted puede limitar que se comparta. |

| Razones por las cuales podemos compartir su información personal | ¿Citibank comparte información? | ¿Puede usted limitar esta información que se comparte? |
|---|---|---|
| **A los fines de nuestras actividades comerciales diarias** – tales como procesar sus transacciones, administrar su(s) cuenta(s), responder a órdenes judiciales e investigaciones legales, o informar a agencias de informes de crédito | Sí | No |
| **Para nuestros fines de mercadeo** – con el objetivo de ofrecerle nuestros productos y servicios a usted | Sí | No |
| **Con fines de mercadeo conjunto con otras compañías financieras** | Sí | No |
| **A los fines de las actividades comerciales diarias de nuestras afiliadas** – información sobre sus transacciones y experiencias | Sí | No |
| **A los fines de las actividades comerciales diarias de nuestras afiliadas** – información sobre su solvencia crediticia | Sí | Sí |
| **Para que nuestras afiliadas le ofrezcan sus productos y servicios** | Sí | Sí |
| **Para que nuestras compañías no afiliadas le ofrezcan sus productos y servicios** | Sí | Sí |

| Para limitar la información que compartimos | Llame al 1-877-491-0607 – nuestro menú le orientará a través de su(s) opción(es). **Tenga en cuenta lo siguiente:** Si usted es un cliente *nuevo*, podemos comenzar a compartir su información 30 días después de la fecha en que se envió este aviso. Cuando usted *deje de ser* nuestro cliente, continuaremos compartiendo su información según lo descrito en este aviso. Sin embargo, puede comunicarse con nosotros en cualquier momento para limitar la información que compartimos. |
|---|---|
| ¿Preguntas? | Llame al 1-877-491-0607 o al número de Servicio al Cliente que se encuentra al dorso de su tarjeta de crédito o en su estado de facturación. |

| Quiénes somos | |
|---|---|
| ¿Quién proporciona este aviso? | Usted está recibiendo este aviso del grupo de socios de tarjetas de comercios al por menor de Citibank, N.A., el banco que emite su tarjeta de crédito. |

| Qué hacemos | |
|---|---|
| ¿De qué modo Citibank protege mi información personal? | A fin de proteger su información personal contra el acceso y el uso no autorizados, utilizamos medidas de seguridad para cumplir con la ley federal. Estas medidas incluyen resguardos para computadoras, archivos y edificios protegidos. |
| ¿De qué modo Citibank recopila mi información personal? | Recopilamos su información personal, por ejemplo, cuando usted • proporciona información sobre su cuenta o nos proporciona su información de contacto • proporciona información sobre su empleo o solicita un préstamo • utiliza su tarjeta de crédito o débito También recopilamos su información personal de terceros, como agencias de informes de crédito, afiliadas u otras compañías. |
| ¿Por qué no puedo limitar totalmente la información que se comparte? | La ley federal le otorga el derecho de limitar únicamente • que se comparta información a los fines de las actividades comerciales diarias de las afiliadas – información sobre su solvencia crediticia • que las afiliadas utilicen su información para ofrecerle sus productos y servicios a usted • que las compañías no afiliadas le ofrezcan sus productos y servicios. Las leyes estatales y las compañías individuales pueden ofrecerle derechos adicionales para limitar la información que se comparte. Consulte a continuación para obtener más detalles sobre sus derechos en virtud de la ley estatal. |
| ¿Qué sucede cuando limito la información que se comparte para una cuenta que tengo en forma conjunta con otra persona? | Sus opciones se aplicarán a todas las personas en su cuenta. |

| Definiciones | |
|---|---|
| Afiliadas | Compañías relacionadas por medio de propiedad o control común. Pueden ser compañías financieras y no financieras. • *Nuestras afiliadas incluyen compañías con un nombre Citi, compañías de servicios financieros tales como Citigroup Global Markets Inc., y otras, como Banamex, USA.* |
| No afiliadas | Compañías no relacionadas por medio de propiedad o control común. Pueden ser compañías financieras y no financieras. • *No afiliadas con las cuales compartimos información pueden incluir compañías dedicadas al mercadeo directo y a la venta de productos y servicios al consumidor.* |
| Mercadeo conjunto | Un acuerdo formal entre compañías no afiliadas que mercadean en conjunto productos y servicios financieros para usted. • *Nuestros socios de mercadeo conjunto incluyen compañías de seguros y otras compañías financieras.* |

| Otra información importante | |
|---|---|

**Para los residentes de Vermont:** No compartiremos la información personal que recopilamos sobre usted con terceros no afiliados, excepto según lo permitido por la ley de Vermont, como por ejemplo, para procesar sus transacciones o administrar su cuenta. Además, no compartiremos con nuestras afiliadas la información sobre su solvencia crediticia, salvo que usted lo autorice.
**Para los residentes de California:** No compartiremos la información personal que recopilamos sobre usted con terceros no afiliados, excepto según lo permitido por la ley de California, como por ejemplo, para procesar sus transacciones o administrar su cuenta.

Podemos compartir su información personal, según lo permitido por ley, con el comercio cuyo nombre aparece en su tarjeta y con las compañías relacionadas con el comercio. Usted no puede limitar que compartamos esta información.

| Información importante sobre Informes de Crédito |
|---|
| Podremos reportar información sobre su cuenta a agencias de informes de crédito. Es posible que los pagos con demora, los pagos no efectuados u otros incumplimientos en su cuenta se reflejen en su informe de crédito. |

Para obtener más información llame a Servicios de Crédito de The Home Depot al 1-800-677-0232. Los residentes de Nueva York podrán comunicarse con el Departamento de Servicios Financieros del Estado de Nueva York por teléfono al 1-800-342-3736 o visitar su website, www.dfs.ny.gov, para obtener sin cargo información sobre comparación de tasas, cargos y períodos de gracia de tarjetas de crédito.

**CITIBANK, N.A. OTORGA TODO CRÉDITO Y ES PROPIETARIO DE LAS CUENTAS. ESTA OFERTA ESTÁ SUJETA A UNA REVISIÓN FINAL Y, EN ALGUNOS CASOS, ES POSIBLE QUE CITIBANK NO ABRA UNA CUENTA A SU NOMBRE.**

### TÉRMINOS Y CONDICIONES DE LA OFERTA

- Esta oferta es válida para cuentas nuevas únicamente. Debe tener por lo menos 18 años de edad (21 años, si es en Puerto Rico). Si está casado, puede solicitar una cuenta separada. Citibank, N.A. ("nosotros" o "nos") es el emisor de su cuenta de la Tarjeta de Crédito del Consumidor de The Home Depot. Citibank, N.A. está localizado en Sioux Falls, SD.

- La ley federal nos requiere obtener, verificar y guardar información que identifique a cada persona que abra una cuenta, para de tal manera ayudar al gobierno en la lucha en contra del financiamiento de actividades terroristas y de lavado de dinero. Para procesar la solicitud, debemos obtener su nombre, dirección actual, fecha de nacimiento y otra información que permita la identificación, también podemos solicitar documentos que le identifiquen.

- Podemos recopilar información sobre usted, incluyendo de su empleador, su banco, agencias de crédito, y otros, para verificar su identidad y determinar su elegibilidad para obtener crédito, renovación de crédito y extensiones futuras de crédito. Si nos pregunta, le informaremos si hemos solicitado o no un informe de las agencias de crédito, y los nombres y direcciones de cualquier agencia de crédito que nos proveyera con dichos informes.

- Para recibir una Tarjeta de Crédito del Consumidor de The Home Depot, usted deberá cumplir con nuestros criterios de solvencia crediticia. Su límite de crédito se determinará mediante los ingresos que suministró y una revisión de su deuda, incluida la deuda indicada en su informe de crédito. Se le informará el monto de su límite de crédito cuando reciba la tarjeta. Algunos límites de crédito podrán ser de tan solo $500.

- Usted nos autoriza a compartir con The Home Depot y sus afiliadas, su información de experiencia y de transacciones con nosotros.

- Por favor vea el Contrato de la Tarjeta para información importante.

- **Notificación a los Residentes de Ohio:** Las leyes del estado de Ohio en contra del discrimen requieren que todo acreedor haga disponible el crédito equitativamente a favor de todo cliente solvente, y que las agencias de crédito mantengan historiales de crédito separados sobre cada individuo según solicitado. La Comisión para los Derechos Civiles del Estado de Ohio ("Ohio Civil Rights Commission") vela por el cumplimiento de esta ley.

- **Notificación a los Residentes de Wisconsin:** Ningún acuerdo de propiedad matrimonial, declaración unilateral o decisión de la corte afectará adversamente nuestros derechos, a menos que usted nos provea copia de dicho acuerdo, declaración u orden de la corte antes de que le brindemos el crédito, o de que tengamos conocimiento de sus términos antes de que su cuenta sea abierta.

†**Términos de la Promoción**

Con aprobación de crédito para compras elegibles realizadas con la Tarjeta de Crédito The Home Depot para el Consumidor, tasas APR desde 17.99% hasta 26.99%. Cargo mínimo por intereses: $2. Vea los detalles en el contrato de tarjeta, incluida la tasa APR aplicable a usted. Oferta sólo válida para cuentas del consumidor. La oferta de crédito de todos los días de 6 meses está sujeta a cambio sin previo aviso. Se requieren pagos mínimos.

©2014 Citibank, N.A.

# SOLICITUD DE LA TARJETA DE CRÉDITO DEL CONSUMIDOR DE THE HOME DEPOT

Por favor, complete toda la solicitud. Utilice letra de imprenta en tinta negra o azul, o complete su solicitud en línea en my/homedepotaccount.com. Si no completa toda la solicitud, se demora el procesamiento de crédito.



## 1. INFORMACIÓN PERSONAL

PREFERENCIA DE IDIOMA PARA RECIBIR INFORMACIÓN SOBRE LA CUENTA ☐ inglés ☐ Español

| Primer nombre* | Inicial del segundo nombre | Apellido* | | Sufijo |
|---|---|---|---|---|
| Dirección residencial* (no use apartado postal) | | Ciudad* | Estado* | Código postal* |
| Fecha de nacimiento* | Número de Seguro Social* | Número de teléfono principal* | Número de teléfono comercial | |
| / / | — — | ( ) | | |

Correo electrónico

Si proporciona su dirección de correo electrónico, Citibank N.A. podrá utilizarla para comunicarse con usted en relación con su cuenta, y para informarle sobre productos y servicios útiles. También está suscribiéndose a dirección electrónica a The Home Depot, y al hacerlo, acepta recibir ofertas y promociones especiales de The Home Depot.

Si ha ingresado un número de teléfono celular, u otro número que con posterioridad conviertra en un número de teléfono celular, usted acepta que podremos comunicarnos con usted a este número. También acepta recibir llamadas y mensajes, como por ejemplo, mensajes pregrabados, llamados y mensajes de sistemas de marcado automatizado, o mensaje de texto. Pueden aplicarse los cargos normales de telefonía celular.

## 2. INFORMACIÓN FINANCIERA

| En lado de residencia* | Pago hipotecario o de alquiler mensual* | Salario/Sueldo Anual*† |
|---|---|---|
| ☐ Propietario  ☐ Inquilino  ☐ Otro | $ | $ |

†Si tiene 21 años o más, puede incluir salarios y sueldos de otras personas a las cuales puede acceder de forma razonable para pagar sus facturas

Otro ingreso anual† Por ejemplo: intereses, dividendos, ingresos de propiedades para alquilar y beneficios de retiro. Si tiene 21 años o más, puede incluir ingresos de otras personas a las cuales pueda acceder de forma razonable para pagar sus facturas

$

*Campos obligatorios   †No necesita declarar pensiones de divorcio alimentarios ni de niños ingresos de manutención si no desea que se consideren como base para pagar esta deuda.

## 3. SE REQUIERE ABAJO LA FIRMA DEL SOLICITANTE

Entiendo y acepto que, al presentar esta solicitud, también estoy proporcionando toda mi información de contacto y otra información, a excepción de mi Número de Seguro Social, a Home Depot U.S.A., Inc. y sus afiliadas ("Home Depot") para que la usen con el fin de ofrecerme productos y servicios. También le proporciono mi Número de Seguro Social a Home Depot para que, si por algún motivo Citibank, N.A. no aprueba mi solicitud, Home Depot pueda usar mi información de contacto y de otro tipo que yo proporcione, y mi Número de Seguro Social, para verificar si puede existir otra oportunidad de crédito disponible inmediatamente para mí.

X _____
FIRMA DEL SOLICITANTE                          FECHA

## 4. USUARIO AUTORIZADO

| Primer nombre (Usuario Autorizado Número 1) | Inicial | Apellido | Sufijo | Primer nombre (Usuario Autorizado Número 2) | Inicial | Apellido | Sufijo |
|---|---|---|---|---|---|---|---|

### PARA USO EXCLUSIVO DE LA TIENDA

| Número del Asociado de Cuenta | Fecha de vencimiento | Estado | Monto y estado de la venta | Código de promoción | Código de retorno |
|---|---|---|---|---|---|
| Número de números de arriba Asesor | | Hora de Cierre | Número de venta | Línea de crédito | |

Consulte las DIVULGACIONES DE TARJETA DE CRÉDITO, que incluyen información sobre tasas, cargos y otros costos.

72H00BSP 08/14

---

## DIVULGACIONES DE LA TARJETA DE CRÉDITO DEL CONSUMIDOR DE THE HOME DEPOT

### Tasas de interés y Cargos por intereses

| | |
|---|---|
| Tasa de Porcentaje Anual (APR) para compras | **17.99%, 21.99%, 25.99%, ó 26.99%,** según su solvencia crediticia. Consulte el recibo de venta para conocer la tasa APR sobre compras para su cuenta. |
| Cómo evitar el pago de intereses sobre las compras | Su fecha de vencimiento es como mínimo 25 días después del cierre de cada ciclo de facturación. No le cobraremos intereses sobre compras si usted paga la totalidad de su saldo en o antes de la fecha de vencimiento cada mes. |
| Cargo mínimo por intereses | Si le cobran intereses, el cargo mínimo no será inferior a $2.00. |
| Para orientación sobre tarjetas de crédito de la Oficina de Protección Financiera para el Consumidor | Para obtener más información sobre los factores que deben considerarse al solicitar o utilizar una tarjeta de crédito, visite el website de la Oficina de Protección Financiera para el Consumidor ingresando en http://www.consumerfinance.gov/learnmore |

### Cargos

| | |
|---|---|
| Cuota anual | Ninguna |
| Cargos por penalidad | |
| – Pago con demora | Hasta $35 |
| – Pago devuelto | Hasta $35 |

**Cómo calcularemos su saldo:** Utilizamos un método denominado "saldo diario (incluidas las transacciones actuales)". Consulte el Contrato de la Tarjeta para obtener más detalles.

**Derechos de facturación:** El Contrato de la Tarjeta proporciona información sobre sus derechos a disputar transacciones y cómo ejercer dichos derechos.

JA201



## MANERAS SENCILLAS DE PRESENTAR SU SOLICITUD AHORA

 **EN LA TIENDA**

¡Visite servicio al cliente o consulte a un asociado en cualquier caja registradora para presentar su solicitud hoy mismo!

 **EN LÍNEA**

Presente su solicitud en línea en **myhomedepotaccount.com**



## LA TARJETA DE CRÉDITO DEL CONSUMIDOR DE THE HOME DEPOT ES BIENVENIDA EN:



 **homedepot.com**





Case 5:22-cv-00383-BO-RN   Document 23-14   Filed 12/22/22   Page 21 of 23

JA202



# Financiamiento Especial Disponible Todos Los Días

## Sin Intereses si la Totalidad del Pago Se Efectúa en un Plazo de 6 Meses†

en compras de $299 o más. Se cargarán a su cuenta intereses a partir de la fecha de la compra si el saldo de compras (incluidas las primas del seguro de crédito opcional) no se paga en su totalidad en un plazo de 6 meses.

# Beneficios adicionales adecuados para usted

**Promociones con Plazos Más Largos Ocasionales**
disponible durante todo el año como por ejemplo 12, 18, 24 meses de Financiamiento Especial†.

**Maneje su cuenta a su manera**
en myhomedepotaccount.com

**Manejo de Cuentas Móviles**
Descargue la aplicación The Home Depot y tenga su cuenta a su alcance.

**¿De compras en la tienda sin su tarjeta? No hay problema.**
Con una identificación válida, podemos buscar la información de su cuenta en la línea de cajas.

**Sin complicaciones, devoluciones sin recibo**
en compras realizadas con la tarjeta en un plazo de 90 días.

Receipt* Ahora ofrecemos recibos electrónicos. ¡Regístrese hoy mismo!

†Consulte en el interior los Términos de la Promoción.
*No disponible en MA, NY, NJ, CA, MD.

†Consulte en el interior los Términos de la Promoción.



JA204

# EXHIBIT B

# Account Statement


Send Notice of Billing Errors and Customer Service Inquiries to:
HOME DEPOT CONSUMER SERVICES
PO Box 790328, St. Louis, MO 63179

 

The Home Depot
Consumer Credit Card


**Customer Service:**
myhomedepotaccount.com
**Account Inquiries:**
1-800-677-0232

**Account Number:** XXXXXXXXXXXX 0089

## Summary of Account Activity

| | |
|---|---|
| Previous Balance | $0.00 |
| Payments | -$0.00 |
| Other Credits | -$0.00 |
| Purchases | +$3,406.79 |
| **Fees Charged** | +$0.00 |
| **Interest Charged** | +$0.00 |
| New Balance | $3,406.79 |
| Past Due Amount | $0.00 |
| Credit Limit | $9,600.00 |
| Available Credit | $6,193.00 |
| Amount Over Credit Limit | $0.00 |
| Statement Closing Date | 10/26/2014 |
| Next Statement Closing Date | 11/25/2014 |
| Days in Billing Cycle | 15 |

## Payment Information

| | |
|---|---|
| New Balance | $3,406.79 |
| Minimum Payment Due | $35.00 |
| Payment Due Date | November 22, 2014 |

**Late Payment Warning:** If we do not receive your minimum payment by the date listed above, you may have to pay a late fee up to $35.

**Minimum Payment Warning:** If you make only the minimum payment each period, you will pay more in interest and it will take you longer to pay off your balance. For example:

| If you make no additional charges using this card and each month you pay... | You will pay off the balance shown on this statement in about... | And you will end up paying an estimated total of... |
|---|---|---|
| Only the minimum payment | 19 years | $11,970 |
| $138 | 3 years | $4,978 (Savings=$6,992) |

If you would like information about credit counseling services, call 1-877-337-8187.

Your Minimum Payment Due is $35.00. If you paid your non-promotional (revolving) balances and any expiring promotional balances in full on your last statement, you can avoid interest charges on any new non-promotional (revolving) balances and any expiring promotional balances if you pay $782.67 by 11/22/14. Otherwise, interest will accrue from your statement closing date until we receive your payment. The "How to Avoid Paying Interest on Purchases" section on page 2 has more information.

You must pay your promotional balance of **$618.20** in full by **04/22/15** to avoid paying deferred interest charges.

You must pay your promotional balance of **$355.92** in full by **04/22/15** to avoid paying deferred interest charges.

You must pay your promotional balance of **$1,650.00** in full by **10/25/16** to avoid paying deferred interest charges.

**Thanks for using your The Home Depot Consumer Credit Card! Now's the time to continue using it for all your home improvement projects, big or small.**

**How to read your billing statement**

See at-a-glance exactly when your payment is due, any new transactions, your new balance and minimum payment due. It's all right here.
**Please see page 5 for additional information.**

8 HD 17

PLEASE SEE IMPORTANT INFORMATION ON PAGES 2 AND 4.　　Page 1 of 6　　This Account is Issued by Citibank, N.A.

↓ Please detach and return lower portion with your payment, to insure proper credit. Retain upper portion for your records. ↓

P.O. Box 790393
St. Louis, MO 63179

Your Account Number is XXXXXXXXXXXX 0089



**SHOP ANY TIME, ANYWHERE!**
ONLINE  MOBILE  IN STORE

| | |
|---|---|
| Payment Due Date | November 22, 2014 |
| New Balance | $3,406.79 |
| Past Due Amount | $0.00 |
| Minimum Payment Due | $35.00 |

**Amount Enclosed: $**

Please print address changes on the reverse side.
**Make Checks Payable to ▼**

**Statement Enclosed**

JERMEY R BELL
XXXXXXXXXXXXXXX
PASADENA, MD  21122-6324

HOME DEPOT CREDIT SERVICES
PO BOX 182676
COLUMBUS, OH 43218-2676

03000  0003500  0340679  0000000  XXXXXXXXXXXX0089  1712

JA206

**Information About Your Account.**

**How to Avoid Paying Interest on Purchases.** Your payment due date is at least 25 days after the close of each billing cycle. We will not charge you any interest on purchases if you pay your New Balance by the payment due date each month. This is called a grace period on purchases. If you do not pay the New Balance in full by the payment due date, you will not get a grace period on purchases until you pay the New Balance in full for two billing cycles in a row.

If you have a balance subject to a deferred interest or 0% APR promotion and that promotion does not expire before the payment due date, that balance (the "excluded balance") is excluded from the amount you must pay in full to get a grace period. However, you must still pay any separately required payment on the excluded balance. In billing cycles in which payments are allocated to deferred interest balances first, the deferred interest balance will be reduced before any other balance on the account. However, you will continue to get a grace period on purchases so long as you pay the New Balance less any excluded balances in full by the payment due date each billing cycle. We may refer to deferred interest promotions as No Interest promotions.

In addition, certain promotional offers may take away the grace period on purchases. Other promotional offers not described above may also allow you to have a grace period on purchases without having to pay all or a portion of the promotional balance by the payment due date. If either is the case, the promotional offer will describe what happens.

**How We Calculate Your Balance Subject to Interest Rate.** For each balance, the letter following the Annual Percentage Rate in the Interest Charge Calculation section on the front of the statement indicates the method we use to calculate interest charges. For Methods C, H and M, we use a daily balance method (including current transactions) to calculate interest charges. For Methods I and L, we use an average daily balance method (including current transactions) to calculate interest charges. For Method K, we use an average daily balance method (excluding current transactions) to calculate interest charges. To find out more information about the balance computation method that applies to your account and how the resulting interest charges were determined, contact us at Customer Service number on the front.

**Other Account and Payment Information.**

**Payment Amount.** You may pay all or part of your account balance at any time. However, you must pay, by the payment due date, at least the minimum payment due.

**When Your Payment Will Be Credited.** If we receive your mailed payment in proper form at our processing facility by 5 p.m. local time there, it will be credited as of that day. A payment received there in proper form after that time will be credited as of the next day. Allow 5 to 7 days for payments by regular mail to reach us. There may be a delay of up to 5 days in crediting a payment we receive that is not in proper form or is not sent to the correct address. The correct address for regular mail is the address on the front of the payment coupon. The correct address for courier or express mail is the Express Mail Address shown in the Express Mail section.

**Proper Form.** For a payment sent by mail or courier to be in proper form, you must:

- **Enclose** a valid check or money order made payable to Home Depot Credit Services. No cash, gift cards, or foreign currency please.
- **Include** your name and the last four digits of your account number.

**Payment Other Than By Mail.**

- **Online.** Go to the URL on Page 1 of your statement to make a payment. For security reasons, you may not be able to pay your entire New Balance the first time you make a payment online. The payment cutoff time for Online Bill Payments is midnight Eastern time. This means that we will credit your account as of the calendar day, based on Eastern time, that we receive your payment request.
- **AutoPay.** Sign up at Account Online to have your payment amount automatically deducted each month from the account you choose. Your card account will be credited on the due date with that amount.
- **Phone.** Call the phone number on Page 1 of your statement to make a payment. We may process your payment electronically after we verify your identity. The payment cutoff time for Phone Payments is midnight Eastern time. This means that we will credit your account as of the calendar day, based on Eastern time, that we receive your payment request.
- **Express Mail.** Send payment by courier or express mail to: Payments Department, 1500 Boltonfield St., Columbus, OH 43228. Payment must be received in proper form at the proper address by 5 p.m. Eastern time to be credited as of that day. All payments received in proper form at the proper address after that time will be credited as of the next day.
- **In-Store Payments.** For your added convenience, payments can be made at The Home Depot stores, with no service fee. Any payment in proper form accepted in-store will be credited as of that day. However, credit availability may be subject to verification of funds.

**If you send an eligible check with this payment coupon, you authorize us to complete your payment by electronic debit. If we do, the checking account will be debited in the amount on the check. We may do this as soon as the day we receive the check. Also, the check will be destroyed.**

T06115

PLEASE SEE IMPORTANT INFORMATION ON PAGE 4

HD-2 JUN14

Page 2 of 6

## Change of Address
Please print address changes in blue or black ink.





**EVERYDAY OFFER**

**NO INTEREST IF PAID IN FULL WITHIN 6 MONTHS***

on purchases of $299 or more. Interest will be charged to your account from the purchase date if the purchase balance (including premiums for optional credit insurance) is not paid in full within 6 months. *See page 4 for details.



