No. 23-2083

IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————————

PABLO ESPIN, *et al.*

Plaintiffs-Appellees

v.

CITIBANK, N.A.,

Defendant-Appellant

———————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA

———————————

BRIEF FOR THE UNITED STATES AS *AMICUS CURIAE*
SUPPORTING APPELLEES

———————————

SETH FROTMAN
  General Counsel

STEVEN Y. BRESSLER
  Deputy General Counsel
KRISTIN BATEMAN
  Assistant General Counsel
ANDREA MATTHEWS
  Senior Counsel
  Consumer Financial Protection Bureau

KRISTEN CLARKE
  Assistant Attorney General

SYDNEY A.R. FOSTER
CHRISTOPHER C. WANG
  Attorneys
  U.S. Department of Justice
  Civil Rights Division
  Appellate Section
  Ben Franklin Station
  P.O. Box 14403
  Washington, D.C.  20044-4403
  (202) 514-9115

# TABLE OF CONTENTS

**PAGE**

INTEREST OF THE UNITED STATES ................................................................ 1

STATEMENT OF THE ISSUES......................................................................... 2

PERTINENT STATUTES................................................................................. 2

STATEMENT OF THE CASE............................................................................ 2

    A.   Statutory Background........................................................................... 2

    B.   Factual and Procedural Background ...................................................... 4

SUMMARY OF ARGUMENT .......................................................................... 6

ARGUMENT

    I.     Section 4042(a)(3) permits plaintiffs to pursue their class
        SCRA claims in federal court despite their arbitration
        agreements with Citibank. ..................................................................... 8

        A.   Section 4042(a)(3) guarantees plaintiffs the unwaivable
            right to pursue all class SCRA claims in federal court............... 9

            1.  Section 4042(a)(3)'s Plain Language. .................................. 9

            2.  Precedent........................................................................... 12

            3.  Section 4042(a)'s Purposes................................................ 17

            4.  Section 4042(a)(3)'s Legislative History............................ 19

        B.   Regardless, Section 4042(a)(3) guarantees plaintiffs the
            unwaivable right to pursue class SCRA claims in *some*
            forum, and that forum is necessarily federal court on the
            facts of this case. ..................................................................... 21

**TABLE OF CONTENTS (continued):**                    **PAGE**

II.    Section 4042(a)(3) applies to plaintiffs' action even though
the parties entered the relevant arbitration agreements before
Section 4042(a)(3)'s enactment. ....................................... 22

    A.    Section 4042(a)(3) is not retroactive under *Landgraf*. ........... 23

    B.    Citibank's counterarguments are meritless............................ 26

CONCLUSION .................................................................................. 29

CERTIFICATE OF COMPLIANCE

ADDENDUM

# TABLE OF AUTHORITIES

**CASES:**                                                    **PAGE**

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997)............................................19

*American Express Co. v. Italian Colors Rest.*, 570 U.S. 228 (2013) ............... 21-22

*Application of Deiulemar Compagnia Di Navigazione S.p.A. v. M/V Allegra*,
  198 F.3d 473 (4th Cir. 1999) .........................................................................11

*AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011) .......................................3

*Beckwith v. Caliber Home Loans, Inc.*, No. 3:15-CV-00581,
  2015 WL 3767187 (N.D. Ala. June 17, 2015) .............................................26

*Bostock v. Clayton Cnty.*, 590 U.S. 644 (2020)......................................... 10, 20-21

*Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204 (1988).......................................23

*Childress v. JPMorgan Chase & Co.*, No. 5:16-CV-298,
  2019 WL 2865848 (E.D.N.C. July 2, 2019)............................................ 18-19

*CompuCredit Corp. v. Greenwood*, 565 U.S. 95 (2012) ............................ 13, 15-16

*Epic Sys. Corp. v. Lewis*, 584 U.S. 497 (2018)........................................ 4, 8, 20, 22

*Fernandez-Vargas v. Gonzales*, 548 U.S. 30 (2006)...............................................24

*Gonzalez v. Cuccinelli*, 985 F.3d 357 (4th Cir. 2021) ................................. 25, 27-28

*Gordon v. Pete's Auto Serv. of Denbigh, Inc.*,
  637 F.3d 454 (4th Cir. 2011) ................................................................ *passim*

*Hadnot v. Bay, Ltd.*, 344 F.3d 474 (5th Cir. 2003)..................................................12

*Hamdan v. Rumsfeld*, 548 U.S. 557 (2006) ...................................................... 24, 27

*Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242 (2010)................................9

**CASES (continued):**                                                              **PAGE**

*Hughes Aircraft Co. v. United States*, 520 U.S. 939 (1997)....................................27

*In re Eli Lilly & Co.*, 37 F.4th 160 (4th Cir. 2022)..................................................17

*Lamps Plus, Inc. v. Varela*, 587 U.S. 176 (2019) ....................................................22

*Landgraf v. USI Film Products*, 511 U.S. 244 (1994)...................................... *passim*

*Lyons v. PNC Bank, Nat'l Ass'n*, 26 F.4th 180 (4th Cir. 2022)......................... 13-15

*Lysik v. Citibank, N.A.*, No. 17 C 2277,
    2017 WL 4164037 (N.D. Ill. Sept. 20, 2017)................................................25

*Martin v. Hadix*, 527 U.S. 343 (1999) .............................................................. 27-28

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
    473 U.S. 614 (1985).......................................................................................10

*National Cable & Telecomms. Ass'n v. FCC*,
    567 F.3d 659 (D.C. Cir. 2009).......................................................................28

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
    572 U.S. 545 (2014).................................................................................... 9-10

*Olivieri v. Stifel, Nicolaus & Co.*, No. 21-0046,
    2023 WL 2740846 (E.D.N.Y. Mar. 31, 2023),
    *appeal pending*, No. 23-658 (2d Cir.) ................................................... 25-26

*Pezza v. Investors Cap. Corp.*, 767 F. Supp. 2d 225 (D. Mass. 2011) ...................25

*Pike v. Freeman*, 266 F.3d 78 (2d Cir. 2001) ........................................................11

*Republic of Austria v. Altmann*, 541 U.S. 677 (2004) ...........................................28

*Robertson v. Intratek Computer, Inc.*, 976 F.3d 575 (5th Cir. 2020) ............... 16-17

*Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220 (1987).....................4

**CASES (continued):** **PAGE**

*United States v. Gonzales*, 520 U.S. 1 (1997).........................................9-10

*Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639 (2022) ..........................12, 25

*Weller v. HSBC Mortg. Servs., Inc.*, 971 F. Supp. 2d 1072 (D. Colo. 2013) ..........26

*Wong v. CKX, Inc.*, 890 F. Supp. 2d 411 (S.D.N.Y. 2012) ..............................25, 29

**STATUTES:**

Credit Repair Organizations Act (CROA)
    15 U.S.C. 1679f(a)........................................................................16
    15 U.S.C. 1679g..........................................................................15

Federal Arbitration Act (FAA)
    9 U.S.C. 1 *et seq.* .......................................................................3
    9 U.S.C. 2..........................................................................4, 8, 26

Servicemembers Civil Relief Act (SCRA)
    50 U.S.C. 3902(1)....................................................................1, 18
    50 U.S.C. 3902(2)........................................................................1
    50 U.S.C. 3911(2)........................................................................3
    50 U.S.C. 3931-3937....................................................................2
    50 U.S.C. 3936(a)......................................................................18
    50 U.S.C. 3937(a)........................................................................3
    50 U.S.C. 3952-3955....................................................................2
    50 U.S.C. 4041...........................................................................1
    50 U.S.C. 4042(a) ................................................................ *passim*
    50 U.S.C. 4042(a)(1) ...............................................................12, 17
    50 U.S.C. 4042(a)(2) ...............................................................12, 17
    50 U.S.C. 4042(a)(3) .............................................................. *passim*
    National Defense Authorization Act for Fiscal Year 2020
        (NDAA), Pub. L. No. 116-92, 133 Stat. 1198 (2019)..............3, 17-20
    Veterans' Benefits Act of 2010, Pub. L. No. 111-275,
        Tit. III, § 303(a), 124 Stat. 2864......................................3, 17

**STATUTES (continued):**                                              **PAGE**

Truth in Lending Act (TILA)
     15 U.S.C. 1639c(e) ....................................................................15
     15 U.S.C. 1639c(e)(1) .............................................................15
     15 U.S.C. 1639c(e)(2) .............................................................15
     15 U.S.C. 1639c(e)(3) ........................................................ 13-15
     15 U.S.C. 1640 ........................................................................13

41 U.S.C. 4712(c)(2) ......................................................................16

41 U.S.C. 4712(c)(7) ......................................................................16

**LEGISLATIVE HISTORY:**

S. 1790, 116th Cong. § 550H (as amended by House, Sept. 17, 2019)............. 19-20

H.R. Rep. No. 333, 116th Cong., 1st Sess. (2019) ...................................19

**RULE:**

Fed. R. App. P. 29(a)(2) ..................................................................1

**MISCELLANEOUS:**

U.S. Gov't Accountability Office, *Servicemember Rights:*
     *Mandatory Arbitration Clauses Have Affected Some Employment*
     *and Consumer Claims but the Extent of Their Effects Is Unknown*
     (Feb. 2021), https://perma.cc/LZ9Q-JMNC ................................ 19

*Webster's Third New International Dictionary* (1976) ........................... 9

## INTEREST OF THE UNITED STATES

Congress enacted the Servicemembers Civil Relief Act (SCRA) principally to "provide for, strengthen, and expedite the national defense" by enabling servicemembers "to devote their entire energy to the defense needs of the Nation." 50 U.S.C. 3902(1).  In particular, the statute "provide[s] for the temporary suspension of judicial and administrative proceedings and transactions that may adversely affect the civil rights of servicemembers during their military service." 50 U.S.C. 3902(2).  Without vigorous enforcement of the SCRA, our Nation's ability to meet its critical defense needs may suffer.

The United States enforces the SCRA through litigation by the Attorney General.  *See* 50 U.S.C. 4041.  Given the limited federal resources available to enforce the statute, however, private actions, including class actions, serve an important role in the SCRA's enforcement.  Accordingly, the United States has a substantial interest in seeing that servicemembers possess the right to pursue class SCRA claims in federal court.  The United States files this brief as *amicus curiae* pursuant to Federal Rule of Appellate Procedure 29(a)(2).

## STATEMENT OF THE ISSUES[1]

1.  Whether 50 U.S.C. 4042(a)(3) bars defendant from enforcing provisions in its credit-card agreements with plaintiffs requiring that class SCRA claims be pursued in individual arbitration proceedings.

2.  Whether 50 U.S.C. 4042(a)(3) applies to current attempts to enforce arbitration agreements that were entered into before the provision's enactment.

## PERTINENT STATUTES

Pertinent statutes are reproduced in the addendum to this brief.

## STATEMENT OF THE CASE

### A.    Statutory Background

1.  The SCRA "is part of a long record of congressional concern for the domestic affairs of those in military service." *Gordon v. Pete's Auto Serv. of Denbigh, Inc.*, 637 F.3d 454, 457 (4th Cir. 2011).  Congress first enacted the Soldiers' and Sailors' Civil Relief Act—the SCRA's predecessor—during World War I.  Following a short period of dormancy and multiple amendments, it was renamed the SCRA in 2003.  *See id.* at 457-458.  The SCRA provides numerous protections for servicemembers in areas such as court proceedings, interest rates, mortgages, auto loans, and housing leases.  50 U.S.C. 3931-3937, 3952-3955.  The

---

[1]  The United States takes no position on any other issues presented in this appeal, including whether the district court properly declined to compel arbitration of plaintiffs' non-SCRA claims.

SCRA provision at issue in this case grants servicemembers the right to have the interest rate on any pre-service debts capped at six percent during active-duty military service. 50 U.S.C. 3937(a), 3911(2).

As originally enacted, the SCRA, like its predecessor, contained no express private right of action. *Gordon*, 637 F.3d at 457. In 2010, Congress added one, providing that "[a]ny person aggrieved by a violation [of the SCRA] may in a civil action . . . (1) obtain any appropriate equitable or declaratory relief with respect to the violation; and (2) recover all other appropriate relief, including monetary damages." Veterans' Benefits Act of 2010, Pub. L. No. 111-275, Tit. III, § 303(a), 124 Stat. 2864, 2877 (50 U.S.C. 4042(a)). In 2019, Congress amended that provision—50 U.S.C. 4042(a)—to add a new Subsection (3) granting additional rights. National Defense Authorization Act for Fiscal Year 2020, Pub. L. No. 116-92, § 547, 133 Stat. 1198, 1378 (2019). As amended, the statute provides that "[a]ny person aggrieved by a violation [of the SCRA] may in a civil action . . . [also] (3) be a representative party on behalf of members of a class or be a member of a class, in accordance with the Federal Rules of Civil Procedure, notwithstanding any previous agreement to the contrary." 50 U.S.C. 4042(a)(3).