**SAVE STAMPS, TIME... AND TREES!**

Register now for Paperless Statements and more at **myhomedepotaccount.com**

Case 5:22-cv-00383-BO-RN   Document 28-15   Filed 12/22/22   Page 3 of 7

Account: **** **** **** 0089

## TRANSACTIONS

| Trans Date | Description | Reference # | Amount |
|---|---|---|---|
| 10/12 | THE HOME DEPOT GLEN BURNIE  MD<br>HARDWARE SEASONAL/GARDEN | 4193920 | $    196.76 |
| 10/12 | THE HOME DEPOT GLEN BURNIE  MD<br>GENERAL SALES<br>PROMOTIONAL PURCHASE:  To avoid interest charges, please pay the above in full by 10/25/2016.  Monthly payments required. | 4900325    241690 | $    1,650.00 |
| 10/14 | THE HOME DEPOT GLEN BURNIE  MD<br>MILLWORK<br>PROMOTIONAL PURCHASE:  To avoid interest charges, please pay the above in full by 04/22/2015.  Monthly payments required. | 2185252    241998 | $    618.20 |
| 10/15 | THE HOME DEPOT GLEN BURNIE  MD<br>HARDWARE BUILDING MATERIALS SEASONAL/GARDEN | 1185281 | $    84.65 |
| 10/17 | THE HOME DEPOT GLEN BURNIE  MD<br>HARDWARE SEASONAL/GARDEN | 9046066 | $    55.84 |
| 10/18 | THE HOME DEPOT GLEN BURNIE  MD<br>KITCHEN AND BATH FLOORING         PAINT<br>PROMOTIONAL PURCHASE: To avoid interest charges, please pay the above in full by 04/22/2015.  Monthly payments required. | 8061146 | $    355.92 |
| 10/19 | THE HOME DEPOT GLEN BURNIE  MD<br>ELECTRICAL AND LIGHTING BUILDING MATERIALS HARDWARE         PLUMBING | 7074293 | $    236.87 |
| 10/21 | THE HOME DEPOT GLEN BURNIE  MD<br>PAINT LUMBER HARDWARE | 5046960 | $    76.35 |
| 10/25 | THE HOME DEPOT GLEN BURNIE  MD<br>MILLWORK LUMBER PAINT | 1040712 | $    132.20 |

## FEES

| | TOTAL FEES FOR THIS PERIOD | | $    0.00 |
|---|---|---|---|

## INTEREST CHARGED

| | TOTAL INTEREST FOR THIS PERIOD | | $    0.00 |
|---|---|---|---|

| 2014 Totals Year-to-Date | |
|---|---|
| Total Fees Charged in 2014 | $0.00 |
| Total Interest Charged in 2014 | $0.00 |

| PROMOTIONS | Original Trans Amount | Trans Date | Previous Promotion Balance | Payments and Credits | Billed Interest Charges | New Promotion Balance | Promo Monthly Payment | Deferred Interest Charges | Expiration Date |
|---|---|---|---|---|---|---|---|---|---|
| NO INT FOR 6MOS-PMT REQ | $618.20 | 10/14/14 | - | - | - | $618.20 | - | $5.74 | 04/22/15 |
| NO INT FOR 6MOS-PMT REQ | $355.92 | 10/18/14 | - | - | - | $355.92 | - | $2.29 | 04/22/15 |
| NO INT FOR 24MOS-PMT REQ | $1,650.00 | 10/12/14 | - | - | - | $1,650.00 | - | $17.71 | 10/25/16 |

| INTEREST CHARGE CALCULATION | | Your Annual Percentage Rate (APR) is the annual interest rate on your account. | |
|---|---|---|---|
| Type of Balance | Annual Percentage Rate (APR) | Balance Subject to Interest Rate | Interest Charge |
| PURCHASES | | | |
| Revolving Balance | 25.99% (M) | $0.00 | $0.00 |
| NO INT FOR 6MOS-PMT REQ | 25.99% (M) | - | - |
| NO INT FOR 6MOS-PMT REQ | 25.99% (M) | - | - |
| NO INT FOR 24MOS-PMT REQ | 25.99% (M) | - | - |

**Credit Reporting Disputes.** If you think we reported inaccurate information to a credit bureau write us at the Customer Service address shown on Page 1.

**Report a Lost or Stolen Card Immediately.** Call the Account Inquiries number shown on Page 1.

**What To Do If You Find A Mistake On Your Statement**

If you think there is an error on your statement, write to us at the address for billing errors and customer service inquiries shown on Page 1 of your statement.

In your letter, give us the following information:

- Account information: Your name and account number.
- Dollar amount: The dollar amount of the suspected error.
- Description of problem: If you think there is an error on your bill, describe what you believe is wrong and why you believe it is a mistake.

You must contact us:

- Within 60 days after the error appeared on your statement.
- At least 3 business days before an automated payment is scheduled, if you want to stop payment on the amount you think is wrong.

You must notify us of any potential errors in writing. You may call us, but if you do we are not required to investigate any potential errors and you may have to pay the amount in question.

**What Will Happen After We Receive Your Letter**

**When we receive your letter, we must do two things:**

1. Within 30 days of receiving your letter, we must tell you that we received your letter. We will also tell you if we have already corrected the error.
2. Within 90 days of receiving your letter, we must either correct the error or explain to you why we believe the bill is correct.

**While we investigate whether or not there has been an error:**

- We cannot try to collect the amount in question, or report you as delinquent on that amount.
- The charge in question may remain on your statement, and we may continue to charge you interest on that amount.
- While you do not have to pay the amount in question, you are responsible for the remainder of your balance.
- We can apply any unpaid amount against your credit limit.

**After we finish our investigation, one of two things will happen:**

- If we made a mistake: You will not have to pay the amount in question or any interest or other fees related to that amount.
- If we do not believe there was a mistake: You will have to pay the amount in question, along with applicable interest and fees. We will send you a statement of the amount you owe and the date payment is due. We may then report you as delinquent if you do not pay the amount we think you owe.

If you receive our explanation but still believe your bill is wrong, you must write to us within 10 days telling us that you still refuse to pay. If you do so, we cannot report you as delinquent without also reporting that you are questioning your bill. We must tell you the name of anyone to whom we reported you as delinquent, and we must let those organizations know when the matter has been settled between us.

If we do not follow all of the rules above, you do not have to pay the first $50 of the amount you question even if your bill is correct.

**Your Rights If You Are Dissatisfied With Your Credit Card Purchases**

If you are dissatisfied with the goods or services that you have purchased with your credit card, and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the purchase.

To use this right, all of the following must be true:

1. The purchase must have been made in your home state or within 100 miles of your current mailing address, and the purchase price must have been more than $50. (**Note**: Neither of these are necessary if your purchase was based on an advertisement we mailed to you, or if we own the company that sold you the goods or services.)
2. You must have used your credit card for the purchase. Purchases made with cash advances from an ATM or with a check that accesses your credit card account do not qualify.
3. You must not yet have fully paid for the purchase.

If all of the criteria above are met and you are still dissatisfied with the purchase, contact us in writing at the address for billing errors and customer service inquiries shown on Page 1 of your statement.

While we investigate, the same rules apply to the disputed amount as discussed above. After we finish our investigation, we will tell you our decision. At that point, if we think you owe an amount and you do not pay, we may report you as delinquent.

**KEY CREDIT TERMS**

**NO INTEREST IF PAID IN FULL WITHIN 6 MONTHS\*** on purchases of $299 or more. Interest will be charged to your account from the purchase date if the purchase balance (including premiums for optional credit insurance) is not paid in full within 6 months.

> \*With credit approval for qualifying purchases made on The Home Depot or EXPO Design Center Consumer Credit Card, 17.99% - 26.99% APR. Minimum interest charge: $2. See card agreement for details including APR applicable to you. Offer is only valid for consumer accounts. 6 months everyday credit offer is subject to change without notice. Minimum payments required.

T06116-HD-9196-0400-0002-  - 0 -  -  - 10/01/14 - 01 - 000 - P -  - 0 -  -  - 0 - 0 - 0 - 0 - THDNEWAC  - 12/31/99 - HDEB - December 31, 9999 - 0 - 0 - 000
N-··

HD-4 JUN14

Case 5:22-cv-00383-BO-RN    Document 23-15    Filed 12/22/22    Page 5 of 7

Page 4 of 6

JA209

# Your new statement: Clear. Concise. Simple to read.

**Clear.**
Statements are written in everyday language that you'll be able to read and understand. They show you exactly how much you've spent, how much you owe, when you owe it and how long it may take you to pay it off.

**Concise.**
The information is "bucketed" into sections that make it easy to find what you're looking for.

**Simple to read.**
Not only are the words themselves clear and concise, they are in large and simple to read typeface.



**Account Number / Contact Information**

**Summary of Account Activity**
Outlines monthly account activity, including payments, credits, fees and interest charged

**Payment Information**
Shows your New Balance, Minimum Payment Due and Payment Due Date

**Payment Calculator**
Estimates the amount of time it will take to pay off your balance if you make just the minimum payment each month, and how much you should pay each month to pay off your balance in 36 months

**Transactions**
Lists your activity over the past month including purchases, payments and credits, fees and interest for the billing period

**Change of Address**
Update our records with your new address information

**Remit Coupon**
Easily identifies payment due date, new balance, past due amount, minimum payment due and a section to write in the amount of your payment

HD/EX MAY 13

# ENJOY ALL THESE ADVANTAGES WITH THE HOME DEPOT CONSUMER CREDIT CARD!





### Special Financing Available
**on purchases of $299 or more***
*Subject to credit approval. Terms and conditions apply. Ask an Associate for details.

### Shop without Your Card
Forgot your card? No problem. With a valid ID, we can look up your account information at checkout.

### Save Time with Account Online Access
Manage your credit card account your way at **myhomedepotaccount.com**.

### Free Look-up of Your Consumer Credit Card Receipts
Hassle-free, no receipt returns on card purchases made within 90 days.

### Add Authorized Users at No Additional Cost
Just call **1-800-677-0232** to get cards for additional users added to your account.

### Save on Stamps and Trees with Paperless Statements
Register now for Online Bill Pay, Paperless Statements and more at **myhomedepotaccount.com**.

# PLUS ... GET THESE EXCLUSIVE HOME DEPOT BENEFITS

### Buy Online, Pick Up In-Store
Free in-store pick up on over 40,000 items ready in two hours or less. Shop **homedepot.com** today.

### Free How To Workshops
Save money by doing more jobs yourself. The Home Depot® offers free DIY, Do-It-Herself℠, Kids and Online Workshops. Learn more at **homedepot.com/workshops**.

### Expert Installation ... and Peace of Mind
Trust our local, handpicked installation pros to get your project done right - from carpets to windows and more. Call **1-800-HOMEDEPOT**, visit **homedepot.com/install** or visit your local store for more information.



## Stop in your local The Home Depot store today and save!

438

GZJ KDKV'E''

PO Box 6281
Sioux Falls, SD 57117



T5 162 P86

Dear ██████████ :

This notice applies to your The Home Depot Consumer Credit Card account ending in ███.

We appreciate your business as a cardholder and hope you are enjoying both the use and benefits of your card. We want you to be aware of a change we are making to your Card Agreement, including to the arbitration provision, and to your account. The following Notice of Important Changes to your Card Agreement and Right to Reject describes the change and what it means to you and your account.

Please see below for important information about changes to the account associated with this credit card. We are changing your card agreement by replacing it with a new one. Please review your new card agreement in full.

| Important Changes to Your Account Terms |
|---|
| The following is a summary of a change being made to your account terms. This change will take effect on ████/2016. For more detailed information, please see the Notice of Change in Terms and Right to Reject below. |
| Arbitration. Effective ██████/2016, we are changing the Arbitration provision in your Card Agreement. To review your new Arbitration provision, please see your new Card Agreement. |
| **You have the right to reject the change to arbitration. If you reject this change, we will not close your account, and your account will no longer be subject to an arbitration provision. You can reject the change to arbitration by writing to us at P.O. Box 790340, St Louis, MO 63179 stating that you would like to reject the arbitration provision. Your letter must be postmarked on or before ██████2016.** |

### Notice of Important Changes to your Card Agreement and Right to Reject

**The Change.** We are changing your Card Agreement and replacing it with a new one. The effective date of this change is ████2016.

We have identified below the change to your Card Agreement (listing the title of the new section and summarizing the change). For complete details regarding this change, please review the entire section of your new Card Agreement. Your new Card Agreement is enclosed. The Information About Interest and Fees ("Fact Sheet"), which is part of your new Card Agreement, follows this notice. Please read the information below carefully. You should keep this information with your Card Agreement for future reference.

- **Arbitration.** This provision, including its sections and subsections, describes arbitration; what claims are covered; how arbitration works, including our payment of fees; and survival and severability of terms. You may reject this provision only by writing to us. See the Important Changes to Your Account Terms or the Right to Reject sections for more information.

**Right to Reject.** You may reject this change.

- **Changes to Arbitration.** You may reject the changes to Arbitration. If you reject these changes, we will not close your account, and your account will no longer be subject to an arbitration provision. You can reject the changes to arbitration by writing to us at P.O. Box 790340 St Louis MO, 63179 stating that you would like to reject the arbitration provision. Your letter must be postmarked on or before ████/2016.

1

664595  01500000003

JA213

# Fact Sheet
## Pricing Information Table

| Interest Rates and Interest Charges | |
|---|---|
| **Annual Percentage Rate (APR) for Purchases** | **26.99%** |
| **How to Avoid Paying Interest** | Your due date is at least 25 days after the close of each billing cycle. We will not charge you any interest on purchases if you pay your entire balance by the due date each month. |
| **Minimum Interest Charge** | If you are charged interest, the charge will be no less than $2.00. |
| **How We Calculate Your Balance** | Daily Balance (including current transactions) |

| Fees | |
|---|---|
| **Penalty Fees**<br>• Late Payment<br>• Returned Payment | **Up to $35.**<br>**Up to $25.** |
| **Details About Your Interest Rates and Interest Calculations** | Periodic Rate |
| **Regular Purchases** | **0.07394% (D)** |
| (D) = Daily periodic rate. A daily periodic rate is the APR divided by 365. | |

### Deferred Interest Promotional Offer Update

From time to time as a The Home Depot Consumer Credit Card cardholder, you may be offered special limited time only deferred interest promotional offers.

Deferred interest promotional offers include the following types of offers:

• No Interest if Paid in Full in 6 Months
• No Interest if Paid in Full in 12 Months
• No Interest if Paid in Full in 18 Months
• No Interest if Paid in Full in 24 Months

If the balance is not paid in full by the end of the promotional period, interest charges will be imposed from the purchase date at the purchase rate on your account which is 26.99% APR.

These offers are not available all the time and may be limited to specific merchandise and/or have minimum payment and purchase requirements as disclosed in the offer.

Your card agreement, the terms of the offer and applicable law govern these transactions including increasing APRs and fees and termination of the promotional period.

If you have any questions regarding this letter, please contact us at 1-866-533-2468.

*************************

Please save this document for future reference.

664595  01500000003

## Card Agreement

This Card Agreement is your contract with us. It governs the use of your card and account. The enclosed Facts about Interest and Fees ("Fact Sheet") is part of this Agreement. Please read this Agreement, including the Fact Sheet, carefully. Keep both for your records.

---------------------------------------------------------------------------------------------------------------

## Definitions

*account* means the relationship established between you and us by this Agreement.

*APR* means an annual percentage rate.

*authorized user* means any person you allow to use your account.

*card* means one or more cards or other access devices that we give you to get credit under this Agreement. This includes account numbers.

*we, us,* and *our* mean Citibank, N.A., the issuer of your account. Citibank, N.A. is located in Sioux Falls, SD.

*you, your,* and *yours* mean the person who applied to open the account. It also means any other person responsible for complying with this Agreement.

## Your Account

You agree to use your account in accordance with this Agreement. You must pay us for all amounts due on your account. This Agreement is binding on you unless you close your account within 30 days after receiving the card and you have not used or authorized use of the card. Your account must only be used for lawful transactions.

**Authorized Users.** You may request additional cards for authorized users. You must pay us for all charges made by authorized users. You must pay us even if you did not intend to be responsible for those charges. You must notify us to withdraw any permission you give to an authorized user to use your account.

**Joint Accounts.** If this is a joint account, each of you is responsible individually and together for all amounts owed. Each of you is responsible even if the account is used by only one of you. You will continue to be liable for the entire balance of the account, even if your co-applicant is ordered by a court to pay us. You will remain liable to us if your co-applicant fails to pay as ordered by the court. Your account status will continue to be reported to the credit bureau under each of your names. The delivery of notices or billing statements to either of you serves as delivery to each of you. We may rely on instructions given by either of you. We are not liable to either of you for relying upon such instructions.

**Credit Limit**. The full amount of your credit limit is available to use where the card is honored. We may reduce or increase your credit limit at any time for any reason as permitted by law. We will notify you of any change, but the change may take effect before you receive the notice. You should always keep your total balance below the credit limit. However, if the total balance goes over your credit limit you still must pay us. If your account has a credit balance, we may reduce the credit balance by any new charges on your account. You may not maintain a credit balance in excess of your credit limit.

**Billing Statement.** Your billing statement shows the New Balance. This is the total amount you owe us on the Statement Closing Date. To determine the New Balance, we begin with the total balance at the start of the billing cycle. We add any purchases. We subtract any credits or payments. We then add any interest charges or fees and make other adjustments.

Your billing statement also shows your transactions; the Minimum Payment Due and payment due date; your credit limit; and your interest charges and fees. On the billing statement, a regular purchase balance will appear under the heading "regular revolve credit plan."

We deliver a billing statement to only one address. You must notify Customer Service of a change in address. We may stop sending you statements if we deem your account uncollectible or start collection proceedings; but we may continue to add interest and fees as permitted by law.

## APRs

**Regular Purchase APR**. See the Fact Sheet.

**Effect of APR Increases.** If an APR increases, interest charges increase. Your minimum payment may increase as well.

## Promotions

We may offer promotional terms for all or a part of any balances. Any promotional terms may apply for a limited period of time. They will be governed by the terms of the promotional offer and this Agreement. Your promotional terms will end when the promotional period expires or, to the extent permitted by law, if you make a late payment. The promotional offer will tell you if we require a separate minimum payment on the promotional balance.

If a promotional offer is a deferred interest offer, no interest charges will be imposed on the deferred interest balance if you pay the balance in full by the end of the promotional period for that deferred interest balance. We will impose interest charges on the deferred interest balance at the APR for regular purchases from the date of purchase if you do not pay the balance in full by the end of the promotional period.

## Interest Charges Based on APRs

**Interest Charges.** We impose interest charges when we apply APRs to your account balances. We do this every day by using a daily periodic rate. To get a daily periodic rate, we divide the APR by 365.

**When Interest Charges Begin.** We begin to impose interest charges the first day we add a charge to a daily balance. The charges we add to a daily balance include purchases, interest charges and fees. We continue to impose interest charges until we credit your account with full payment of the total amount you owe us.

**Grace Period on Purchases**. You can avoid interest charges on purchases. This is called a grace period on purchases. The grace period is at least 25 days. To get a grace period on purchases, you must pay the New Balance by the payment due date every billing cycle. If you do not, you will not get a grace period until you pay the New Balance for two billing cycles in a row.

If you have a balance subject to a deferred interest or 0% APR promotion and that promotion does not expire before the payment due date, that balance (the "excluded promotional balance") is excluded from the amount you must pay in full to get a grace period. However, you must still pay any separately required payment on the excluded promotional balance. In billing cycles in which payments are allocated to deferred interest balances first, the deferred interest balance will be reduced before any other balance on the account. However, you will continue to get a grace period on purchases so long as you pay the New Balance less any excluded promotional balances in full by the payment due date each billing cycle.

In addition, certain promotional offers may take away the grace period on purchases.  Other promotional offers not described above may also allow you to have a grace period on purchases without having to pay all or a portion of the promotional balance by the payment due date.  If either is the case, the promotional offer will describe what happens.

**Calculation of Interest Charges – Daily Balance Method (Including Current Transactions).**  We calculate interest charges each billing cycle.  To do this:

- We start with each of your different balances.  These balances include, for example, regular purchases and different promotional balances.  (Purchases made under the same promotional terms, including APR and expiration date, will be part of the same promotional balance.)
- We calculate the daily balance for each of your different balances.  To get a daily balance, we start with the balance as of the end of the previous day.  We add any interest charge on the previous day's balance. (This results in daily compounding of interest charges.)  We add any new charges.  We then subtract any new credits or payments.
- We multiply each daily balance by the daily periodic rate that applies to it.  We do this for each day in the billing cycle.  This gives us the daily interest charges for each of your different balances.
- We add up all the daily interest charges.  The sum is the total interest charge for the billing cycle.
- You authorize us to round interest charges to the nearest cent.

When we calculate daily balances, we add a purchase as of the Transaction Date.  The Transaction Date is shown on the billing statement.  We subtract a payment or credit as of the day it is credited to the account and then make other adjustments.  We treat a credit balance as a balance of zero.

**Minimum Interest Charge.**  If we charge you interest, the Fact Sheet shows the minimum amount we will charge.  We add the charge to the regular purchase balance or allocate it among one or more of the balances that accrues interest.

**Balance Subject to Interest Rate.**  Your statement shows a Balance Subject to Interest Rate.  It shows this for each different balance.  The Balance Subject to Interest Rate is the average of the daily balances during the billing cycle.  A billing cycle begins on the day after the Statement Closing Date of the previous billing cycle.  It includes the Statement Closing Date of the current billing cycle.

### Fees

**Late Fee.**  We may add a late fee for each billing cycle in which you have a past due payment.  For late fee purposes, you have a past due payment any time you fail to pay the Minimum Payment Due by the payment due date.  The fee will be $25; or $35 for any additional past due payment during the next six billing cycles after a past due payment.  However, the fee will not exceed the amount permitted by law.  We add this fee to the regular purchase balance.

**Returned Payment Fee.**  We may add a returned payment fee for a returned payment. A returned payment is an electronic debit, payment check, or similar payment instrument, that is returned unpaid.  We may add this fee the first time your payment is returned, even if it is not returned upon resubmission. The fee will be $25; or $35 for any additional returned payment during the same or next six billing cycles after a returned payment.  However, the fee will not exceed the amount permitted by law.  We add this fee to the regular purchase balance.

### Payments

**Minimum Payment Due.**  You may pay all or part of your account balance at any time. However, you must pay at least the Minimum Payment Due by the payment due date each billing cycle.  The sooner you pay the New Balance, the less you will pay in interest charges.

We calculate the Minimum Payment Due as follows.  We begin with any past due amount.  We add any amount specified in a promotional offer.  We add any amount required by the Promotion Calculation.  We also add the largest of the following:

- The Calculated New Balance if it is less than $25;
- $25 if the Calculated New Balance is at least $25; or
- 1% of the Calculated New Balance plus the amount of your billed interest charges on that balance, any minimum interest charge allocated to that balance, and any applicable late fee.  (The result is rounded up to the nearest dollar.)  However, we subtract interest charges that accrued during prior billing cycles on a deferred interest balance that ended during the billing cycle covered by the statement.

The Calculated New Balance equals the New Balance on the billing statement less balances subject to the Promotion Calculation and less any balances subject to either of two types of promotional terms.  The first type are terms that do not require a minimum payment.  The second type are terms that require an additional amount as part of the Minimum Payment Due.

The Promotion Calculation applies to some deferred interest or 0% APR transactions. The Promotion Calculation is based on the transaction amount as shown on the first statement that displays the transaction. It applies if paying $25 on this balance each billing cycle would result in repayment before the end of the promotion period. The Promotion Calculation equals 1% of this balance during the promotion period.  (The result is rounded up to the nearest cent.)  The Promotion Calculation only applies during the promotion period.

The Minimum Payment Due may reflect adjustments to the New Balance.  The Minimum Payment Due is never more than the Calculated New Balance plus two amounts.  The first is any amount required by a promotional offer.  The second is any amount required by the Promotion Calculation.

**Application of Payments.**  Payments in excess of the Minimum Payment Due are applied in accordance with law. This means that we will generally apply payments in excess of the Minimum Payment Due to higher APR balances first. However, excess payments received before a deferred interest promotion expires are applied to the deferred interest promotional balance first in the last two billing cycles of the promotional period. And, if the expiration date of a deferred interest promotion is before the payment due date in the billing cycle in which the deferred interest promotion expires, excess payments received before the deferred interest promotion expires are applied to the deferred interest promotional balance first in the last three billing cycles of the promotional period. Payments equal to or less than the Minimum Payment Due and credits are applied at our discretion and you authorize us to apply payments and credits in a way that is most favorable or convenient for us.  This may include applying such payments and credits to lower APR balances first.

**Payment Instructions.**  We credit your payments in accordance with our payment instructions on the billing statement.  You must pay us in U.S. dollars.  To do so, you must use a check, similar instrument, or electronic debit that is drawn on and honored by a bank in the U.S.  Do not send cash.  We can accept late or partial payments, or payments that reflect "paid in full" or other restrictive endorsements, without losing our rights.  We also reserve the right to accept payments made in foreign currency and instruments drawn on funds on deposit outside the U.S.  If we do, we select the currency conversion rate.  We will then credit your account in U.S. dollars after deducting any costs incurred in processing your payment.  Or we may bill you separately for these costs.

**Optional Pay by Phone Service.** You may use our optional Pay by Phone Service to make your payment by phone. To do so, call us to request the service. You agree to pay us the Pay by Phone fee shown in the Pay by Phone section on the back of the billing statement when a representative of ours helps expedite your payment. Our representatives are trained to tell you this amount when you use this service.