2. The Federal Arbitration Act (FAA), 9 U.S.C. 1 *et seq.*, "was enacted in 1925 in response to widespread judicial hostility to arbitration agreements." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). Section 2 of the FAA

provides that "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable." 9 U.S.C. 2 (listing certain exceptions not relevant here).

The enforceability of an arbitration agreement is not absolute. "Like any statutory directive, the [FAA's] mandate" to enforce an agreement to arbitrate statutory claims "may be overridden by a contrary congressional command." *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987). The "burden is on the party opposing arbitration" to show that "Congress intended to preclude a waiver of judicial remedies for the statutory right at issue." *Id.* at 227. Congress's intention that a statute's judicial remedies displace the FAA "must be clear and manifest." *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 510 (2018) (citation and internal quotation marks omitted).

### B.    Factual and Procedural Background

1. Plaintiffs are four current or retired United States servicemembers who previously served on active duty. JA 11-13, JA 19-25.[2] Before 2019, each

---

[2] "JA __" refers to page numbers in the Joint Appendix. "Citibank Br. __" refers to page numbers in Citibank's opening brief. "Plaintiffs' Br. __" refers to page numbers in plaintiffs' response brief.

servicemember established a credit-card account with Citibank, N.A. (Citibank). JA 54-55, JA 57, JA 179.

The credit-card agreements between Citibank and plaintiffs state that either party may elect to resolve disputes "arising out of or related to" plaintiffs' accounts by binding arbitration, which must occur on "an individual basis," without "class action or other representative" proceedings, and which "replaces the right to go to court, have a jury trial or initiate or participate in a class action." JA 88-89, JA 100, JA 121, JA 157, JA 168, JA 217. The agreements further provide that "[i]f any part of th[e] arbitration provision is deemed invalid or unenforceable, the other terms shall remain in force, except that there can be no arbitration of a class or representative Claim." JA 89-90, JA 101, JA 122, JA 158, JA 169, JA 218.

Plaintiffs sued Citibank on behalf of themselves and a class of similarly situated persons. JA 11, JA 14. The complaint alleged that Citibank systematically violates the SCRA by denying SCRA benefits under the guise of needing additional documentation of deployment orders. JA 12, JA 25, JA 32, JA 34. The complaint further alleged that Citibank imposes interest-rate and fee increases on servicemembers after they leave active duty that it does not impose on others, in violation of the SCRA. JA 12-13, JA 26-27, JA 32. The complaint sought damages, together with declaratory and injunctive relief, for Citibank's violations of the SCRA and other laws. JA 46-47.

- 5 -

2.  Citibank filed a motion to compel arbitration of plaintiffs' claims (JA 48-50), which the district court denied (JA 300-306).  As relevant here, the court determined that Section 4042(a)(3)'s codification of servicemembers' right to participate in a class action in accordance with the Federal Rules of Civil Procedure "notwithstanding any previous agreement to the contrary" evinced Congress's "clear and manifest intention to preclude a waiver of judicial remedies."  JA 304-305 (citations and internal quotation marks omitted).  The court also concluded that the statute may be applied to current attempts to enforce arbitration agreements predating Section 4042(a)(3)'s enactment because, among other things, Section 4042(a)(3) "takes away no substantive right but simply changes the tribunal that is to hear the case."  JA 304 (internal quotation marks omitted).

3.  Citibank filed a timely notice of interlocutory appeal (JA 307-309), and the district court stayed the case pending appeal (JA 10).

## SUMMARY OF ARGUMENT

I.  The district court correctly denied Citibank's motion to compel arbitration of plaintiffs' class SCRA claims.  The SCRA grants servicemembers the right, "in a civil action," to "be a representative party on behalf of members of a class or be a member of a class, in accordance with the Federal Rules of Civil Procedure, notwithstanding any previous agreement to the contrary."  50 U.S.C. 4042(a)(3).

- 6 -

That text evinces Congress's clear and manifest intent to render unenforceable prior arbitration agreements barring SCRA plaintiffs from seeking class relief in federal court. That conclusion is amply supported by precedent of the Supreme Court and this Court and the SCRA's purposes.

At the very least, Section 4042(a)(3) gives servicemembers the right to pursue class claims in *some* forum. On the facts of this case, that forum is necessarily federal court. That follows because the governing arbitration agreements flatly forbid class arbitration, and federal court is the only other forum that could apply the Federal Rules. Because this Court can resolve the question whether plaintiffs' SCRA claims should proceed in court on this narrow ground, it need not reach the broader question whether the SCRA bars the enforcement of *all* prior arbitration agreements precluding the litigation of class claims in federal court, including agreements that make class arbitration available.

II. Furthermore, Section 4042(a)(3) applies to current SCRA actions regardless of whether the relevant arbitration agreement predated Section 4042(a)(3)'s 2019 enactment. Even assuming that the retroactivity analysis set forth in *Landgraf v. USI Film Products*, 511 U.S. 244, 280 (1994), applies, this Court need not decide whether Congress expressly specified that Section 4042(a)(3) applies retroactively at *Landgraf*'s first step. Regardless of how that question is resolved, Section 4042(a)(3) is not retroactive in the disfavored sense at

*Landgraf*'s second step because it does not affect the substantive rights of any party. Instead, Section 4042(a)(3) merely effects a jurisdictional and procedural change that authorizes plaintiffs to bring class SCRA claims in federal court under the Federal Rules of Civil Procedure rather than in an arbitral forum.

## ARGUMENT

### I.    Section 4042(a)(3) permits plaintiffs to pursue their class SCRA claims in federal court despite their arbitration agreements with Citibank.

The district court correctly denied Citibank's motion to compel arbitration of plaintiffs' class claims alleging violations of the SCRA. As explained below, Congress "clear[ly] and manifest[ly]" intended that the SCRA render nonwaivable servicemembers' right to pursue class SCRA claims in court. *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 510 (2018) (citation omitted). The SCRA therefore overrides the directive in the FAA to generally enforce arbitration agreements, 9 U.S.C. 2.