### Credit Reporting

We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report. We may report account information in your name and the names of authorized users. We may also obtain follow-up credit reports on you.

If you think we reported incorrect information to a credit bureau, write us at the Customer Service address on the billing statement. We will investigate the matter. We will then tell you if we agree or disagree with you. If we agree with you, we will contact each credit bureau to which we reported and request a correction. If we disagree with you, we will tell you that.

### Information Sharing

You authorize us to share information about you as permitted by law. This includes information we get from you and others. It also includes information about your transactions with us. Please see our Privacy Notice for details about our information sharing practices.

### Changes to this Agreement

**We may change the rates, fees, and terms of this Agreement from time to time as permitted by law. The changes may add, replace, or remove provisions of this Agreement. We will give you advance written notice of the changes and a right to opt out to the extent required by law.**

### Default

You default under this Agreement if you fail to pay the Minimum Payment Due by its due date; go over your credit limit; pay by a check or similar instrument that is not honored or that we must return because it cannot be processed; pay by electronic debit that is returned unpaid; file for bankruptcy; or fail to comply with the terms of this Agreement. If you default, we may close your account and, to the extent permitted by law, demand immediate payment of the total balance.

### Refusal of the Card, Closed Accounts, and Related Provisions

**Refusal of the Card.** We do not guarantee approval of transactions. We are not liable for transactions that are not approved. That is true even if you have enough credit. We may limit the number of transactions approved in one day. If we detect unusual or suspicious activity, we may suspend your credit privileges.

**Preauthorized Charges.** We may suspend any automatic or other preauthorized card charges you arrange with a third party. We may do this if you default; if the card is lost or stolen; or we change your account for any reason. If we do this, you are responsible for paying the third party directly if you wish to do so. You are also responsible for reinstating the preauthorized charges if you wish to do so and we permit it.

**Lost or Stolen Cards or Account Numbers.** You must call us if any card or account number is lost or stolen. You must also call us if you think someone used or may use them without permission. When you call, we may require you to provide information to help our investigation. We may require you to provide this information in writing. For example, we may ask you to identify any charges that were not made by you or someone authorized by you. We may also ask you to confirm that you received no benefit from those charges.

**Closing Your Account.** You may close your account by notifying us in writing or over the phone. If you close your account, you must still repay the total balance in accordance with this Agreement. We may also close your account or suspend account privileges at any time for any reason. We may do this without prior notice to you. We may also reissue a different card at any time. You must return any card to us upon request.

--------------------------------------------

### ARBITRATION

*PLEASE READ THIS PROVISION OF THE AGREEMENT CAREFULLY.*

**THIS SECTION PROVIDES THAT DISPUTES MAY BE RESOLVED BY BINDING ARBITRATION. ARBITRATION REPLACES THE RIGHT TO GO TO COURT, HAVE A JURY TRIAL OR INITIATE OR PARTICIPATE IN A CLASS ACTION. IN ARBITRATION, DISPUTES ARE RESOLVED BY AN ARBITRATOR, NOT A JUDGE OR JURY. ARBITRATION PROCEDURES ARE SIMPLER AND MORE LIMITED THAN IN COURT. THIS ARBITRATION PROVISION IS GOVERNED BY THE FEDERAL ARBITRATION ACT (FAA), AND SHALL BE INTERPRETED IN THE BROADEST WAY THE LAW WILL ALLOW.**

#### Covered claims

- *You or we may arbitrate* any claim, dispute or controversy between you and us arising out of or related to your account, a previous related account or our relationship (called "Claims").

- **If arbitration is chosen by any party, neither you nor we will have the right to litigate that Claim in court or have a jury trial on that Claim.**

Except as stated below, all Claims are subject to arbitration, no matter what legal theory they're based on or what remedy (damages, or injunctive or declaratory relief) they seek, including Claims based on contract, tort (including intentional tort), fraud, agency, your or our negligence, statutory or regulatory provisions, or any other sources of law; Claims made as counterclaims, cross-claims, third-party claims, interpleaders or otherwise; Claims made regarding past, present, or future conduct; and Claims made independently or with other claims. This also includes Claims made by or against anyone connected with us or you or claiming through us or you, by someone making a claim through us or you, such as a co-applicant, authorized user, employee, agent, representative or an affiliated/parent/subsidiary company.

#### Arbitration limits

- Individual Claims filed in a small claims court are not subject to arbitration, as long as the matter stays in small claims court.

- We won't initiate arbitration to collect a debt from you unless you choose to arbitrate or assert a Claim against us. If you assert a Claim against us, we can choose to arbitrate, including actions to collect a debt from you. You may arbitrate on an individual basis Claims brought against you, including Claims to collect a debt.

- Claims brought as part of a class action, private attorney general or other representative action can be arbitrated only on an individual basis. The arbitrator has no authority to arbitrate any claim on a class or representative basis and may award relief only on an individual basis. If arbitration is chosen by any party, neither you nor we may pursue a Claim as part of a class action or other representative action. Claims of 2 or more persons may not be combined in the same arbitration. However, applicants, co-applicants, authorized users on a single account and/or related accounts, or corporate affiliates are here considered as one person.

#### How arbitration works

- Arbitration shall be conducted by the American Arbitration Association ("AAA") according to this arbitration provision and the applicable AAA arbitration rules in effect when the claim is filed ("AAA Rules"), except where those rules conflict with this arbitration provision. You can obtain copies of the AAA Rules at the AAA's website (www.adr.org) or by calling 800-778-7879. You or we may choose to have a hearing, appear at any hearing by phone or other electronic means, and/or be represented by counsel. Any in-person hearing will be held in the same city as the U.S. District Court closest to your billing address.

- Arbitration may be requested any time, even where there is a pending lawsuit, unless a trial has begun or a final judgment entered. Neither you nor we waive the right to arbitrate by filing or serving a complaint, answer, counterclaim, motion, or discovery in a court lawsuit. To choose arbitration, a party may file a motion to compel arbitration in a pending matter and/or commence arbitration by submitting the required AAA forms and requisite filing fees to the AAA.

- The arbitration shall be conducted by a single arbitrator in accord with this arbitration provision and the AAA Rules, which may limit discovery. The arbitrator shall not apply any federal or state rules of civil procedure for discovery, but the arbitrator shall honor claims of privilege recognized at law and shall take reasonable steps to protect account information and other confidential information of either party if requested to do so. The arbitrator shall apply applicable substantive law consistent with the FAA and applicable statute of limitations, and may award damages or other relief under applicable law.

- The arbitrator shall make any award in writing and, if requested by you or us, may provide a brief statement of the reasons for the award. An arbitration award shall decide the rights and obligations only of the parties named in the arbitration, and shall not have any bearing on any other person or dispute.

#### Paying for arbitration fees

- We will pay your share of the arbitration fee for an arbitration of Claims of $75,000 or less if they are unrelated to debt collection. Otherwise, arbitration fees will be allocated according to the applicable AAA Rules. If we prevail, we may not recover our arbitration fees,

unless the arbitrator decides your Claim was frivolous. All parties are responsible for their own attorney's fees, expert fees and any other expenses, unless the arbitrator awards such fees or expenses to you or us based on applicable law.

**The final award**

- Any award by an arbitrator is final unless a party appeals it in writing to the AAA within 30 days of notice of the award. The arbitration appeal shall be determined by a panel of 3 arbitrators. The panel will consider all facts and legal issues anew based on the same evidence presented in the prior arbitration, and will make decisions based on a majority vote. Arbitration fees for the arbitration appeal shall be allocated according to the applicable AAA Rules. An award by a panel on appeal is final. A final award is subject to judicial review as provided by applicable law.

**Survival and Severability of Terms**

This arbitration provision shall survive changes in this Agreement and termination of the account or the relationship between you and us, including the bankruptcy of any party and any sale of your account, or amounts owed on your account, to another person or entity. If any part of this arbitration provision is deemed invalid or unenforceable, the other terms shall remain in force, except that there can be no arbitration of a class or representative Claim. This arbitration provision may not be amended, severed or waived, except as provided in this Agreement or in a written agreement between you and us.

_____
**Governing Law and Enforcing our Rights**

**Governing Law.** Federal law and the law of South Dakota, where we are located, govern the terms and enforcement of this Agreement.

**Enforcing this Agreement.** We will not lose our rights under this Agreement because we delay in enforcing them or fail to enforce them.

**Collection Costs.** To the extent permitted by law, you are liable to us for our legal costs if we refer collection of your account to a lawyer who is not our salaried employee. These costs may include reasonable attorneys' fees. They may also include costs and expenses of any legal action.

**Assignment.** We may assign any or all of our rights and obligations under this Agreement to a third party.

**For Further Information**

Call us toll-free for further information. Call the toll-free Customer Service telephone number shown on the billing statement or on the back of your card. You can also call local or toll-free Directory Assistance to get our telephone number.

_____

**Your Billing Rights:  Keep this Document for Future Use**
**This notice tells you about your rights and our responsibilities under the Fair Credit Billing Act.**
**What To Do If You Find A Mistake On Your Statement**
If you think there is an error on your statement, write to us at the address for billing inquiries and correspondence shown on the front of your statement.

In your letter, give us the following information:
- _Account information_:  Your name and account number.
- _Dollar amount_:  The dollar amount of the suspected error.
- _Description of problem:_  If you think there is an error on your bill, describe what you believe is wrong and why you believe it is a mistake.

You must contact us:
- Within 60 days after the error appeared on your statement.
- At least 3 business days before an automated payment is scheduled, if you want to stop payment on the amount you think is wrong.

You must notify us of any potential errors _in writing_.  You may call us, but if you do we are not required to investigate any potential errors and you may have to pay the amount in question.

**What Will Happen After We Receive Your Letter**
**When we receive your letter, we must do two things:**
1. Within 30 days of receiving your letter, we must tell you that we received your letter. We will also tell you if we have already corrected the error.
2. Within 90 days of receiving your letter, we must either correct the error or explain to you why we believe the bill is correct.

**While we investigate whether or not there has been an error:**
- We cannot try to collect the amount in question, or report you as delinquent on that amount.
- The charge in question may remain on your statement, and we may continue to charge you interest on that amount.
- While you do not have to pay the amount in question, you are responsible for the remainder of your balance.
- We can apply any unpaid amount against your credit limit.

**After we finish our investigation, one of two things will happen:**
- _If we made a mistake_: You will not have to pay the amount in question or any interest or other fees related to that amount.
- _If we do not believe there was a mistake_:  You will have to pay the amount in question, along with applicable interest and fees.  We will send you a statement of the amount you owe and the date payment is due.  We may then report you as delinquent if you do not pay the amount we think you owe.

If you receive our explanation but still believe your bill is wrong, you must write to us within _10 days_ telling us that you still refuse to pay.  If you do so, we cannot report you as delinquent without also reporting that you are questioning your bill.  We must tell you the name of anyone to whom we reported you as delinquent, and we must let those organizations know when the matter has been settled between us.

If we do not follow all of the rules above, you do not have to pay the first $50 of the amount you question even if your bill is correct.
**Your Rights If You Are Dissatisfied With Your Credit Card Purchases**
If you are dissatisfied with the goods or services that you have purchased with your credit card, and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the purchase.

To use this right, all of the following must be true:
1. The purchase must have been made in your home state or within 100 miles of your current mailing address, and the purchase price must have been more than $50. (Note:  Neither of these are necessary if your purchase was based on an advertisement we mailed to you, or if we own the company that sold you the goods or services.)
2. You must have used your credit card for the purchase.  Purchases made with cash advances from an ATM or with a check that accesses your credit card account do not qualify.
3. You must not yet have fully paid for the purchase.

If all of the criteria above are met and you are still dissatisfied with the purchase, contact us _in writing_ at the address for billing inquiries and correspondence shown on the front of your statement.

While we investigate, the same rules apply to the disputed amount as discussed above.  After we finish our investigation, we will tell you our decision.  At that point, if we think you owe an amount and you do not pay, we may report you as delinquent.

©2016 Citibank, N.A.
form code = EA-THD-25A

# EXHIBIT D

  

# Account Statement

Send Notice of Billing Errors and Customer Service Inquiries to:
HOME DEPOT CREDIT SERVICES
PO Box 790328, St. Louis, MO 63179

**Customer Service:**
homedepot.com/mycard
**Account Inquiries:**
1-800-677-0232

The Home Depot
Consumer Credit Card

**Account Number:** ████████████ 0089

## Summary of Account Activity

| | |
|---|---|
| Previous Balance | $8,359.96 |
| Payments | -$84.00 |
| Other Credits | -$0.00 |
| Purchases | +$321.37 |
| **Fees Charged** | +$0.00 |
| **Interest Charged** | +$0.00 |
| New Balance | $8,597.33 |
| Past Due Amount | $0.00 |

| | |
|---|---|
| Credit Limit | $9,600.00 |
| Available Credit | $1,002.00 |
| Amount Over Credit Limit | $0.00 |
| Statement Closing Date | 01/26/2017 |
| Next Statement Closing Date | 02/23/2017 |
| Days in Billing Cycle | 31 |

## Payment Information

| | |
|---|---|
| New Balance | $8,597.33 |
| Minimum Payment Due | $86.00 |
| Payment Due Date | February 22, 2017 |

**Minimum Payment Warning:** If you make only the minimum payment each period, you will pay more in interest and it will take you longer to pay off your balance. For example:

| If you make no additional charges using this card and each month you pay... | You will pay off the balance shown on this statement in about... | And you will end up paying an estimated total of... |
|---|---|---|
| Only the minimum payment | 24 years | $21,854 |
| $251 | 3 years | $9,043 (Savings=$12,811) |

If you would like information about credit counseling services, call 1-877-337-8187.

Your Minimum Payment Due is $86.00. If you paid your non-promotional (revolving) balances and any expiring promotional balances in full on your last statement, you can avoid interest charges on any new non-promotional (revolving) balances and any expiring promotional balances if you pay $7,852.16 by 02/22/17. Otherwise, interest will accrue from your statement closing date until we receive your payment. The "How to Avoid Paying Interest on Purchases" section on page 2 has more information.

You must pay your promotional balance of **$423.80** in full by **06/22/17** to avoid paying deferred interest charges.

You must pay your promotional balance of **$321.37** in full by **07/22/17** to avoid paying deferred interest charges.

Please update your phone number, including cell phone number on the back of the payment coupon.

## TRANSACTIONS

| Trans Date | Description | Reference # | Amount |
|---|---|---|---|
| 12/28 | THE HOME DEPOT BEAVERCREEK OH | 6021410 | $    321.37 |
| | GIFTCARD MALL ELECTRICAL AND LIGHTING HARDWARE | | |
| | **PROMOTIONAL PURCHASE: To avoid interest charges, please pay the above in full by 07/22/2017. Monthly payments required.** | | |
| 01/18 | ONLINE PAYMENT    DEERFIELD  IL | P9194000JEHRLX3VD | $     84.00- |



The Home Depot® Credit Services
**MOBILE ACCOUNT MANAGEMENT**

View recent activity, view statements or pay your bill – all right from your smartphone. Visit **homedepot.com/mycard** to login or register today.

HD 17

PLEASE SEE IMPORTANT INFORMATION ON PAGE 2.    **Page 1 of 6**    **This Account is Issued by Citibank, N.A.**

- - - - - - - - - - ↓ Please detach and return lower portion with your payment, to insure proper credit. Retain upper portion for your records. ↓ - - - - - - - - - -



P.O. Box 790393
St. Louis, MO 63179

**Your Account Number is** ████████████ 0089

**ADD AN AUTHORIZED USER TODAY!**

It's free and easy! Authorized users will receive their own cards, plus get access to your everyday card benefits.

**Call 1-800-677-0232 or visit homedepot.com/mycard**

| | |
|---|---|
| Payment Due Date | **February 22, 2017** |
| New Balance | **$8,597.33** |
| Past Due Amount | **$0.00** |
| Minimum Payment Due | **$86.00** |

**Amount Enclosed: $**

Please print address changes on the reverse side.
**Make Checks Payable to** ▼

**Statement Enclosed**

JERMEY R BELL
████████████████
PASADENA, MD  21122-6324

HOME DEPOT CREDIT SERVICES
PO BOX 9001010
LOUISVILLE, KY  40290-1010

03000  0008600  0859733  0008400  ██████████0089  1717

JA221

**Information About Your Account.**

**How to Avoid Paying Interest on Purchases.** Your payment due date is at least 25 days after the close of each billing cycle. We will not charge you any interest on purchases if you pay your New Balance by the payment due date each month. This is called a grace period on purchases. If you do not pay the New Balance in full by the payment due date, you will not get a grace period on purchases until you pay the New Balance in full for two billing cycles in a row.

If you have a balance subject to a deferred interest or 0% APR promotion and that promotion does not expire before the payment due date, that balance (the "excluded balance") is excluded from the amount you must pay in full to get a grace period. However, you must still pay any separately required payment on the excluded balance. In billing cycles in which payments are allocated to deferred interest balances first, the deferred interest balance will be reduced before any other balance on the account. However, you will continue to get a grace period on purchases so long as you pay the New Balance less any excluded balances in full by the payment due date each billing cycle. We may refer to deferred interest promotions as No Interest promotions.

In addition, certain promotional offers may take away the grace period on purchases. Other promotional offers not described above may also allow you to have a grace period on purchases without having to pay all or a portion of the promotional balance by the payment due date. If either is the case, the promotional offer will describe what happens.

**How We Calculate Your Balance Subject to Interest Rate.** For each balance, the letter following the Annual Percentage Rate in the Interest Charge Calculation section on the front of the statement indicates the method we use to calculate interest charges. For Methods C, H and M, we use a daily balance method (including current transactions) to calculate interest charges. For Methods I and L, we use an average daily balance method (including current transactions) to calculate interest charges. For Method K, we use an average daily balance method (excluding current transactions) to calculate interest charges. To find out more information about the balance computation method that applies to your account and how the resulting interest charges were determined, contact us at Customer Service number on the front.

**Other Account and Payment Information.**

**Payment Amount.** You may pay all or part of your account balance at any time. However, you must pay, by the payment due date, at least the minimum payment due.

**When Your Payment Will Be Credited.** If we receive your mailed payment in proper form at our processing facility by 5 p.m. local time there, it will be credited as of that day. A payment received there in proper form after that time will be credited as of the next day. Allow 5 to 7 days for payments by regular mail to reach us. There may be a delay of up to 5 days in crediting a payment we receive that is not in proper form or is not sent to the correct address. The correct address for regular mail is the address on the front of the payment coupon. The correct address for courier or express mail is the Express Mail Address shown in the Express Mail section.

**Proper Form.** For a payment sent by mail or courier to be in proper form, you must:

- **Enclose** a valid check or money order made payable to Home Depot Credit Services. No cash, gift cards, or foreign currency please.
- **Include** your name and the last four digits of your account number.

**Payment Other Than By Mail.**

- **Online.** Go to the URL on Page 1 of your statement to make a payment. For security reasons, you may not be able to pay your entire New Balance the first time you make a payment online. The payment cutoff time for Online Bill Payments is midnight Eastern time. This means that we will credit your account as of the calendar day, based on Eastern time, that we receive your payment request.
- **AutoPay.** Sign up at Account Online to have your payment amount automatically deducted each month from the account you choose. Your card account will be credited on the due date with that amount.
- **Phone.** Call the phone number on Page 1 of your statement to make a payment. We may process your payment electronically after we verify your identity. The payment cutoff time for Phone Payments is midnight Eastern time. This means that we will credit your account as of the calendar day, based on Eastern time, that we receive your payment request.
- **Express Mail.** Send payment by courier or express mail to: Attn: Consumer Payment Dept., 6716 Grade Lane, Building 9, Suite 910, Louisville, KY 40213. Payment must be received in proper form at the proper address by 5 p.m. Eastern time to be credited as of that day. All payments received in proper form at the proper address after that time will be credited as of the next day.
- **In-Store Payments.** For your added convenience, payments can be made at The Home Depot stores, with no service fee. Any payment in proper form accepted in-store will be credited as of that day. However, credit availability may be subject to verification of funds.

**If you send an eligible check with this payment coupon, you authorize us to complete your payment by electronic debit. If we do, the checking account will be debited in the amount on the check. We may do this as soon as the day we receive the check. Also, the check will be destroyed.**

PLEASE SEE IMPORTANT INFORMATION ON PAGE 4          HD-2 DEC15

HD - 9196-0400-0002 -//- 000 - 000 -//- - 0 - - 01 -//- P - E - 0 - Y -//- 0 - - - 0 - 0 -//- 11/18/16 - 10/01/14 - 27 - December 26, 2016
N - - - -//- 0 - Y - HDEB -//- - - 0 - 0 - - -//- - - - 1623M

**Please provide change of address and update/add your phone numbers\*here:** (Use blue or black ink.)

_____

_____

\*Cell: _____ \*Home: _____

**\*Phone:** By giving us a cell number or a number later converted to a cell number, you agree that we or our service providers can contact you at that number by autodialer, recorded or artificial voice, or a text. Your phone plan charges may apply.



# HASSLE-FREE ONLINE SHIPPING

- ✓ **FREE ship to store** on over 800,000 items
- ✓ **Buy Online Pick Up in Store** Most online orders ready for pick up within 2 hours. Plus, it's free
- ✓ **FREE ship to your home** on most orders of $45 or more

Shop **homedepot.com today.**



Buy Online. Pick Up In Store.

JA222

Account: **** **** **** 0089

## TRANSACTIONS (cont.)

| Trans Date | Description | Reference # | Amount |
|---|---|---|---|
| **FEES** | | | |
| | TOTAL FEES FOR THIS PERIOD | | $ 0.00 |
| **INTEREST CHARGED** | | | |
| | TOTAL INTEREST FOR THIS PERIOD | | $ 0.00 |

| 2017 Totals Year-to-Date | |
|---|---|
| Total Fees Charged in 2017 | $0.00 |
| Total Interest Charged in 2017 | $0.00 |

## ACTIVITY AND PROMOTIONS DETAIL

| | Original Promotion Trans Amount | Promotion Trans Date | Previous Balance | Payments & Other Credits | Purchases, Fees & Other Debits | Interest Charged | New Balance | Promotion Minimum Payment Due | Deferred Interest Charges | Promotion Expiration Date |
|---|---|---|---|---|---|---|---|---|---|---|
| **PURCHASES** | | | | | | | | | | |
| Revolving Balance | - | - | $7,936.16 | $84.00- | - | - | $7,852.16 | - | - | |
| NO INT FOR 6MOS-PMT REQ | $423.80 | 12/13/16 | $423.80 | - | - | - | $423.80 | - | - | 06/22/17 |
| NO INT FOR 6MOS-PMT REQ | $321.37 | 12/28/16 | - | - | $321.37 | - | $321.37 | - | - | 07/22/17 |
| **TOTAL** | | | $8,359.96 | $84.00- | $321.37 | $0.00 | $8,597.33 | $0.00 | $0.00 | |

| INTEREST CHARGE CALCULATION | | Your **Annual Percentage Rate (APR)** is the annual interest rate on your account. | |
|---|---|---|---|
| Type of Balance | Annual Percentage Rate (APR) | Balance Subject to Interest Rate | Interest Charge |
| **PURCHASES** | | | |
| Revolving Balance | 0.00% (M) | $0.00 | $0.00 |
| NO INT FOR 6MOS-PMT REQ | 0.00% (M) | $0.00 | $0.00 |
| NO INT FOR 6MOS-PMT REQ | 0.00% (M) | $0.00 | $0.00 |



PERFECT FOR YOUR POWDER ROOM     PERFECT FOR YOUR GUEST BATH     PERFECT FOR YOUR MASTER BATH

RETHINK KITCHEN & BATH

SAVE BIG ON VANITIES
Starting at $119

Stop by your local The Home Depot® store today.

© 2017. Home Depot Product Authority, LLC. All rights reserved.

585

**Credit Reporting Disputes.** If you think we reported inaccurate information to a credit bureau write us at the Customer Service address shown on Page 1.

**Report a Lost or Stolen Card Immediately.** Call the Account Inquiries number shown on Page 1.

**What To Do If You Find A Mistake On Your Statement**

If you think there is an error on your statement, write to us at the address for billing errors and customer service inquiries shown on Page 1 of your statement.

In your letter, give us the following information:

- <u>Account information</u>: Your name and account number.
- <u>Dollar amount</u>: The dollar amount of the suspected error.
- <u>Description of problem</u>: If you think there is an error on your bill, describe what you believe is wrong and why you believe it is a mistake.

You must contact us:

- Within 60 days after the error appeared on your statement.
- At least 3 business days before an automated payment is scheduled, if you want to stop payment on the amount you think is wrong.

You must notify us of any potential errors <u>in writing</u>. You may call us, but if you do we are not required to investigate any potential errors and you may have to pay the amount in question.

<u>**What Will Happen After We Receive Your Letter**</u>

**When we receive your letter, we must do two things:**

1. Within 30 days of receiving your letter, we must tell you that we received your letter. We will also tell you if we have already corrected the error.

2. Within 90 days of receiving your letter, we must either correct the error or explain to you why we believe the bill is correct.

**While we investigate whether or not there been an error:**

- We cannot try to collect the amount in question, or report you as delinquent on that amount.
- The charge in question may remain on your statement, and we may continue to charge you interest on that amount.
- While you do not have to pay the amount in question, you are responsible for the remainder of your balance.
- We can apply any unpaid amount against your credit limit.