In any event, at a minimum, the SCRA grants servicemembers the nonwaivable right to pursue class SCRA claims in *some* forum. Because the arbitration agreements here forbid class arbitration, class proceedings must be allowed to go forward in federal court—the only forum available. This Court therefore need not resolve the broader question whether the SCRA grants *all* plaintiffs the nonwaivable right to litigate class SCRA claims in federal court, regardless of whether class arbitration is available.

**A.     Section 4042(a)(3) guarantees plaintiffs the unwaivable right to pursue all class SCRA claims in federal court.**

*1. Section 4042(a)(3)'s Plain Language.*  Section 4042(a)(3) states that "[a]ny person aggrieved by a violation [of the SCRA] may in a civil action . . . be a representative party on behalf of members of a class or be a member of a class, in accordance with the Federal Rules of Civil Procedure, notwithstanding any previous agreement to the contrary."  50 U.S.C. 4042(a)(3).  Determining whether Section 4042(a)(3) overrides the FAA's mandate that arbitration agreements generally be enforced "begins and ends with the text," *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 553 (2014), which "must [be] enforce[d] . . . according to its terms," *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 251 (2010).  Furthermore, this Court must read the SCRA "with an eye friendly to those who dropped their affairs to answer their country's call." *Gordon v. Pete's Auto Serv. of Denbigh, Inc.*, 637 F.3d 454, 458 (4th Cir. 2011) (citation omitted).

Section 4042(a)(3) grants aggrieved persons the right to pursue class SCRA claims in a civil action "notwithstanding *any* previous agreement to the contrary." 50 U.S.C. 4042(a)(3) (emphasis added).  "Read naturally, the word 'any' has an expansive meaning, that is, 'one or some indiscriminately of whatever kind.'" *United States v. Gonzales*, 520 U.S. 1, 5 (1997) (quoting *Webster's Third New International Dictionary* 97 (1976)).  Given this meaning and the absence of any

language limiting the scope of that word, the phrase "any previous agreement to the contrary" is read most naturally to encompass *all* previous agreements, including agreements to arbitrate. *See ibid.* Accordingly, Section 4042(a)(3)'s text shows Congress's clear and manifest "intent[] to preclude a waiver of judicial remedies for the [SCRA] rights at issue." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985).

Instead of grappling with the scope of the word "any," Citibank argues that Section 4042(a)(3)'s omission of the term "arbitration" constitutes silence on whether arbitration agreements must be enforced under the FAA. Citibank Br. 28; *see also id.* at 34-35. Citibank errs in focusing on what Section 4042(a)(3) *does not* say ("arbitration") rather than on what the provision *does* say ("any previous agreement"). *See Octane Fitness*, 572 U.S. at 553. Because the phrase "any previous agreement to the contrary" is sufficiently broad to cover prior arbitration agreements, specific mention of the latter was unnecessary to prohibit a waiver of the right to a judicial forum for class SCRA claims. Indeed, Citibank in effect claims that "Congress's failure to speak directly to a specific case that falls within a more general statutory rule creates a tacit exception." *Bostock v. Clayton Cnty.*, 590 U.S. 644, 669 (2020). But "when Congress chooses not to include any exceptions to a broad rule, courts apply the broad rule." *Ibid.*; *id.* at 669

(explaining that the mere fact that Congress used more specific language in later-enacted statutes is of no moment).

Section 4042(a)(3)'s grant of the right to pursue an SCRA class action "in accordance with the Federal Rules of Civil Procedure"—a phrase immediately preceding the phrase "notwithstanding any agreement to the contrary"—reinforces this interpretation. 50 U.S.C. 4042(a)(3). The Federal Rules do not necessarily apply to arbitration proceedings, *see Application of Deiulemar Compagnia Di Navigazione S.p.A. v. M/V Allegra*, 198 F.3d 473, 482-483 (4th Cir. 1999); major arbitration services have not elected to adopt them, *see, e.g.*, *Pike v. Freeman*, 266 F.3d 78, 92 n.17 (2d Cir. 2001) (American Arbitration Association (AAA)); and many arbitration agreements, including the ones here, do not mandate their use (*see, e.g.*, JA 89 (AAA's rules generally apply; federal "rules of civil procedure for discovery" do "not apply")). Indeed, Citibank concedes as much, emphasizing that "[the Federal Rules] do not apply to arbitration." Citibank Br. 29. Thus, by giving aggrieved persons the right to pursue class SCRA claims "in accordance with the Federal Rules of Civil Procedure, notwithstanding any previous agreement to the contrary," 50 U.S.C. 4042(a)(3), Congress undoubtedly granted servicemembers the unwaivable right to pursue class proceedings in federal court.

Citibank's rejoinder to these text-based arguments is unpersuasive. Citibank finds it significant that Section 4042(a) begins by stating that "[a]ny person . . . may

*in a civil action*" take the actions listed in Subsection (3) and other Subsections. 50 U.S.C. 4042(a) (emphasis added). According to Citibank (Citibank Br. 29), the phrase "in a civil action" "ma[kes] clear" that Subsection (3)'s "invalidation of class-action waivers" does not apply to persons who agree to resolve disputes in arbitration rather than court.

Not so. Under the same logic, Subsections (1) and (2) also would not cover persons who agree to arbitration. But surely Citibank does not contend that its arbitration agreements may properly foreclose the possibility of obtaining "appropriate equitable or declaratory relief," "monetary damages," and "all other appropriate relief"—the rights granted in Subsections (1) and (2). 50 U.S.C. 4042(a)(1) and (2). Citibank's agreements do not do so (*see, e.g.*, JA 89), nor could they. After all, "[b]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute." *Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639, 653 (2022) (alteration in original; citations omitted); *Hadnot v. Bay, Ltd.*, 344 F.3d 474, 478 n.14 (5th Cir. 2003). Section 4042(a)(3)'s "invalidation of class-action waivers" (Citibank Br. 29) thus applies to *all* SCRA plaintiffs, including those who agree to arbitration.