**After we finish our investigation, one of two things will happen:**

- <u>If we made a mistake:</u> You will not have to pay the amount in question or any interest or other fees related to that amount.
- <u>If we do not believe there was a mistake:</u> You will have to pay the amount in question, along with applicable interest and fees. We will send you a statement of the amount you owe and the date payment is due. We may then report you as delinquent if you do not pay the amount we think you owe.

If you receive our explanation but still believe your bill is wrong, you must write to us within *10 days* telling us that you still refuse to pay. If you do so, we cannot report you as delinquent without also reporting that you are questioning your bill. We must tell you the name of anyone to whom we reported you as delinquent, and we must let those organizations know when the matter has been settled between us.

If we do not follow all of the rules above, you do not have to pay the first $50 of the amount you question even if your bill is correct.

***Your Rights If You Are Dissatisfied With Your Credit Card Purchases***

If you are dissatisfied with the goods or services that you have purchased with your credit card, and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the purchase.

To use this right, all of the following must be true:

1. The purchase must have been made in your home state or within 100 miles of your current mailing address, and the purchase price must have been more than $50. (**Note:** Neither of these are necessary if your purchase was based on an advertisement we mailed to you, or if we own the company that sold you the goods or services.)

2. You must have used your credit card for the purchase. Purchases made with cash advances from an ATM or with a check that accesses your credit card account do not qualify.

3. You must not yet have fully paid for the purchase.

If all of the criteria above are met and you are still dissatisfied with the purchase, contact us <u>in writing</u> at the address for billing errors and customer service inquiries shown on Page 1 of your statement.

While we investigate, the same rules apply to the disputed amount as discussed above. After we finish our investigation, we will tell you our decision. At that point, if we think you owe an amount and you do not pay, we may report you as delinquent.

**KEY CREDIT TERMS**
**NO INTEREST IF PAID IN FULL WITHIN 6 MONTHS\*** on purchases of $299 or more. Interest will be charged to your account from the purchase date if the purchase balance (including premiums for optional credit insurance) is not paid in full within 6 months.

\*With credit approval for qualifying purchases made on The Home Depot or EXPO Design Center Consumer Credit Card, 17.99% - 26.99% APR. Minimum interest charge: $2. See card agreement for details including APR applicable to you. Offer is only valid for consumer accounts. 6 months everyday credit offer is subject to change without notice. Minimum payments required.

## SAVE $30* OFF YOUR HOME DECORATORS COLLECTION ORDER OF $150 OR MORE



when you shop with **The Home Depot Consumer Credit Card now through 3/31/17**. Enter code **72B8715** during checkout at **HomeDecorators.com** or mention it when you order by phone at **1-800-245-2217**. **Special financing available**. For details, visit **HomeDecorators.com/cardoffer**.



*This offer is valid now through March 31, 2017 and is good for $30 off the total merchandise value of your single-receipt purchase of $150 or more made with The Home Depot Consumer Credit Card from Home Decorators Collection. Offer cannot be combined with any other offer; cannot be transferred; and does not apply to taxes and/or processing/shipping charges, or gift card or previous purchases. No credit if offer refused. Home Decorators Collection reserves the right to correct typographical errors.

586

## MINOR UPDATE, MAJOR IMPACT

Cabinet refacing is a quick and easy way to update your kitchen. Benefits include:

- Thousands of options
- Add an island or enhance in-cabinet storage
- 3-5 day install
- Special financing options available

**CALL 1-800-HOMEDEPOT to schedule a FREE in-home consultation.**



Before    After



All installation services provided by insured, licensed (where applicable) and background screened independent contractor The Home Depot® authorized service providers. State specific licensing includes: Alabama 03010, Florida CAC1813767, Maryland 05-76141-01, New Mexico 86302, Texas TALCA-1574C, Texas TACLB00014980C, Virginia 2705-068841A, West Virginia WV036104. License numbers held by or on behalf of Home Depot U.S.A.,Inc. available at homedepot.com/licensenumbers or at the Special Service desk at The Home Depot store. © 2017. Home Depot Product Authority, LLC. All rights reserved. See sales associate for full list of product exclusions and other restrictions that may apply or call 1-800-HOMEDEPOT. Void where prohibited.

HOME SERVICES
Let us do it for you.

586

# EXHIBIT 3

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
CASE NO. 5:22-cv-00383

PABLO ESPIN, NICHOLAS PADAO,　　　　)
JEREMY BELL and KEITH TAYLOR,　　　　)
*on behalf of themselves and others similarly*　)
*situated.*　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　　)
　　　　　Plaintiffs,　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　　)
vs.　　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　　)
CITIBANK, N.A.　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　　)
　　　　　Defendant.　　　　　　　　　　　)

## DECLARATION OF KYLE STEINMETZ

I, Kyle Steinmetz, hereby declare as follows:

1.　　　The following facts are of my own personal knowledge, and if called as a witness I could and would testify competently to their truth.

2.　　　I am employed as an attorney in the law firm of Mayer Brown LLP, who represent Citibank in this matter.

3.　　　On December 21, 2022, I visited the American Arbitration Association ("AAA") website at http://www.adr.org. On the web page that was displayed, I placed my cursor over "Practice Areas." On the menu that appeared, I clicked "Consumer." On the web page that was next displayed, I clicked "AAA Consumer Arbitration Rules." Attached as Exhibit A is a true and correct copy of the document that was displayed after I clicked that link.

1

4.      On December 21, 2022, I visited the website

https://www.adr.org/sites/default/ files/ document_repository/

AAA_ConsumerRules_Highlights.pdf. Attached as Exhibit B is a true and correct copy

of the document that was displayed.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 21st day of December, 2022 at December 21, 2022.

_____
Kyle J. Steinmetz

2

# EXHIBIT A



# Consumer Arbitration Rules



AMERICAN ARBITRATION ASSOCIATION®

Available online at **adr.org/consumer**

Rules Amended and Effective September 1, 2014
Costs of Arbitration Amended and Effective November 1, 2020

JA231

# Table of Contents

Introduction .................................................................................  6

  About the AAA. ........................................................................  6

  The Arbitrator. ........................................................................  7

  The AAA's Consumer Arbitration Rules ............................................  7

  Availability of Mediation through AAA Mediation.org ..........................  7

  Administrative Fees ..................................................................  7

  Arbitrator's Fees ....................................................................  8

  Notification ...........................................................................  8

Filing a Case and Initial AAA Administrative Steps ...........................  9

  R-1. Applicability (When the AAA Applies These Rules) ....................  9

  R-2. Starting Arbitration under an Arbitration Agreement in a Contract ............  11

  R-3. Agreement to Arbitrate When There is No AAA Arbitration Clause ............  13

  R-4. AAA Administrative Fees ....................................................  13

  R-5. Neutral Arbitrator's Compensation ........................................  14

  R-6. Depositing Neutral Arbitrator's Compensation with the AAA ..................  14

  R-7. Expenses .......................................................................  14

  R-8. Changes of Claim ............................................................  14

  R-9. Small Claims Option for the Parties ......................................  15

  R-10. Administrative Conference with the AAA ................................  15

  R-11. Fixing of Locale (the city, county, state, territory and or country where the arbitration will take place). ............................................................  15

  R-12. Business Notification and Publicly-Accessible Consumer Clause Registry. ......  16

  R-13. AAA and Delegation of Duties. ............................................  17

  R-14. Jurisdiction ...................................................................  17

Appointing the Arbitrator ...............................................................  18

  R-15. National Roster of Arbitrators. ............................................  18

  R-16. Appointment from National Roster ........................................  18

  R-17. Number of Arbitrators .....................................................  18

  R-18. Disclosure ....................................................................  18

  R-19. Disqualification of Arbitrator ..............................................  19

  R-20. Vacancies ....................................................................  19

Pre-Hearing Preparation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

R-21. Preliminary Management Hearing with the Arbitrator . . . . . . . . . . . . . . . . . . . . . 20

R-22. Exchange of Information between the Parties. . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

R-23. Enforcement Powers of the Arbitrator . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

R-24. Written Motions (except for Dispositive Motions—see R-33) . . . . . . . . . . . . . . . . 21

R-25. Representation of a Party. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

R-26. Setting the Date, Time, and Place (the physical site of the hearing within the designated locale) of Hearing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

R-27. Written Record of Hearing. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

R-28. Interpreters . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

R-29. Documents-Only Procedure . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Hearing Procedures . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

R-30. Attendance at Hearings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

R-31. Oaths . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

R-32. Conduct of Proceedings. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

R-33. Dispositive Motions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

R-34. Evidence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

R-35. Evidence by Affidavit and Post-Hearing Filing of Documents or Other . . . . . . . . 25

Evidence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

R-37. Interim Measures (a preliminary decision made by the arbitrator involving part or all of the issue(s) in dispute in the arbitration) . . . . . . . . . . . . . . . . . . . . 26

R-38. Postponements . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

R-39. Arbitration in the Absence of a Party or Representative . . . . . . . . . . . . . . . . . . . 26

Conclusion of the Hearing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

R-40. Closing of Hearing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

R-41. Reopening of Hearing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

R-42. Time of Award . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

R-43. Form of Award . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

R-44. Scope of Award . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

R-45. Award upon Settlement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

R-46. Delivery of Award to Parties . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

R-47. Modification of Award for Clerical, Typographical, or Mathematical Errors . . . . . . 29

Post Hearing ............................................................. 30
   R-48. Release of Documents for Judicial Proceedings ................. 30
   R-49. Applications to Court and Exclusion of Liability ............... 30

General Procedural Rules .............................................. 31
   R-50. Waiver of Rules ................................................ 31
   R-51. Extensions of Time ............................................ 31
   R-52. Serving of Notice and AAA and Arbitrator Communications ........ 31
   R-53. Interpretation and Application of Rules ........................ 32
   R-54. Remedies for Nonpayment ........................................ 32
   R-55. Declining or Ceasing Arbitration .............................. 32

Costs of Arbitration .................................................. 33

AAA Administrative Fees ............................................... 34
   (i) Filing Fees* .................................................... 34
   (ii) Case Management Fees ........................................... 36
   (iii) Hearing Fees .................................................. 36

Neutral Arbitrator's Compensation ................................... 37

Reallocation of Arbitrator Compensation, AAA Administrative Fees and Certain
Expenses .............................................................. 38

Hearing Room Rental ................................................... 38

Abeyance Fee .......................................................... 38

Expenses .............................................................. 39

Consumer Clause Review and Registry Fee .............................. 39

AAA Mediation Fees for Multiple Consumer Case Filings ................ 39

AAA Administered Settlement Approval Process for Multiple
Consumer Case Filings ................................................. 40

Fees for Additional Services .......................................... 40

Procedures for the Resolution of Disputes through Document Submission ..... 41
   D-1. Applicability ................................................... 41
   D-2. Preliminary Management Hearing .................................. 41
   D-3. Removal from the Procedures ..................................... 41
   D-4. Time of Award ................................................... 42

Case 5:22-cv-00383-BO-RN   Document 23-19   Filed 12/22/22   Page 5 of 49

American Arbitration Association

JA234

Glossary of Terms ............................................................ 43

    Administrator ............................................................ 43

    ADR Agreement .......................................................... 43

    ADR Process ............................................................. 43

    ADR Program ............................................................ 43

    Arbitration .............................................................. 43

    Arbitration Agreement .................................................... 44

    Arbitrator ............................................................... 44

    Case Administrator ....................................................... 44

    Claimant ................................................................ 44

    Demand for Arbitration (also referred to as "Demand") ..................... 44

    Documents-Only Arbitration .............................................. 45

    Independent ADR Institution ............................................. 45

    In-Person Hearing ....................................................... 45

    Mediation ............................................................... 45

    Neutral ................................................................. 45

    Party. ................................................................... 45

    Parties .................................................................. 46

    Opposing Party .......................................................... 46

    Respondent ............................................................. 46

    Telephone Hearing ...................................................... 46



# Consumer Arbitration Rules

## Introduction

Millions of consumer purchases take place each year. Occasionally, these transactions lead to disagreements between consumers and businesses. These disputes can be resolved by arbitration. Arbitration is usually faster and cheaper than going to court.

The American Arbitration Association® ("AAA®," "the Association") applies the *Consumer Arbitration Rules* ("Rules") to arbitration clauses in agreements between individual consumers and businesses where the business has a standardized, systematic application of arbitration clauses with customers and where the terms and conditions of the purchase of standardized, consumable goods or services are non-negotiable or primarily non-negotiable in most or all of its terms, conditions, features, or choices. The product or service must be for personal or household use. The AAA has the discretion to apply or not to apply the *Consumer Arbitration Rule,* and the parties are able to bring any disputes concerning the application or non-application of the Rules to the attention of the arbitrator. Consumers and businesses are permitted to seek relief in a small claims court for disputes or claims within the scope of the small claims court's jurisdiction. These Rules were drafted and designed to be consistent with the minimum due process principles of the *Consumer Due Process Protocol*.

## About the AAA

The administrator's role is to manage the administrative aspects of the arbitration, such as the appointment of the arbitrator, preliminary decisions about where hearings might take place, and handling the fees associated with the arbitration. As administrator, however, the AAA does not decide the merits of a case or make any rulings on issues such as what documents must be shared with each side. Because the AAA's role is only administrative, the AAA cannot overrule or change an arbitrator's decisions or rulings. The administrator will comply with any court orders issued from litigation involving the parties to the dispute.

The American Arbitration Association, founded in 1926, is a neutral, independent, and private not-for-profit organization. We offer a broad range of conflict management services to businesses, organizations, and individuals. We also provide education, training, and publications focused on methods for settling disputes out of court.

## The Arbitrator

Except where the parties to a case reach their own settlement, the arbitrator will make the final, binding decision called the Award on the dispute and render it in writing. The Arbitrator makes all the procedural decisions on a case not made by the Administrator or not decided jointly by the parties. The arbitrator may grant any remedy, relief, or outcome that the parties could have received in court, including awards of attorney's fees and costs, in accordance with the law or laws that apply to the case.

Arbitrators are neutral and independent decision makers who are not employees of the AAA. Once appointed to a case, an arbitrator may not be removed by one party without the other party's consent or unless the Administrator determines an arbitrator should be removed and replaced by another arbitrator chosen by the Administrator in a manner described in these Rules.

## The AAA's Consumer Arbitration Rules

The AAA has developed the *Consumer Arbitration Rules* for consumers and businesses that want to have their disagreements resolved through arbitration.

## Availability of Mediation through AAA Mediation.org

Mediation in consumer disputes is also available to help parties resolve their disputes. Parties interested in participating in mediation may find a mediator through **www.aaamediation.org.**

## Administrative Fees

The Association charges a fee for its services under these Rules. A fee schedule is included at the end of these Rules in the Costs of Arbitration section.

## Arbitrator's Fees

Arbitrators are paid for the time they spend resolving disputes. The business makes deposits as outlined in the fee schedule in the Costs of Arbitration section of these Rules. Unused deposits are refunded at the end of the case.

## Notification

A business intending to incorporate these Rules or to refer to the dispute resolution services of the AAA in a consumer alternative dispute resolution ("ADR") plan should, at least 30 days prior to the planned effective date of the program,

- notify the Association of its intention to do so, and
- provide the Association with a copy of the consumer dispute resolution plan.

If a business does not comply with this requirement, the Association reserves the right to withhold its administrative services. For more information, please see R-12 below.

American Arbitration Association

JA238

## Filing a Case and Initial AAA Administrative Steps

### R-1. Applicability (When the AAA Applies These Rules)

**(a)**  The parties shall have made these *Consumer Arbitration Rules* ("Rules") a part of their arbitration agreement whenever they have provided for arbitration by the American Arbitration Association ("AAA"), and

**1)**  have specified that these *Consumer Arbitration Rules* shall apply;

**2)**  have specified that the *Supplementary Procedures for Consumer-Related Disputes* shall apply, which have been amended and renamed the Consumer Arbitration Rules;

**3)**  the arbitration agreement is contained within a consumer agreement, as defined below, that does not specify a particular set of rules; or

**4)**  the arbitration agreement is contained within a consumer agreement, as defined below, that specifies a particular set of rules other than the *Consumer Arbitration Rules.*

When parties have provided for the AAA's rules or AAA administration as part of their consumer agreement, they shall be deemed to have agreed that the application of the AAA's rules and AAA administration of the consumer arbitration shall be an essential term of their consumer agreement.

The AAA defines a consumer agreement as an agreement between an individual consumer and a business where the business has a standardized, systematic application of arbitration clauses with customers and where the terms and conditions of the purchase of standardized, consumable goods or services are non-negotiable or primarily non-negotiable in most or all of its terms, conditions, features, or choices. The product or service must be for personal or household use.

Examples of contracts that typically meet the criteria for application of these Rules, if the contract is for personal or household goods or services and has an arbitration provision, include, but are not limited to the following:

- Credit card agreements

- Telecommunications (cell phone, ISP, cable TV) agreements

- Leases (residential, automobile)

- Automobile and manufactured home purchase contracts

- Finance agreements (car loans, mortgages, bank accounts)

- Home inspection contracts

- Pest control services

- Moving and storage contracts

- Warranties (home, automobile, product)

- Legal funding

- Health and fitness club membership agreements

- Travel services

- Insurance policies

- Private school enrollment agreements

Examples of contracts that typically do not meet the criteria for application of these Rules, should the contract contain an arbitration provision, include, but are not limited to the following:

- Home construction and remodeling contracts

- Real estate purchase and sale agreements

- Condominium or homeowner association by-laws

- Business insurance policies (including crop insurance)

- Commercial loan and lease agreements

- Commercial guaranty agreements

**(b)** When parties agree to arbitrate under these Rules, or when they provide for arbitration by the AAA and an arbitration is initiated under these Rules, they thereby authorize the AAA to administer the arbitration. The authority and duties of the AAA are prescribed in the agreement of the parties and in these Rules and may be carried out through such of the AAA's representatives as it may direct. The AAA may, in its discretion, assign the administration of an arbitration to any of its offices. Arbitrations administered under these Rules shall only be administered by the AAA or by an individual or organization authorized by the AAA to do so.

**(c)** The consumer and the business may agree to change these Rules. If they agree to change the Rules, they must agree in writing. If the consumer and the business want to change these Rules after the appointment of the arbitrator, any changes may be made only with the approval of the arbitrator.

**(d)** The AAA administers consumer disputes that meet the due process standards contained in the *Consumer Due Process Protocol* and the *Consumer Arbitration Rules.* The AAA will accept cases after the AAA reviews the parties' arbitration agreement and if the AAA determines the agreement substantially and materially complies with the due process standards of these Rules and the *Consumer Due Process Protocol.* Should the AAA decline to administer an arbitration, either party may choose to submit its dispute to the appropriate court for resolution.

**(e)** The AAA has the initial authority to apply or not to apply the *Consumer*

10    ARBITRATION RULES    Case 5:22-cv-00383-BO-RN    Document 23-19    Filed 12/22/22    Page 11 of 49    American Arbitration Association

JA240

*Arbitration Rules*. If either the consumer or the business disagrees with the AAA's decision, the objecting party must submit the objection by the due date for filing an answer to the demand for arbitration. If an objection is filed, the arbitrator shall have the authority to make the final decision on which AAA rules will apply.

**(f)** If, within 30 days after the AAA's commencement of administration, a party seeks judicial intervention with respect to a pending arbitration and provides the AAA with documentation that judicial intervention has been sought, the AAA will suspend administration for 30 days to permit the party to obtain a stay of arbitration from the court.

**(g)** Where no disclosed claims or counterclaims exceed $25,000, the dispute shall be resolved by the submission of documents only/desk arbitration (see R-29 and the *Procedures for the Resolution of Disputes through Document Submission* below). Any party, however, may ask for a hearing. The arbitrator also may decide that a hearing is necessary.

### R-2. Starting Arbitration under an Arbitration Agreement in a Contract

**(a)** Arbitration filed under an arbitration agreement naming the AAA shall be started in the following manner:

**(1)** The party who starts the arbitration (referred to as the "claimant" throughout the arbitration) must contact, in writing, the party that the case is filed against (referred to as the "respondent" throughout the arbitration) that it wishes to arbitrate a dispute. This written contact is referred to as the Demand for Arbitration ("Demand"). The Demand must do the following:

- Briefly explain the dispute

- List the names and addresses of the consumer and the business, and, if known, the names of any representatives of the consumer and the business

- Specify the amount of money in dispute, if applicable

- Identify the requested location for the hearing if an in-person hearing is requested

- State what the claimant wants

**(2)** The claimant must also send one copy of the Demand to the AAA at the same time the demand is sent to the respondent. When sending a Demand to the AAA, the claimant must also send the following:

- A copy of the arbitration agreement contained in the contract and/or agreement and/or purchase document

- The proper filing fee; the amount of the filing fee can be found in the Costs of Arbitration section at the end of these Rules.

JA241

**(3)** If the arbitration is pursuant to a court order, the claimant must send one copy of the Demand to the AAA at the same time the Demand is sent to the respondent. When sending a demand to the AAA, the claimant must also send the following:

- A copy of the court order

- A copy of the arbitration agreement contained in the contract and/or agreement and/or purchase document

- The proper filing fee

The filing fee must be paid before a matter is considered properly filed. If the court order directs that a specific party is responsible for the filing fee, it is the responsibility of the filing party either to make such payment to the AAA and seek reimbursement as directed in the court order or to make other such arrangements so that the filing fee is submitted to the AAA with the Demand.

The claimant may file by mail. The mailing address of the AAA's Case Filing Services is:

American Arbitration Association
Case Filing Services
1101 Laurel Oak Road, Suite 100
Voorhees, NJ 08043

Or, the claimant may file online using AAA WebFile: **https://www.adr.org**

Or, the claimant may file at any of the AAA's offices.

**(b)** The AAA will send a written notice letting the consumer and the business know the Demand for Arbitration has been received.

**(c)** The respondent may submit a written response to the Demand, known as an "answer," which describes how the respondent responds to the claimant's claim. The answer must be sent to the AAA within 14 calendar days after the date the AAA notifies the parties that the Demand for Arbitration was received and all filing requirements were met. The answer must be

- in writing,

- sent to the AAA, and

- sent to the claimant at the same time.

**(d)** The respondent may also file a counterclaim, which is the respondent filing a Demand against the claimant. If the respondent has a counterclaim, the counterclaim must briefly explain the dispute, specify the amount of money involved, and state what the respondent wants.

**(e)** If no answer is filed within 14 calendar days, the AAA will assume that the respondent does not agree with the claim filed by the claimant. The case will move forward after 14 days regardless of whether an answer is filed.

**(f)** When sending a Demand or an answer, the consumer and the business are encouraged to provide enough details to make the dispute clear to the arbitrator.

## R-3. Agreement to Arbitrate When There is No AAA Arbitration Clause

If the consumer and business do not have an arbitration agreement or their arbitration agreement does not name the AAA, the parties may agree to have the AAA arbitrate their dispute. To start the arbitration, the parties must send the AAA a submission agreement, which is an agreement to arbitrate their case with the AAA, signed by the consumer and the business (email communications between all parties to a dispute reflecting an agreement to arbitrate also is acceptable). The submission agreement must

- be in writing (electronic communication is acceptable);

- be signed by both parties;

- briefly explain the dispute;

- list the names and addresses of the consumer and the business;

- specify the amount of money involved;

- specify the requested location for the hearing if an in-person hearing is requested; and

- state the solution sought.

The parties should send one copy of the submission agreement to the AAA. They must also send the proper filing fees. A fee schedule can be found in the Costs of Arbitration section at the end of these Rules.

## R-4. AAA Administrative Fees

As a not-for-profit organization, the AAA charges fees to compensate it for the cost of providing administrative services. The fee schedule in effect when the case is filed shall apply for all fees charged during the administration of the case. The AAA may, in the event of the consumer's extreme hardship, defer or reduce the consumer's administrative fees.

AAA fees shall be paid in accordance with the Costs of Arbitration section found at the end of these Rules.

JA243

## R-5. Neutral Arbitrator's Compensation

**(a)** Arbitrators serving under these Rules shall be compensated at a rate established by the AAA.

**(b)** Any arrangement for the compensation of an arbitrator shall be made through the AAA and not directly between the parties and the arbitrator.

**(c)** Arbitrator compensation shall be paid in accordance with the Costs of Arbitration section found at the end of these Rules.

## R-6. Depositing Neutral Arbitrator's Compensation with the AAA

The AAA may require the parties to deposit in advance of any hearings such sums of money as it decides are necessary to cover the expense of the arbitration, including the arbitrator's fee, and shall render an accounting to the parties and return any unused money at the conclusion of the case.

## R-7. Expenses

Unless otherwise agreed by the parties or as provided under applicable law, the expenses of witnesses for either side shall be borne by the party producing such witnesses.

All expenses of the arbitrator, including required travel and other expenses, and any AAA expenses, as well as the costs relating to proof and witnesses produced at the direction of the arbitrator, shall be borne in accordance with the Costs of Arbitration section found at the end of these Rules.

## R-8. Changes of Claim

Once a Demand has been filed, any new claims or counterclaims, or changes to the claim or counterclaim, must be made in writing and sent to the AAA. The party making the new or different claim or counterclaim shall send a copy to the opposing party. As with the original Demand or counterclaim, a party shall have 14 calendar days from the date the AAA notifies the parties it received the new or different claim or counterclaim to file an answering statement with the AAA.