*2. Precedent.* Precedent of the Supreme Court and this Court supports the conclusion that Section 4042(a)(3)'s nonwaiver provision overrides the FAA. The Supreme Court has explained that a statute's "mere formulation of [a] cause of

- 12 -

action in th[e] standard fashion" is not "sufficient to establish the 'contrary congressional command' overriding the FAA." *CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 100-101 (2012) (citation omitted). Rather, parties may generally contract around the judicial forum Congress provides for resolving disputes, and the "arbitration of claims satisfies the statutory prescription of civil liability in court." *Id.* at 101. But where, as here, Congress goes further and expressly *bars* the waiver of parties' statutory right to bring their case in court, a different result obtains.

a. This Court's decision in *Lyons v. PNC Bank, National Association*, 26 F.4th 180 (4th Cir. 2022), compels plaintiffs' interpretation of the statute. In *Lyons*, this Court addressed 15 U.S.C. 1639c(e)(3), a provision in the Truth in Lending Act (TILA). That provision prohibits certain "agreement[s]" from being "applied or interpreted so as to bar a consumer from bringing an action" under the statute in "court . . . pursuant to [15 U.S.C. 1640]"—which creates a cause of action—"or any other provision of law." 15 U.S.C. 1639c(e)(3).

*Lyons* held that the "plain language" of Section 1639c(e)(3) "clear[ly] and unambiguous[ly]" prohibited the enforcement of relevant prior arbitration agreements. 26 F.4th at 186-187. In reaching that conclusion, this Court explained that "Supreme Court cases which have held that arbitration is not precluded merely because a statute provides a plaintiff with a cause of action" are "inapposite"

- 13 -

because Section 1639c(e)(3) "*expressly prohibits* a covered agreement from *barring* a consumer 'from bringing an action in an appropriate district court.'" *Id.* at 187 (quoting statute). The Court reasoned that "[t]here is a substantive difference between finding that arbitration is an appropriate alternative mechanism to enforce a statutorily created right to sue and overriding an express congressional command proscribing waiver of a specific judicial forum." *Ibid.* *Lyons* reached that conclusion even though Section 1639c(e)(3) "does not include the term 'arbitration.'" *Ibid.*

*Lyons*'s reasoning controls here. Section 4042(a)(3)'s grant to servicemembers of the right to bring a "civil action" raising class SCRA claims "notwithstanding any [contrary] previous agreement," 50 U.S.C. 4042(a)(3), is functionally equivalent to Section 1639c(e)(3)'s prohibition on enforcing "agreement[s]" that would otherwise "bar" an "action" in "court" under TILA's cause-of-action provision. Although the SCRA provision is framed in terms of what a *potential plaintiff* may do, and the TILA provision is framed in terms of what an *agreement* may do, both forbid the enforcement of particular arbitration agreements against certain plaintiffs. Significantly, Citibank offers no counterargument to this textual analysis.

Citibank instead attempts to distinguish *Lyons* and 15 U.S.C. 1639c(e)(3) on the grounds that (1) neighboring subsections of Section 1639c(e)—Subsections (1)

- 14 -

and (2)—use the term "arbitration"; (2) the title of the Section containing those subsections is "Arbitration"; and (3) legislative history and implementing regulations supported this Court's interpretation. Citibank Br. 40 (citing 15 U.S.C. 1639c(e)(1) and (2)). But *Lyons* did not "rel[y] on" (Citibank Br. 41) Subsections (1) and (2) in reaching its holding. 26 F.4th at 186-188. And although *Lyons* explained that the defendant's interpretation of the statute was "difficult to reconcile" with the title of Section 1639c(e) and observed that the Court's interpretation was "consistent" with legislative history and governing regulations, *Lyons* did so only as "[f]urther" support for its textual analysis. 26 F.4th at 187. At the end of its analysis—as at the beginning—*Lyons* emphasized that it was Section 1639c(e)(3)'s "unambiguous language" that made it "implausible that Congress did not intend the provision to prohibit pre-dispute arbitration agreements." *Id.* at 188; *see also id.* at 186. So too here.

b. The Supreme Court's decision in *CompuCredit* is not to the contrary. In that case, the Court held that the Credit Repair Organizations Act (CROA) does not preclude enforcement of an arbitration agreement in a lawsuit alleging CROA violations. Applying the principle described above, the Court explained that the CROA's provision setting forth a private right of action, 15 U.S.C. 1679g, does not establish the "right" to sue in federal court rather than in an arbitral forum, even though that provision uses the words "action," "class action," and "court."

- 15 -

*CompuCredit*, 565 U.S. at 99-101. The Court also held that the CROA's separate "nonwaiver provision"—which rendered void "[a]ny waiver" of "any right" under the statute, *id.* at 99 (quoting 15 U.S.C. 1679f(a))—likewise does not make the arbitration agreement unenforceable. The Court reasoned that because the "cause-of-action provision" on its own "does not create a right to initial judicial enforcement," it follows that "initial judicial enforcement" is not a "right" within the meaning of the nonwaiver provision. *Id.* at 101 (citation omitted).

In contrast, the nonwaiver provision in Section 4042(a)(3) clearly attaches to servicemembers' right to bring a class action in court under the Federal Rules of Civil Procedure: In a single sentence, Congress provided that such persons "may in a *civil action* . . . be a representative party on behalf of members of a class or be a member of a class, in accordance with the *Federal Rules of Civil Procedure, notwithstanding any previous agreement to the contrary*." 50 U.S.C. 4042(a)(3) (emphasis added). This critical distinction belies Citibank's contention (Citibank Br. 32) that the SCRA and the CROA are "functionally indistinguishable."[3]

---

[3] Citibank's reliance (Citibank Br. 32-33) on *Robertson v. Intratek Computer, Inc.*, 976 F.3d 575 (5th Cir. 2020), misses the mark for the same reason. In that case, a provision of the federal whistleblower statute barred the waiver of "rights and remedies" created by the statute, 41 U.S.C. 4712(c)(7), while a *different* provision, 41 U.S.C. 4712(c)(2), provided the opportunity to pursue a jury trial. *Robertson*, 976 F.3d at 580-582. Based on the surrounding statutory text and structure, the Fifth Circuit concluded that a "jury trial" under Subsection (c)(2) is

- 16 -

*3. Section 4042(a)'s Purposes.*  The purposes of Section 4042(a), while unnecessary to the argument, support the same conclusion. *See In re Eli Lilly & Co.*, 37 F.4th 160, 165 (4th Cir. 2022).