If an arbitrator has already been appointed, a new or different claim or counterclaim may only be considered if the arbitrator allows it.

## R-9. Small Claims Option for the Parties

If a party's claim is within the jurisdiction of a small claims court, either party may choose to take the claim to that court instead of arbitration as follows:

**(a)** The parties may take their claims to small claims court without first filing with the AAA.

**(b)** After a case is filed with the AAA, but before the arbitrator is formally appointed to the case by the AAA, a party can send a written notice to the opposing party and the AAA that it wants the case decided by a small claims court. After receiving this notice, the AAA will administratively close the case.

**(c)** After the arbitrator is appointed, if a party wants to take the case to small claims court and notifies the opposing party and the AAA, it is up to the arbitrator to determine if the case should be decided in arbitration or if the arbitration case should be closed and the dispute decided in small claims court.

## R-10. Administrative Conference with the AAA

At the request of any party or if the AAA should so decide, the AAA may have a telephone conference with the parties and/or their representatives. The conference may address issues such as arbitrator selection, the possibility of a mediated settlement, exchange of information before the hearing, timing of the hearing, the type of hearing that will be held, and other administrative matters.

## R-11. Fixing of Locale (the city, county, state, territory and or country where the arbitration will take place)

If an in-person hearing is to be held and if the parties do not agree to the locale where the hearing is to be held, the AAA initially will determine the locale of the arbitration. If a party does not agree with the AAA's decision, that party can ask the arbitrator, once appointed, to make a final determination. The locale determination will be made after considering the positions of the parties, the circumstances of the parties and the dispute, and the *Consumer Due Process Protocol*.

Case 5:22-cv-00383-BO-RN   Document 23-19   Filed 12/22/22   Page 16 of 49

Rules Amended and Effective September 1, 2014. Consumer Arbitration Rules. Costs effective November 2020.                    CONSUMER  **15**

JA245

R-12. Business Notification and Publicly-Accessible Consumer Clause Registry

Beginning September 1, 2014, a business that provides for or intends to provide for these Rules or another set of AAA Rules in a consumer contract (as defined in R-1) should

1. notify the AAA of the existence of such a consumer contract or of its intention to do so at least 30 days before the planned effective date of the contract.

2. provide the AAA a copy of the arbitration agreement.

Upon receiving the arbitration agreement, the AAA will review the agreement for material compliance with due process standards contained in the *Consumer Due Process Protocol* and the *Consumer Arbitration Rules* (see Rule 1(d)). There is a nonrefundable fee to conduct this initial review and maintain a publicly-available clause registry, which is detailed in the Costs of Arbitration section found at the end of these Rules. Any subsequent changes, additions, deletions, or amendments to a currently-registered arbitration agreement must be resubmitted for review and a review fee will be assessed at that time. The AAA will decline to administer consumer arbitrations arising out of that arbitration agreement where the business fails to pay the review fee.

If a business does not submit its arbitration agreement for review and a consumer arbitration then is filed with the AAA, the AAA will conduct an expedited review at that time. Along with any other filing fees that are owed for that case, the business also will be responsible for paying the nonrefundable review and Registry fee (including any fee for expedited review at the time of filing) for this initial review, which is detailed in the Costs of Arbitration section found at the end of these Rules. The AAA will decline to administer consumer arbitrations arising out of that arbitration agreement if the business declines to pay the review and Registry fee.

After the AAA reviews the submitted consumer clause, receives the annual consumer registry fee, and determines it will administer consumer-related disputes filed pursuant to the consumer clause, the business will be included on the publicly-accessible Consumer Clause Registry. This Consumer Clause Registry maintained by the AAA will contain the name of the business, the address, and the consumer arbitration clause, along with any related documents as deemed necessary by the AAA. The AAA's review of a consumer arbitration clause and determination whether or not to administer arbitrations pursuant to that clause is only an administrative determination by the AAA and cannot be

JA246

relied upon or construed as a legal opinion or advice regarding the enforceability of the arbitration clause. Consumer arbitration agreements may be registered at: **www.adr.org/ClauseRegistry** or via email at **consumerreview@adr.org.**

For more information concerning the Consumer Clause Registry, please visit the AAA's website at **www.adr.org/ClauseRegistry.**

The Registry fee to initially review a business's agreement and maintain the clause registry list is a yearly, non-refundable fee for the business's arbitration agreement. Any different arbitration agreements submitted by the same business or its subsidiaries must be submitted for review and are subject to the current review fee.

If the AAA declines to administer a case due to the business's non-compliance with this notification requirement, the parties may choose to submit their dispute to the appropriate court.

### R-13. AAA and Delegation of Duties

When the consumer and the business agree to arbitrate under these Rules or other AAA rules, or when they provide for arbitration by the AAA and an arbitration is filed under these Rules, the parties also agree that the AAA will administer the arbitration. The AAA's administrative duties are set forth in the parties' arbitration agreement and in these Rules. The AAA will have the final decision on which office and which AAA staff members will administer the case. Arbitrations administered under these Rules shall only be administered by the AAA or by an individual or organization authorized by the AAA to do so.

### R-14. Jurisdiction

**(a)** The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim.

**(b)** The arbitrator shall have the power to determine the existence or validity of a contract of which an arbitration clause forms a part. Such an arbitration clause shall be treated as an agreement independent of the other terms of the contract. A decision by the arbitrator that the contract is null and void shall not for that reason alone render invalid the arbitration clause.

**(c)** A party must object to the jurisdiction of the arbitrator or to the arbitrability of a claim or counterclaim no later than the filing of the answering statement to the claim or counterclaim that gives rise to the objection. The arbitrator may rule on such objections as a preliminary matter or as part of the final award.

JA247

## Appointing the Arbitrator

### R-15. National Roster of Arbitrators

The AAA maintains a National Roster of Arbitrators ("National Roster") and shall appoint arbitrators from this National Roster to resolve the parties' dispute(s).

### R-16. Appointment from National Roster

**(a)** If the parties have not appointed an arbitrator and have not agreed to a process for appointing the arbitrator, immediately after the filing of the submission agreement or the answer, or after the deadline for filing the answer, the AAA will administratively appoint an arbitrator from the National Roster.

**(b)** If the parties' arbitration agreement provides for three or more arbitrators and they have not appointed the arbitrators and have not agreed to a process for appointing the arbitrators, immediately after the filing of the submission agreement or the answer, or after the deadline for filing the answer, the AAA will administratively appoint the arbitrators from the National Roster. The AAA will appoint the chairperson.

**(c)** Arbitrator(s) serving under these Rules will be neutral and must meet the standards of R-19 with respect to being impartial and independent.

### R-17. Number of Arbitrators

If the arbitration agreement does not specify the number of arbitrators and the parties do not agree on the number, the dispute shall be heard and decided by one arbitrator.

### R-18. Disclosure

**(a)** Any person appointed or to be appointed as an arbitrator, as well as the parties and their representatives, must provide information to the AAA of any circumstances likely to raise justifiable doubt as to whether the arbitrator can remain impartial or independent. This disclosure of information would include

  **(1)** any bias;

  **(2)** any financial interest in the result of the arbitration;

  **(3)** any personal interest in the result of the arbitration; or

  **(4)** any past or present relationship with the parties or their representatives.

Such obligation to provide disclosure information remains in effect throughout the arbitration. A failure on the part of a party or a representative to comply with the requirements of this rule may result in the waiver of the right to object to an arbitrator in accordance with Rule R-50.

18    ARBITRATION RULES    Case 5:22-cv-00383-BO-RN    Document 23-19    Filed 12/22/22    American Arbitration Association    Page 19 of 49

JA248

**(b)** If the AAA receives such information from the arbitrator or another source, the AAA will communicate the information to the parties. If the AAA decides it is appropriate, it will also communicate the information to the arbitrator and others.

**(c)** In order to encourage disclosure by arbitrators, disclosing such information does not mean that the arbitrator considers the disclosed information will likely affect his or her ability to be impartial or independent.

## R-19. Disqualification of Arbitrator

**(a)** Any arbitrator shall be impartial and independent and shall perform his or her duties carefully and in good faith. The AAA may disqualify an arbitrator who shows

   **(1)** partiality or lack of independence;

   **(2)** inability or refusal to perform his or her duties with diligence and in good faith; or

   **(3)** any grounds for disqualification provided by applicable law.

**(b)** If a party objects to the continued service of an arbitrator, or if the AAA should so decide to raise the issue of whether the arbitrator should continue on the case, the AAA will decide if the arbitrator should be disqualified.  After gathering the opinions of the parties, the AAA will decide and that decision shall be final and conclusive.

## R-20. Vacancies

If for any reason an arbitrator cannot or is unwilling to perform the duties of the office, the AAA may declare the office vacant. Any vacancies shall be filled based on the original procedures used to appoint the arbitrator. If a substitute arbitrator is appointed, the substitute arbitrator will decide if it is necessary to repeat all or part of any prior ruling or hearing.

## Pre-Hearing Preparation

### R-21. Preliminary Management Hearing with the Arbitrator

**(a)** If any party asks for, or if the AAA or the arbitrator decides to hold one, the arbitrator will schedule a preliminary management hearing with the parties and/or their representatives as soon as possible. The preliminary management hearing will be conducted by telephone unless the arbitrator decides an in-person preliminary management hearing is necessary.

**(b)** During the preliminary management hearing, the parties and the arbitrator should discuss the future conduct of the case, including clarification of issues and claims, scheduling of the hearings, and any other preliminary matters.

**(c)** The arbitrator shall promptly issue written orders that state the arbitrator's decisions made during or as a result of the preliminary management hearing. The arbitrator may also conduct additional preliminary management hearings if the need arises.

### R-22. Exchange of Information between the Parties

**(a)** If any party asks or if the arbitrator decides on his or her own, keeping in mind that arbitration must remain a fast and economical process, the arbitrator may direct

  **1)** specific documents and other information to be shared between the consumer and business, and

  **2)** that the consumer and business identify the witnesses, if any, they plan to have testify at the hearing.

**(b)** Any exhibits the parties plan to submit at the hearing need to be shared between the parties at least five business days before the hearing, unless the arbitrator sets a different exchange date.

**(c)** No other exchange of information beyond what is provided for in section (a) above is contemplated under these Rules, unless an arbitrator determines further information exchange is needed to provide for a fundamentally fair process.

**(d)** The arbitrator has authority to resolve any disputes between the parties about exchanging information.

### R-23. Enforcement Powers of the Arbitrator

The arbitrator may issue any orders necessary to enforce the provisions of rules R-21 and R-22 and to otherwise achieve a fair, efficient, and economical resolution of the case, including, but not limited to:

**(a)** an order setting the conditions for any exchange or production of confidential documents and information, and the admission of confidential evidence at the hearing in order to preserve such confidentiality;

JA250

**(b)** to the extent the exchange of information takes place pursuant to R-22, imposing reasonable search limitations for electronic and other documents if the parties are unable to agree;

**(c)** allocating costs of producing documentation, including electronically-stored documentation;

**(d)** in the case of willful non-compliance with any order issued by the arbitrator, drawing adverse inferences, excluding evidence and other submissions, and/or making special allocations of costs or an interim award of costs arising from such non-compliance; and

**(e)** issuing any other enforcement orders that the arbitrator is empowered to issue under applicable law.

### R-24. Written Motions (except for Dispositive Motions—see R-33)

The arbitrator may consider a party's request to file a written motion (except for Dispositive Motions— see R-33) only after the parties and the arbitrator conduct a conference call to attempt to resolve the issue that gives rise to the proposed motion. Only after the parties and the arbitrator hold the call may the arbitrator consider a party's request to file a written motion. The arbitrator has the sole discretion to allow or deny the filing of a written motion and his or her decision is final.

### R-25. Representation of a Party

Any party may participate in the arbitration without representation, or may be represented by counsel or other authorized representative, unless such choice is prohibited by applicable law. A party intending to be represented shall give the opposing party and the AAA the name, address, and contact information of the representative at least three business days before the hearing where that representative will first appear in the case. It will be considered proper notice if a representative files the arbitration demand or answer or responds for a party during the course of the arbitration.

While parties do not need an attorney to participate in arbitration, arbitration is a final, legally-binding process that may impact a party's rights. As such, parties may want to consider consulting an attorney.

JA251

## R-26. Setting the Date, Time, and Place (the physical site of the hearing within the designated locale) of Hearing

The arbitrator will set the date, time, and place for each hearing within the locale as determined in R-11. A hearing may be by telephone or in person. For their part, the parties commit to

> **(1)** respond promptly to the arbitrator when he or she asks what dates the parties
>    are available to have the hearings;
>
> **(2)** cooperate in the scheduling of the hearing on the earliest possible date; and
>
> **(3)** follow the hearing schedule set up by the arbitrator.

The AAA will send a notice of the hearing to the parties at least 10 days before the hearing date, unless the parties agree to a different time frame.

## R-27. Written Record of Hearing

**(a)** If a party wants a written record of the hearing, that party must make such arrangement directly with a stenographer (court reporter) and notify the opposing parties, the AAA, and the arbitrator of these arrangements at least three business days before the hearing. The party or parties who request the written record shall pay the cost of the service.

**(b)** No other type of recording will be allowed unless the parties agree or the arbitrator directs a different form of recording.

**(c)** The arbitrator may resolve disputes between the parties over who will pay the costs of the written record or other type of recording.

**(d)** The parties can agree or the arbitrator may decide that the transcript (written record) is the official record of the hearing. If it is the official record of the hearing, the transcript must be given to the arbitrator and made available to all the parties so that it can be reviewed. The date, time, and place of the inspection will be decided by the arbitrator.

## R-28. Interpreters

If a party wants an interpreter present for any part of the process, that party must make arrangements directly with the interpreter and shall pay for the costs of the service.

## R-29. Documents-Only Procedure

Disputes may be resolved by submission of documents and without in-person or telephonic hearings. For cases being decided by the submission of documents only, the *Procedures for the Resolution of Disputes through Document Submission* (found at the end of these Rules) shall supplement these Rules. These Procedures will apply where no disclosed claims or counterclaims exceed $25,000 (see R-1(g)), unless any party requests an in-person or telephonic hearing or the arbitrator decides that a hearing is necessary.

## Hearing Procedures

### R-30. Attendance at Hearings

The arbitrator and the AAA will keep information about the arbitration private except to the extent that a law provides that such information shall be shared or made public. The parties and their representatives in the arbitration are entitled to attend the hearings. The arbitrator will determine any disputes over whether a non-party may attend the hearing.

### R-31. Oaths

Before starting the hearing, each arbitrator may take an oath of office and, if required by law, shall do so. If the arbitrator determines that witnesses shall testify under oath, then the arbitrator will direct the oath be given by a duly-qualified person.

### R-32. Conduct of Proceedings

**(a)** The claimant must present evidence to support its claim. The respondent must then present evidence to support its defense. Witnesses for each party also must answer questions from the arbitrator and the opposing party. The arbitrator may change this procedure, as long as each party has the right to be heard and is given a fair opportunity to present its case.

**(b)** When the arbitrator decides it is appropriate, the arbitrator may also allow the parties to present evidence in alternative ways, including web conferencing, Internet communication, and telephonic conferences. All procedures must provide the parties with a full and equal opportunity to present any evidence that the arbitrator decides is material and relevant to deciding the dispute. If the alternative ways to present evidence involve witnesses, those ways may include that the witness submit to direct and cross-examination questioning.

**(c)** The arbitrator will use his or her discretion to resolve the dispute as quickly as possible and may direct the parties to present the evidence in a certain order, or may split the proceedings into multiple parts and direct the parties in the presentation of evidence.

**(d)** The hearing generally will not exceed one day. However, if a party shows good cause, the arbitrator may schedule additional hearings within seven calendar days after the initial day of hearing.

**(e)** The parties may agree in writing to waive oral hearings.

Case 5:22-cv-00383-BO-RN    Document 23-19    Filed 12/22/22    Page 25 of 49

JA254

## R-33. Dispositive Motions

The arbitrator may allow the filing of a dispositive motion if the arbitrator determines that the moving party has shown substantial cause that the motion is likely to succeed and dispose of or narrow the issues in the case.

## R-34. Evidence

**(a)** The parties may offer relevant and material evidence and must produce any evidence the arbitrator decides is necessary to understand and decide the dispute. Following the legal rules of evidence shall not be necessary. All evidence should be taken in the presence of the arbitrator and all of the parties, unless any of the parties is absent, in default, or has waived the right to be present.

**(b)** The arbitrator shall determine what evidence will be admitted, what evidence is relevant, and what evidence is material to the case. The arbitrator may also exclude evidence that the arbitrator decides is cumulative or not relevant.

**(c)** The arbitrator shall consider applicable principles of legal privilege, such as those that involve the confidentiality of communications between a lawyer and a client.

**(d)** An arbitrator or other person authorized by law to subpoena witnesses or documents may do so on the request of any party or on the arbitrator's own determination. If a party requests the arbitrator sign a subpoena, that party shall copy the request to the other parties in the arbitration at the same time it is provided to the arbitrator.

## R-35. Evidence by Affidavit and Post-Hearing Filing of Documents or Other Evidence

**(a)** The arbitrator may receive and consider the evidence of witnesses by declaration or affidavit rather than in-person testimony but will give this evidence only such credence as the arbitrator decides is appropriate. The arbitrator will consider any objection to such evidence made by the opposing party.

**(b)** If the parties agree or the arbitrator decides that documents or other evidence need to be submitted to the arbitrator after the hearing, those documents or other evidence will be filed with the AAA so that they can be sent to the arbitrator. All parties will be given the opportunity to review and respond to these documents or other evidence.

## R-36. Inspection or Investigation

An arbitrator finding it necessary to inspect property or conduct an investigation in connection with the arbitration will request that the AAA inform the parties. The arbitrator will set the date and time of the inspection and investigation, and the AAA will notify the parties. Any party who would like to be present at the

JA255

inspection or investigation may attend. If one or all parties are not present at the inspection or investigation, the arbitrator will make an oral or written report to the parties and allow them an opportunity to comment.

### R-37. Interim Measures (a preliminary decision made by the arbitrator involving part or all of the issue(s) in dispute in the arbitration)

**(a)** The arbitrator may grant whatever interim measures he or she decides are necessary, including granting an injunction and ordering that property be protected.

**(b)** Such interim measures may take the form of an interim award, and the arbitrator may require a security payment for the costs of such measures.

**(c)** When making a decision on an interim measure, the arbitrator may grant any remedy, relief, or outcome that the parties could have received in court.

**(d)** A party to an arbitration agreement under these Rules may instead file in state or federal court for interim relief. Applying to the court for this type of relief, including temporary restraining orders, is consistent with the agreement to arbitrate and will not be considered a waiver of the right to arbitrate.

### R-38. Postponements

The arbitrator may postpone any hearing

**(a)** if requested by a party, and the party shows good cause for the postponement;

**(b)** if all parties agree to a postponement;

**(c)** on his or her own decision.

### R-39. Arbitration in the Absence of a Party or Representative

The arbitration may proceed even if any party or representative is absent, so long as proper notice was given and that party or representative fails to appear or obtain a postponement from the arbitrator. An award cannot be made only because of the default of a party. The arbitrator shall require the party who participates in the hearing to submit the evidence needed by the arbitrator to make an award.

## Conclusion of the Hearing

### R-40. Closing of Hearing

The arbitrator must specifically ask all parties whether they have any further proofs to offer or witnesses to be heard. When the arbitrator receives negative replies or he or she is satisfied that the record is complete, the arbitrator will declare the hearing closed.

If briefs or other written documentation are to be filed by the parties, the hearing shall be declared closed as of the final date set by the arbitrator. Absent agreement of the parties, the time that the arbitrator has to make the award begins upon the closing of the hearing. The AAA may extend the time limit for the rendering of the award only in unusual and extreme circumstances.

### R-41. Reopening of Hearing

If a party requests, or if the arbitrator decides to do so, the hearing may be reopened at any time before the award is made. If reopening the hearing would prevent the making of the award within the specific time agreed on by the parties in the contract(s) out of which the controversy has arisen, the matter may not be reopened unless the parties agree on an extension of time. If the arbitrator reopens the hearing, he or she shall have 30 days from the closing of the reopened hearing within which to make an award.

### R-42. Time of Award

The award shall be issued promptly by the arbitrator and, unless the parties agree differently or the law indicates a different time frame, no later than 30 calendar days from the date the hearing is closed, or, if the case is a documents-only procedure, 14 calendar days from the date the arbitrator set for his or her receipt of the final statements and proofs. The AAA may extend the time limit for the rendering of the award only in unusual and extreme circumstances.

### R-43. Form of Award

**(a)** Any award shall be in writing and executed in the form and manner required by law.

**(b)** The award shall provide the concise written reasons for the decision unless the parties all agree otherwise. Any disagreements over the form of the award shall be decided by the arbitrator.

JA257

**(c)** The AAA may choose to publish an award rendered under these Rules; however, the names of the parties and witnesses will be removed from awards that are published, unless a party agrees in writing to have its name included in the award.

### R-44. Scope of Award

**(a)** The arbitrator may grant any remedy, relief, or outcome that the parties could have received in court, including awards of attorney's fees and costs, in accordance with the law(s) that applies to the case.

**(b)** In addition to a final award, the arbitrator may make other decisions, including interim, interlocutory, or partial rulings, orders, and awards. In any interim, interlocutory, or partial award, the arbitrator may assess and divide up the fees, expenses, and compensation related to such award as the arbitrator decides is appropriate, subject to the provisions and limitations contained in the Costs of Arbitration section.

**(c)** The arbitrator may also allocate compensation, expenses as defined in sections (v) and (vii) of the Costs of Arbitration section, and administrative fees (which include Filing and Hearing Fees) to any party upon the arbitrator's determination that the party's claim or counterclaim was filed for purposes of harassment or is patently frivolous.

**(d)** In the final award, the arbitrator shall assess the fees, expenses, and compensation provided in Sections R-4, R-5, and R-7 in favor of any party, subject to the provisions and limitations contained in the Costs of Arbitration section.

### R-45. Award upon Settlement

If the parties settle their dispute at any point during the arbitration and at the parties' request, the arbitrator may lay out the terms of the settlement in a "consent award" (an award drafted and signed by the arbitrator that reflects the settlement terms of the parties). A consent award must include a division of the arbitration costs, including administrative fees and expenses as well as arbitrator fees and expenses. Consent awards will not be made available to the public per Rule 43(c) unless the parties agree otherwise.

### R-46. Delivery of Award to Parties

Parties shall accept as notice and delivery of the award the placing of the award or a true copy thereof in the mail addressed to the parties or their representatives at the last known addresses, personal or electronic service of the award, or the filing of the award in any other manner that is permitted by law.

American Arbitration Association

JA258

## R-47. Modification of Award for Clerical, Typographical, or Mathematical Errors

**(a)** Within 20 days after the award is transmitted, any party, upon notice to the opposing parties, may contact the AAA and request that the arbitrator correct any clerical, typographical, or mathematical errors in the award. The arbitrator has no power to re-determine the merits of any claim already decided.

**(b)** The opposing parties shall be given 10 days to respond to the request. The arbitrator shall make a decision on the request within 20 days after the AAA transmits the request and any responses to the arbitrator.

**(c)** If applicable law provides a different procedural time frame, that procedure shall be followed.

## Post Hearing

### R-48. Release of Documents for Judicial Proceedings

The AAA shall give a party certified copies of any records in the AAA's possession that may be required in judicial proceedings relating to the arbitration, except for records determined by the AAA to be privileged or confidential. The party will have to pay a fee for this service.

### R-49. Applications to Court and Exclusion of Liability

**(a)** No court or judicial proceeding by a party relating to the subject matter of the arbitration shall be deemed a waiver of the party's right to arbitrate.

**(b)** Neither the AAA nor any arbitrator in a proceeding under these Rules is a necessary or proper party in judicial proceedings relating to the arbitration.

**(c)** Parties to an arbitration under these Rules shall be deemed to have consented that judgment upon the arbitration award may be entered in any federal or state court having jurisdiction thereof.

**(d)** Parties to an arbitration under these Rules shall be deemed to have consented that neither the AAA, AAA employees, nor any arbitrator shall be liable to any party in any action for damages or injunctive relief for any act or omission in connection with any arbitration under these rules.

**(e)** Parties to an arbitration under these Rules may not call the arbitrator, the AAA, or any AAA employee as a witness in litigation or any other proceeding relating to the arbitration. The arbitrator, the AAA, and AAA employees are not competent to and may not testify as witnesses in any such proceeding.

JA260

## General Procedural Rules

### R-50. Waiver of Rules

If a party knows that any of these Rules have not been followed, it must object in writing before proceeding with arbitration or it will lose its right to object that the rule has not been followed.

### R-51. Extensions of Time

The parties may agree to change any period of time provided for in the Rules, except that any such modification that negatively affects the efficient resolution of the dispute is subject to review and approval by the arbitrator. The AAA or the arbitrator may for good cause extend any period of time in these Rules, except as set forth in R-42. The AAA will notify the parties of any extension.

### R-52. Serving of Notice and AAA and Arbitrator Communications

**(a)** Any papers or notices necessary for the initiation or continuation of an arbitration under these Rules, or for the entry of judgment on any award made under these Rules, may be served on a party by mail or email addressed to the party or its representative at the last-known address or by personal service, in or outside the state where the arbitration is to be held, provided that reasonable opportunity to be heard with regard to the dispute is or has been granted to the party.