As mentioned above, Congress first expressly provided a private right of action—by enacting Section 4042(a)(1) and (2)—in 2010. *See* Veterans' Benefits Act of 2010, Pub. L. No. 111-275, Tit. III, § 303(a), 124 Stat. 2864, 2877. Specifically, the 2010 statute provided that "[a]ny person aggrieved by a violation of [the SCRA] . . . may in a civil action . . . (1) obtain any appropriate equitable or declaratory relief"; and "(2) recover all other appropriate relief, including monetary damages." *Ibid.*  Against this backdrop, Congress amended the statute in 2019 by adding Section 4042(a)(3) to grant such persons the additional right to "(3) be a representative party on behalf of members of a class or be a member of a class, in accordance with the Federal Rules of Civil Procedure, notwithstanding any previous agreement to the contrary."  National Defense Authorization Act for Fiscal Year 2020 (NDAA), Pub. L. No. 116-92, § 547, 133 Stat. 1198, 1378 (2019).

That history is significant.  Because the broadly written private right of action enacted in 2010 already allowed aggrieved persons to proceed as a class in a

---

waivable because it "is not itself a 'right' or 'remedy'" within the meaning of Subsection (c)(7), the nonwaiver provision. *Id.* at 580.

civil action, the 2019 amendment necessarily had a distinct purpose: to create a *nonwaivable* right to maintain class actions in a judicial forum. *Cf.* § 547, 133 Stat. 1378 (noting that the language added to 50 U.S.C. 4042(a) "shall not be construed to imply that a person aggrieved by a violation of such Act did not have a right to bring a civil action as a representative party on behalf of members of a class or be a member of a class in a civil action before the date of the enactment of this Act").

Participation by servicemembers in class actions to vindicate SCRA rights also advances the SCRA's codified purpose of "enabl[ing] such persons to devote their entire energy to the defense needs of the Nation." 50 U.S.C. 3902(1). Section 4042(a)(3) reflects Congress's determination that, when servicemembers' rights are violated, they should not be required to pursue enforcement cases on an individual basis, which could distract them from their national-defense duties.[4] Moreover, allowing servicemembers to proceed as a class provides the "benefit of adjudicating what may amount to small recoveries for individual plaintiffs, who absent class certification might lack incentive to prosecute their own claims." *Childress v. JPMorgan Chase & Co.*, No. 5:16-CV-298, 2019 WL 2865848, at *11

---

[4] Although the SCRA provides for the tolling of statutes of limitations during periods of military service, 50 U.S.C. 3936(a), servicemembers should not have to wait until they leave military service to obtain relief for violations of the statute where class proceedings are possible and appropriate.

- 18 -

(E.D.N.C. July 2, 2019) (addressing SCRA claim and citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997)). These considerations reinforce plaintiffs' interpretation of the statute.

*4. Section 4042(a)(3)'s Legislative History.* Without support in Section 4042(a)(3)'s text or relevant precedent for its position, Citibank advances a contrary interpretation of Section 4042(a)(3) based on its legislative history. Citibank's argument is unpersuasive.

Citibank observes that the House-passed version of the bill that became the NDAA included a separate provision—Section 550H—that would have expressly barred enforcement of all pre-dispute arbitration provisions covering SCRA claims. Citibank Br. 36 (citing S. 1790, 116th Cong. § 550H (as amended by House, Sept. 17, 2019)). Section 550H was omitted from the enacted law in accordance with the conference committee's report, H.R. Rep. No. 333, 116th Cong., 1st Sess. 1228-1229 (2019), and its replacement instead directed the Comptroller General to submit a report on the effect of mandatory arbitration on servicemembers' ability to seek redress under the SCRA. § 550F, 133 Stat. 1384.[5]

---

[5] The resulting report described, among other things, actions one court and the Department of Justice took—in 2011 and 2015, respectively—in response to class waivers in arbitration agreements. *See* U.S. Gov't Accountability Office, *Servicemember Rights: Mandatory Arbitration Clauses Have Affected Some Employment and Consumer Claims but the Extent of Their Effects Is Unknown* 9-11 & n.29 (Feb. 2021), https://perma.cc/LZ9Q-JMNC. Citibank incorrectly argues

Citibank argues (Citibank Br. 36-37) that if the "House intended for Section 4042(a) to invalidate class waivers in arbitration agreements," it "would not have [also] proposed" Section 550H.

Citibank's argument is without merit. It is well settled that "legislative history is not the law," *Epic Sys.*, 584 U.S. at 523, and "can never defeat unambiguous statutory text," *Bostock*, 590 U.S. at 674, such as Section 4042(a)(3). In any event, the highlighted legislative history does not contradict the statutory text. Rather, it shows only that Congress considered enacting a specific limitation on arbitration for *all* types of SCRA claims but wanted to study that issue further while simultaneously enacting more robust protections against mandatory arbitration and other waivers of a *subset* of SCRA claims—those brought on behalf of a class. *Compare* S. 1790, 116th Cong. § 550H (as amended by House, Sept. 17, 2019) (covering *all* SCRA claims but barring the enforcement only of "arbitration" agreements entered into "[before] [the] controversy arises"), *with* 50 U.S.C. 4042(a)(3) (covering only *class* SCRA claims and barring the enforcement

_____

that that discussion would have been unnecessary if Section 4042(a)(3) had invalidated class waivers in arbitration agreements. Citibank Br. 37-38. Quite the opposite, the limited discussion was fully responsive to Congress's broad directives to (1) report on the "effects" of "including a mandatory arbitration clause" on "the ability of servicemembers" to "secure redress" for SCRA violations; and (2) "analy[ze]" the "extent to which" arbitration and litigation "ha[ve] been employed to address" claims under the SCRA based on "data." § 550F(a)(2) and (b)(3), 133 Stat. 1384.

of "any previous agreement" waiving such claims—that is, any arbitration or other type of agreement entered into before litigation is initiated).

Congress's failure to enact the same limitation on the mandatory arbitration of all SCRA claims the following year (*see* Citibank Br. 39) is no more dispositive for the same reason. Also, "speculation about why a later Congress declined to adopt new legislation offers a particularly dangerous basis on which to rest an interpretation of an existing law a different and earlier Congress did adopt." *Bostock*, 590 U.S. at 670 (citation and internal quotation marks omitted). The district court's well-supported interpretation of Section 4042(a)(3) should be affirmed.