**(b)** The AAA, the arbitrator, and the parties also may use overnight delivery, electronic facsimile transmission (fax), or electronic mail (email) to give the notices required by these rules. Where all parties and the arbitrator agree, notices may be sent by other methods of communication.

**(c)** Unless directed differently by the AAA or by the arbitrator, any documents and all written communications submitted by any party to the AAA or to the arbitrator also shall be sent at the same time to all parties to the arbitration.

**(d)** A failure to provide the other parties with copies of communications made to the AAA or to the arbitrator may prevent the AAA or the arbitrator from acting on any requests or objections contained within those communications.

**(e)** A party and/or someone acting on behalf of a party cannot have any communications with an arbitrator or a potential arbitrator about the arbitration outside of the presence of the opposing party. All such communications shall be conducted through the AAA.

**(f)** The AAA may direct that any oral or written communications that are sent by a party or their representative shall be sent in a particular manner. The failure of a party or its representative to do so may result in the AAA's refusal to consider the issue raised in the communication.

Case 5:22-cv-00383-BO-RN   Document 23-19   Filed 12/22/22   Page 32 of 49
Rules Amended and Effective September 1, 2022. Commercial Arbitration Rules and Mediation Procedures as amended November 1, 2020.     31
JA261

## R-53. Interpretation and Application of Rules

The arbitrator shall interpret and apply these Rules as they relate to the arbitrator's powers and duties. When there is more than one arbitrator and a difference arises among them concerning the meaning or application of these Rules, it shall be decided by a majority vote. If that is not possible, either an arbitrator or a party may refer the question to the AAA for final decision. All other Rules shall be interpreted and applied by the AAA.

## R-54. Remedies for Nonpayment

**(a)** If arbitrator compensation or administrative charges have not been paid in full, the AAA may inform the parties so that one of them may forward the required payment.

**(b)** Once the AAA informs the parties that payments have not been received, a party may request an order from the arbitrator directing what measures might be taken in light of a party's nonpayment.

Such measures may include limiting a party's ability to assert or pursue its claim. However, a party shall never be precluded from defending a claim or counterclaim. The arbitrator must provide the party opposing a request for relief with the opportunity to respond prior to making any determination. In the event that the arbitrator grants any request for relief that limits any party's participation in the arbitration, the arbitrator will require the party who is making a claim and who has made appropriate payments to submit the evidence required to make an award.

**(c)** Upon receipt of information from the AAA that full payments have not been received, the arbitrator, on the arbitrator's own initiative, may order the suspension of the arbitration. If no arbitrator has yet been appointed, the AAA may suspend the proceedings.

**(d)** If arbitrator compensation or AAA administrative fees remain unpaid after a determination to suspend an arbitration due to nonpayment, the arbitrator has the authority to terminate the proceedings. Such an order shall be in writing and signed by the arbitrator. The impact of the termination for nonpayment of the Consumer Clause Registry fee is the removal from the "Registered" section of the Registry.

## R-55. Declining or Ceasing Arbitration

The AAA in its sole discretion may decline to accept a Demand for Arbitration or stop the administration of an ongoing arbitration due to a party's improper conduct, including threatening or harassing behavior towards any AAA staff, an arbitrator, or a party or party's representative.

Case 5:22-cv-00383-BO-RN    Document 23-19    Filed 12/22/22    Page 33 of 49

JA262

## Costs of Arbitration

Where the AAA determines that a business's failure to pay their portion of arbitration costs is a violation of the *Consumer Arbitration Rules,* the AAA may decline to administer future consumer arbitrations with that business.

| Party | Desk/Documents-Only Arbitration | In-Person, Virtual or Telephonic Hearing Arbitration |
|---|---|---|
| Individual | **Single Consumer Case Filing Fee:** $200<br><br>**Multiple Consumer Case Filing Fee:** $100 or $50 per case depending on tier<br><br>$0 if Case Filed by Business | **Single Consumer Case Filing Fee:** $200<br><br>**Multiple Consumer Case Filing Fee:** $100 or $50 per case depending on tier<br><br>$0 if Case Filed by Business |
| Business | **Single Consumer Case Filing Fee:** $300 for 1 or $425 for 3 arbitrators is due once the individual claimant meets the filing requirements; $500 for 1 arbitrator or $625 for 3 arbitrators if Case Filed by Business is due at the time the arbitration is filed.<br><br>**Multiple Consumer Case Filing Fee:** $300, $225, $150, or $75 per case depending on tier, due once the individual claimant meets the filing requirements; Business must pay both the Individual's Filing Fee and Business's Filing Fee if the case is filed by Business, due at the time the arbitration is filed.<br><br>**Case Management Fee:** $1,400 for 1 arbitrator or $1,775 for 3 arbitrators will be assessed and must be paid prior to the arbitrator appointment process.<br><br>**Arbitrator Compensation:** $1,500 per case* | **Single Consumer Filing Fee:** $300 for 1 or $425 for 3 arbitrators is due once the individual claimant meets the filing requirements; $500 for 1 arbitrator or $625 for 3 arbitrators if Case Filed by Business is due at the time the arbitration is filed.<br><br>**Multiple Consumer Case Filing Fee:** $300, $225, $150, or $75 per case depending on tier, due once the individual claimant meets the filing requirements; Business must pay both the Individual's Filing Fee and Business's Filing Fee if the case is filed by Business, due at the time the arbitration is filed.<br><br>**Case Management Fee:** $1,400 for 1 arbitrator or $1,775 for 3 arbitrators will be assessed and must be paid prior to the arbitrator appointment process.<br><br>**Hearing Fee:** $500<br><br>**Arbitrator Compensation:** $2,500 per day of hearing* per arbitrator |

| Party | Desk/Documents-Only Arbitration | In-Person, Virtual or Telephonic Hearing Arbitration |
|-------|--------------------------------|------------------------------------------------------|
|  | *A Desk/Documents-Only Case will not exceed document submissions of more than 100 pages in total and 7 total hours of time for the arbitrator to review the submissions and render the Award.<br><br>Beyond 100 pages and 7 hours of time, the business will be responsible for additional arbitrator compensation at a rate of $300 per hour. Arbitrator compensation is not subject to reallocation by the arbitrator(s) except as may be required by applicable law or upon the arbitrator's determination that a claim or counterclaim was filed for purposes of harassment or is patently frivolous. | *The arbitrator compensation encompasses one preliminary conference, one day of in-person, virtual or telephonic hearing, and one final award. For cases with additional procedures, such as multiple telephone conferences, motion practice, post-hearing briefing, interim or partial awards, awards containing findings of fact and conclusions of law, or other processes not provided for in the Rules, the business will be responsible for additional arbitrator compensation. Arbitrator compensation is not subject to reallocation by the arbitrator(s) except as may be required by applicable law or upon the arbitrator's determination that a claim or counterclaim was filed for purposes of harassment or is patently frivolous. |

## AAA Administrative Fees

In cases where the business is the filing party, either as the claimant or filing on behalf of the individual, the business shall be responsible for all administrative fees that includes, filing fees, case management fees and hearing fees charged by the AAA.

Arbitrator compensation is not included as a part of the AAA's administrative fees.

Note that with regard to all AAA administrative fees, the AAA retains the discretion to interpret and apply this fee schedule to a particular case or cases.

### (i) Filing Fees*

The business's share of the filing fees is due as soon as the AAA confirms in writing that the individual filing meets the filing requirements, even if the matter is settled or withdrawn.

There shall be no filing fee charged for a counterclaim.

*Pursuant to Section 1284.3 of the California Code of Civil Procedure, consumers with a gross monthly income of less than 300% of the federal poverty guidelines are entitled to a waiver of arbitration fees and costs, exclusive of arbitrator fees. This law applies to all consumer agreements subject to the California Arbitration Act, and to all consumer arbitrations conducted in California. If you believe that you meet these requirements, you must submit to the AAA a declaration under oath regarding your monthly income and the number of persons in your household. Please contact the AAA at 1-800-778-7879, if you have any questions regarding the waiver of administrative fees. (Effective January 1, 2003)*

Case 5:22-cv-00383-BO-RN   Document 23-19   Filed 12/22/22   Page 35 of 49

JA264

*Pursuant to New Jersey Statutes § 2A:23B-1 et seq, consumers with a gross monthly income of less than 300% of the federal poverty guidelines are entitled to a waiver of arbitration fees and costs, exclusive of arbitrator fees. This law applies to all consumer agreements subject to the New Jersey Arbitration Act, and to all consumer arbitrations conducted in New Jersey. If you believe that you meet these requirements, you must submit to the AAA a declaration under oath regarding your monthly income and the number of persons in your household. Please contact the AAA at 1-800-778-7879, if you have any questions regarding the waiver of administrative fees. (Effective May 1, 2020)*

A. <u>Single Consumer Case Filing</u>:

In cases before a single arbitrator where the individual is the Claimant, a **<u>non-refundable</u>\*\*** filing fee, capped in the amount of $200, is payable in full by the individual when a case is filed unless the parties' agreement provides that the individual pay less. A **<u>non-refundable</u>** filing fee in the amount of $300 is payable by the business once the individual claimant meets the filing requirements, unless the parties' agreement provides that the business pay more.

In cases before three or more arbitrators, where the individual is the Claimant, a **<u>non-refundable</u>\*\*** filing fee capped in the amount of $200 is payable in full by the individual when a case is filed, unless the parties' agreement provides that the individual pay less. A **<u>non-refundable</u>** filing fee in the amount of $425 is payable by the business once the individual claimant meets the filing requirements, unless the parties' agreement provides that the business pay more.

In cases where the business is the Claimant, the business shall be responsible for all filing fees. The **<u>non-refundable</u>** filing fee is $500 for a single arbitrator or $625 for 3 arbitrators.

*\*\*In the event the single consumer case filing is closed due to non-payment of initial filing fees by the business the AAA will return any filing fee received from the individual.*

B. <u>Multiple Consumer Case Filings</u>:

These multiple consumer case filings fees will apply to all cases when the American Arbitration Association (AAA) determines in its sole discretion that the following conditions are met:

**a.** Twenty-five (25) or more similar claims for arbitration or mediation are filed,

**b.** Claims are against or on behalf of the same party or parties, and

**c.** Counsel for the parties is consistent or coordinated across all cases.

Rules Amended and Effective July 1, 2003. Costs of Arbitration Amended and Effective November 1, 2020.                    35

JA265

All fees listed below are **<u>non-refundable</u>*** and will be assessed to the parties as described below, unless the clause provides that the individual pay less or the clause provides that the business is responsible for the entire fee.

*\*\*\*In the event any multiple case filings are closed due to non-payment of filing fees by the business, the AAA will return any filing fees received from the individuals. Filing fees are non-refundable in the event the cases are closed due to settlement or withdrawal.*

AAA, in its sole discretion, may consider an alternative payment process for multiple case filings.

**Filing Fees For Cases Filed by the Individuals:**

AAA reserves the right to determine what tier of fees applies to multiple cases filed subsequent to the initial filing.

For multiple case filings that contain more than 500 cases, each tier will be applied to the number of cases that fall within that tier.

|  | First 500 Cases | Cases 501 to 1,500 | Cases 1,501 to 3,000 | Cases 3,001 and beyond |
|---|---|---|---|---|
| Individual filing fee per case | $100 | $50 | $50 | $50 |
| Business filing fee per case | $300 | $225 | $150 | $75 |

(ii) Case Management Fees

A non-refundable case management fee of $1,400 for 1 arbitrator or $1,775 for 3 arbitrators will be assessed to the business and must be paid prior to the arbitrator appointment process.

(iii) Hearing Fees

For telephonic hearings, virtual hearings or in-person hearings held, a Hearing Fee of $500 is payable by the business. If a case is settled or withdrawn prior to

the hearing taking place, the Hearing Fee will be refunded, or cancelled if not yet paid. However, if the AAA is not notified of a cancellation at least two business days before a scheduled hearing, the Hearing Fee will remain due and will not be refunded.

There is no AAA hearing fee for an Administrative Conference (see R-10).

## Neutral Arbitrator's Compensation

The business shall pay the arbitrator's compensation unless the individual, post dispute, voluntarily elects to pay a portion of the arbitrator's compensation.

- **<u>Desk/Documents-Only Arbitration</u>** – Arbitrators serving on a desk/documents-only arbitration will receive compensation at a rate of $1,500 per case. A desk/documents-only arbitration will not exceed document submissions of more than 100 pages in total and 7 total hours of time for the arbitrator to review the submissions and render the Award. Beyond 100 pages and 7 hours of time, the business will be responsible for additional arbitrator compensation at a rate of $300 per hour.

- **<u>In-Person, Virtual or Telephonic Hearing Arbitration</u>** – Arbitrators serving on an in-person, virtual or telephonic hearing arbitration case will receive compensation at a rate of $2,500 per day of hearing per arbitrator. The arbitrator compensation encompasses one preliminary conference, one day of in-person, virtual or telephonic hearing, and one final award. For cases with additional procedures, such as multiple telephone conferences, motion practice, post-hearing briefing, interim or partial awards, awards containing findings of fact and conclusions of law, or other processes not provided for in the Rules, the business will be responsible for additional arbitrator compensation.

Once a Preliminary Management Hearing is held by the arbitrator, the arbitrator is entitled to one-half of the arbitrator compensation rate. Once evidentiary hearings are held or all parties' documents are submitted for a desk/documents-only arbitration, the arbitrator is entitled to the full amount of the arbitrator compensation rate.

For in-person, virtual or telephonic hearing arbitrations, if an evidentiary hearing is cancelled fewer than 2 business days before the hearing, the arbitrator is entitled to receive compensation at the first day of hearing rate.

Any determination by the AAA on whether the business will be responsible for additional arbitrator compensation is in the sole discretion of the AAA and such decision is final and binding.

## Reallocation of Arbitrator Compensation, AAA Administrative Fees and Certain Expenses

Arbitrator compensation, expenses, and administrative fees (which include Filing Fees, Case Management Fees and Hearing Fees) are not subject to reallocation by the arbitrator(s) except as may be required by applicable law or upon the arbitrator's determination that a claim or counterclaim was filed for purposes of harassment or is patently frivolous.

## Hearing Room Rental

The hearing fees described above do not cover the rental of hearing rooms. The AAA maintains hearing rooms for rent in most offices for the convenience of the parties. Check with the administrator for availability and rates. Hearing room rental fees will be borne by the business.

## Abeyance Fee

(i) For Single Consumer Case Filing

Parties on cases held as inactive for one year will be assessed an annual abeyance fee of $500. If a party refuses to pay the assessed fee, the opposing party or parties may pay the entire fee on behalf of all parties, otherwise the matter will be administratively closed. All filing requirements, including payment of filing and other administrative fees, must be met before a matter may be placed in abeyance.

(ii) For Multiple Consumer Case Filings

Should the cases be stayed to allow for settlement negotiations or for any other reason, including judicial intervention, the AAA shall assess a single, **non-refundable** administrative fee of $2,500 for the stayed cases, and an additional, single, non-refundable administrative fee of $2,500 for the stayed cases every six months the cases are held in abeyance. All abeyance fees are to be paid by the business. All filing requirements, including payment of filing and other administrative fees, must be met before a matter may be placed in abeyance.

## Expenses

All expenses of the arbitrator, including required travel and other expenses, and any AAA expenses, as well as the costs relating to proof and witnesses produced at the direction of the arbitrator, shall be borne by the business.

## Consumer Clause Review and Registry Fee

Please note that all fees described below are **non-refundable.**

For businesses submitting a clause, the cost of reviewing the clause and maintaining that clause on the Registry is $500. A yearly Registry fee of $500 will be charged to maintain each clause on the Registry for each calendar year thereafter.

If the AAA receives a demand for consumer arbitration arising from an arbitration clause that was not previously submitted to the AAA for review and placement on the Registry, the business will incur an additional $250 fee for the AAA to conduct an immediate review of the clause.

Any subsequent changes, additions, deletions, or amendments to a currently registered arbitration agreement must be submitted for review and a review fee of $500 will be assessed at that time.

## AAA Mediation Fees for Multiple Consumer Case Filings

For cases that are determined by the AAA to fall under the Multiple Consumer Case Filing fees section of this Costs of Arbitration fee schedule, the cost of mediation is based on the hourly or daily mediation rate published on the mediator's AAA profile. In addition, the administrative fee for AAA to initiate the mediation process for the multiple consumer case filings is $10,000 plus $75 per hour for each hour billed by the mediator. The business shall be responsible for these administrative fees, unless the parties agree otherwise.

The $10,000 mediation initiation fee is due prior to the appointment of the mediator. If mediation is commenced after multiple consumer case filings have been filed, and the parties agree to stay the arbitrations to pursue mediation, any unpaid arbitration related administrative filing fees will become due if the arbitration process starts again. If the arbitration related administrative filing fees

Rules Amended and Effective September 1, 2014. Costs of Arbitration Amended and Effective November 1, 2020.    ❘    39

JA269

are paid prior to the parties commencing mediation, then the AAA may, in its sole discretion, determine to waive the $10,000 mediation initiation fee.

## AAA Administered Settlement Approval Process for Multiple Consumer Case Filings

For cases that are determined by the AAA to fall under the Multiple Consumer Case Filing fees section of this Costs of Arbitration fee schedule, where by law, court order and/or party agreement, the parties require a third party neutral to review and approve settlements, the fee for the AAA to provide administrative services for the purposes of a neutral to review and approve settlements is a flat rate of $3,250 plus $2,500 every six months thereafter that the cases remain open. The compensation of the neutral is $2,500. The business is responsible for all AAA fees and compensation referenced in this section.

## Fees for Additional Services

The AAA reserves the right to assess additional administrative fees for services performed by the AAA beyond those provided for in the *Consumer Arbitration Rules* and which may be required by the parties' agreement or stipulation.

## Procedures for the Resolution of Disputes through Document Submission

### D-1. Applicability

**(a)** In any case, regardless of claim size, the parties may agree to waive in-person/telephonic hearings and resolve the dispute through submission of documents to one arbitrator. Such agreement should be confirmed in writing no later than the deadline for the filing of an answer.

**(b)** Where no disclosed claims or counterclaims exceed $25,000, the dispute shall be resolved by these Procedures, unless a party asks for a hearing or the arbitrator decides that a hearing is necessary.

**(c)** If one party makes a request to use the Procedures for the Resolution of Disputes through Document Submission (Procedures) and the opposing party is unresponsive, the arbitrator shall have the power to determine whether to proceed under the Procedures. If both parties seek to use the Procedures after the appointment of an arbitrator, the arbitrator must also consent to the process.

**(d)** When parties agree to these Procedures, the procedures in Sections D-1 through D-4 of these Rules shall supplement other portions of these rules which are not in conflict with the Procedures.

### D-2. Preliminary Management Hearing

Within 14 calendar days of confirmation of the arbitrator's appointment, the arbitrator shall convene a preliminary management hearing, via conference call, video conference, or internet, to establish a fair and equitable procedure for the submission of documents, and, if the arbitrator deems appropriate, a schedule for one or more telephonic or electronic conferences.

### D-3. Removal from the Procedures

**(a)** The arbitrator has the discretion to remove the case from the Procedures if the arbitrator determines that an in-person or telephonic hearing is necessary.

**(b)** If the parties agree to in-person or telephonic hearings after a previous agreement to proceed under the Procedures, the arbitrator shall conduct such hearings. If a party seeks to have in-person or telephonic hearings after agreeing to the Procedures, but there is not agreement among the parties to proceed with in-person or telephonic hearings, the arbitrator shall resolve the issue after the parties have been given the opportunity to provide their respective positions on the issue.

JA271

### D-4. Time of Award

**(a)** The arbitrator shall establish the date for either final written submissions or a final telephonic or electronic conference. Such date shall operate to close the hearing, and the time for the rendering of the award shall commence on that day as well.

**(b)** The arbitrator shall render the award within 14 calendar days from the date the hearing is closed.

**(c)** The award is subject to all other provisions of these Rules that pertain to awards.

JA272

## Glossary of Terms

### Administrator

The Administrator's role is to manage the administrative aspects of the arbitration, such as the appointment of the arbitrator, to make preliminary decisions about where hearings might take place, and to handle the fees associated with the arbitration. As Administrator, however, the Administrator does not decide the merits of a case or make any rulings on issues such as what documents must be shared with each side. Because the Administrator's role is only administrative, the Administrator cannot overrule or change an arbitrator's decisions or rulings. The Administrator will comply with any court orders issued from litigation involving the parties to the dispute.

### ADR Agreement

An ADR Agreement is an agreement between a business and a consumer to submit disputes to mediation, arbitration, or other ADR processes.

### ADR Process

An ADR (Alternative Dispute Resolution) Process is a method of resolving a dispute other than by court litigation. Mediation and Arbitration are the most widely used ADR processes.

### ADR Program

An ADR Program is any program or service set up or used by a business to resolve disputes out of court.

### Arbitration

In arbitration, the parties submit disputes to an impartial person (the arbitrator) for a decision. Each party can present evidence to the arbitrator. Arbitrators do not have to follow the Rules of Evidence used in court.

Arbitrators decide cases with written decisions or "awards." An award is usually binding on the parties. A court may enforce an arbitration award and the court's review of arbitration awards is limited.

Rules & Procedures for Consumer ADR Disputes & Consumer Arbitration Disputes in Effect November 1, 2020    CONSUMER    43

JA273

## Arbitration Agreement

An arbitration agreement is a contract between parties to settle their disputes by binding arbitration. It is typically found in the parties' contract in a section entitled "Arbitration" or "Dispute Resolution." It gives the parties information about how they are choosing to settle any disputes that they might have.

## Arbitrator

Arbitrators are neutral and independent decision makers who are not employees of the administrator. Except where the parties to a case reach their own settlement, the Arbitrator will make the final, binding decision on the dispute and render it in writing, called the Award. The Arbitrator makes all the procedural decisions on a case not made by the administrator or not decided jointly by the parties. The Arbitrator may grant any remedy, relief, or outcome that the parties could have received in court, including awards of attorney's fees and costs, in accordance with the law(s) that applies to the case.

Once appointed to a case, an Arbitrator may not be removed by one party without the other party's consent or unless the administrator determines an Arbitrator should be removed and replaced by another Arbitrator chosen by the administrator in a manner described in these Rules.

## Case Administrator

The Case Administrator is the AAA's employee assigned to handle the administrative aspects of the case. He or she does not decide the case. He or she manages the case's administrative steps, such as exchanging documents, matching schedules, and setting up hearings. The Case Administrator is the parties' contact point for almost all aspects of the case outside of any hearings.

## Claimant

A Claimant is the party who files the claim or starts the arbitration. Either the consumer or the business may be the Claimant.

## Demand for Arbitration (also referred to as "Demand")

The written document created by the claimant that informs the respondent that it wishes to arbitrate a dispute. This document provides basic information about

Case 5:22-cv-00383-BO-RN   Document 23-19   Filed 12/22/22   Page 45 of 49

JA274

the dispute, the parties involved and what the claimant wants as a result of the arbitration.

## Documents-Only Arbitration

In a Documents-Only Arbitration, the parties submit their arguments and evidence to the arbitrator in writing. The arbitrator then makes an award based only on the documents. No in-person or telephone hearing is held.

## Independent ADR Institution

An Independent ADR Institution is an organization that provides independent and impartial administration of ADR programs for consumers and businesses. The American Arbitration Association is an Independent ADR Institution.

## In-Person Hearing

During an In-Person Hearing, the parties and the arbitrator meet in a conference room or office and the parties present their evidence in a process that is similar to going to court. However, an In-Person Hearing is not as formal as going to court.

## Mediation

In Mediation, an impartial person (the mediator) helps the parties try to settle their dispute by reaching an agreement together. A mediator's role is to help the parties come to an agreement. A mediator does not arbitrate or decide the outcome.

## Neutral

A "Neutral" is a mediator, arbitrator, or other independent, impartial person selected to serve as the independent third party in an ADR process.

## Party

The party is the person(s) or business that is involved in the dispute in the arbitration process. Usually, these are the people or businesses that have an arbitration agreement between them that specifies that a dispute should be resolved by arbitration.

## Parties

Parties are all the separate individuals, businesses, or organizations involved in the arbitration.

### Opposing Party

The opposing party is the other party that is on the opposite side of the arbitration from you. If you are the claimant, the Opposing Party is the respondent. If you are the respondent, the Opposing Party is the claimant. If you are the consumer, the Opposing Party is the business. If you are the business, the Opposing Party is the consumer.

### Respondent

The respondent is the party against whom the claim is filed. If a Respondent states a claim in arbitration, it is called a counterclaim. Either the consumer or the business may be the Respondent.

### Telephone Hearing

In a Telephone Hearing, the parties have the opportunity to tell the arbitrator about their case during a conference call. They also present their evidence to the arbitrator during the call. Often this is done after the parties have sent in documents for the arbitrator to review.