> **B.     Regardless, Section 4042(a)(3) guarantees plaintiffs the unwaivable right to pursue class SCRA claims in *some* forum, and that forum is necessarily federal court on the facts of this case.**

This Court need not decide whether Section 4042(a)(3) establishes an unwaivable right to judicial proceedings for class claims in *all* cases because, at a minimum, the statute requires permitting plaintiffs' SCRA claims to proceed in federal court on the facts of *this case*. Putting aside whether the term "civil action" in Section 4042(a)(3) necessarily refers to a judicial forum or could also encompass an arbitral forum, there can be no question that the statute sets forth an unwaivable right to pursue class proceedings in *some forum*, as it "evinc[es] an intention to preclude a waiver of class-action procedure." *American Express Co. v.*

- 21 -

*Italian Colors Rest.*, 570 U.S. 228, 234 (2013) (citation and internal quotation marks omitted).  Indeed, all the arguments made in Section I(A) apply with even greater force to support that conclusion.

Absent an agreement by the parties that class arbitration is available, however, a court action is the only way to pursue a class proceeding.  *See Lamps Plus, Inc. v. Varela*, 587 U.S. 176, 187-188 (2019); *Epic Sys.*, 584 U.S. at 508-509.  Here, Citibank's arbitration agreements make clear that class proceedings are *unavailable* in arbitration.  *See, e.g.*, JA 89-90 (specifying that arbitration must take place on "an individual basis" and providing that if the agreement is deemed "unenforceable" in part, the remaining terms "shall remain in force, *except that there can be no arbitration of a class or representative Claim*" (emphasis added)).  Because class arbitration is unavailable here, and because federal court is the only other forum that applies the Federal Rules of Civil Procedure, Section 4042(a)(3) requires that *these* plaintiffs' class claims be allowed to proceed in federal court.

## II.   Section 4042(a)(3) applies to plaintiffs' action even though the parties entered the relevant arbitration agreements before Section 4042(a)(3)'s enactment.

Section 4042(a)(3), which provides plaintiffs with a judicial forum for their class SCRA claims, was enacted in 2019, after the named plaintiffs entered into credit-card agreements with Citibank that contained arbitration provisions.  Applying Section 4042(a)(3) to plaintiffs' action does not, however, create any

- 22 -

retroactivity concerns.  Even assuming the retroactivity analysis of *Landgraf v. USI Film Products*, 511 U.S. 244 (1994), applies, Section 4042(a)(3) does not have disfavored retroactive effects that trigger the presumption against retroactivity because it does not affect "substantive rights, liabilities, or duties." *Id.* at 278.

A.      **Section 4042(a)(3) is not retroactive under *Landgraf*.**

"Retroactivity is not favored in the law," and "the presumption against retroactivity instructs courts not to apply a statute to conduct that took place before the statute went into effect." *Gordon v. Pete's Auto Serv. of Denbigh, Inc.*, 637 F.3d 454, 458 (4th Cir. 2011) (quoting *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988)).  Under *Landgraf*, however, "[a] statute does not operate retrospectively *merely* because it is applied in a case arising from conduct antedating the statute's enactment, or upsets expectations based in prior law."  511 U.S. at 269 (internal citation and quotation marks omitted; emphasis added). Instead, a three-step analysis applies when considering a statute's applicability: (1) a court first determines if Congress has "expressly prescribed the statute's proper [temporal] reach"; (2) if not, a court evaluates whether the new statute has a retroactive effect in the particular case because it makes changes "affecting substantive rights, liabilities, or duties to conduct arising before [its] enactment"; and (3) if so, a court applies a presumption against retroactivity "absent clear congressional intent favoring such a result." *Id.* at 278, 280.

- 23 -

Assuming that *Landgraf*'s retroactivity analysis governs in evaluating Section 4042(a)(3), this Court need not address whether Congress expressly defined Section 4042(a)(3)'s temporal reach under *Landgraf*'s first step. *Cf.* Plaintiffs' Br. 41-43. At a minimum, the statute does not expressly apply only to agreements entered after the statute's enactment in 2019, and thus this Court may proceed to the second step of the *Landgraf* analysis to consider whether the statute alters "substantive rights, liabilities, or duties" that existed prior to the statute's enactment. 511 U.S. at 278; *see Fernandez-Vargas v. Gonzales*, 548 U.S. 30, 37 (2006).

It does not. Precedent of this Court and the Supreme Court makes clear that Section 4042(a)(3) effects a non-retroactive jurisdictional or procedural change, *see Landgraf*, 511 U.S. at 274-276, that merely "changes the tribunal that is to hear the case" and "takes away no substantive right," *Hamdan v. Rumsfeld*, 548 U.S. 557, 577 (2006) (citation omitted). In *Gordon*, this Court applied *Landgraf* and held that the 2010 SCRA amendment that granted servicemembers an express private right of action merely provided a federal forum to adjudicate the plaintiff's claim that could previously be asserted in state tribunals. 637 F.3d at 458-461. Accordingly, this Court determined, the amendment was a jurisdictional change that "sp[oke] to the power of the court rather than to the rights or obligations of the parties." *Id.* at 461 (citation omitted).

- 24 -

Similarly, Section 4042(a)(3) merely effects a jurisdictional change shifting the adjudication of some class SCRA claims from arbitration to federal court, where the same substantive rights are available. As the Supreme Court has observed, "[a]n arbitration agreement [under the FAA] . . . does not alter or abridge substantive rights; it merely changes how those rights will be processed." *Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639, 653 (2022). Moreover, by granting the unwaivable right to pursue class claims alleging SCRA violations under the Federal Rules of Civil Procedure rather than an arbitral forum's procedural rules, Section 4042(a)(3) effects a change akin to the grant of a right to a jury trial that the Supreme Court and this Court have found to be procedural. *See Landgraf*, 511 U.S. at 280-281; *Gonzalez v. Cuccinelli*, 985 F.3d 357, 373 (4th Cir. 2021).

Several district courts in addition to the one below have concluded that the retroactive application of a statute that restricts the enforcement of arbitration agreements does not trigger the presumption against retroactivity. *See Lysik v. Citibank, N.A.*, No. 17 C 2277, 2017 WL 4164037, at *4 (N.D. Ill. Sept. 20, 2017) (Consumer Financial Protection Act); *Wong v. CKX, Inc.*, 890 F. Supp. 2d 411, 423 (S.D.N.Y. 2012) (Dodd-Frank Act); *Pezza v. Investors Cap. Corp.*, 767 F. Supp. 2d 225, 234 (D. Mass. 2011) (Dodd-Frank Act); *see also Olivieri v. Stifel, Nicolaus & Co.*, No. 21-0046, 2023 WL 2740846, at *6 & n.5 (E.D.N.Y. Mar. 31, 2023) (explaining statute at issue "simply concerns which forum certain claims

should be heard [in] and does not trigger retroactivity concerns"), *appeal pending*, No. 23-658 (2d Cir. submitted on Apr. 3, 2024).