JA276

*© 2020 American Arbitration Association®, Inc. All rights reserved. These rules are the copyrighted property of the*
*American Arbitration Association (AAA) and are intended to be used in conjunction with the AAA's administrative services.*
*Any unauthorized use or modification of these rules may violate copyright laws and other applicable laws.*
*Please contact 800.778.7879 or websitemail@adr.org for additional information.*



800.778.7879 | websitemail@adr.org | adr.org

# EXHIBIT B



## HIGHLIGHTS of the new
## American Arbitration Association® (AAA®)
## Consumer Arbitration Rules

### Effective September 1, 2014

Following is a summary of the most significant, unique and noteworthy aspects of the **Consumer Arbitration Rules**, the AAA's first stand-alone set of rules developed specifically for the arbitration of disputes arising from consumer agreements. The Rules apply to all applicable cases filed on or after September 1, 2014 and replace the *Consumer-Related Disputes Supplementary Procedures*.

### Significant Sections and Rules

#### Rules Divided into Sections Representing the Main Stages of the Arbitration Process

The **Consumer Arbitration Rules** ("Rules") have been organized into easy-to-follow sections that represent the main stages of the arbitration process, as follows:

- Filing a Case and Initial AAA Administrative Steps
- Appointing the Arbitrator
- Pre-Hearing Preparation
- Hearing Procedures
- Conclusion of Hearing
- Post-Hearing
- General Procedural Rules

#### Effective Management of the Arbitration Process

A significant focus has been placed on the need for arbitrators to manage the arbitration process effectively. The Rules provide arbitrators with the tools and authority to do so, while still promoting a process that is consistent with the due process principles of the *Consumer Due Process Protocol* ("*Protocol*").

**R-21. Preliminary Management Hearing with the Arbitrator:** Rule R-21 provides that if a party requests or if the AAA or the arbitrator so determines, a preliminary management hearing is to be scheduled as soon as practicable following the appointment of the arbitrator. The preliminary management hearing will be conducted by telephone unless the arbitrator determines an in-person meeting is necessary. If this management hearing takes place, the arbitrator and the parties should discuss the future conduct of the case, clarifying issues and claims, scheduling the hearings and other preliminary matters.



**R-22. Exchange of Information between the Parties:** This Rule conveys the principle that arbitration must remain a fast and economical process, while still empowering the arbitrator with the authority to order the exchange of information needed for a fair process for all parties. Paragraph (a) allows the arbitrator to direct the exchange of documents and other information between the parties, as well as the identification of witnesses, if any, the parties intend to have testify at the hearing. Paragraph (c) establishes the presumption that no other exchange of information beyond this is contemplated under the Rules, unless the arbitrator determines that further information exchange is needed to provide for a fundamentally fair process.

### Effective Management of Motions

**R-24. Written Motions (except for Dispositive Motions, see R-33):** This Rule provides authority to the arbitrator to manage the filing of written motions (except for Dispositive Motions, see R-33) by requiring the parties and the arbitrator to first conduct a conference call to attempt to resolve the issue that gives rise to a proposed motion. Only after such a call takes place may the arbitrator consider a party's request to file a written motion. This Rule will limit the filing of expensive and time-consuming motions exclusively to situations deemed necessary by the arbitrator.

**R-33. Dispositive Motions:** This Rule specifically grants to the arbitrator the authority to allow the filing of a dispositive motion if he or she determines that the moving party has shown substantial cause that the motion is likely to succeed and dispose of or narrow the issues in the case.

### More Access to Information about Arbitration Agreements and Awards

Important elements of the Rules are provisions that make information publicly available about consumer arbitrations administered by the AAA. This includes Rules establishing a registry of businesses with AAA consumer arbitration agreements and another that provides for the publication of redacted consumer arbitration awards.

**R-12. Business Notification and Publicly-Accessible Consumer Clause Registry:** This Rule establishes a publicly-available registry of businesses whose arbitration agreements have been reviewed by the AAA and determined that they materially and substantially comply with the *Protocol*. After the AAA receives the consumer registry fee, reviews the submitted consumer clause and determines it will administer consumer-related disputes filed pursuant to the consumer clause, the business will be included on the publicly-accessible Consumer Clause Registry. The AAA's publicly-available Consumer Clause Registry will contain the name of the business, contact information, and the consumer arbitration clause, along with any related documents deemed necessary by the AAA. For more information on the registry, visit www.adr.org/consumerclauseregistry.

**R-43. Form of Award:** Paragraph (c) of this Rule allows the AAA to publish a consumer award rendered under the Rules, with the names of the parties and witnesses removed from such an award, unless a party agrees in writing to have its name included in the published award.

JA281



## Nonpayment by a Party

To address issues and increasing concerns where parties refuse to deposit their share of arbitrator compensation or administrative charges, a new rule has been added that authorizes arbitrators to take specific measures related to nonpayment.

**R-54. Remedies for Nonpayment:** Paragraph (a) of this Rule provides that any party may advance the fees of a nonpaying party so that an arbitration may proceed. Paragraph (b) provides that a party may request that the arbitrator take specific action relating to a party's nonpayment and suggests that an arbitrator may limit the nonpaying party's ability to assert or pursue its claim. In no event, however, may the arbitrator preclude the nonpaying party from defending a claim or counterclaim. Paragraph (b) also grants to a party the right to oppose a request for such measures arising from nonpayment and confirms that the paying party who is making a claim must submit evidence as required by the arbitrator for the making of an award. Paragraph (c) grants to either the AAA or the arbitrator the authority to order suspension of the arbitration for nonpayment. Paragraph (d) states that either the AAA or the arbitrator may terminate the proceedings if full payment is not made within the time specified following a suspension.

## Declining or Ceasing the AAA's Arbitration Services

The parties are expected to conduct themselves in a professional manner.

**R-55. Declining or Ceasing Arbitration:** This Rule sets forth the AAA's authority to decline to accept a demand for arbitration or stop the administration of an ongoing arbitration due to a party's improper conduct, including threatening or harassing behavior towards any AAA staff, an arbitrator or a party or party's representative.

## Procedures for the Resolution of Disputes through Document Submission

Conducting arbitration through the submission of documents rather than through an in-person or telephonic hearing can be a fast, economical and effective way to resolve a consumer dispute. As such, if claims or counterclaims do not exceed $25,000, the dispute will be resolved through the submission of documents only, unless a party asks for a hearing or the arbitrator decides a hearing is necessary; see R-1(g). Applicability (When the AAA Applies These Rules) and R-29. Documents-Only Procedure. To assist the parties and the arbitrator in establishing an effective process for such cases, the section *Procedures for the Resolution of Disputes through Document Submission* has been added to the Rules.

## Additional Noteworthy Rules and Sections

**R-1. Applicability (When the AAA Applies These Rules):** Paragraph (a) specifies when the Rules will be applied, provides the AAA's definition of "consumer agreement" and gives examples of contracts that typically do and do not meet the criteria for application of the Rules. The Rule also indicates that parties providing for the AAA's rules or AAA administration as part of a consumer agreement also shall be deemed to have agreed that application of the AAA's rules and AAA administration of the consumer arbitration shall be an essential term of their consumer agreement. Paragraph (d) states that the AAA administers consumer disputes that meet the due process standards contained in the



*Protocol* and the Rules, and if the AAA does decline to administer an arbitration, the parties may choose to submit the dispute to the appropriate court for resolution. Paragraph (e) gives the AAA the initial authority to apply or not apply the Rules. It does allow either party to object to the AAA's decision by the due date for filing an answer, and if the objection is filed, the arbitrator shall have the authority to make a final decision on which AAA rules apply. Paragraph (f) creates a 30-day suspension of administration if a party seeks judicial intervention and provides documentation that the judicial intervention was sought to the AAA within 30 days of the AAA's commencement of the administration. This allows the party 30 days to obtain a stay of arbitration from the court.

**R-9. Small Claims Option for the Parties:** This Rule clarifies that if the party's claim is within the jurisdiction of a small claims court, either party may choose to take the claim to that court instead of arbitration as follows: paragraph (a) states that a party can take the case directly to small claims court before filing with the AAA; paragraph (b) provides that after a case is filed with the AAA but before an arbitrator is appointed, a party can send a written notice to the opposing party and the AAA that it wants the case decided by a small claims court, at which time the AAA will administratively close the case; and paragraph (c) states that once the arbitrator is appointed, a party still can request that the case go to small claims court, but it will be up to the arbitrator to determine if the case proceeds in arbitration or in small claims court.

**R-11. Fixing of Locale (the city, county, state, territory and/or country where the arbitration will take place):** The Rule provides that the AAA makes the initial locale determination for an in-person hearing. A party who disagrees with the AAA's decision can ask the arbitrator to make a final decision. The locale decision will be made after considering the parties' positions on the subject, the circumstances of the parties and dispute and the Protocol.

**R-17. Number of Arbitrators:** Disputes under the Rules will be heard and decided by a single arbitrator, unless the agreement provides for a specific number or the parties agree on a number.

**R-18. Disclosure:** Paragraph (a) places a duty not only on the arbitrator but also upon the parties and their representatives to make disclosures about possible conflicts in connection with an appointed arbitrator. In addition, Paragraph (a) introduces a provision that failure of a party or representative to disclose a potential conflict may result in waiver of the right to object to an arbitrator in accordance with Rule 50.

**R-25. Representation of a Party:** The Rule clarifies that a party can participate without representation or may choose to be represented by an attorney or other authorized representative, unless that choice is prohibited by applicable law. It also clarifies that because arbitration is a final, legally-binding process that may impact a party's rights, parties may want to consider consulting an attorney.

**R-32. Conduct of Proceedings:** Paragraph (d) sets the expectation that arbitrations under these Rules generally will not exceed a day of hearing. If a party shows good cause, the arbitrator may schedule additional hearings within seven calendar days after the initial hearing.

**R-42. Time of Award:** For cases that have an in-person or telephonic hearing, the award shall be issued no later than 30 calendar days from the date the hearing is closed. For a documents-only arbitration, the award is due no later than 14 days from the date the arbitrator sets for his or her receipt of the final statements and proofs.



**R-43. Form of Award:** Paragraph (b) provides that an award shall provide the concise written reasons for the decision unless the parties agree otherwise.

**R-44. Scope of Award:** Paragraph (a) states that the arbitrator may grant any remedy, relief or outcome that the parties could have received in court. Paragraph (c) sets forth the arbitrator's authority to allocate compensation, administrative fees and certain expenses to any party upon the arbitrator's determination that a party's claim or counterclaim was filed for purposes of harassment or is patently frivolous.

## Costs of Arbitration (Including AAA Administrative Fees)

Due to the increasing complexity of some consumer arbitration cases, the AAA has added the flexibility to raise administrative fees and arbitrator compensation in certain circumstances. The following sub-sections set forth the circumstances when the AAA would consider taking such actions:

- **Sub-section (i), Filing Fees,** permits the AAA to assess additional administrative fees for services performed by the AAA beyond those provided for in the Rules and which may be required by the parties' agreement or stipulation.
- **Sub-section (ii), Neutral Arbitrator's Compensation,** permits the AAA to raise arbitrator compensation rates set forth in the Costs of Arbitration Section because of the complexity of the case or for processes or procedures beyond those provided for in the Rules and which may be required by the parties' requests, agreement or stipulation.

As discussed previously, a Consumer Clause Registry is being established by these Rules. The cost for such service is set forth in the Costs of Arbitration section. Subsection (viii), Consumer Clause Registry Fee, sets forth the non-refundable fee to businesses that submit their consumer clauses for review and inclusion on the Consumer Clause Registry.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
### CASE NO. 5:22-cv-00383

PABLO ESPIN, NICHOLAS PADAO,
JEREMY BELL, and KEITH TAYLOR, *on
behalf of themselves and others similarly
situated*,

          Plaintiffs,

          v.

CITIBANK, N.A.,

          Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

DECLARATION OF KNOLL LOWNEY IN
SUPPORT OF PLAINTIFFS' OPPOSITION
TO CITIBANK'S MOTION TO COMPEL
ARBITRATION AND STAY ACTION

I, Knoll Lowney, declare the following under penalty of perjury and on the basis of personal knowledge to which I am competent to testify:

1.     I am counsel for the Plaintiffs in this matter.

2.     Plaintiff Pablo Espin was on active duty when this case was filed but has since been honorably discharged.

3.     Attached hereto as <u>Exhibit A</u> is a true and correct copy of an excerpt of the *Report On Predatory Lending Practices Directed at Members of the Armed Forces and Their Dependents*, Department of Defense, August 9, 2006 (available at https://apps.dtic.mil/sti/pdfs/ADA521462.pdf). Specifically, the excerpt is the Executive Summary of this document.

4.     Attached hereto as <u>Exhibit B</u> is a true and correct copy of a letter received by Plaintiff Pablo Espin from Citibank on January 14, 2022.

5.    Plaintiffs Keith Taylor and Jeremy Bell were on active duty in 2016 when Citibank

added its new arbitration provision to its cardmember agreement.

Signed this the 16th day of February 2023.

By:    */s/ Knoll Lowney*
               Knoll Lowney, WSBA No. 23457

2

## CERTIFICATE OF SERVICE

This is to certify that a true and exact copy of the foregoing document and referenced exhibits were filed electronically on the 16th day of January, 2023, via the Court's electronic filing system and notice of this filing will be sent to all Parties by operation of the Court's electronic filing system.

*/s/ Alyssa Koepfgen*
Alyssa Koepfgen (*pro hac vice*)
**Attorney for Plaintiffs**

3

# Exhibit A



# Report On Predatory Lending Practices Directed at Members of the Armed Forces and Their Dependents.

**August 9, 2006**

| Report Documentation Page | | *Form Approved*<br>*OMB No. 0704-0188* |
|---|---|---|
| Public reporting burden for the collection of information is estimated to average 1 hour per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to Washington Headquarters Services, Directorate for Information Operations and Reports, 1215 Jefferson Davis Highway, Suite 1204, Arlington VA 22202-4302. Respondents should be aware that notwithstanding any other provision of law, no person shall be subject to a penalty for failing to comply with a collection of information if it does not display a currently valid OMB control number. | | |

| 1. REPORT DATE<br>**09 AUG 2006** | 2. REPORT TYPE | 3. DATES COVERED<br>**00-00-2006 to 00-00-2006** |
|---|---|---|

| 4. TITLE AND SUBTITLE<br>**Report On Predatory Lending Practices Directed at Members of the Armed Forces and Their Dependents.** | 5a. CONTRACT NUMBER |
|---|---|
| | 5b. GRANT NUMBER |
| | 5c. PROGRAM ELEMENT NUMBER |
| 6. AUTHOR(S) | 5d. PROJECT NUMBER |
| | 5e. TASK NUMBER |
| | 5f. WORK UNIT NUMBER |

| 7. PERFORMING ORGANIZATION NAME(S) AND ADDRESS(ES)<br>**Department of Defense,Washington,DC,20301** | 8. PERFORMING ORGANIZATION REPORT NUMBER |
|---|---|
| 9. SPONSORING/MONITORING AGENCY NAME(S) AND ADDRESS(ES) | 10. SPONSOR/MONITOR'S ACRONYM(S) |
| | 11. SPONSOR/MONITOR'S REPORT NUMBER(S) |

| 12. DISTRIBUTION/AVAILABILITY STATEMENT<br>**Approved for public release; distribution unlimited** |
|---|

| 13. SUPPLEMENTARY NOTES |
|---|

| 14. ABSTRACT |
|---|

| 15. SUBJECT TERMS |
|---|

| 16. SECURITY CLASSIFICATION OF: | | | 17. LIMITATION OF ABSTRACT | 18. NUMBER OF PAGES | 19a. NAME OF RESPONSIBLE PERSON |
|---|---|---|---|---|---|
| a. REPORT<br>**unclassified** | b. ABSTRACT<br>**unclassified** | c. THIS PAGE<br>**unclassified** | **Same as Report (SAR)** | **92** | |

**Standard Form 298 (Rev. 8-98)**
Prescribed by ANSI Std Z39-18

## 2. <u>Executive Summary</u>

a.  Predatory lending practices are prevalent and target military personnel, either through proximity and prevalence around military installations, or through the use of affinity marketing techniques, particularly on-line.  Mortgage lending was not considered as part of this report.  The predatory lenders reviewed as part of this report provide short term loans (payday, car title, and tax refund anticipation loans) and installment loans (unsecured loans focused on the military and rent-to-own).  These lenders have several characteristics in common:

   (1).  Predatory lenders seek out young and financially inexperienced borrowers who have bank accounts and steady jobs, but also have little in savings, flawed credit or have hit their credit limit.  These borrowers are less likely to weigh the predatory loan against other opportunities and are less likely to be concerned about the consequences of taking the loan.

   (2).  Predatory lenders make loans based on access to assets (through checks, bank accounts, car titles, tax refunds, etc.) and guaranteed continued income, but not on the ability of the borrower to repay the loan without experiencing further financial problems.

   (3).  Predatory lenders market to the military through their ubiquitous presence around military installations and/or through the use of terms to affiliate themselves with the military.  Increasingly the Internet is used to promote loans to Service members.

   (4).  Predatory products feature high fees/interest rates, with some requiring balloon payments, while others pack excessive charges into the product.  The result of their efforts is to obfuscate the comparative cost of their product with other options available to the borrower.

   (5).  Most of the predatory business models take advantage of borrower's inability to pay the loan in full when due and encourage extensions through refinancing and loan flipping.  These refinances often include additional high fees and little or no payment of principal.

   (6).  Predatory lenders attempt to work outside of established usury limits, either by attempting to obtain exemptions from federal and state statutes or by developing schemes designed to circumvent existing laws.

b.  The Department is exerting significant effort to educate Service members on the potential dangers of using predatory loans, better ways of managing their finances, and in the event they have financial problems, better solutions for them to pursue.

4

    (1).   The Military Services educated 354,000 Service members and family members in 2005, and partner organizations educated an additional 61,000. Messages were also transmitted through 960 news articles and 157 official memos on military installations.

    (2).   On-going programs to enhance awareness, to continue the awareness process, to provide counseling and to provide assistance are included in a comprehensive strategic plan.

c.   Commanders are using the methods available to them to curtail the prevalence of predatory loans; however, doing so is not a simple proposition.

    (1).   The Armed Forces Disciplinary Control Board (AFDCB) provides an avenue to declare a lender off-limits; however, the process is not suited to deal with businesses that work within the law. The Department is taking steps to improve this process.

    (2).   Senior commanders are delivering the message that obtaining counseling and assistance is a far better option than using predatory loans or continuing to service debt through high cost loans.

    (3).   Alternatives to payday loans and high interest installment loans are available through the Military Aid Societies and through several banks and many credit unions located on or near military installations. The Military Aid Societies provided over $87 million in assistance in 2005 and have established special programs to assist Service members trapped in high cost loans.

d.   There are on-going efforts to persuade Service members not to fall victim to the lure of easy credit to solve their financial concerns, and to consider several better options. As a result, Service members are doing better with their finances, though considerable predatory lending problems still remain.

For example: Active duty Air Force E-4, assigned to Maxwell AFB, AL, originally obtained a $500 payday loan with an agreement to pay back $600 in two weeks. She then took out other payday loans and was forced to do multiple rollovers on each one. To pay off these loans she contacted an installment loan company who provided her with a $10,000 loan at 50 percent annual percentage rate (APR). Total cost to pay off the payday loans was $12,750 and her total obligation to the installment loan company was $15,000. Her financial problems were a contributing factor to her pending divorce.

5

e.  Eleven States including Connecticut, Georgia, Maine, Maryland, Massachusetts, New Jersey, New York, North Carolina, Pennsylvania, Vermont, and West Virginia continue to maintain strong usury laws and to aggressively enforce those laws, thereby limiting the impact of predatory lending on their citizens.  In addition, some states have enacted statutes to eliminate exemptions which lenders have used to operate outside of existing state usury caps.  For example:

(1).  The State of Georgia recently enacted a tough anti-payday loan law to close loopholes and strengthen penalties against lenders that exceed the state's 60% usury cap.  The State of North Carolina refused to reauthorize its payday lending law following the sunset of its original authorization.

(2).  The other thirty-nine states have legalized payday lending using provisions such as mandatory databases, cooling off periods, attempts to stop rollovers and back-to-back transactions, and attempts to stop borrowing from multiple lenders.  However, even with the addition of all these "consumer bells and whistles", these laws do not stop the debt trap.

f.  The Department of Defense seeks the following protections against predatory lending to Service members, as described in the report:

(1).  **Require that unambiguous and uniform price disclosures be given to all Service members and family members regard to any extension of credit (excluding mortgage lending).**

(a).  Require all fees, charges, insurance premiums and ancillary products sold with any extension of credit to be included within the definition of finance charge for the computation and disclosure of the APR for all loans made to military borrowers.

(b).  Require that the finance charge and the APR be included in all advertising to Service members including on-line websites and be quoted verbally to prospective military borrowers prior to application.

(c).  It is understood that such special military disclosures may discourage lenders and limit the availability of credit to certain Service members, but the Department believes this risk is justified given the impact of predatory loans.

(2).  **Require a federal ceiling on the cost of credit to military borrowers, capping the APR to prevent any lenders from imposing usurious rates.**

6

(a). Lenders should be prohibited from directly or indirectly imposing, charging, or collecting rates in excess of 36 percent APR with regard to extensions of credit made to Service members and their families. This APR must include <u>all</u> cost elements associated with the extension of credit, including the "optional" add-ons commonly used to evade ceilings, such as credit insurance premiums.

(b). It is understood that such an interest rate cap may limit the availability of credit to certain Service members. Limiting high-cost options assists the Department in making the point clear to Service members and their families that high cost loans are not fiscally prudent. A clear, unambiguous rate ceiling is justified given the high fees, interest and other charges associated with loans to Service members reviewed in this report, and the impact of those predatory loans on military readiness and troop morale.

(b). Lenders should not interpret the 36 percent cap as a target for small loans provided to Service members; it would be a ceiling, and often a lower rate would be more appropriate to the risk of a borrower. The passage of such a protection should not be deemed an authorization for any lender to lend at a rate not otherwise authorized by applicable state or federal law.

(3). **Prohibit lenders from extending credit to Service members and family members without due regard for the Service member's ability to repay.**

(a). Prohibit lenders from using checks, access to bank accounts and car title pawns as security for obligations. These methods provide undue and coercive pressure on military borrowers and allow lenders more latitude in making loans without proper regard for the Service member's ability to repay. They also place key assets at undue risk.

(b). Restrict the ability of creditors and loan companies to require or coerce Service members into establishing allotments to repay their obligations. Allotments must be at the convenience and discretion of the military borrower and not a prerequisite for obtaining a loan.

(4). **Prohibit provisions in loan contracts that require Service members and family members to waive their rights to take legal action.**

Service members should maintain full legal recourse against unscrupulous lenders. Loan contracts to Service members should not include mandatory arbitration clauses or onerous notice provisions, and should not require the Service member to waive his or her right of recourse, such as the right to

7

participate in a plaintiff class.  Waiver is not a matter of "choice" in take-it-or-leave-it contracts of adhesion.

(5).  **Prohibit contract clauses that require Service members to waive any special legal protections afforded to them.**

These proposed protections, and those provided to Service members through the Servicemembers Civil Relief Act, were intended to strengthen our national defense by enabling Service members to devote their entire energy to the defense needs of the Nation.  In the interest of our national defense, such protections should not be subjected to waiver (other than in circumstances currently stated in the Servicemembers Civil Relief Act), in writing or otherwise.

(6).  **Prohibit states from discriminating against Service members and family members stationed within their borders, and prohibit lenders from making loans to Service members that violate consumer protections of the state in which their base is located.**

(a).  States should be prohibited from discriminating against Service members stationed within their borders and should be required to assure that such Service members are entitled to and receive the benefit of all protections offered to citizens of the state, including regulation of lenders located in the state or that provide loans via the Internet to Service members stationed there.

(b).  States have a vested interest in assuring the financial safety and stability of Service members stationed within their borders.  States should be prohibited from authorizing predatory lenders to treat "non-resident" Service members stationed within the state's borders differently than the state would permit that lender to treat in-state residents.

(c).  Lenders should be prohibited from charging Service members stationed within a state an APR higher than the legal limit for residents of the state, and should also be prohibited from violating any other consumer lending protections for residents of the state in which the base is located.

g.  It is understood that limits, such as interest rate caps, may limit the availability of credit to certain Service members.  The intent of these limits is to reduce availability if the credit being offered does not factor in Service members' ability to repay. Limiting high-cost options assists the Department in making the point clear to Service members and their families that high cost loans are not fiscally prudent and that they are to resolve their financial problems through counseling and alternatives, rather than perpetuate them through predatory high cost loans.

8

h.  Service members see the value of limitations on the availability of credit and the cost of obtaining it.  When asked by the Consumer Credit Research Foundation whether "government should limit the interest rates that lenders can charge even if it means fewer people will be able to get credit," 75 percent of non-payday borrowers and 74% of payday borrowers surveyed said they agreed.[1]

i.  The Department takes seriously the responsibility of the individual Service member to make prudent decisions and to manage personal finances well.  However, predatory lending undermines military readiness, harms the morale of troops and their families, and adds to the cost of fielding an all volunteer fighting force.  Education, counseling, assistance from Aid Societies, and sound alternatives are necessary but not sufficient to protect Service members from predatory lending practices or products that are aggressively marketed to consumers in general and to military personnel directly.