Citibank cites (Citibank Br. 43-44) several contrary district court decisions holding that the Dodd-Frank Act's prohibitions on arbitration clauses in certain agreements—or the enforcement thereof—do not apply to agreements predating the statute's enactment. But to the extent that these cases engage in any independent analysis, they mistakenly consider the "irrevocable" nature of arbitration agreements covered by the FAA to be dispositive. *See, e.g.*, *Beckwith v. Caliber Home Loans, Inc.*, No. 3:15-CV-00581, 2015 WL 3767187, at *4 (N.D. Ala. June 17, 2015) (quoting 9 U.S.C. 2); *Weller v. HSBC Mortg. Servs., Inc.*, 971 F. Supp. 2d 1072, 1079 (D. Colo. 2013) (same). None of them persuasively addresses in any detail the Supreme Court's well-settled conclusion that a statute is not retroactive if it introduces only jurisdictional or procedural changes or the Court's distinction between statutes that govern the primary conduct of the parties rather than the secondary rules of litigation. *See* pp. 27-28, *infra*.

## B.     Citibank's counterarguments are meritless.

Citibank contends that the right to enforce an arbitration agreement is a "substantive contractual right that is recognized and protected by the FAA." Citibank Br. 42-45. Indeed, as Citibank notes, the *Landgraf* Court observed that "[t]he largest category of cases in which we have applied the presumption against

statutory retroactivity has involved new provisions affecting contractual or property rights." 511 U.S. at 271.

A contractual right *to an arbitral forum* is not necessarily a substantive right that supersedes a subsequently enacted statute, however, given the well-settled countervailing principle that a statute that confers or ousts jurisdiction is not retroactive. *See, e.g.*, *Hamdan*, 548 U.S. at 577. Balancing these interests to determine whether a statute has retroactive effects "demands a commonsense, functional judgment" that "should be informed and guided by 'familiar considerations of fair notice, reasonable reliance, and settled expectations.'" *Martin v. Hadix*, 527 U.S. 343, 357-358 (1999) (quoting *Landgraf*, 511 U.S. at 270); *Gonzalez*, 985 F.3d at 372.

In making such judgments, the Supreme Court has distinguished between statutes governing the secondary rules of litigation—which may apply prospectively to all litigation even when the litigation concerns conduct predating the statutes' enactment—from statutes governing the primary conduct of parties, which may not, absent a clear indication that Congress intended it to. *See Landgraf*, 511 U.S. at 275 ("Because rules of procedure regulate secondary rather than primary conduct, the fact that a new procedural rule was instituted after the conduct giving rise to the suit does not make application of the rule at trial retroactive."); *Hughes Aircraft Co. v. United States*, 520 U.S. 939, 951 (1997)

- 27 -

(explaining that "[s]tatutes merely addressing *which* court shall have jurisdiction" merely "regulate the secondary conduct of litigation and not the underlying primary conduct of the parties"); *see also, e.g.*, *Republic of Austria v. Altmann*, 541 U.S. 677, 696 (2004).

Applying this distinction here, the "commonsense, functional judgment," *Martin*, 527 U.S. at 357, is that Section 4042(a)(3) is not retroactive. The statute does not address the parties' primary conduct—whether Citibank violated plaintiffs' SCRA rights—but rather the secondary issue of which tribunal will adjudicate that conduct. The mere frustration of Citibank's contractual expectation that plaintiffs' SCRA claims could be arbitrated cannot compel the contrary conclusion. *See National Cable & Telecomms. Ass'n v. FCC*, 567 F.3d 659, 670 (D.C. Cir. 2009). Indeed, parties have "diminished reliance interests in matters of procedure" in general, *Landgraf*, 511 U.S. at 275, and Citibank was previously willing to *exclude* the relevant arbitration provisions from its agreements without demanding any corresponding changes (*see* Citibank Br. 18 (citing record)). Citibank's lack of detrimental reliance reinforces the conclusion that Section 4042(a)(3) is not retroactive. *See Gonzalez*, 985 F.3d at 373-374. Accordingly, Section 4042(a)(3), "despite altering a provision of a contract[,] 'principally concerns the type of jurisdictional statute envisioned in *Landgraf*,' and does not

- 28 -

affect the substantive rights of either party." *Wong*, 890 F. Supp. 2d at 423 (citation omitted).

## CONCLUSION

For the foregoing reasons, this Court should hold that Section 4042(a)(3) bars Citibank from compelling plaintiffs to arbitrate their class SCRA claims individually.

Respectfully submitted,

SETH FROTMAN
  General Counsel

STEVEN Y. BRESSLER
  Deputy General Counsel
KRISTIN BATEMAN
  Assistant General Counsel
ANDREA MATTHEWS
  Senior Counsel
  Consumer Financial Protection Bureau

KRISTEN CLARKE
  Assistant Attorney General

s/ Christopher C. Wang
SYDNEY A.R. FOSTER
CHRISTOPHER C. WANG
  Attorneys
  U.S. Department of Justice
  Civil Rights Division
  Appellate Section
  Ben Franklin Station
  P.O. Box 14403
  Washington, D.C.  20044-4403
  (202) 514-9115

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rules of Appellate Procedure 29(a)(5) and 32(a)(7)(B)(i) because it contains 6,493 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f). This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5) and (6) because it was prepared in Times New Roman 14-point font using Microsoft Word for Microsoft 365.

s/ Christopher C. Wang
CHRISTOPHER C. WANG
Attorney

Date: April 10, 2024

**ADDENDUM**

## ADDENDUM:  TABLE OF CONTENTS

**PAGE**

50 U.S.C. 4042 ...................................................................................... A-1

**50 U.S.C. 4042. Private right of action**

**(a) In general**

Any person aggrieved by a violation of this chapter may in a civil action--

(1) obtain any appropriate equitable or declaratory relief with respect to the violation;

(2) recover all other appropriate relief, including monetary damages; and

(3) be a representative party on behalf of members of a class or be a member of a class, in accordance with the Federal Rules of Civil Procedure, notwithstanding any previous agreement to the contrary.

**(b) Costs and attorney fees**

The court may award to a person aggrieved by a violation of this chapter who prevails in an action brought under subsection (a) the costs of the action, including a reasonable attorney fee.

A-1