---

[1] Dr. William O. Brown, Jr., and Dr. Charles B. Cushman, Jr., "*Payday Loan Attitudes and Usage Among Enlisted Military Personnel*," Consumer Credit Research Foundation, June 27, 2006, p. 10

9

# Exhibit B



PO Box 6500
Sioux Falls, SD 57117-6500

January 14, 2022

---

## 🏦 CONFIRMATION

---

PABLO J ESPIN
183 EDUCATION DR
SPRING LAKE NC 28390-9804

Pablo J Espin
Cardmember since 2014
Account ending in 6124



# 🏦 Your account has been approved for SCRA benefits

Hi, Pablo. We approved your Citi ThankYou® Preferred MasterCard® account for Servicemembers Civil Relief Act (SCRA) benefits. Since your Citi ThankYou® Preferred MasterCard® account is eligible for SCRA and our military pricing benefits, we lowered the Annual Percentage Rate (APR) and fees on this account. In addition, if your account is enrolled in a Citi Flex Plan, any Citi Flex Plan Payment Amount you are required to pay may be lowered. To see your current Citi Flex Plan Payment Amount, if applicable, you can go to citi.com/flexplansummary or refer to your monthly billing statement.

Please note, we credited your account for any fees and interest charges that may have been applied to your account between the active duty start date and the time we were notified.

## Get the most out of your account

The following terms apply to your account from the active duty start date until the active duty end date:

- 0% APR on your existing balance and new transactions
- No fees, except for customer-requested service fees

If you have a Citi Flex Plan balance on your Account, for each such plan we will recalculate the Citi Flex Plan Payment Amount that you must pay as part of your Minimum Payment Due while you are eligible for SCRA benefits. Your new Citi Flex Plan

0.L0280035001.I20220114400124326.083.R.TN.CI.0001.RPD0W2L9716691571496765.

JA298



Pablo J Espin
Page 2 of 2
Account ending in 6124

## ⓘ CONFIRMATION

Payment Amount will be calculated using the same formula disclosed in Section 5 of
your Card Agreement, except that the calculation will be based on the lowered APR, the
number of months remaining in your Citi Flex Plan repayment period, and your Citi Flex
Plan balance as of the start of the next Billing Period following the date of this letter.

When active duty ends, the terms on the APRs and fees on this account will change. If
you have a Citi Flex Plan Balance on your account at this time, your Citi Flex Plan
Payment Amount may increase, which would in turn increase your Minimum Payment
Due. We'll be sure to notify you 45 days before these changes take effect.

### If active duty is extended

We can extend the SCRA and our military pricing benefits if the active duty date is
extended-just send us a copy of the updated Department of Defense military orders to
the address or fax listed below:

    Military Response Unit
    PO Box 790398
    St. Louis, MO 63179
    Fax: 1-866-533-0503

If you have any questions regarding the SCRA benefits, visit us at citi.com or call us at
1-877-804-1082 (TTY/TDD: 1-800-325-2865 for hearing and speech impaired services
only). If you're outside the U.S., you can call us collect at 1-904-954-8001.

Citi is at your side before, during and after every purchase.

                                                            Your Citi Team

©2022 Citibank, N.A. Citi, Citibank, Citi with Arc Design, Citi Mobile, ThankYou and Citi
ThankYou are registered service marks of Citigroup Inc.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:22-CV-383-BO-RN

PABLO ESPIN, NICHOLAS PADAO,       )
JEREMY BELL, and KEITH TAYLOR,     )
*on behalf of themselves and others similarly* )
*situated*,                        )
                                   )
                    Plaintiffs,    )
                                   )
        v.                         )                    O R D E R
                                   )
CITIBANK, N.A.,                    )
                                   )
                    Defendant.     )

This cause comes before the Court on defendant's motion to compel arbitration and stay this action. The appropriate responses and replies have been filed and a hearing on the matter was held before the undersigned on September 28, 2023, at Raleigh, North Carolina. In this posture, the motion is ripe for ruling.

## BACKGROUND

The Court incorporates the general factual and procedural background outlined in its order denying defendant Citibank's motions to dismiss for lack of personal jurisdiction. Because the Court has determined that it can exercise personal jurisdiction over the claims of the named plaintiffs against Citibank, it now proceeds to determine whether this matter must be stayed and referred to arbitration.

Each named plaintiff has an account with Citibank. According to Citibank's records, each named plaintiff received correspondence from Citibank which contained an arbitration agreement. *See* [DE 23-2] Booth Decl. ¶¶ 4-28; [DE 23-13] Grayot Decl. ¶¶ 5-10. In addition to arbitration

JA300

agreements contained in their original Card Agreements, in 2015 and 2016 Citibank provided

plaintiffs with new credit cards and New Card Agreements, with correspondence about "important

changes to [their] account terms," (Change-In-Terms), or for new customers like Padao simply

New Card Agreements. *See, e.g.,* Booth Decl. ¶¶ 8, 15. Pursuant to the New Card Agreements and

Change-In-Terms, plaintiffs had the right to reject the arbitration provision in writing by a date

certain. *Id.* ¶ 9. Citibank contends that each of the plaintiffs received notice of the arbitration

agreement and that it has no records reflecting that any of the named plaintiffs rejected the

arbitration provision.

The most recent New Card Agreement arbitration provisions provide that

> Except as stated below, all Claims are subject to arbitration, no matter what legal
> theory they're based on or what remedy (damages, or injunctive or declaratory
> relief) they seek, including Claims based on contract, tort (including intentional
> tort), fraud, agency, your or our negligence, statutory or regulatory provisions, or
> any other sources of law; Claims made as counterclaims, cross-claims, third-party
> claims, interpleaders or otherwise; Claims made regarding past, present, or future
> conduct; and Claims made independently or with other claims. This also includes
> Claims made by or against anyone connected with us or you or claiming through
> us or you, or by someone making a claim through us or you, such as a co-applicant,
> authorized user, employee, agent, representative or an affiliated/parent/ subsidiary
> company.

*See, e.g.,* [DE 23-5 p. 16]. They further purport to waive a borrower's ability to participate in a

class action by providing that

> Claims brought as part of a class action, private attorney general or other
> representative action can be arbitrated only on an individual basis. The arbitrator
> has no authority to arbitrate any claim on a class or representative basis and may
> award relief only on an individual basis. If arbitration is chosen by any party,
> neither you nor we may pursue a Claim as part of a class action or other
> representative action.

*See, e.g.* [DE 23-16 p.6].

Plaintiffs do not deny that their New Card Agreements include arbitration provisions and

they do not argue that they, in fact, opted out of those provisions. Rather, they contend that the

arbitration agreements are unenforceable as to their claims in this case because they are void in light of amendments to the Servicemembers Civil Relief Act (SCRA) and the Military Lending Act (MLA) and its implementing regulations. Plaintiffs further contend that the severability clauses in plaintiffs' arbitration provisions expressly state that their claims here, which are class and representative claims, are not covered by the agreement to arbitrate.

The United States has filed a statement of interest in this case in which it contends that the SCRA overrides the Federal Arbitration Act's mandate that valid arbitration agreements be enforced. [DE 29]. A group of military organizations has also sought leave to file an amicus curiae brief in support of plaintiffs. [DE 35]. That request is allowed and the Court has considered the arguments of the military organizations.

<div align="center">DISCUSSION</div>

The Federal Arbitration Act ("FAA") "reflects a liberal federal policy favoring arbitration agreements." *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500 (4th Cir. 2002) (quotations omitted). A district court must stay proceedings and compel arbitration if the moving party demonstrates: (1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect, or refusal of the nonmovant to arbitrate the dispute. *Id.* at 500–01. The purpose of the FAA "was to reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts, and to place arbitration agreements upon the same footing as other contracts." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991).

<div align="center">3</div>

<div align="center">JA302</div>

"The Servicemembers Civil Relief Act is part of a long record of congressional concern for the domestic affairs of those in military service." *Gordon v. Pete's Auto Serv. of Denbigh, Inc.*, 637 F.3d 454, 457 (4th Cir. 2011). Moreover, "the United States Supreme Court has unambiguously required courts to give a broad construction to the statutory language of the SCRA to effectuate the Congressional purpose of granting active-duty members of the armed forces repose from some of the trials and tribulations of civilian life . . .." *Brewster v. Sun Tr. Mortg., Inc.*, 742 F.3d 876, 879 (9th Cir. 2014).

Section 547 of the National Defense Authorization Act for Fiscal Year 2020 amended the SCRA to provide as follows: "Any person aggrieved by a violation of [the SCRA] may in a civil action . . . be a representative party on behalf of members of a class or be a member of a class, in accordance with the Federal Rules of Civil Procedure, notwithstanding any previous agreement to the contrary." 50 U.S.C. § 4042(a). Congress further stated that this amendment "shall not be construed to imply that a person aggrieved by a violation of such Act did not have a right to bring a civil action as a representative party on behalf of members of a class or be a member of a class in a civil action before the date of the enactment of this Act." 116 P.L. 92, div. A, title V § 547(b), 133 Stat. 1198 (2019).

Congress, in its amendment to the SCRA, made clear that, notwithstanding any agreement to the contrary, servicemembers may bring and participate in class actions to enforce the provisions of the SCRA. Pursuant to Citibank's own arbitration terms, "If any part of this arbitration provision is deemed invalid or unenforceable, the other terms shall remain in force, *except that there can be no arbitration of a class or representative Claim.*" *See* [DE 23-5 p. 17] (emphasis added). Thus, the Court agrees with plaintiffs that it need not consult the FAA in this case as Citibank's own arbitration agreement confirms that any class claim, which the SCRA mandates that plaintiffs may

4

bring, cannot be arbitrated. That the SCRA was amended to add class action protection in 2019, after these plaintiffs entered into the arbitration agreements, is of no moment as Congress dictated that the right to bring a class action exists "notwithstanding any prior agreement to the contrary." Where Congress has expressly dictated the reach of a statute, courts must follow Congress' instructions. *Frontier-Kemper Constructors, Inc. v. Dir., Off. of Workers' Comp. Programs, United States Dep't of Lab.*, 876 F.3d 683, 688 (4th Cir. 2017). It is plain from the language of the SCRA amendment that Congress intended the class-action protections to extend to agreements entered into prior to its passage. To the extent that Congress has not clearly articulated the reach of the SCRA class action protections, "unlike other intervening changes in the law, a jurisdiction-conferring or jurisdiction-stripping statute usually 'takes away no substantive right but simply changes the tribunal that is to hear the case'" and thus may be applied retroactively. *Hamdan v. Rumsfeld*, 548 U.S. 557, 576–77 (2006) (citation omitted).

To the extent it must consider the FAA, the Court determines that arbitration is not required in this case. For plaintiffs to prevail, they must demonstrate that "Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue." *Gilmer*, 500 U.S. at 26. Evidence of Congress's intention may be found in the text of the SCRA, its legislative history, or in "an 'inherent conflict' between arbitration and the [SCRA's] underlying purposes." *Id.*; *see also Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1624 (2018) (only where Congress has demonstrated a "clear and manifest" intention that one statute should displace another may a court so find).

While the SCRA is silent as to arbitration specifically, it was nonetheless amended to codify the unwaivable right of servicemembers to bring and participate in class actions, "notwithstanding any previous agreement to the contrary." 50 U.S.C. § 4042(a). Importantly

5

JA304

"[t]here is a substantive difference between finding that arbitration is an appropriate alternative mechanism to enforce a statutorily created right to sue and overriding an express congressional command proscribing waiver of a specific judicial forum." *Lyons v. PNC Bank, Nat'l Ass'n*, 26 F.4th 180, 187 (4th Cir. 2022). Here, Congress, in its amendment to the SCRA, made clear that servicemembers may bring and participate in class actions in accordance with the Federal Rules of Civil Procedure to enforce the provisions of the SCRA. The Supreme Court has "stressed that the absence of any specific statutory discussion of arbitration or class actions is an important and telling clue that Congress has not displaced the Arbitration Act." *Epic Sys.*, 138 S. Ct. at 1627. But the SCRA provides such a discussion. By providing servicemembers with an unwaivable right to participate in a class action and providing that those actions may be filed in accordance with the Federal Rules of Civil Procedure, which are generally not fully applicable in arbitration proceedings, Congress has evinced its intent to proscribe waivers of the right to pursue relief as a class in federal court. The Court may not, of course, ignore Congress' reference to the Federal Rules of Civil Procedure. *See Chickasaw Nation v. United States*, 534 U.S. 84, 94 (2001). Congress's decision to include reference to both the Federal Rules of Civil Procedure and apply § 4042(a) notwithstanding prior agreements to the contrary demonstrates its clear and manifest "intention to preclude a waiver of judicial remedies for the statutory rights at issue." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985).

At bottom, the Court has considered Citibank's arguments to the contrary and finds the cases it has cited either inapposite or not in conflict with the Court's decision. The Court will not refer plaintiffs' putative class claims to arbitration. Based upon the foregoing, the Court declines reach any additional grounds raised by the parties in support of or opposition to the motion.

6

## CONCLUSION

Accordingly, for the foregoing reasons, Citibank's motion to compel arbitration and stay this action [DE 22] is DENIED.

SO ORDERED, this 2 9 day of September 2023.

TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE

7

JA306

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
Civil Action No. 5:22-cv-00383-BO-RN

| | |
|---|---|
| PABLO ESPIN, NICHOLAS PADAO, JEREMY BELL and KEITH TAYLOR, *on behalf of themselves and others similarly situated,* | ) ) ) ) ) |
| Plaintiffs, | ) ) |
| **v.** | ) ) |
| CITIBANK, N.A., | ) ) |
| Defendant. | ) ) ) ) ) |
| | ) |

## <u>DEFENDANT CITIBANK N.A.'S NOTICE OF APPEAL</u>

Notice is hereby given that under Section 16(a) of the Federal Arbitration Act, 9 U.S.C. § 16(a), defendant Citibank N.A. appeals to the United States Court of Appeals for the Fourth Circuit from this Court's September 29, 2023 Order (Dkt. No. 58) (attached hereto as Exhibit 1) denying Citibank's Motion to Compel Arbitration (Dkt. No. 22). Respectfully submitted this 13th day of October 2023.

/s/ Lucia Nale

Lucia Nale
Kyle J. Steinmetz
MAYER BROWN LLP
71 S. Wacker Drive
Chicago, IL 6060
Tel: (312)- 782-0600
Fax: (312) 706-8474
lnale@mayerbrown.com
(IL License No. 6201684)
ksteinmetz@mayerbrown.com

1

(IL License No. 6300951)

Andrew J. Pincus
Archis A. Parasharami
Kevin Ranlett
Mayer Brown LLP
1999 K. Street NW
Washington, DC 20006
Tel: (202)-263-3220
apincus@mayerbrown.com
(DC License No. 370726)
aparasharami@mayerbrown.com
(DC License No. 477493)
kranlett@mayerbrown.com
(DC License No. 975333)

*Lead Counsel for Defendant Citibank N.A. by Special Appearance Pursuant to Local Rule 83.1I*

/s/ Mary K. Mandeville

Mary K. Mandeville
ALEXANDER RICKS PLLC
1420 E. 7th Street, Suite 100
Charlotte, NC 28204
Tel: (704) 200-2635
Fax: (704) 365-3676
mary@alexanderricks.com
N.C. State Bar No. 15959

*Local Civil Rule 83.1(d) Counsel for Defendant Citibank N.A.*

2

**CERTIFICATE OF SERVICE**

I, Lucia Nale, hereby certify that on October 13, 2023, I electronically filed the foregoing document with the Clerk of Court using the Court's CM/ECF system, which will send notification to counsel of record.

<u>/s/ Lucia Nale</u>



3

# Exhibit 1



IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:22-CV-383-BO-RN

PABLO ESPIN, NICHOLAS PADAO,       )
JEREMY BELL, and KEITH TAYLOR,     )
*on behalf of themselves and others similarly* )
*situated,*                        )
                                   )
                Plaintiffs,        )
                                   )
        v.                         )           O R D E R
                                   )
CITIBANK, N.A.,                    )
                                   )
                Defendant.         )

This cause comes before the Court on defendant's motion to compel arbitration and stay this action. The appropriate responses and replies have been filed and a hearing on the matter was held before the undersigned on September 28, 2023, at Raleigh, North Carolina. In this posture, the motion is ripe for ruling.

BACKGROUND

The Court incorporates the general factual and procedural background outlined in its order denying defendant Citibank's motions to dismiss for lack of personal jurisdiction. Because the Court has determined that it can exercise personal jurisdiction over the claims of the named plaintiffs against Citibank, it now proceeds to determine whether this matter must be stayed and referred to arbitration.

Each named plaintiff has an account with Citibank. According to Citibank's records, each named plaintiff received correspondence from Citibank which contained an arbitration agreement. *See* [DE 23-2] Booth Decl. ¶¶ 4-28; [DE 23-13] Grayot Decl. ¶¶ 5-10. In addition to arbitration

JA311

agreements contained in their original Card Agreements, in 2015 and 2016 Citibank provided

plaintiffs with new credit cards and New Card Agreements, with correspondence about "important

changes to [their] account terms," (Change-In-Terms), or for new customers like Padao simply

New Card Agreements. *See, e.g.,* Booth Decl. ¶¶ 8, 15. Pursuant to the New Card Agreements and

Change-In-Terms, plaintiffs had the right to reject the arbitration provision in writing by a date

certain. *Id.* ¶ 9. Citibank contends that each of the plaintiffs received notice of the arbitration

agreement and that it has no records reflecting that any of the named plaintiffs rejected the

arbitration provision.

> The most recent New Card Agreement arbitration provisions provide that

> Except as stated below, all Claims are subject to arbitration, no matter what legal
> theory they're based on or what remedy (damages, or injunctive or declaratory
> relief) they seek, including Claims based on contract, tort (including intentional
> tort), fraud, agency, your or our negligence, statutory or regulatory provisions, or
> any other sources of law; Claims made as counterclaims, cross-claims, third-party
> claims, interpleaders or otherwise; Claims made regarding past, present, or future
> conduct; and Claims made independently or with other claims. This also includes
> Claims made by or against anyone connected with us or you or claiming through
> us or you, or by someone making a claim through us or you, such as a co-applicant,
> authorized user, employee, agent, representative or an affiliated/parent/ subsidiary
> company.

*See, e.g.,* [DE 23-5 p. 16]. They further purport to waive a borrower's ability to participate in a

class action by providing that

> Claims brought as part of a class action, private attorney general or other
> representative action can be arbitrated only on an individual basis. The arbitrator
> has no authority to arbitrate any claim on a class or representative basis and may
> award relief only on an individual basis. If arbitration is chosen by any party,
> neither you nor we may pursue a Claim as part of a class action or other
> representative action.

*See, e.g.* [DE 23-16 p.6].

> Plaintiffs do not deny that their New Card Agreements include arbitration provisions and

they do not argue that they, in fact, opted out of those provisions. Rather, they contend that the

2

JA312

arbitration agreements are unenforceable as to their claims in this case because they are void in light of amendments to the Servicemembers Civil Relief Act (SCRA) and the Military Lending Act (MLA) and its implementing regulations. Plaintiffs further contend that the severability clauses in plaintiffs' arbitration provisions expressly state that their claims here, which are class and representative claims, are not covered by the agreement to arbitrate.

The United States has filed a statement of interest in this case in which it contends that the SCRA overrides the Federal Arbitration Act's mandate that valid arbitration agreements be enforced. [DE 29]. A group of military organizations has also sought leave to file an amicus curiae brief in support of plaintiffs. [DE 35]. That request is allowed and the Court has considered the arguments of the military organizations.

## DISCUSSION

The Federal Arbitration Act ("FAA") "reflects a liberal federal policy favoring arbitration agreements." *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500 (4th Cir. 2002) (quotations omitted). A district court must stay proceedings and compel arbitration if the moving party demonstrates: (1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect, or refusal of the nonmovant to arbitrate the dispute. *Id.* at 500–01. The purpose of the FAA "was to reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts, and to place arbitration agreements upon the same footing as other contracts." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991).

3

JA313

"The Servicemembers Civil Relief Act is part of a long record of congressional concern for the domestic affairs of those in military service." *Gordon v. Pete's Auto Serv. of Denbigh, Inc.*, 637 F.3d 454, 457 (4th Cir. 2011). Moreover, "the United States Supreme Court has unambiguously required courts to give a broad construction to the statutory language of the SCRA to effectuate the Congressional purpose of granting active-duty members of the armed forces repose from some of the trials and tribulations of civilian life . . .." *Brewster v. Sun Tr. Mortg., Inc.*, 742 F.3d 876, 879 (9th Cir. 2014).

Section 547 of the National Defense Authorization Act for Fiscal Year 2020 amended the SCRA to provide as follows: "Any person aggrieved by a violation of [the SCRA] may in a civil action . . . be a representative party on behalf of members of a class or be a member of a class, in accordance with the Federal Rules of Civil Procedure, notwithstanding any previous agreement to the contrary." 50 U.S.C. § 4042(a). Congress further stated that this amendment "shall not be construed to imply that a person aggrieved by a violation of such Act did not have a right to bring a civil action as a representative party on behalf of members of a class or be a member of a class in a civil action before the date of the enactment of this Act." 116 P.L. 92, div. A, title V § 547(b), 133 Stat. 1198 (2019).

Congress, in its amendment to the SCRA, made clear that, notwithstanding any agreement to the contrary, servicemembers may bring and participate in class actions to enforce the provisions of the SCRA. Pursuant to Citibank's own arbitration terms, "If any part of this arbitration provision is deemed invalid or unenforceable, the other terms shall remain in force, *except that there can be no arbitration of a class or representative Claim*." *See* [DE 23-5 p. 17] (emphasis added). Thus, the Court agrees with plaintiffs that it need not consult the FAA in this case as Citibank's own arbitration agreement confirms that any class claim, which the SCRA mandates that plaintiffs may

4

JA314

bring, cannot be arbitrated. That the SCRA was amended to add class action protection in 2019, after these plaintiffs entered into the arbitration agreements, is of no moment as Congress dictated that the right to bring a class action exists "notwithstanding any prior agreement to the contrary." Where Congress has expressly dictated the reach of a statute, courts must follow Congress' instructions. *Frontier-Kemper Constructors, Inc. v. Dir., Off. of Workers' Comp. Programs, United States Dep't of Lab.*, 876 F.3d 683, 688 (4th Cir. 2017). It is plain from the language of the SCRA amendment that Congress intended the class-action protections to extend to agreements entered into prior to its passage. To the extent that Congress has not clearly articulated the reach of the SCRA class action protections, "unlike other intervening changes in the law, a jurisdiction-conferring or jurisdiction-stripping statute usually 'takes away no substantive right but simply changes the tribunal that is to hear the case'" and thus may be applied retroactively. *Hamdan v. Rumsfeld*, 548 U.S. 557, 576–77 (2006) (citation omitted).

To the extent it must consider the FAA, the Court determines that arbitration is not required in this case. For plaintiffs to prevail, they must demonstrate that "Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue." *Gilmer*, 500 U.S. at 26. Evidence of Congress's intention may be found in the text of the SCRA, its legislative history, or in "an 'inherent conflict' between arbitration and the [SCRA's] underlying purposes." *Id.*; *see also Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1624 (2018) (only where Congress has demonstrated a "clear and manifest" intention that one statute should displace another may a court so find).

While the SCRA is silent as to arbitration specifically, it was nonetheless amended to codify the unwaivable right of servicemembers to bring and participate in class actions, "notwithstanding any previous agreement to the contrary." 50 U.S.C. § 4042(a). Importantly

5

"[t]here is a substantive difference between finding that arbitration is an appropriate alternative mechanism to enforce a statutorily created right to sue and overriding an express congressional command proscribing waiver of a specific judicial forum." *Lyons v. PNC Bank, Nat'l Ass'n*, 26 F.4th 180, 187 (4th Cir. 2022). Here, Congress, in its amendment to the SCRA, made clear that servicemembers may bring and participate in class actions in accordance with the Federal Rules of Civil Procedure to enforce the provisions of the SCRA. The Supreme Court has "stressed that the absence of any specific statutory discussion of arbitration or class actions is an important and telling clue that Congress has not displaced the Arbitration Act." *Epic Sys.*, 138 S. Ct. at 1627. But the SCRA provides such a discussion. By providing servicemembers with an unwaivable right to participate in a class action and providing that those actions may be filed in accordance with the Federal Rules of Civil Procedure, which are generally not fully applicable in arbitration proceedings, Congress has evinced its intent to proscribe waivers of the right to pursue relief as a class in federal court. The Court may not, of course, ignore Congress' reference to the Federal Rules of Civil Procedure. *See Chickasaw Nation v. United States*, 534 U.S. 84, 94 (2001). Congress's decision to include reference to both the Federal Rules of Civil Procedure and apply § 4042(a) notwithstanding prior agreements to the contrary demonstrates its clear and manifest "intention to preclude a waiver of judicial remedies for the statutory rights at issue." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985).

At bottom, the Court has considered Citibank's arguments to the contrary and finds the cases it has cited either inapposite or not in conflict with the Court's decision. The Court will not refer plaintiffs' putative class claims to arbitration. Based upon the foregoing, the Court declines reach any additional grounds raised by the parties in support of or opposition to the motion.

CONCLUSION

Accordingly, for the foregoing reasons, Citibank's motion to compel arbitration and stay this action [DE 22] is DENIED.

SO ORDERED, this 2̲9̲ day of September 2023.

TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE

7

JA317

## CERTIFICATE OF SERVICE

I certify that on January 25, 2024, the foregoing document was served on all parties or their counsel of record through the CM/ECF system.


/s/ *Andrew J. Pincus*
Andrew J. Pincus